# 11-3642-cv(L)
## 11-3962-cv(XAP)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

————►►◄◄————

ALAN KACHALSKY, CHRISTINA NIKOLOV, JOHNNIE NANCE, ANNA MARCUCCI-NANCE, ERIC DETMER, SECOND AMENDMENT FOUNDATION, INC.,

*Plaintiffs-Appellants-Cross-Appellees,*

*v.*

COUNTY OF WESTCHESTER,

*Defendant-Appellee-Cross-Appellant,*

*and*

SUSAN CACACE, JEFFREY A. COHEN, ALBERT LORENZOR, ROBERT K. HOLDMAN,

*Defendants-Appellees.*

————————

*On Appeal from the United States District Court for the Southern District of New York (White Plains)*

## JOINT APPENDIX
## VOLUME I OF III
## Pages A1 to A265

WESTCHESTER COUNTY
  ATTORNEY'S OFFICE
Thomas Gardiner
Assistant County Attorney
*Attorneys for Defendant-Appellee-*
  *Cross-Appellant*
148 Martine Avenue, Room 600
White Plains, New York 10601
914-995-3652

Alan Gura
GURA & POSSESSKY, PLLC
*Attorneys for Plaintiffs-Appellants-*
  *Cross-Appellees*
101 North Columbus Street, Suite 405
Alexandria, Virginia 22314
703-835-9085

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL OF THE
  STATE OF NEW YORK
Simon Heller
Assistant Solicitor General
*Attorneys for Defendants-Appellees*
120 Broadway
New York, New York 10271
212-416-8025

JOINT APPENDIX

TABLE OF CONTENTS

<u>Volume I</u>:

District Court Docket Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

First Amended Complaint [18] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Motion to Dismiss by Individual Defendants [30] . . . . . . . . . . . . . . . 27

Motion to Dismiss by County of Westchester [33] . . . . . . . . . . . . . . . 29

Rotini Affidavit in Support of Motion to Dismiss [33-1] . . . . . . . . . . . 30
    Exhibit A, Cacase Decision re: Kachalsky Application . . . . . . . . 32
    Exhibit B, Cohen Decision re: Nikolov Application . . . . . . . . . . 35
    Exhibit C, Lorenzo Decision re: Detmer Application . . . . . . . . . 38
    Exhibit D, Holdman Decision re: Nance Application . . . . . . . . . 40
    Exhibit E, Holdman Decision re: Marcucci-Nance Application . 45

Tomari Declaration re: State Defendants' Motion to Dismiss [34] . . . 51
    Exhibit 2, Tomari Letter to Court, 11/5/2010 . . . . . . . . . . . . . . 54
    Exhibit 3, Rotini Letter to Court, 11/5/2010 . . . . . . . . . . . . . . . 57
    Exhibit 4, Gura Letter to Court, 11/5/2010 . . . . . . . . . . . . . . . . 60
    Exhibit 5, Tomari Letter to Court #2, 11/5/2010 . . . . . . . . . . . . 64
    Exhibit 6, Endorsed Letter, 11/8/2010 . . . . . . . . . . . . . . . . . . . . . 68

Plaintiffs' Motion for Summary Judgment [39] . . . . . . . . . . . . . . . . . . 72
    Alan Kachalsky Declaration [39-9] . . . . . . . . . . . . . . . . . . . . . . . 74
    Anna Marcucci-Nance Declaration [39-10] . . . . . . . . . . . . . . . . 76
    Eric Detmer Declaration [39-11] . . . . . . . . . . . . . . . . . . . . . . . . 78
    Christina Nikolov Declaration [39-12] . . . . . . . . . . . . . . . . . . . 80
    Johnnie Nance Declaration [39-13] . . . . . . . . . . . . . . . . . . . . . . 82
    Julianne Versnel Declaration [39-14] . . . . . . . . . . . . . . . . . . . . . 84

Plaintiffs' 56.1 Separate Statement of Undisputed Facts [41] . . . . . . 86

State Defendants' Cross-Motion for Summary Judgment [42] . . . . . . 94

State Defendants' 56.1 Separate Statement of
    Undisputed Facts [44] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

Rotini Declaration Opposing Plaintiffs'
    Summary Judgment Motion [45] . . . . . . . . . . . . . . . . . . . . . . . . 132
    Exhibit A, Bruce Bellom Declaration . . . . . . . . . . . . . . . . . . . . 134
    Exhibit B, Blank Pistol Permit Forms . . . . . . . . . . . . . . . . . . . 139

Plaintiffs' 56.1 Statement Opposing Defendants'
    Summary Judgment Motion [47.1] . . . . . . . . . . . . . . . . . . . . . . 151

Westchester County's Response to Plaintiffs' 56.1 Statement [48] . . 193

Tomari Declaration in Support of State Defendants'
    Summary Judgment Motion [49] . . . . . . . . . . . . . . . . . . . . . . . . 205
    Exhibit F, Kachalsky Investigative File [49-6] . . . . . . . . . . . . . 210
    Exhibit H, Detmer Investigative File [49-8]* . . . . . . . . . . . . . . 248

_____

Volume II:

Additional Exhibits to Tomari Declaration in
    Support of Summary Judgment
    Exhibit G, Nikolov Investigative File [49-7] . . . . . . . . . . . . . . 266
    Exhibit I, Nance Investigative File [49-9]* . . . . . . . . . . . . . . . . 343
    Exhibit J, Marcucci-Nance Investigative File [49-10]* . . . . . . . 380
    Exhibit L, Kachalsky Article 78 Petition [51-2]* . . . . . . . . . . . 413
    Exhibit M, Answer, Affirmation Opposing
        Article 78 Petition [51-3]* . . . . . . . . . . . . . . . . . . . . . . . . 428
    Exhibit N, Kachalsky Letter to Court of Appeals [51-4] . . . . . . 440

Philip Cook Declaration [52] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 446

Franklin Zimring Declaration [53] . . . . . . . . . . . . . . . . . . . . . . . . . 486

Susan Cacase Declaration [54] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 509

Jeffrey Cohen Declaration [55] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 512

Albert Lorenzo Declaration [56] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 514

Robert Holdman Declaration [57] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 517

David Roefaro Declaration [58] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 521

Stephanie Miner Declaration [59] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 524

Thomas Fazio Declaration [60] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 526

James Sherman Declaration [61] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 531

Andrew Lunetta Declaration [62] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 542

Bruce Bellom Declaration [63] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 549

Marge Cohen Declaration [64] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 554

Volume III:

Additional Exhibits to Tomari Declaration in
     Support of Summary Judgment
     Exhibit S1, Laws of New York, Chapter 195,
          §1897 (1911) [65-2] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 558
     Exhibit S2, New York Times article, 1911 [65-2] . . . . . . . . . . . 563
     Exhibit S3, New York Tribune article, 1911 [65-2] . . . . . . . . . . 566
     Exhibit S4, "Topics of the Time," 1911 [65-2] . . . . . . . . . . . . . 568
     Exhibit S5, New York Tribune Article, 1911 [65-2] . . . . . . . . 571
     Exhibit S6, New York Times Article, 1911 [65-2] . . . . . . . . . . . 573
     Exhibit S7, Laws of New York, Chapter 608,
          §1897 (1913) [65-2] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 576

Exhibit S8, Laws of New York, Chapter 297,
  §1897 (1921) [65-2] ............................... 581
Exhibit S9, 1962 Legislative Committee Report [65-3] ...... 586
Exhibit S10, 1963 Legislative Committee Report [65-3] ..... 616
Exhibit S11, 1963 Legislative Annual Report [65-3] ........ 622
Exhibit S12, Laws of New York, Chapter 136,
  §1903 (1963) [66-1] .............................. 627
Exhibit S13, 1965 Legislative Committee Report [66-1] ..... 648
Exhibit S14, 1987 New York Senate Debate
  on Senate Bill 3409 [66-2] ......................... 682

Notice of Appeal [82] ....................................... 719

Amended Notice of Appeal [83] ............................... 721

Notice of Appeal [85] ....................................... 724

*Duplicative material in this exhibit redacted.

# U.S. District Court
# Southern District of New York (White Plains)
# CIVIL DOCKET FOR CASE #: 7:10-cv-05413-CS

Kachalsky et al v. Cacace et al                    Date Filed: 07/15/2010
Assigned to: Judge Cathy Seibel                    Date Terminated: 09/07/2011
Cause: 42:1983 Civil Rights Act                    Jury Demand: Plaintiff
                                                   Nature of Suit: 950 Constitutional -
                                                   State Statute
                                                   Jurisdiction: Federal Question

**Plaintiff**

**Alan Kachalsky**                    represented by **Vincent Gelardi**
                                      Gelardi & Randazzo LLP
                                      800 Westchester Ave.
                                      SUITE S-608
                                      Rye Brooke, NY 10573
                                      (914)-251-0603
                                      Fax: (914)-253-0909
                                      Email: vg@vincentgelardi.com
                                      *LEAD ATTORNEY*
                                      *ATTORNEY TO BE NOTICED*

                                      **Alan Gura**
                                      Gura & Possessky, PLLC
                                      101 N. Columbus Street, Suite 405
                                      Alexandria, VA 22314
                                      (703) 835-9085
                                      Fax: (703) 997-7665
                                      Email: alan@gurapossessky.com
                                      *PRO HAC VICE*
                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christina Nikolov**                 represented by **Vincent Gelardi**
                                      (See above for address)
                                      *LEAD ATTORNEY*
                                      *ATTORNEY TO BE NOTICED*

                                      **Alan Gura**
                                      (See above for address)
                                      *PRO HAC VICE*
                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Second Amendment Foundation, Inc.**  represented by **Vincent Gelardi**

APPX. 1

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan Gura**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Johnnie Nance**                    represented by **Alan Gura**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anna Marcucci-Nance**              represented by **Alan Gura**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eric Detmer**                      represented by **Alan Gura**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Susan Cacace**                     represented by **Anthony John Tomari**
Office of the Attorney General, New
York State
120 Broadway
New York, NY 10271
(212) 416-8553
Fax: (212) 416-6075
Email: anthony.tomari@oag.state.ny.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monica Anne Connell**
New York State Office of the Attorney
General (24th Floor)
120 Broadway, 24th Floor
New York, NY 10271
212-416-8965
Fax: 212-416-6009
Email:

Monica.Connell@oag.state.ny.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeffrey A. Cohen**                      represented by **Anthony John Tomari**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

                                          **Monica Anne Connell**
                                          (See above for address)
                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**County of Westchester**                 represented by **Melissa-Jean Rotini**
                                          Westchester County Attorney's Office
                                          148 Martine Avenue. Room 600
                                          White Plains, NY 10601
                                          (914) 995-3630
                                          Fax: (914) 995-3132
                                          Email: mjr1@westchestergov.com
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

                                          **Thomas G. Gardiner**
                                          Westchester County Attorney
                                          148 Martine Avenue, Room 600
                                          White Plains, NY 10601
                                          (914) 995-3652
                                          Fax: (914) 995-4581
                                          Email: tgg2@westchestergov.com
                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Albert Lorenzor**                       represented by **Anthony John Tomari**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Robert K. Holdman**                     represented by **Anthony John Tomari**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Interested Party**

**Brady Center to Prevent Gun**           represented by **Kevin Timothy Baumann**
**Violence**                              Hogan Lovells US LLP (nyc)
                                          875 Third Avenue
                                          New York, NY 10022

APPX. 3

(212)-918-3081
Fax: (212)-918-3100
Email:
kevin.baumann@hoganlovells.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Academics for the Second**          represented by **Lloyd M. Eisenberg**
**Amendment**                          Reiss. Eisenpresss and Sheppe LLP
                                       425 Madison Avenue
                                       NY, NY 10017
                                       (516) 221-3700
                                       Fax: (516)-977-3337
                                       Email:
                                       leisenberg@eisenbergearton.com
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

**Interested Party**

**LI Second Amendment Preservation**   represented by **Lloyd M. Eisenberg**
**Assocation**                         (See above for address)
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

V.

**Amicus**

**WESTCHESTER COUNTY**                 represented by **Anthony George Piscionere**
**FIREARMS OWNERS**                    Piscionere & Nemarow
**ASSOCIATION, INC.**                  363 Boston Post Road
                                       Rye, NY 10580
                                       (914)-835-6900
                                       Fax: (914)-835-6931
                                       Email: tony@pnesqs.net
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/15/2010 | 1 | COMPLAINT against Susan Cacace, Jeffrey A. Cohen, County of Westchester. (Filing Fee $ 350.00, Receipt Number 903168)Document filed by Alan Kachalsky, Christina Nikolov, Second Amendment Foundation, Inc.. (mml) (Entered: 07/16/2010) |
| 07/15/2010 | | SUMMONS ISSUED as to Susan Cacace, Jeffrey A. Cohen, County of Westchester. (mml) (Entered: 07/16/2010) |
| 07/15/2010 | | Case Designated ECF. (mml) (Entered: 07/16/2010) |

| 07/15/2010 | | Magistrate Judge GEORGE A. YANTHIS is so designated. (mml) (Entered: 07/16/2010) |
|---|---|---|
| 07/15/2010 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Alan Kachalsky, Christina Nikolov, Second Amendment Foundation, Inc..(mml) (Entered: 07/16/2010) |
| 07/20/2010 | 6 | MOTION for Alan Gura to Appear Pro Hac Vice. Document filed by Alan Kachalsky, Christina Nikolov, Second Amendment Foundation, Inc.. (Attachments: # 1 Affidavit)(fk) (Entered: 07/21/2010) |
| 07/21/2010 | 3 | AFFIDAVIT OF SERVICE of Summons and Complaint. Susan Cacace served on 7/16/2010, answer due 8/6/2010. Service was accepted by Paula DeGaetano. Document filed by Alan Kachalsky; Christina Nikolov; Second Amendment Foundation. Inc.. (Gelardi, Vincent) (Entered: 07/21/2010) |
| 07/21/2010 | 4 | AFFIDAVIT OF SERVICE of Summons and Complaint. Jeffrey A. Cohen served on 7/16/2010, answer due 8/6/2010. Service was accepted by Paula Degaetano. Document filed by Alan Kachalsky; Christina Nikolov; Second Amendment Foundation, Inc.. (Gelardi, Vincent) (Entered: 07/21/2010) |
| 07/21/2010 | 5 | AFFIDAVIT OF SERVICE of Summons and Complaint. County of Westchester served on 7/16/2010, answer due 8/6/2010. Service was accepted by Donna Dickson. Document filed by Alan Kachalsky; Christina Nikolov; Second Amendment Foundation, Inc.. (Gelardi, Vincent) (Entered: 07/21/2010) |
| 07/22/2010 | 7 | ORDER granting 6 Motion for Alan Gura to Appear Pro Hac Vice. (Signed by Judge Cathy Seibel on 7/22/10) (fk) (Entered: 07/22/2010) |
| 08/06/2010 | 8 | NOTICE OF APPEARANCE by Anthony John Tomari on behalf of Susan Cacace, Jeffrey A. Cohen (Tomari, Anthony) (Entered: 08/06/2010) |
| 08/18/2010 | 9 | ENDORSED LETTER addressed to Judge Cahty Seibel from Anthony Tomari dated 8/13/10 re: Request for a pre-motion conference. ENDORSEMENT: Pre-motion conference to be held on September 7, 2010 at 2:15 pm regarding County's and Individuals' proposed motions. So Ordered. (Signed by Judge Cathy Seibel on 8/17/10) (fk) (Entered: 08/18/2010) |
| 08/18/2010 | | Set/Reset Hearings: Pre-Motion Conference set for 9/7/2010 at 02:15 PM before Judge Cathy Seibel. (fk) (Entered: 08/18/2010) |
| 08/18/2010 | 10 | NOTICE OF APPEARANCE by Melissa-Jean Rotini on behalf of County of Westchester (Rotini, Melissa-Jean) (Entered: 08/18/2010) |
| 08/18/2010 | 11 | LETTER addressed to Judge Cathy Seibel from Alan Gura dated 8/16/2010 re:...This letter is submitted pursuant to Your Honor's Individual Practices to respectfully request the scheduling of two motions: (1)a motion to add parties, and (2) a cross motion for summary judgment.Plaintiff's will respond separately to Defendants' letters seeking to schedule motion to dismiss... Document filed by Alan Kachalsky, Christina Nikolov, Second Amendment Foundation, Inc..(rj) (Entered: 08/19/2010) |
| 08/18/2010 | 12 | LETTER addressed to Judge Cathy Seibel from Melissa Jean Rotini dated |

| | | |
|---|---|---|
| | | 8/16/2010 re:...It is respectfully requested that the Court grant the County leave to file a Motion to Dismiss the Complaint in the above referenced matter. In the event that Your Honor determines that a pre motion conference is warranted prior to the County making its motion to dismiss, the County is available at you convenience... Document filed by County of Westchester.(rj) (Entered: 08/19/2010) |
| 09/07/2010 | | Minute Entry for proceedings held before Judge Cathy Seibel: Defendant has leave to serve motion to dismiss by 10/22/10; Opposition and cross motion for summary judgment by 11/12/10; reply to motion to dismiss and opposition on cross motion by 12/13/10; reply on motion for summary judgment by 1/7/11. See transcript.Pre-Motion Conference held on 9/7/2010. (Court Reporter Sue Ghorayeb) (rj) (Entered: 09/10/2010) |
| 09/07/2010 | | Set/Reset Deadlines: Motions due by 10/22/2010. Responses due by 11/12/2010 Replies due by 12/13/2010. (rj) (Entered: 09/10/2010) |
| 10/13/2010 | 13 | ENDORSED LETTER addressed to Judge Cathy Seibel from Anthony J. Tomari dated 10/8/2010 re: This letter is submitted pursuant to your Individual Practices 1(a) and (e) to request a revision to the briefing schedule as set by this Court in its Minute Entry on September 10,2010... ENDORSEMENT: APPLICATION GRANTED. SO ORDERED (Signed by Judge Cathy Seibel on 10/8/2010) (rj) (Entered: 10/13/2010) |
| 10/13/2010 | | Set/Reset Deadlines: Amended Pleadings due by 11/5/2010. Motions due by 11/5/2010. Responses due by 11/15/2010 Replies due by 12/13/2010. (rj) (Entered: 10/13/2010) |
| 10/29/2010 | 14 | ENDORSED LETTER addressed to Judge Cathy Seibel from Anthony J. Tomari dated 10/28/2010 re:...This letter is submitted pursuant to your individual practices 1(A) and 2(b)(i) to request permission to exceed the 25 page limit for State Defendants' legal memorandum of in support of their motion.... ENDORSEMENT: Application Granted. Plaintiff are permitted to file a similarly sized brief if they feel it necessary. SO ORDERED (Signed by Judge Cathy Seibel on 10/28/2010) (rj) (Entered: 10/29/2010) |
| 11/04/2010 | 15 | FILING ERROR - ELECTRONIC FILING FOR NON-ECF DOCUMENT - NOTICE of First Amended Complaint re: 13 Endorsed Letter,. Document filed by Alan Kachalsky, Christina Nikolov, Second Amendment Foundation, Inc., Johnnie Nance, Anna Marcucci-Nance, Eric Detmer. (Gura, Alan) Modified on 11/8/2010 (fk). (Entered: 11/04/2010) |
| 11/05/2010 | 16 | NOTICE OF APPEARANCE by Monica Anne Connell on behalf of Susan Cacace, Jeffrey A. Cohen (Connell, Monica) (Entered: 11/05/2010) |
| 11/08/2010 | 17 | ENDORSED LETTER addressed to Judge Cathy Seibel from Alan Gura dated 11/5/2010 re:...It is hoped that the Attorney General's Office would agree to accept service and appear for the new defendants, as there is no need to place them on duplicate tracks. If the Attorney General insists on service of a summons for the new defendant licensing officers, it should not be heard to come back for a fourth time and ask again for a briefing modification. Without acceptance of service by the Attorney General for the new defendants, Plaintiffs cannot agree to any extension beyond Rule 12's twenty one day |

| | | |
|---|---|---|
| | | responsive period.... ENDORSEMENT: The Court understood the proposal in Mr. Tomari's 10/8/10 letter as Mr. Gura doe-i.e., re parties contemplated an amended complaint concurrent with the motion to dismiss. The Court also does not see why the representation of the new defendants cannot be formalized quickly. The original defendants shall file their motion to dismiss on or before 11/9/10. Once the new defendants are represented, they may join the original defendant's arguments by submitting a letter stating the same, and may add any additional arguments unique to them and the amended complaint. This shall be done by 12/6/10. Plaintiffs may oppose the original defendants' motion on whatever date they would like, when they should provide to me by letter, and the same is true for opposition to the new defendants submission if it contains new arguments. Defendants to reply 3 weeks thereafter as for Plaintiffs reply on cross motion 2 weeks thereafter. Plaintiffs counsel should be mindful, in deciding when to oppose. That the Court has a long queue of motions and is unlikely to reach this case for some time in any event. SO ORDERED (Signed by Judge Cathy Seibel on 11/5/2010) (rj) (Entered: 11/08/2010) |
| 11/08/2010 | | Set/Reset Deadlines: Amended Pleadings due by 12/6/2010. Motions due by 11/9/2010. (rj) (Entered: 11/08/2010) |
| 11/08/2010 | 18 | AMENDED COMPLAINT amending 1 Complaint against Susan Cacace, Jeffrey A. Cohen, County of Westchester, Albert Lorenzor, Robert K. Holdman with JURY DEMAND. Document filed by Alan Kachalsky, Johnnie Nance, Christina Nikolov, Anna Marcucci-Nance, Eric Detmer, Second Amendment Foundation, Inc.. Related document: 1 Complaint filed by Second Amendment Foundation, Inc., Alan Kachalsky, Christina Nikolov.(lk) (Entered: 11/08/2010) |
| 11/08/2010 | | AMENDED SUMMONS ISSUED as to Susan Cacace, Jeffrey A. Cohen, County of Westchester, Robert K. Holdman, Albert Lorenzor. (lk) (Entered: 11/08/2010) |
| 11/17/2010 | 19 | ENDORSED LETTER addressed to Judge Cathy Seibel from Alan Gura dated 11/12/2010 re: Pursuant to the Court's order of November 8, Plaintiffs will be serving their opposition to the motions to dismiss, and their motion for summary judgment, on January 5, 2010. Accordingly, Defendants' oppositions to the motion for summary judgment and replies on their motions to dismiss would be served three weeks later, on January 26, and Plaintiffs' final reply, and bundling filing date, would be February 9.... ENDORSEMENT: Schedule approved. SO ORDERED. (Signed by Judge Cathy Seibel on 11/16/2010) (mml) (Entered: 11/17/2010) |
| 11/17/2010 | | Set/Reset Deadlines: Motions due by 1/5/2011. Responses due by 1/26/2011 Replies due by 2/9/2011. (mml) (Entered: 11/17/2010) |
| 11/17/2010 | 20 | ENDORSED LETTER addressed to Judge Cathy Seibel from Anthony J. Tomari dated 11/15/2010 re: This letter is submitted in response to the November 12,2010, letter from counsel for Plaintiffs proposing a briefing schedule in accordance with this court's endorsement order dated November 5,2010... ENDORSEMENT: APPLICATION DENIED. SO ORDERED (Signed by Judge Cathy Seibel on 11/16/2010) (rj) (Entered: 11/17/2010) |
| | | |

| | | |
|---|---|---|
| 11/18/2010 | 21 | MOTION to File Amicus Brief. Document filed by Brady Center to Prevent Gun Violence. (Attachments: # 1 Ex. A (Brief of Amicus Curiae Brady Center to Prevent Gun Violence)(Baumann, Kevin) (Entered: 11/18/2010) |
| 11/22/2010 | 22 | RESPONSE to Motion re: 21 MOTION to File Amicus Brief.. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Gura, Alan) (Entered: 11/22/2010) |
| 11/22/2010 | 23 | REPLY to Response to Motion re: 21 MOTION to File Amicus Brief.. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 11/22/2010) |
| 11/22/2010 | 24 | MOTION to file an Amended Brief of Amicus Curiae. Document filed by Brady Center to Prevent Gun Violence. (Attachments: # 1 Ex. A (Amended Brief of Amicus Curiae Brady Center to Prevent Gun Violence))(Baumann, Kevin) (Entered: 11/22/2010) |
| 11/22/2010 | 25 | RESPONSE to Motion re: 24 MOTION to file an Amended Brief of Amicus Curiae., 21 MOTION to File Amicus Brief.. Document filed by County of Westchester. (Rotini, Melissa-Jean) (Entered: 11/22/2010) |
| 11/24/2010 | 26 | SUMMONS RETURNED EXECUTED. Robert K. Holdman served on 11/22/2010, answer due 12/13/2010; Albert Lorenzor served on 11/8/2010, answer due 11/29/2010. Service was accepted by Lisa Girandola on behalf of Lorenzo & Karl Lawless (on behalf of Holdman). Document filed by Alan Kachalsky. (Gelardi, Vincent) (Entered: 11/24/2010) |
| 12/13/2010 | 27 | ORDER granting 24 Motion re: 24 MOTION to file an Amended Brief of Amicus Curiae....ENDORSED. Application granted. The Clerk is to terminate Doc. 24 (Doc. 21 should also be terminated as it is moot in light of the instant application)..SO ORDERED. (Signed by Judge Cathy Seibel on 12/9/2010) (jma) (Entered: 12/13/2010) |
| 01/25/2011 | | Set/Reset Deadlines: Plaintiff's Reply due by: 2/9/2011, Defendant's reply due by: 2/23/2011. (jty) (Entered: 01/26/2011) |
| 01/25/2011 | 29 | ENDORSED LETTER addressed to Judge Cathy Seibel from Alan Gura dated 1/24/2011 re: Plaintiffs would respectfully reserve any request for additional time to respond to the new motion for summary judgment once it has been received and evaluated. ENDORSEMENT: The request is reasonable and the Court expects Defendants will not have a problem if a reasonable extension is requested. (Signed by Judge Cathy Seibel on 1/24/2011) (mml) (Entered: 01/28/2011) |
| 01/26/2011 | 28 | ENDORSED LETTER addressed to Judge Cathey Seibel from Anthony J. Tomari dated 1/21/2011...Under the State Defendants' proposed amendment to the briefing schedule, State Defendants will still serve their motion-to-dismiss reply memorandum and their opposition to plaintiffs' motion for summary judgment, on January 26, 2011, the present date, and on that same date will alsoserve their papers supporting their cross- motion for summary judgment. Plaintiffs would then have until February 9, the date already in place, to serve their reply in further support of their motion for summary judgment as well as |

| | | |
|---|---|---|
| | | their opposition to State Defendants' cross-motion for summary judgment. Thereafter, in the only change to the current briefing schedule, StateDefendants will have two weeks, or until February 23,2011 to serve their reply memorandum on their cross-motion for summary judgment, immediately following which, all parties will electronically file all their own motion papers. Thus the only alteration to the current schedule would be a two week time period following service of plaintiffs' opposition to allow the State Defendants' to submit their reply memorandum in further support of their cross-motion for summary judgment.In addition, State Defendants request, pursuant to your individual practice 2 (B)(i), and in accordance with your Order of October 28,2010, that they be allowed to submit a reply brief in further support of their motion to dismiss of up to fifteen (1S)'pages in length, and be allowed up to fifty (50) pages for their memorandum of law which will be both in support of their motion for summary judgment) as well as in opposition to plaintiffs mution for summary judgment.I tried to reach Plaintiffs' counsel today to ascertain their consent but was unable. Defendant County of Westchester consents to all the requests herein. Thank you for your attention to this matter. All parties will receive a copy of this letter simultaneously by facsimile transmission. ENDORSEMENT: Schedule approved on consent. Reply may be 15 pages. Memorandum in opposition to plaintiff's MSJ ￫ in support of the state defendants' MSJ may total 40 page. So Ordered. (Signed by Judge Cathy Seibel on 1/24/2011) (jty) (Entered: 01/26/2011) |
| 02/23/2011 | 30 | MOTION to Dismiss *Notice of Motion to Dismiss*. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor.(Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 31 | AFFIRMATION of Anthony J. Tomari in Support re: 30 MOTION to Dismiss *Notice of Motion to Dismiss.*. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 32 | MEMORANDUM OF LAW in Support re: 30 MOTION to Dismiss *Notice of Motion to Dismiss.*. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 33 | MOTION to Dismiss. Document filed by County of Westchester. (Attachments: # 1 Declaration, # 2 Memorandum of Law)(Rotini, Melissa-Jean) (Entered: 02/23/2011) |
| 02/23/2011 | 34 | DECLARATION of Anthony J. Tomari in Support re: 30 MOTION to Dismiss *Notice of Motion to Dismiss.*. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 35 | SUPPLEMENTAL MEMORANDUM OF LAW in Support re: 30 MOTION to Dismiss *Notice of Motion to Dismiss. Re: First Amended Complaint.* Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 36 | MEMORANDUM OF LAW in Opposition re: 30 MOTION to Dismiss *Notice* |

| | | |
|---|---|---|
| | | of *Motion to Dismiss.*, 33 MOTION to Dismiss.. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Gura, Alan) (Entered: 02/23/2011) |
| 02/23/2011 | 37 | REPLY MEMORANDUM OF LAW in Support re: 30 MOTION to Dismiss *Notice of Motion to Dismiss.*. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 38 | REPLY MEMORANDUM OF LAW in Support re: 33 MOTION to Dismiss.. Document filed by County of Westchester. (Rotini, Melissa-Jean) (Entered: 02/23/2011) |
| 02/23/2011 | 39 | MOTION for Summary Judgment. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Declaration of Alan Kachalsky, # 10 Declaration of Anna Marcucci-Nance, # 11 Declaration of Eric Detmer, # 12 Declaration of Christina Nikolov, # 13 Declaration of Johnnie Nance, # 14 Declaration of Juliann Versnel)(Gura, Alan) (Entered: 02/23/2011) |
| 02/23/2011 | 40 | MEMORANDUM OF LAW in Support re: 39 MOTION for Summary Judgment.. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Gura, Alan) (Entered: 02/23/2011) |
| 02/23/2011 | 41 | DECLARATION of Separate Statement in Support re: 39 MOTION for Summary Judgment.. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Gura, Alan) (Entered: 02/23/2011) |
| 02/23/2011 | 42 | CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor.(Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 43 | MEMORANDUM OF LAW in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -. *and In Opposition to Plaintiffs' Motion for Summary Judgment.* Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 44 | RULE 56.1 STATEMENT. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 45 | DECLARATION of Rotini in Opposition re: 39 MOTION for Summary Judgment.. Document filed by County of Westchester. (Rotini, Melissa-Jean) (Entered: 02/23/2011) |
| 02/23/2011 | 46 | MEMORANDUM OF LAW in Opposition re: 39 MOTION for Summary Judgment.. Document filed by County of Westchester. (Rotini, Melissa-Jean) |

| | | (Entered: 02/23/2011) |
|---|---|---|
| 02/23/2011 | 47 | MEMORANDUM OF LAW in Opposition re: 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -. *and in Reply to Opposition to Plaintiffs' Summary Judgment Motion*. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Attachments: # 1 separate statement of disputed facts)(Gura, Alan) (Entered: 02/23/2011) |
| 02/23/2011 | 48 | RESPONSE in Opposition re: 39 MOTION for Summary Judgment. *Response to Plaintiffs' Rule 56.1 Statement*. Document filed by County of Westchester. (Rotini, Melissa-Jean) (Entered: 02/23/2011) |
| 02/23/2011 | 49 | DECLARATION of Anthony J Tomari in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -.. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 50 | FIRST MOTION to File Amicus Brief. Document filed by WESTCHESTER COUNTY FIREARMS OWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Amicus Brief)(Piscionere, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 51 | DECLARATION of Anthony J. Tomari in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -.. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Attachments: # 1 Exhibit K, # 2 Exhibit L, # 3 Exhibit M, # 4 Exhibit N, # 5 Exhibit O, # 6 Exhibit P, # 7 Exhibit Q)(Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 52 | DECLARATION of Philip Cook in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -.. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 53 | DECLARATION of Franklin Zimring in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -.. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 54 | DECLARATION of Hon. Susan Cacace in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -.. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 55 | DECLARATION of Hon. Jeffrey A. Cohen in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -.. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 56 | DECLARATION of Hon. Albert Lorenzo in Support re: 39 MOTION for |

| | | |
|---|---|---|
| | | Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 57 | DECLARATION of Hon. Robert K. Holdman in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 58 | DECLARATION of Hon. David R. Roefaro in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 59 | DECLARATION of Hon. Stephanie A. Miner in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 60 | DECLARATION of Thomas L. Fazio in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 61 | DECLARATION of James Sherman in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 62 | DECLARATION of Andrew Lunetta in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 63 | DECLARATION of Bruce Bellom in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 64 | DECLARATION of Marge Cohen in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 65 | DECLARATION of Anthony J. Tomari in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Attachments: # 1 Exhibit R, # 2 Exhibit S (1) - (7), # 3 Exhibit S (8) - (11))(Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 66 | DECLARATION of Anthony J. Tomari in Support re: 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -Notice of Cross-Motion -... Document filed by Susan Cacace, Jeffrey A. Cohen, Robert |

| | | |
|---|---|---|
| | | K. Holdman, Albert Lorenzor. (Attachments: # 1 Exhibit S (12) - (13), # 2 Exhibit S (14))(Tomari, Anthony) (Entered: 02/23/2011) |
| 02/23/2011 | 67 | REPLY MEMORANDUM OF LAW in Support re: 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -.. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 02/23/2011) |
| 02/24/2011 | 68 | MOTION to File Amicus Brief. Document filed by Academics for the Second Amendment, LI Second Amendment Preservation Assocation. (Attachments: # 1 Exhibit Proposed Amicus Brief)(Eisenberg, Lloyd) (Entered: 02/24/2011) |
| 02/24/2011 | 69 | ENDORSED LETTER addressed to Judge Cathy Seibel from Anthony G. Piscionere dated 2/24/2011 re:...This office was under the impression that yesterday was the final date to file any such amicus brief. To the extent that our consent might be considered relevant by the Court, we consent to the State Defendants and Country of Westchester's request for fourteen (14) days, should Your Honor grant leave for such filings, to respond to our amicus brief. ENDORSEMENT: State Defendants' and County of Westchesters' request for 14 day extension is hereby granted.SO ORDERED (Signed by Judge Cathy Seibel on 2/24/2011) (rj) (Entered: 02/25/2011) |
| 02/24/2011 | 70 | Letter addressed to Judge Cathy Seibel from Anthony J. Tomari dated 2/23/2011 re:...The proposed amici have not explained the reason for the extreme lateness of their filings, or the lack of notice. The timing of the applications has denied the State Defendants any opportunity to respond to the factual representations or legal arguments asserted therein. Regardless, in lieu of opposing such applications, in accordance with the time frame established in Rule 6.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, State Defendants request fourteen (14) days from the date this Court grants leave for such filings, to respond to new matters in those briefs. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor.(rj) (Entered: 02/25/2011) |
| 02/24/2011 | 71 | Letter addressed to Judge Cathy Seibel from Melissa Jean Rotini dated 2/24/2011 re:...The County hereby joins in the State Defendants' request for time to respond to the amicus should Your Honor grant leave to file the Academics for the Second Amendment, LI Second Amendment Preservation Foundation Association, and the Westchester County Firearms Association. Document filed by County of Westchester.(rj) (Entered: 02/25/2011) |
| 03/10/2011 | 72 | SUPPLEMENTAL MEMORANDUM OF LAW in Support re: 33 MOTION to Dismiss. *and in response to amicus briefs filed at docket nos.: 50 and 68.* Document filed by County of Westchester. (Rotini, Melissa-Jean) (Entered: 03/10/2011) |
| 03/10/2011 | 73 | RESPONSE in Support re: 42 CROSS MOTION for Summary Judgment - *Notice of Cross-Motion* -. -*State Defendants Response to Amici Briefs*-. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Tomari, Anthony) (Entered: 03/10/2011) |
| 03/21/2011 | 74 | NOTICE of Newly Decided Authority re: 30 MOTION to Dismiss *Notice of Motion to Dismiss*.. Document filed by Eric Detmer, Alan Kachalsky, Anna |

| | | Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Gura, Alan) (Entered: 03/21/2011) |
|---|---|---|
| 04/15/2011 | 75 | NOTICE of Newly Decided Authority re: 30 MOTION to Dismiss *Notice of Motion to Dismiss.*, 33 MOTION to Dismiss.. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Attachments: # 1 Exhibit A)(Gura, Alan)(Entered: 04/15/2011) |
| 05/02/2011 | 76 | Letter addressed to Judge Cathy Seibel from Anthony Tomari dated 4/29/2011 re: Notification of a decision from the NYS Appellate Division. Document filed by Susan Cacace, Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor.(fk) (Entered: 05/02/2011) |
| 07/29/2011 | 77 | NOTICE of newly decided authority re: 30 MOTION to Dismiss *Notice of Motion to Dismiss.*, 33 MOTION to Dismiss., 39 MOTION for Summary Judgment., 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -.. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc.. (Gura, Alan) (Entered: 07/29/2011) |
| 08/16/2011 | 78 | SUPPLEMENTAL MEMORANDUM OF LAW in Support re: 30 MOTION to Dismiss *Notice of Motion to Dismiss.*, 42 CROSS MOTION for Summary Judgment -*Notice of Cross-Motion* -. *in Response to Plaintiffs' Notice of Newly Decided Authority*. Document filed by Susan Cacace. Jeffrey A. Cohen, Robert K. Holdman, Albert Lorenzor. (Connell, Monica) (Entered: 08/16/2011) |
| 08/17/2011 | 79 | ORDER: Third parties Westchester County Firearm Owners Association, Inc., Academics for the Second Amendment, and LI Second Amendment Preservation Association have applied to the Court to file briefs as amici curiae in the above-captioned case. Given the Court's broad discretion in deciding whether to accept amicus briefs, see City of NY v. United States, 971 F. Supp. 789, 791 n.3 (S.D.N.Y. 1997), I hereby GRANT the instant motions. The Clerk of Court is respectfully directed to terminate Docs. 50 and 68. (Signed by Judge Cathy Seibel on 8/16/2011) (lnl) (Entered: 08/17/2011) |
| 09/02/2011 | 80 | OPINION AND ORDER: For the reasons stated above, I hereby DENY the State Defendants' and the County's Motions to Dismiss, DENY Plaintiffs' Motion for Summary Judgment, and GRANT the State Defendants' Cross-Motion for Summary Judgment. Although the County has not cross-moved for summary judgment, I hereby GRANT it summary judgment sua sponte.38 The Clerk of the Court is respectfully directed to terminate the pending motions, (Docs. 30, 33, 39,42), and close the case. (Signed by Judge Cathy Seibel on 9/2/2011) (fk) (Entered: 09/06/2011) |
| 09/06/2011 | | Transmission to Judgments and Orders Clerk. Transmitted re: 80 Opinion and Order to the Judgments and Orders Clerk. (fk) (Entered: 09/06/2011) |
| 09/07/2011 | 81 | JUDGMENT - It is, ORDERED, ADJUDGED AND DECREED: that the Court denies the State Defendants and the Countys Motions to Dismiss, denies Plaintiffs Motion for Summary, and grants the defendants Cross-Motion for Summary Judgment, and although the County has not moved for summary judgment, the Court also grants the County Summary Judgment sua sponte. |

| | | Accordingly, Judgment is entered in favor of defendants, and the case is hereby closed. (Signed by Clerk of Court Ruby Krajick on 09/07/2011) (dcr) (Entered: 09/07/2011) |
|---|---|---|
| 09/07/2011 | 82 | NOTICE OF APPEAL. Document filed by Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc. Filing fee $ 455.00, receipt number 7001434. (rj) (Entered: 09/08/2011) |
| 09/07/2011 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 82 Notice of Appeal. (rj) (Entered: 09/08/2011) |
| 09/07/2011 | | Transmission of Notice of Appeal to the District Judge re: 82 Notice of Appeal. (rj) (Entered: 09/08/2011) |
| 09/15/2011 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files were transmitted to the U.S. Court of Appeals. (cda) (Entered: 09/15/2011) |
| 09/16/2011 | 83 | AMENDED NOTICE OF APPEAL re: 82 Notice of Appeal, 81 Judgment. Document filed by Eric Detmer, Alan Kachalsky, Anna Marcucci-Nance, Johnnie Nance, Christina Nikolov, Second Amendment Foundation, Inc. (fk) (Entered: 09/20/2011) |
| 09/20/2011 | | Transmission of Notice of Appeal to the District Judge re: 83 Amended Notice of Appeal. (fk) (Entered: 09/20/2011) |
| 09/22/2011 | 84 | NOTICE OF APPEARANCE by Thomas G. Gardiner on behalf of County of Westchester (Gardiner, Thomas) (Entered: 09/22/2011) |
| 09/22/2011 | 85 | NOTICE OF APPEAL from 81 Judgment. Document filed by County of Westchester. Filing fee $ 455.00, receipt number 465407001565. (rj) (Entered: 09/27/2011) |
| 09/22/2011 | | Transmission of Notice of Appeal to the District Judge re: 85 Notice of Appeal. (rj) (Entered: 09/27/2011) |
| 09/22/2011 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 85 Notice of Appeal. (rj) (Entered: 09/27/2011) |
| 09/28/2011 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files were transmitted to the U.S. Court of Appeals. (cda) (Entered: 09/28/2011) |
| 09/30/2011 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files were transmitted to the U.S. Court of Appeals. (cda) (Entered: 09/30/2011) |

*Parties added Summons dissues*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC DETMER, JOHNNIE NANCE, ANNA MARCUCCI-NANCE, and SECOND AMENDMENT FOUNDATION, INC., | : : : : | Case No. 10-CV-05413-CS **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | : : | |
| v. | : : | |
| SUSAN CACACE, JEFFREY A. COHEN, ALBERT LORENZO, ROBERT K. HOLDMAN, and COUNTY OF WESTCHESTER, | : : : | |
| Defendants. | : : | |

-------------------------------------------------------------------------X

## COMPLAINT

**COME NOW** the Plaintiffs, Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance, and Second Amendment Foundation, Inc., by and through undersigned counsel, and complain of the defendants as follows:

### THE PARTIES

1.      Plaintiff Alan Kachalsky is a natural person and a citizen of the United States and of the State of New York. Kachalsky resides in Westchester County.

2.      Plaintiff Christina Nikolov is a natural person and a citizen of the United States and of the State of New York. Nikolov resides in Westchester County.

3.      Plaintiff Eric Detmer is a natural person and a citizen of the United States and of the State of New York. Detmer resides in Westchester County.

4. Plaintiff Johnnie Nance is a natural person and a citizen of the United States and of the State of New York. Nance resides in Westchester County.

5. Plaintiff Anna Marcucci-Nance is a natural person and a citizen of the United States and of the State of New York. Marcucci-Nance resides in Westchester County.

6. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including Westchester County, New York. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of itself and its members.

7. Defendant Susan Cacace was at all relevant times a handgun carry permit licensing officer for defendant Westchester County. Defendant Cacace is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiff Kachalsky and plaintiff SAF's membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests. Defendant Cacace is sued in her capacity as licensing officer.

8 Defendant Jeffrey A. Cohen was at all relevant times a handgun carry permit licensing officer for defendant Westchester County. Defendant Cohen is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiff Nikolov and plaintiff SAF's

2

membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests. Defendant Cohen is sued in his capacity as licensing officer.

9.      Defendant Albert Lorenzo was at all relevant times a handgun carry permit licensing officer for defendant Westchester County. Defendant Lorenzo is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiff Detmer and plaintiff SAF's membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests. Defendant Lorenzo is sued in his capacity as licensing officer.

10.      Defendant Robert K. Holdman was at all relevant times a handgun carry permit licensing officer for defendant Westchester County. Defendant Holdman is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiffs Nance and Marcucci-Nance and plaintiff SAF's membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests. Defendant Holdman is sued in his capacity as licensing officer.

11.      Defendant County of Westchester is a governmental entity organized under the Constitution and laws of the State of New York, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County, by and through its Department of Public Safety, Pistol Licensing Unit, is responsible for executing and administering the laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against the individual plaintiffs and plaintiff SAF's membership, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs' interests.

3

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

13.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

14.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

15.     The Second Amendment guarantees individuals a fundamental right to carry functional handguns in non-sensitive public places for purposes of self-defense.

16.     The States and their units of local government are bound to respect Second Amendment rights by operation of the Fourteenth Amendment.

17.     The States retain the ability to regulate the manner of carrying handguns, prohibit the carrying of handguns in specific, narrowly defined sensitive places, prohibit the carrying of arms that are not within the scope of Second Amendment protection, and disqualify specific, particularly dangerous individuals from carrying handguns.

18.     The States may not completely ban the carrying of handguns for self-defense, deny individuals the right to carry handguns in non-sensitive places, deprive individuals of the right to carry handguns in an arbitrary and capricious manner, or impose regulations on the right to carry handguns that are inconsistent with the Second Amendment.

4

19.     New York Penal Code § 265.01(1) prohibits the possession of firearms. A violation of this provision constitutes "Criminal Possession of a Firearm in the Fourth Degree," a class A misdemeanor.

20.     New York Penal Code § 265.03(3) provides that possession of a loaded firearm outside one's home or place of business constitutes "Criminal Possession of a Firearm in the Second Degree," a class C felony.

21.     The prohibitions of sections 265.01(1) and 265.03(3) do not apply to the "[p]ossession of a pistol or revolver by a person to whom a license therefor has been issued as provided under section 400.00 or 400.01." New York Penal Code § 265.20.

22.     For most civilians who are not otherwise barred from possessing and carrying weapons, the only permit to carry handguns in public for self-defense is a permit "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof," pursuant to New York Penal Code § 400.00(2)(f).

23.     Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance, and the members and supporters of plaintiff SAF, would carry functional handguns in public for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun.

24.     Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, and Anna Marcucci-Nance,  are fully qualified to obtain a license to carry a handgun under New York Penal Code § 400.00(1), in that each (a) is over 21 years old, (b) of good moral character, (c) has never been convicted of a felony or serious crime, (d) has never been mentally ill or confined to any institution, (e) has not had a license revoked or been the subject of a family court

5

order, (f) has completed a firearms safety course, and (g) should not be denied a permit for any good cause.

25.     Defendants maintain a strict policy of denying handgun carry license applications where the applicants cannot affirmatively demonstrate a unique and personal need for self-defense distinguishable from that of the general public. Plaintiffs Kachalsky, Nikolov, Detmer, Nance, Marcucci-Nance, and the members and supporters of plaintiff SAF, cannot meet this standard as it is applied by the defendants.

26.     Plaintiff Alan Kachalsky applied for a handgun carry license pursuant to New York Penal Code § 400.00. Defendant Westchester County recommended that the permit be denied. On or about October 8, 2008, Defendant Cacace denied Kachalsky's permit application, offering that Kachalsky "has not stated any facts which would demonstrate a need for self protection distinguishable from that of the general public." Accordingly, Defendant Cacace found Kachalsky did not satisfy the requirement of New York Penal Code § 400.00(2)(f) that "proper cause" be shown for issuance of the permit.

27.     Plaintiff Kachalsky appealed the permit denial to the Appellate Division of the Supreme Court of the State of New York, pursuant to Article 78 of the New York Code of Civil Practice Law and Rules. On September 8, 2009, the Appellate Division held that Defendant Cacace's "determination was not arbitrary or capricious and should not be disturbed."

28.     On February 16, 2010, the New York Court of Appeals dismissed Kachalsky's appeal on the grounds that it presented no substantial constitutional question. At the time of this decision, it was not a holding of any federal appellate circuit that the States were bound to respect Second Amendment rights. The Court of Appeals for the Second Circuit had held that the Second

6

Amendment did not apply to the States. On June 28, 2010, the Supreme Court held that the Fourteenth Amendment does incorporate and apply the Second Amendment against the States.

29.     Plaintiff Kachalsky would apply again for a handgun carry license, but refrains from doing so because any such application would be a futile act. He cannot satisfy the good cause standard, which has already been applied to him.

30.     Plaintiff Christina Nikolov applied for a handgun carry license pursuant to New York Penal Code § 400.00. On or about October 1, 2009, Defendant Cohen denied Nikolov's permit application, offering that "conspicuously absent" from Defendant County's background investigation report of Plaintiff Nikolov "is the report of any type of threat to her own safety anywhere." Defendant Cohen continued: "[I]t cannot be said that the applicant has demonstrated that she has a special need for self-protection distinguishable from that of the general public; therefore, her application for a firearm license for a full carry permit must be denied." Accordingly, Defendant Cohen found Nikolov did not satisfy the requirement of New York Penal Code § 400.00(2)(f) that "proper cause" be shown for issuance of the permit.

31.     Plaintiff Detmer serves in the United States Coast Guard, for one weekend each month and two full weeks each year. Since 2004, Detmer has been a qualified Boarding Team Member. Although lacking authority to arrest, Detmer carries a .40 caliber handgun while on duty with the Coast Guard, which he surrenders each time upon leaving duty. Detmer qualifies semi-annually with his handgun, regularly taking a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training.

32.     Detmer is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Code § 400.00, Detmer applied to amend his license for

7

the purpose of "full carry," so that he could carry his gun while off-duty. On or about September 3, 2010, Defendant Westchester County recommended that the application be disapproved, as Detmer's need to enforce laws while off-duty was "speculative," and Detmer "has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry firearm license" and "has not demonstrated an exceptional need for self protection distinguishable from that of the general public."

33.     On or about September 27, 2010, Defendant Lorenzo denied Detmer's application, stating, "At this time, I see no justification for a full carry permit."

34.     Plaintiff Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Code § 400.00, Nance applied to amend his license for the purpose of "full carry" for self-defense, in part as Nance is a shooting instructor and regularly transports firearms. On or about August 11, 2010, Defendant Westchester County recommended that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public."

35.     On or about September 9, 2010, Defendant Holdman denied Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." Citing the denial of Plaintiff Kachalsky's application, Defendant Holdman

8

found Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish his need from those of countless others, nor has he demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession."

36.     Plaintiff Marcucci-Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Code § 400.00, Marcucci-Nance applied to amend her license for the purpose of "full carry" for self-defense, in part as Marcucci-Nance is a shooting instructor and regularly transports firearms. On or about August 11, 2010, Defendant Westchester County recommended that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Marcucci-Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public."

37.     On or about September 9, 2010, Defendant Holdman denied Marcucci-Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Marcucci-Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." Citing the denial of Plaintiff Kachalsky's application, Defendant Holdman found Marcucci-Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish her need from those of countless others, nor has she

9

demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession."

## COUNT I
### U.S. CONST., AMEND. II, 42 U.S.C. § 1983
### AGAINST ALL DEFENDANTS

38.     Paragraphs 1 through 37 are incorporated as though fully stated herein.

39.     Individuals cannot be required to prove their "good cause" for the exercise of fundamental constitutional rights, including the right to keep and bear arms.

40.     Individuals cannot be required to demonstrate any unique, heightened need for self-defense apart from the general public in order to exercise the right to keep and bear arms.

41.     New York Penal Code § 400.00(2)(f)'s requirement that handgun carry permit applicants demonstrate good cause for the issuance of a permit, violates the Second Amendment to the United States Constitution, facially and as applied against Kachalsky, Nikolov, Detmer, Nance, Marcucci-Nance, and SAF's members and supporters, damaging them in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to permanent injunctive relief against the enforcement of this provision.

## COUNT II
### U.S. CONST., AMEND. XIV, EQUAL PROTECTION, 42 U.S.C. § 1983
### AGAINST ALL DEFENDANTS

42.     Paragraphs 1 through 41 are incorporated as though fully stated herein.

43     New York Penal Code § 400.00(2)(f)'s requirement that handgun carry permit applicants demonstrate cause for the issuance of a permit classifies individuals, including plaintiffs, on the basis of irrelevant, arbitrary, and speculative criteria in the exercise of a fundamental right. Accordingly, the provision violates Plaintiffs' Fourteenth Amendment right to

equal protection of the law, damaging them in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to permanent injunctive relief against the enforcement of this provision.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.     An order permanently enjoining defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing N.Y. Penal Code § 400.00(2)(f)'s good cause requirement;

2.     An order commanding Defendants to issue Plaintiffs Kachalsky, Nikolov, Detmer, Nance, and Marcucci-Nance permits to carry a handgun;

3.     Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

4.     Declaratory relief consistent with the injunction; and

5.     Any other further relief as the Court deems just and appropriate.

Dated: November 4, 2010                   Respectfully submitted,

Alan Gura*                                 Vincent Gelardi
Gura & Possessky, PLLC                     Gelardi & Randazzo
101 N. Columbus Street, Suite 405          800 Westchester Avenue, Suite S-608
Alexandria, VA 22314                       Rye Brook, NY 10573
703.835.9085/Fax 703.997.7665             914.251.0603/Fax 914.253.0909
Lead Counsel                               Local Counsel
*Admitted Pro Hac Vice

                                           By:  /s/ Alan Gura
                                                Alan Gura

                                           Attorneys for Plaintiffs

11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X

Alan Kachalsky, Christina Nikolov, and :
Second Amendment Foundation, :
     :
                     Plaintiffs, : **Civil Action Number:**
     : **10-cv-5413**
-against- :
     : **(Hon. Cathy Seibel)**
Susan Cacace, Jeffrey A. Cohen, and :
the County of Westchester, :
     :
                     Defendants. :
-----------------------------------------------------X

## NOTICE OF MOTION TO DISMISS
## THE COMPLAINT

            **PLEASE TAKE NOTICE** that, pursuant to the Endorsement Order of

this Court dated November 5, 2010, and upon the Memorandum of Law dated November

9, 2010, and the Declaration of Anthony J. Tomari, dated November 9, 2010, the

undersigned will move on behalf of Defendants the Honorable Susan Cacace and the

Honorable Jeffrey A. Cohen, (hereinafter "State Defendants"), before the Honorable

Judge Cathy Seibel in courtroom 218, at the United States Courthouse, 300 Quarropas

Street, White Plains, New York, 10601, at a date and time to be set by the Court, for an

order dismissing this action[1], in its entirety as against the State Defendants, and granting

such other and further relief as the Court deems just, proper and appropriate.

---

[1] Pursuant to Order of this Court dated November 5, 2010, the State Defendants were ordered to serve their Motion to Dismiss pertaining to the above-referenced plaintiffs and defendants, despite the fact that a superseding amended complaint was filed on November 4, 2010 which added 3 new plaintiffs and 2 new defendants.

Dated:  New York, New York
       November 9, 2010

                              ANDREW M. CUOMO
                              Attorney General of the
                                State of New York
                              <u>Attorney for State Defendants</u>
                              By:

                              ANTHONY J. TOMARI (AT-0186)
                              Assistant Attorney General
                              120 Broadway, 24th Floor
                              New York, New York 10271
                              (212) 416-8553

TO:    Alan Gura, Esq
       GURA & POSSESSKY, PLLC
       <u>Attorneys for Plaintiffs</u>
       101 N. Columbus Street, Suite 405
       Alexandria, Virginia 22314
       T- (703) 835-9085
       F- (703) 997-7665

       Vincent Gelardi
       Gelardi & Randazzo
       <u>Attorneys For Plaintiffs</u>
       800 Westchester Avenue, Suite S-608
       Rye Brook, New York 10573
       T:  (914)-251-9603
       F:  914-253-0909

       Melissa-Jean Rotini, Esq.
       Assistant County Attorney, Of Counsel
       Westchester County Attorney's Office
       <u>Attorneys for  Defendant County of Westchester</u>
       Michaelian Office Building
       148 Martine Avenue, 6th Floor
       White Plains, New York 10601
       T: 914-995-3630
       F: 914-995-3132

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC
DETMER, JOHNNIE NANCE, ANNA MARCUCCI-
NANCE, and SECOND AMENDMENT
FOUNDATION, INC.,              Plaintiffs,
-against-

**NOTICE OF MOTION TO
DISMISS AMENDED
COMPLAINT**

Case No.: 10 CV 05413 (CS)

SUSAN CACACE, JEFFREY A. COHEN, ALBERT
LORENZO, ROBERT K. HOLDMAN, and COUNTY
OF WESTCHESTER,

ECF Case

                              Defendants.
-------------------------------------------------------------------x

PLEASE TAKE NOTICE that upon the annexed declaration of Melissa-Jean Rotini,

Assistant County Attorney, dated the 9th day of November 2010, the accompanying

Memorandum of Law, and upon all the papers and proceedings heretofore had herein Defendant

the County of Westchester (hereinafter the "County") will move this Court before the Honorable

Cathy Seibel, United States District Judge, Southern District of New York, 300 Quarropas Street,

White Plains, NY 10601, for an Order pursuant to Rule 8 and Rule 12(b)(1) and (6) of the

Federal Rules of Civil Procedure dismissing the Amended Complaint with prejudice against the

County, and for such other relief as this Honorable Court deems just and proper.

Should this Honorable Court deny this motion, the County respectfully requests that it be

allowed thirty (30) days from the date of entry of such an order to answer the Amended

Complaint.

Dated: White Plains, New York
       November 9, 2010

Yours, etc.,
ROBERT F. MEEHAN
WESTCHESTER COUNTY ATTORNEY
By:

Melissa-Jean Rotini (MR-4948)
Assistant County Attorney, Of Counsel
148 Martine Avenue, 6th Floor
White Plains, NY 10601
914-995-3630

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC             **DECLARATION OF**
DETMER, JOHNNIE NANCE, ANNA MARCUCCI-               **MELISSA-JEAN ROTINI IN**
NANCE, and SECOND AMENDMENT                         **SUPPORT OF MOTION TO**
FOUNDATION, INC.,                                   **DISMISS AMENDED**
                              Plaintiffs,           **COMPLAINT**

-against-
                                                    Case No.: 10 CV 05413 (CS)

SUSAN CACACE, JEFFREY A. COHEN, ALBERT
LORENZO, ROBERT K. HOLDMAN, and COUNTY              ECF Case
OF WESTCHESTER,
                              Defendants.
-------------------------------------------------------------------x

Melissa-Jean Rotini, pursuant to 28 U.S.C. §1746, declares:

1.    I am an Assistant County Attorney in the Office of Robert F. Meehan, Westchester
      County Attorney, attorney for Defendant County of Westchester (hereinafter referred
      to as "County") in the above-captioned matter.

2.    I submit this Declaration in support of the County's Motion to Dismiss pursuant to
      Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), as more
      specifically set forth in the accompanying Memorandum of Law.

3.    Annexed hereto are the following Exhibits:

      Exhibit A    Decision of Co-Defendant Judge Cacace with respect to the Pistol
                   Permit License Application of Plaintiff Kachalsky, filed and entered
                   October 8, 2008.

      Exhibit B    Decision of Co-Defendant Judge Cohen with respect to the Pistol
                   Permit License Application of Plaintiff Nikolov, filed and entered
                   October 2, 2008.

      Exhibit C    Decision of Co-Defendant Judge Lorenzo with respect to the Pistol
                   Permit License Application of Plaintiff Detmer, dated September 27,
                   2010.

      Exhibit D    Decision of Co-Defendant Judge Holdman with respect to the Pistol
                   Permit License Application of Plaintiff Nance, filed and entered
                   September 10, 2010.

Exhibit E     Decision of Co-Defendant Judge Holdman with respect to the Pistol
              Permit License Application of Plaintiff Marcucci-Nance, filed and
              entered September 10, 2010.


I declare under penalty of perjury that the foregoing is true and correct.


Dated: White Plains, New York
       November 9, 2010

                                        _____
                                        Melissa-Jean Rotini (MR-4948)
                                        Assistant County Attorney, of Counsel

# EXHIBIT A:
# Decision of Judge Cacace (Kachalsky)

COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X

In the Matter of the Application of

Alan N. Kachalsky,

for a pistol permit pursuant to
Penal Law Section 400.00

-------------------------------------------------------------------X

FILED
AND ENTERED

ON 10/8 2008

WESTCHESTER
COUNTY CLERK

DECISION & ORDER

Index No.: 3/2008

CACACE, J.

This Court, in its capacity as handgun licensing officer for the County of Westchester (see Penal Law §265.00(10)) has been presented with the application of Alan N. Kachalsky, 47C Peck Avenue, Rye, New York, for an unrestricted full carry pistol permit. In accordance with the statutory mandate (see Penal Law §400.00 (4)), the Westchester County Department of Public Safety has conducted an investigation of the applicant's background.

In order for the issuance of a license to "have and carry concealed without regard to employment or place of possession by any person," the Court must find "proper cause exists for the issuance thereof." Penal Law §400.00(2)(f).

The Court, in exercising its broad discretion, finds "good cause" for denial of the subject application. Matter of Charles I. Anderson v. Joseph A. Mogavero, Jr. as County Court Judge of Ostego County, 116 AD2d 885.

In support of his request for an unrestricted permit, the applicant has stated that his belief is that the Second Amendment of the United States Constitution entitles him to an unrestricted permit without further establishing "proper cause." He goes on to cite the fact that we live in a world where "sporadic random violence might at any moment place one

APPX. 33

in a position where one needs to defend oneself or possibly others.

He has not stated any facts which would demonstrate a need for self protection distinguishable from that of the general public. The Westchester County Department of Public Safety has forwarded a recommendation that his application be denied.

The Court does not find that the applicant has submitted a persuasive argument justifying the issuance of a "full carry" license.

The State has a substantial and legitimate interest and a grave responsibility for ensuring the safety of the general public. Licensing officers are vested with broad discretion in determining applications for an unrestricted pistol license, and are required to exercise their judgement on the basis of a total evaluation of relevant factors. See Fulco v. McGuire, 81 AD2d 509.

Based upon all the facts and circumstances of this application, it is my opinion that proper cause does not exist for the issuance of an unrestricted "full carry" pistol license to be issued to Alan N. Kachalsky. Accordingly, the application for an unrestricted, full carry pistol permit by Alan N. Kachalsky is denied.

The foregoing constitutes the decision and order of this Court.

Dated: White Plains, New York
      October ☿ , 2008

HON. SUSAN CACACE
County Court Judge

# EXHIBIT B:
# Decision of Judge Cohen (Nikolov)

COUNTY COURT: WESTCHESTER COUNTY
STATE OF NEW YORK
-----------------------------------------------------------------------X

In the Matter of the Application of

**CHRISTINA M. NIKOLOV**

for a Pistol Certification Pursuant to Penal Law § 400.00

-----------------------------------------------------------------------X

JEFFREY A. COHEN, J.:

```
┌─────────────────┐
│     FILED        │
│      AND         │
│    ENTERED       │
│                  │
│ ON OCT. 2 , 2008 │
└─────────────────┘
```

**DECISION & ORDER**

The applicant, Chritina M. Nikolov, seeks a New York State full carry pistol license. This court, in its capacity as handgun licensing officer for the County of Westchester, *see* Penal Law § 265.00(10), has been presented with the application, which includes, in accordance with Penal Law § 400.00(4), the results of the investigation that the Westchester County Department of Public Safety conducted concerning Ms. Nikolov's background.

The application and investigation reveal, in pertinent part, that the applicant currently possesses a concealed weapon permit with full carry privileges in the State of Florida and that she is a transgender female and that as such according to the National Coalition of Anti-Violence Programs she is far more likely to be a victim of violent crime than a genetic female. In addition the applicant states that "[t]hese hate crimes are increasing locally as well as nationwide" and she appended a list of hundreds of crimes against people in similar circumstances from around the world. *See* attachment to Form WCPD-126H. Conspicuously absent, however, is the report of any type of threat to her own safety anywhere.

Under these circumstances, and notwithstanding her accomplishments and

unblemished record, it cannot be said that the applicant has demonstrated that she has a special need for self-protection distinguishable from that of the general public; therefore, her application for a firearm license for a full carry permit must be denied. *See, e.g., In re Application of Ferrara v Safir*, 282 AD2d 383 (1st Dept 2001)(denial of license proper as petitioner failed to show that his position as the chief executive officer of a body-guard business for movie stars places him in extraordinary personal danger, or other special need for self-protection distinguishable from that of the general community); *In re Application of Kaplan v Bratton*, 249 AD2d 199 (1st Dept 1998)(denial of license upheld as petitioner's general allegations about her work hours and location were insufficient to show an extraordinary threat to her safety); *In the Matter of Bastiani*, 23 Misc3d 235 (Co. Ct Rockland Co. 2008)(applicant for a full carry pistol permit did not demonstrate a special need for self-protection distinguishable from that of the general community, even though on two occasions she assertedly feared for her personal safety in public places.)

The foregoing opinion shall constitute the decision and order of the court.

Enter.

Dated: OCT. 1, 2009
White Plains, NY

_____
County Court Judge
HON. JEFFREY A. COHEN

T.O:   Christina M. Nikolov
       10 Franklin Avenue
       White Plains, NY 10601

2

# EXHIBIT C:
# Decision of Judge Lorenzo (Detmer)



SUPREME COURT OF THE STATE OF NEW YORK

RICHARD J. DARONCO
WESTCHESTER COUNTY COURTHOUSE
111 DR. MARTIN LUTHER KING, JR, BOULEVARD
WHITE PLAINS, NEW YORK 10601
(914) 824-5403
FAX: (914) 995-8651

CHAMBERS OF
ALBERT LORENZO
JUSTICE

September 27, 2010

Mr. Eric R. Detmer
321 Fenimore Road
Mamaroneck, New York  10543

Dear Mr. Detmer:

Please be advised that I am in receipt of your application to amend your pistol permit from target shooting to full carry.  At this time, I see no justification for a full carry permit.  Accordingly, I have disapproved  your application.

Very truly yours,

Albert Lorenzo
Acting Supreme Court Justice

AL:lg

# EXHIBIT D:
# Decision of Judge Holdman (Nance)

05-266



COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X

In the Matter of the Application of                    DECISION

Johnnie Nance,

                    Petitioner,

For an amendment to his New York State Pistol Permit.

-------------------------------------------------------------------X

Robert K. Holdman, J.


     The following papers were read upon Petitioner's application in the above

captioned proceeding:

     Johnnie Nance's Application                    1

     Department of Public Safety Report and Attachments        2

     The applicant, Johnnie Nance, has submitted an application to Westchester

County to amend his New York State Pistol License (#104518) to delete target shooting

and to add full carry.   The applicant also seeks the addition of one firearm and the

deletion of one firearm to his license.  The petitioner currently has a restricted license to

carry for sport target shooting issued in the County of Westchester on April 30, 2009.

The petitioner requested an amendment for a fully carry to this license because of his

desire to use his NRA Instructor Safety Certifications to promote safe gun handling at

various locations.

1

The issuance of a pistol permit for self protection has recently been held by the
United States Supreme Court  to be a right protected by the Second Amendment of the
United States Constitution:

> There seems to us no doubt, on the basis of both text
> and history, that the Second Amendment conferred an
> individual right to keep and bear arms.  District of
> Columbia v. Heller,  554 U.S. ____(2008); Slip op @
> page 22.

However, in so holding the Supreme Court also recognized that the Second
Amendment should not be "read...to protect the right of citizens to carry arms for any
sort of confrontation." (Id).  The individual right to bear arms is limited:

> Like most rights, the right secured by the Second Amendment is
> not unlimited.  From Blackstone through the 19th Century cases,
> commentators and courts routinely explained that the right was
> not a right to keep and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose. [citations omitted].  For example,
> the majority of 19th Century courts to consider the question held that
> prohibitions on carrying concealed weapons were lawful under the
> Second Amendment or state analogues.  Slip. Op. Supra at 54.

Putting aside the question of whether the Second Amendment "individual" right to
bear arms is in fact extended to the states as a fundamental right, an issue not
addressed by the Supreme Court, it is clear that even if that be the case, a regulatory
scheme would not run afoul of the Courts' holding. Id, pages 53-56 and footnote 26
(where the court set forth several examples of reasonable restrictions on the right to
keep and carry a weapon).   In striking down the District of Columbia statute as "a ban
on handgun possession in the home" and thereby  violative of the Second Amendment,
the Supreme Court went on to hold:

> The Constitution leaves the District of Columbia a variety of
> tools for combating [handgun violence], including some
> measures regulating handguns. Id. at page 64.

Therefore, those charged with the duty to oversee handgun licensing, such as this

Court, must, in the opinion of this Court, recognize and honor the right while at the same

time recognizing the limits to the right to bear arms under the Second Amendment to

the United States Constitution.

The burden of establishing "proper cause" for the issuance of a full-carry permit

is upon the applicant to establish "a special need for self-protection distinguishable from

that of the general community or of persons engaged in the same profession." Kaplan

v. Brattan 249 A.D.2d 199 at 201, op. cit. Matter of Klenosky v. New York City Police

Department 75 A.D.2d 793, affd'. 53 NY2d 685.  However, Mr. Nance fails to

demonstrate any concern for his safety and certainly did not distinguish himself from

almost any other citizen.  The Court received a report from the Westchester County

Department of Public Safety, indicating that "the necessary proper cause for the

issuance of a firearm license for the purpose of Full Carry has not been met by the

applicant."  The applicant has not provided the court with any information that he faces

any danger of any kind that would necessitate the issuance of a full carry firearm

license; or has not demonstrated a need for self-protection distinguishable from that of

the general public or of other persons similarly situated.  The Department recommends

that the applicant's amendment to his New York State Pistol License be disapproved.

Penal Law section 400.00(2)(f) requires a showing of "proper cause" prior to the

issuance of a carry-concealed permit as requested by the petitioner in this matter.

However, the petitioner failed to demonstrate "proper cause." *Kachalsky v. Cacace*, 65

A.D.3d 1045 (2nd Dept. 2009); *Hecht v. Bivona*, 11 A.D.3d 614 (2nd Dept. 2004); *Milo v. Kelly*, 211 A.D.3d 488 (1st Dept. 1995).

In sum, the applicant has not shown sufficient circumstances to distinguish his need from those of countless others, nor has he demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession. Accordingly, the petitioner's application to amend his New York State Pistol License (#104519) is denied but the application to add one firearm and to delete one firearm to the license is approved.

This constitutes the decision and order of this Court.

Dated:    September 9, 2010
          White Plains, New York

-------------------------------------------------
Hon. Robert K. Holdman, JSC

# EXHIBIT E:
# Decision of Judge Holdman
# (Marcucci-Nance)

05-267



COUNTY COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X

In the Matter of the Application of                          DECISION

Anna L. Marcucci-Nance,

                    Petitioner,

For an amendment to her New York State Pistol Permit.

-------------------------------------------------------------------X

Robert K. Holdman, J.

        The following papers were read upon Petitioner's application in the above

captioned proceeding:

        Anna Marcucci-Nance's Application                     1

        Department of Public Safety Report and Attachments    2

        The applicant, Anna Marcucci-Nance, has submitted an application to

Westchester County to amend her New York State Pistol License (#104519) to delete

target shooting and to add full carry.  The applicant also seeks the addition of one

firearm and the deletion of one firearm to her license.  The petitioner currently has a

restricted license to carry for sport target shooting issued in the County of Westchester

on April 30, 2009.  The petitioner requested an amendment for a fully carry to this

license because of her desire to use her NRA Instructor Safety Certifications to promote

safe gun handling at various locations.

1

The issuance of a pistol permit for self protection has recently been held by the

United States Supreme Court  to be a right protected by the Second Amendment of the

United States Constitution:

> There seems to us no doubt, on the basis of both text
> and history, that the Second Amendment conferred an
> individual right to keep and bear arms.  District of
> Columbia v. Heller,  554 U.S. ____(2008); Slip op @
> page 22.

However, in so holding the Supreme Court also recognized that the Second

Amendment should not be "read...to protect the right of citizens to carry arms for any

sort of confrontation."  (Id).  The individual right to bear arms is limited:

> Like most rights, the right secured by the Second Amendment is
> not unlimited.  From Blackstone through the 19th Century cases,
> commentators and courts routinely explained that the right was
> not a right to keep and carry any weapon whatsoever in any manner
> whatsoever and for whatever purpose. [citations omitted].  For example,
> the majority of 19th Century courts to consider the question held that
> prohibitions on carrying concealed weapons were lawful under the
> Second Amendment or state analogues.  Slip. Op. Supra at 54.

Putting aside the question of whether the Second Amendment "individual" right to

bear arms is in fact extended to the states as a fundamental right, an issue not

addressed by the Supreme Court, it is clear that even if that be the case, a regulatory

scheme would not run afoul of the Courts' holding. Id, pages 53-56 and footnote 26

(where the court set forth several examples of reasonable restrictions on the right to

keep and carry a weapon).    In striking down the District of Columbia statute as "a ban

on handgun possession in the home" and thereby  violative of the Second Amendment,

the Supreme Court went on to hold:

2

> The Constitution leaves the District of Columbia a variety of
> tools for combating [handgun violence], including some
> measures regulating handguns. Id. at page 64.

Therefore, those charged with the duty to oversee handgun licensing, such as this

Court, must, in the opinion of this Court, recognize and honor the right while at the same

time recognizing the limits to the right to bear arms under the Second Amendment to

the United States Constitution.

The burden of establishing "proper cause" for the issuance of a full-carry permit

is upon the applicant to establish "a special need for self-protection distinguishable from

that of the general community or of persons engaged in the same profession." Kaplan

v. Brattan 249 A.D.2d 199 at 201, op. cit. Matter of Klenosky v. New York City Police

Department 75 A.D.2d 793, affd'. 53 NY2d 685. However, Ms. Marcucci-Nance fails to

demonstrate any concern for her safety and certainly did not distinguish herself from

almost any other citizen. The Court received a report from the Westchester County

Department of Public Safety, indicating that "the necessary proper cause for the

issuance of a firearm license for the purpose of Full Carry has not been met by the

applicant." The applicant has not provided the court with any information that she faces

any danger of any kind that would necessitate the issuance of a full carry firearm

license; or has not demonstrated a need for self-protection distinguishable from that of

the general public or of other persons similarly situated. The Department recommends

that the applicant's amendment to his New York State Pistol License be disapproved.

Penal Law section 400.00(2)(f) requires a showing of "proper cause" prior to the

issuance of a carry-concealed permit as requested by the petitioner in this matter.

However, the petitioner failed to demonstrate "proper cause." Kachalsky v. Cacace, 65

3

A.D.3d 1045 (2nd Dept. 2009); *Hecht v. Bivona*, 11 A.D.3d 614 (2nd Dept. 2004); *Milo v. Kelly*, 211 A.D.3d 488 (1st Dept. 1995).

In sum, the applicant has not shown sufficient circumstances to distinguish her need from those of countless others, nor has she demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession. Accordingly, the petitioner's application to amend her New York State Pistol License (#104519) is denied but the application to add one firearm and to delete one firearm to the license is approved.

This constitutes the decision and order of this Court.

Dated:    September 9, 2010
          White Plains, New York

                                          Hon. Robert K. Holdman, JSC

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC
DETMER, JOHNNIE NANCE, ANNA MARCUCCI-
NANCE, and SECOND AMENDMENT FOUNDATION,
INC.,

**AFFIDAVIT OF SERVICE BY
FIRST CLASS MAIL**

                    Plaintiffs,

File No.: 10 CV 05413(CS)

against-


SUSAN CACACE, JEFREY A. COHEN, ALBERT
LORENZO, ROBERT K. HOLDMAN, and COUNTY OF
WESTCHESTER,

                    Defendants.

--------------------------------------------------------------------x


STATE OF NEW YORK        )
                         )  ss.:
COUNTY OF WESTCHESTER )


JOSEPHINE BELSITO, being duly sworn, deposes and says:

    I am not a party to this action, I am over 18 years of age; I am employed in White
Plains, New York.

    On November 9, 2010, I served one copy of the **DECLARATION OF MELISSA-
JEAN ROTINI IN SUPPORT OF MOTION TO DISMISS THE AMENDED
COMPLAINT** in this matter upon the following:

Vincent Gelardi, Esq.
Gelardi & Randazzo, LLP
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573


Alan Gura, Esq.
Gura & Possessky, PLLC
101 North columbus Street, Suite 405
Alexandria, VA. 22314


Anthony J.Tomari, Esq.
Office of the Attorney General
120 Broadway, 24th floor
New York, New York 10271


being the address(es) designated for that purpose by depositing a true copy of same
enclosed and in a postpaid, properly addressed wrapper by regular mail, in an official
depository under the exclusive care and custody of the United States Postal Service within
the State of New York.

                                          JOSEPHINE BELSITO

Sworn to before me this
9th day of November 2010
APPX.

NAILE HOXHAJ
Notary Public, State of New York
No. 01HO6131068
Qualified In Putnam County
Commission Expires July 25, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Alan Kachalsky, Christina Nikolov, Eric Detmer,      :
Johnnie Nance, Anna Marcucci-Nance,                  :
and Second Amendment Foundation, Inc.,               :
                                                     :
                         Plaintiffs,                 :        **Civil Action Number:**
                                                     :        **10-cv-5413**
-against-                                            :
                                                     :        **(Hon. Cathy Seibel)**
Susan Cacace, Jeffrey A. Cohen,                      :
Albert Lorenzo, Robert K. Holdman                    :
and County of Westchester,                           :
                                                     :
                         Defendants.                 :
-------------------------------------------------------------X

### DECLARATION IN SUPPORT OF THE SUPPLEMENTAL MEMORANDUM TO STATE DEFENDANTS' MOTION TO DISMISS

**ANTHONY J. TOMARI**, under the penalties of perjury and in accordance with

28 U.S.C. 1746 declares as follows:

1.      I am an Assistant Attorney General in the Office of ANDREW M. CUOMO,

Attorney General of the State of New York, attorney for Defendants Susan Cacace, Jeffrey A.

Cohen, Albert Lorenzo and Robert K. Holdman, all of whom are New York State court judges

(hereinafter "State Defendants"), in the above-captioned action.   I submit this affirmation in

support of the State Defendants' Supplemental Memorandum in support of their Motion to

Dismiss.

2.      The State Defendants submit a supplemental memorandum of law to address only

those issues and newly asserted factual allegations pertaining to those plaintiffs and defendants

added to this action by Plaintiffs' filing of a First Amended Complaint ("FAC").  A copy of the

FAC is annexed hereto as Exhibit "1".

3.     Pursuant to Order of this Court dated October 8, 2010, all defendants' motions to dismiss the original complaint were to be served on November 5, 2010. See Docket Entry #13.

4.     After the close of business on November 4, 2010 plaintiffs attempted to file the FAC via ECF, but the attempted filing was rejected. See Docket Entry #15. Plaintiffs tried a second time to file the FAC and on November 8, 2010, the FAC was successfully filed via ECF. See Docket Entry #18.

5.     Regardless, after receiving electronic notification of plaintiffs' first attempt at filing the FAC, counsel for State Defendants obtained a copy of the FAC from the PACER system during the morning of November 5, 2010 – the date defendants' motions to dismiss were due. Given the substantial amendments to the original complaint, counsel for the State Defendants immediately wrote to this Court to request a new briefing schedule to permit the State Defendants, including the newly named judges, who had not been served, to address their dismissal motion to this superseding pleading. See, Exhibit "2" annexed hereto.

6.     Defendant County of Westchester made the same request, on the same date, through its counsel. See, Exhibit "3" annexed hereto.

7.     Plaintiffs' counsel opposed altering the October 8, 2010 briefing schedule. See, Exhibit "4" annexed hereto.

8.     State Defendants further responded by a second letter dated November 5, 2010. See, Exhibit "5" annexed hereto.

9.     By a November 5, 2010 memo endorsement order, posted on ECF on November 8, 2010, this Court declined to set a new briefing schedule. Rather, it ordered the original defendants to serve their motions to dismiss by November 9, 2010 and that the State Defendants should address the allegations made by the new plaintiffs against the added Defendants in a

- 2 -

supplemental submission to be served by December 6, 2010. See, Exhibit "6" annexed hereto. The supplemental memorandum of law submitted herewith is that supplemental submission.

10.    In addition, as pertains to the newly added State Defendants, a copy of State Defendant Lorenzo's denial of plaintiff Detmer's application for a "full carry" license, dated September 27, 2010, is annexed as Exhibit "7" hereto.

11.    A copy of State Defendant Holdman's denial of plaintiff Nance's application for a "full carry" license, dated September 9, 2010, is annexed as Exhibit "8" hereto.

12.    A copy of State Defendant Holdman's denial of plaintiff Marcucci-Nance's application for a "full carry" license, dated September 9, 2010, is annexed as Exhibit "9" hereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 7, 2010

> ANDREW M. CUOMO
> Attorney General of the
> State of New York
> Attorney for Defendants
> By:
>
> Anthony J. Tomari (AT-0186)
> Assistant Attorney General
> 120 Broadway - 24th Floor
> New York, New York 10271
> (212) 416 - 8553

- 3 -

# EXHIBIT
# 2



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

**ANDREW M. CUOMO**
ATTORNEY GENERAL

**LESLIE G. LEACH**
EXECUTIVE DEPUTY ATTORNEY GENERAL
DIVISION OF STATE COUNSEL

**JUNE DUFFY**
ASSISTANT ATTORNEY GENERAL IN CHARGE
LITIGATION BUREAU

WRITER'S DIRECT DIAL (212) 416-8965

November 5, 2010

**By Facsimile Transmission - (914) 390-4278**

Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

> Re:  Alan Kachalsky, et al. v. , Susan Cacace, et al.
>       10 CV 5413 (CS)

Dear Judge Seibel:

This office represents defendants the Hon. Susan Cacace and Hon. Jeffrey A. Cohen, judges of the County Court, Westchester County ("State Defendants"). According to the briefing schedule now in place in this case, the defendants are to serve their motion to dismiss the complaint today, November 5, 2010, addressing the Complaint herein which was filed on July 15, 2010. However, yesterday evening, November 4, 2010 the counsel for plaintiffs filed a First Amended Complaint which identifies three new plaintiffs, two new defendants, and changes the substantive allegations. To the best of our knowledge, the new defendants have not been served.

In consideration of the filing of the First Amended Complaint, the motion to dismiss otherwise due today is no longer appropriate, as it, of course, addresses the original complaint, and the briefing schedule previously established herein will need to be modified. Insofar as the new defendants may be eligible for representation by this office, we cannot undertake such representation unless and until service is effected, a request for representation is made, and a determination about representation is finalized.

Page 2

State Defendants request that the briefing schedule herein be suspended, to be reset following service of the First Amended Complaint, and thereafter by consultation among the parties and submission and approval of a revised briefing schedule.

Thank you for your attention to this matter. All parties will receive a copy of this letter simultaneously by facsimile transmission.

Very truly yours,

Monica Connell
Assistant Attorney General

Copy:
Melissa-Jean Rotini, Esq.
Assistant County Attorney, Of Counsel
Westchester County Attorney's Office
Attorneys for Defendant County of Westchester
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601
T: 914-995-3630
F: 914-995-3132

Vincent Gelardi
Gelardi & Randazzo
Attorneys For Plaintiffs
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
T: (914)-251-9603
F: 914-253-0909

Alan Gura, Esq.
Gura & Possessky, PLLC
Attorneys for Plaintiff
101 N. Columbus Street, Suite 405
Alexandria, Virginia 22314
T: (703) 835-9085
F: (703) 997-7665

# EXHIBIT
# 3



**Robert P. Astorino**
County Executive

Robert F. Meehan
County Attorney

November 5, 2010

*VIA FACSIMILE: 914-390-4278*

Hon. Cathy Seibel
United States District Court Judge
The Hon. Charles L. Brieant, Jr. Federal
Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601

> Re:    *Kachalsky, et al v. Cacace, et al*
>        Case No.: 10-cv-05413

Dear Judge Seibel:

This office represents the County of Westchester (hereinafter "County"). At 6:25 p.m. last evening, the undersigned received notification of the 6:18 p.m. electronic filing of a superseding Amended Complaint in the above-referenced matter. Upon information and belief, the Defendants have not yet been served with a copy of the Amended Complaint, which continues to mischaracterize the County's role as that of employer of the New York State Court Judges sued in this matter.

The Amended Complaint adds new parties, and references the newly added Co-Defendant judges' decisions, which must be obtained to verify the veracity of the quotes.[1] Further, the County's Motion to Dismiss will need to be amended to address these additional parties, although it is also noted the Amended Complaint continues to fail to plead any claim against the County.

Therefore, the County respectfully joins in the request from Attorney General's Office seeking to suspend the briefing schedule pending service of the Amended Complaint. Thank you.

Respectfully Submitted,

Melissa Jean Rotini
Assistant County Attorney, Of Counsel
914-995-3630

---

[1] As the Court was advised in the County's Pre-Motion Letter of August 16, 2010, the Plaintiffs have previously mischaracterized the language in the decision of Co-Defendant Judge Cohen by taking a partial quote and changing the context.

Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601      Telephone: 914-995-2660      Fax: 914-995-3132*



APPX. 58 *Please be advised that service by facsimile is not accepted.

cc:  *Via Facsimile: 212-416-6075*
     Anthony J. Tomari, Esq.
     Office of the Attorney General
     120 Broadway, 24th Floor
     New York, NY 10271

*Via Facsimile: 703-997-7665*
Alan Gura, Esq.
Gura & Possessky, PLLC
1010 North Columbus Street, Suite 405
Alexandria, VA 22314

*Via Facsimile: 914-253-0909*
Vincent Gelardi, Esq.
Gelardi & Randazzo
800 Westchester Avenue, Suite S-608
Rye Brook, NY 10573

# EXHIBIT
# 4



## GURA & POSSESSKY, P.L.L.C.

101 N. COLUMBUS STREET, SUITE 405
ALEXANDRIA, VIRGINIA 22314
TEL. 703.835.9085/FAX 703.997.7665

November 5, 2010

The Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

### **VIA FAX TO 914.390.4278**

Re:     *Kachalsky* v. *Cacase*
        U.S. Dist. Ct., S.D.N.Y. 10-CV-5413-CS

Dear Judge Seibel:

The latest requests by Defendants to vacate the briefing schedule, apparently without meeting and conferring and without proposing an alternative, are not well-taken. These issues have already been resolved by the Court, and any additional delays at this point would be excessive and prejudicial to Plaintiffs.

It is important to recall the background against which these latest requests are made.

The parties originally agreed on a briefing schedule amongst themselves, and had prepared a joint letter submitting the same to the Court, but at the last moment, the Attorney General's Office withdrew its consent to that schedule because it suddenly decided that it would not consent to allowing Plaintiffs to file a motion for summary judgment. Subsequently, the parties appeared before the Court at the September 7 status conference, and a briefing schedule was readily agreed to.

During that status conference, as the Court may recall, the issue arose of the State Defendants' theory that the individual plaintiffs could not complain about their permit application denials, as these were denied prior to the Supreme Court's decision in *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010). Defendants suggested that the outcome of the applications would have been different had Plaintiffs applied post-*McDonald*.

Plaintiffs responded that the Defendants have not changed their practices in the wake of *McDonald*, the statute being challenged here has not been amended, and in fact, Defendants are invoking Plaintiff Kachalsky's denial to deny additional applications. Indeed, Defendants did not remedy their denials of the Plaintiffs' applications.

The Hon. Cathy Seibel
Page Two

Plaintiffs proposed a solution, accepted by the Court and by all Defendants: that they move to amend the complaint to add parties denied post-*McDonald*. The Court granted the motion, giving Plaintiffs until the deadline for the motion to dismiss to amend the complaint. This arrangement was confirmed in the endorsed letter extending the deadline for both amendment and the motions to dismiss.

In other words, everyone understood and agreed that the amendment would relate primarily to the post-*McDonald* argument. And that is exactly what has now occurred: Plaintiffs added three additional co-Plaintiffs who were denied licenses to carry firearms post-*McDonald* by Westchester County licensing officials. There is no other substantive amendment to the complaint: it lays out the exact same theories and arguments laid out previously.

Accordingly, the alleged problems raised by Defendants are not new. The Court has already addressed them at the September 7 hearing, and in its order. Defendants would have had a point had Plaintiffs asserted new legal theories or involved third-party defendants (perhaps licensing officials from other counties). But there is nothing in the amended complaint that should alter Defendants' substantive arguments. Plaintiffs have adhered to the Court's order, and expect Defendants – who agreed to this arrangement – to now do the same.

Although Defendants asked for this amendment by asserting their post-*McDonald* defense, and they received their amendment within the time to which they had agreed, the prejudice to Plaintiffs and counsel flowing from any alteration of the schedule would be significant. On October 5, the Attorney General's Office requested Plaintiffs' consent for an additional month to file its brief, citing a need for multiple levels of internal review. I could not agree to a full month extension for two reasons: (1) the delay would be excessive – Rule 12 ordinarily provides for a 3 week responsive period, and we had already agreed to 14 weeks; and (2) it would start our response time in the middle of an important, long-planned overseas trip that could not be rescheduled.

Notwithstanding the Attorney General's Office's previous lack of reciprocal courtesy on the summary judgment schedule, to accommodate that office, I agreed to a compromise that effectively cut our response time in half: the Attorney General's Office would serve its brief on November 5 instead of October 22, and our opposition would be extended from November 12 to the 15th. The Court subsequently adopted this modified schedule.

At no point during the conversations relating to this last modification did counsel indicate that he would want additional pages. But last week, counsel obtained permission to double the size of his brief. So we face the prospect of having agreed to half the time – to respond to double the brief, and we are already looking at having a responsive pleading served on November 5, for a case filed July 15 – 92 days versus Rule 12's 21-day standard.

The Hon. Cathy Seibel
Page Three

And now, even though we had an agreement that the amendment could be served concurrently with the motion to dismiss, given the purpose of the amendment and the fact it raises nothing new, Defendants ask that this delayed schedule is to be dispensed with indefinitely. They do not propose a new schedule. The request is dilatory and lacks any basis.

Also not well-taken is the County's assertion that it needs to be served with the amended complaint. The County has appeared in this case and counsel for the county is receiving electronic notice of all filings. Obviously the County has received the amended complaint, which asserts nothing new against the County – just that it applied the same practice and policy against the new plaintiffs, just as it applies this practice and policy against everyone. If the County would ignore the amended complaint, Plaintiffs would request entry of default.

It is hoped that the Attorney General's Office would agree to accept service and appear for the new defendants, as there is no need to place them on duplicate tracks. If the Attorney General insists on service of a summons for the new defendant licensing officers, it should not be heard to come back – for a fourth time – and ask again for a briefing modification. Without acceptance of service by the Attorney General for the new defendants, Plaintiffs cannot agree to any extension beyond Rule 12's twenty-one day responsive period.[1]

I have worked repeatedly with opposing counsel to agree on a briefing schedule for this case. Time and again, however, I am surprised by new understandings: the initial withdrawal from the scheduling agreement, the request for extension to which I responded by significantly reducing our responsive time, the doubling of the page limit, and now the desire to dispense with our previous agreement (and the Court's order) altogether. But I must maintain my calendar, and my clients deserve to have their case considered without additional, indefinite delay.

Thank you in advance for your consideration. All parties will receive a copy of this letter simultaneously via facsimile transmission.

Sincerely,

Alan Gura

cc:     Anthony J. Tomari (via fax to 212.416.6075)
        Melissa-Jean Rotini (via fax to 914.995.3132)
        Vincent Gelardi (via fax to 914.253.0909)

---

[1] I had advised counsel that his post-*McDonald* defense would likely trigger the involvement of additional defendants with no net benefit to his position.

# EXHIBIT
# 5



**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

**ANDREW M. CUOMO**
ATTORNEY GENERAL

**LESLIE G. LEACH**
EXECUTIVE DEPUTY ATTORNEY GENERAL
DIVISION OF STATE COUNSEL

**JUNE DUFFY**
ASSISTANT ATTORNEY GENERAL IN CHARGE
LITIGATION BUREAU

**WRITER'S DIRECT DIAL (212) 416-8553**

November 5, 2010

**By Facsimile Transmission - (914) 390-4278**

Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re:  Alan Kachalsky, et al. v. , Susan Cacace, et al.
        10 CV 5413 (CS)

Dear Judge Seibel:

This office represents individual defendants Susan Cacace and Jeffrey A. Cohen, ("the State Defendants") in this matter. This letter is submitted pursuant to your Individual Practices 1 (A) and in response to plaintiffs' November 5, 2010 letter suggesting that the briefing schedule established for the original Complaint herein should cover the First Amended Complaint, filed on the court's ECF system after regular business hours on November, 4, 2010; the evening before defendants' dismissal motions were to be served. The First Amended Complaint includes new plaintiffs, new defendants and newly stated claims, and supersedes the original Complaint. Accordingly, there is no extant briefing schedule for motions concerning the First Amended Complaint, and our prior letter of this date noted that fact and suggested that any briefing schedule for the First Amended Complaint be suspended pending service, and reset following consultation among the parties. This continues to appear to be the most reasonable approach. If the parties are unable to agree on a briefing schedule for motions addressing the First Amended Complaint, it may become necessary to ask the Court's assistance in this regard.

Regarding plaintiffs' demand that this office accept service of the First Amended Complaint for the newly named defendants, and advising they will oppose establishing a briefing schedule

Page 2

unless we do so, we note that the Office of the Attorney General does not have general statutory authority to accept service for new, or additional parties. It is our general practice to be as accommodating as possible regarding service and scheduling, and this will continue to be our practice in this case.

Thank you for your attention to this matter. All parties will receive a copy of this letter simultaneously by facsimile transmission.

Very truly yours,

Anthony J. Tomari
Assistant Attorney General


Copy:
Melissa-Jean Rotini, Esq.
Assistant County Attorney, Of Counsel
Westchester County Attorney's Office
Attorneys for Defendant County of Westchester
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601
T: 914-995-3630
F: 914-995-3132

Vincent Gelardi
Gelardi & Randazzo
Attorneys For Plaintiffs
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
T: (914)-251-9603
F: 914-253-0909

Alan Gura, Esq.
Gura & Possessky, PLLC
Attorneys for Plaintiff
101 N. Columbus Street, Suite 405
Alexandria, Virginia 22314
T: (703) 835-9085
F: (703) 997-7665

```
*************** -COMM. JOURNAL- ******************* DATE NOV-05-2010 ***** TIME 16:29 ********

      MODE = MEMORY TRANSMISSION          START=NOV-05 16:27    END=NOV-05 16:29

      FILE NO.=928

STN NO.   COMM.   ABBR NO.    STATION NAME/TEL NO.    PAGES    DURATION

  001      OK       ■         919143904278           002/002  00:00:20
  002      OK       ■         919149953132           002/002  00:00:25
  003      OK       ■         919142530909           002/002  00:00:19


                                               -                    -

************************************* -        - ***** -          - *********
```

**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**
**ANDREW M. CUOMO**

# FACSIMILE TRANSMISSION

**DATE:** November 5, 2010     **NUMBER OF PAGES:** 4   (INCLUDING THIS PAGE)

**TO:** Hon. Judge Seibel      **FAX NO:** (914) 390-4278

Melissa-Jean Rotini, Esq.        (914) 995-3132
Assistant County Attorney, Of Counsel
Westchester County Attorney's Office
Attorneys for Defendant County of Westchester

Vincent Gelardi        (914) 253-0909
Gelardi & Randazzo
Attorneys For Plaintiffs

Alan Gura, Esq.        (703) 997-7665
Gura & Possessky, PLLC
Attorneys for Plaintiffs

**FROM:** Anthony Tomari, Assistant Attorney General

**ATTN:**

| |
|---|
| *IF THERE IS A PROBLEM WITH THIS TRANSMISSION, PLEASE CONTACT* **NAME:** Anthony J. Tomari, Assistant Attorney General **PHONE NO.**(212) 416-8553    **FAX NO.** (212-) 416-6075 **E-Mail:** Anthony.Tomari@oag.state.ny.us |

**CONFIDENTIAL**

The information contained in this facsimile is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this is strictly prohibited.

*IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR,*
*PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE. THANK YOU.*
*120 BROADWAY, NEW YORK, NY 10271-0332*

OAG 007 (12/98)

# EXHIBIT
# 6

Case 7:10-cv-05413-CS Document 34 Filed 02/23/11 Page 31 of 46
2010-11-05 18:05:25 (GMT) Alan Gura From: Alan Gura
To: Page 2 of 4
Case 7:10-cv-05413-CS Document 17 Filed 11/08/10 Page 1 of 4



# G&P

## GURA & POSSESSKY, P.L.L.C.

101 N. COLUMBUS STREET, SUITE 405
ALEXANDRIA, VIRGINIA 22314
TEL. 703.835.9085/FAX 703.997.7665

November 5, 2010

The Hon. Cathy Seibel
United States District Court Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

**VIA FAX TO 914.390.4278**

Re: *Kachalsky v. Cacase*
U.S. Dist. Ct., S.D.N.Y. 10-CV-5413-CS

Dear Judge Seibel:

The latest requests by Defendants to vacate the briefing schedule, apparently without meeting and conferring and without proposing an alternative, are not well-taken. These issues have already been resolved by the Court, and any additional delays at this point would be excessive and prejudicial to Plaintiffs.

It is important to recall the background against which these latest requests are made.

The parties originally agreed on a briefing schedule amongst themselves, and had prepared a joint letter submitting the same to the Court, but at the last moment, the Attorney General's Office withdrew its consent to that schedule because it suddenly decided that it would not consent to allowing Plaintiffs to file a motion for summary judgment. Subsequently, the parties appeared before the Court at the September 7 status conference, and a briefing schedule was readily agreed to.

During that status conference, as the Court may recall, the issue arose of the State Defendants' theory that the individual plaintiffs could not complain about their permit application denials, as these were denied prior to the Supreme Court's decision in *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Defendants suggested that the outcome of the applications would have been different had Plaintiffs applied post-*McDonald*.

Plaintiffs responded that the Defendants have not changed their practices in the wake of *McDonald*, the statute being challenged here has not been amended, and in fact, Defendants are invoking Plaintiff Kachalsky's denial to deny additional applications. Indeed, Defendants did not remedy their denials of the Plaintiffs' applications.

*Handwritten annotations:*

The Court understood the proposal in Mr. Tomassi's 10/8/10 [letter] as Mr. Gura does - i.e. the parties contemplated an amended complaint concurrent w/ the motion to dismiss. The Court also does not see why the representation of the new Defendants cannot be formalized quickly. The original Defendants shall file their motion to dismiss on or before 11/9/10. Once the new defendants are represented, they may "join the original Defendants' arguments by submitting a letter stating the same, + may add any additional arguments unique to them & the Amended Complaint [...]. This shall be done by 12/6/10. Plaintiffs may [...] oppose the Original Defendants' motion on whatever date they would like, when they should provide to me by letter, & the same is true for the new defendants opposition to the new defendants submissions of a contains new arguments, whatever [...] received. Plaintiff's counsel should be mindful, in deciding when not [...]

The Court has a long queue of motions + is unlikely to reach this case for some time in any event.

So Ordered
Cathy Seibel
USDJ 11/5/10

Defendants to reply 3 weeks with Plaintiffs reply on cross-motion 2 weeks thereafter.

The Hon. Cathy Seibel
Page Two

Plaintiffs proposed a solution, accepted by the Court and by all Defendants: that they move to amend the complaint to add parties denied post-*McDonald*. The Court granted the motion, giving Plaintiffs until the deadline for the motion to dismiss to amend the complaint. This arrangement was confirmed in the endorsed letter extending the deadline for both amendment and the motions to dismiss.

In other words, everyone understood and agreed that the amendment would relate primarily to the post-*McDonald* argument. And that is exactly what has now occurred: Plaintiffs added three additional co-Plaintiffs who were denied licenses to carry firearms post-*McDonald* by Westchester County licensing officials. There is no other substantive amendment to the complaint: it lays out the exact same theories and arguments laid out previously.

Accordingly, the alleged problems raised by Defendants are not new. The Court has already addressed them at the September 7 hearing, and in its order. Defendants would have had a point had Plaintiffs asserted new legal theories or involved third-party defendants (perhaps licensing officials from other counties). But there is nothing in the amended complaint that should alter Defendants' substantive arguments. Plaintiffs have adhered to the Court's order, and expect Defendants – who agreed to this arrangement – to now do the same.

Although Defendants asked for this amendment by asserting their post-*McDonald* defense, and they received their amendment within the time to which they had agreed, the prejudice to Plaintiffs and counsel flowing from any alteration of the schedule would be significant. On October 5, the Attorney General's Office requested Plaintiffs' consent for an additional month to file its brief, citing a need for multiple levels of internal review. I could not agree to a full month extension for two reasons: (1) the delay would be excessive – Rule 12 ordinarily provides for a 3 week responsive period, and we had already agreed to 14 weeks; and (2) it would start our response time in the middle of an important, long-planned overseas trip that could not be rescheduled.

Notwithstanding the Attorney General's Office's previous lack of reciprocal courtesy on the summary judgment schedule, to accommodate that office, I agreed to a compromise that effectively cut our response time in half: the Attorney General's Office would serve its brief on November 5 instead of October 22, and our opposition would be extended from November 12 to the 15th. The Court subsequently adopted this modified schedule.

At no point during the conversations relating to this last modification did counsel indicate that he would want additional pages. But last week, counsel obtained permission to double the size of his brief. So we face the prospect of having agreed to half the time – to respond to double the brief, and we are already looking at having a responsive pleading served on November 5, for a case filed July 15 – 92 days versus Rule 12's 21-day standard.

The Hon. Cathy Seibel
Page Three

And now, even though we had an agreement that the amendment could be served concurrently with the motion to dismiss, given the purpose of the amendment and the fact it raises nothing new, Defendants ask that this delayed schedule is to be dispensed with indefinitely. They do not propose a new schedule. The request is dilatory and lacks any basis.

Also not well-taken is the County's assertion that it needs to be served with the amended complaint. The County has appeared in this case and counsel for the county is receiving electronic notice of all filings. Obviously the County has received the amended complaint, which asserts nothing new against the County – just that it applied the same practice and policy against the new plaintiffs, just as it applies this practice and policy against everyone. If the County would ignore the amended complaint, Plaintiffs would request entry of default.

It is hoped that the Attorney General's Office would agree to accept service and appear for the new defendants, as there is no need to place them on duplicate tracks. If the Attorney General insists on service of a summons for the new defendant licensing officers, it should not be heard to come back -- for a fourth time – and ask again for a briefing modification. Without acceptance of service by the Attorney General for the new defendants, Plaintiffs cannot agree to any extension beyond Rule 12's twenty-one day responsive period.[1]

I have worked repeatedly with opposing counsel to agree on a briefing schedule for this case. Time and again, however, I am surprised by new understandings: the initial withdrawal from the scheduling agreement, the request for extension to which I responded by significantly reducing our responsive time, the doubling of the page limit, and now the desire to dispense with our previous agreement (and the Court's order) altogether. But I must maintain my calendar, and my clients deserve to have their case considered without additional, indefinite delay.

Thank you in advance for your consideration. All parties will receive a copy of this letter simultaneously via facsimile transmission.

Sincerely,

Alan Gura

cc:    Anthony J. Tomari (via fax to 212.416.6075)
       Melissa-Jean Rotini (via fax to 914.995.3132)
       Vincent Gelardi (via fax to 914.253.0909)

---

[1] I had advised counsel that his post-*McDonald* defense would likely trigger the involvement of additional defendants with no net benefit to his position.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

ALAN KACHALSKY, et al.,          :        Case No. 10-CV-05413-CS
                                 :
            Plaintiffs,          :
                                 :
    v.                           :
                                 :
SUSAN CACACE,                    :
                                 :
            Defendants.          :
                                 :
-----------------------------------------------------X

NOTICE OF MOTION FOR SUMMARY JUDGMENT

**PLEASE TAKE NOTICE** that pursuant to the Court's orders, local rules, and Fed. R. Civ. Proc. 56, the undersigned will move on behalf of Plaintiffs, Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance, and Second Amendment Foundation, Inc., before the Honorable Judge Cathy Seibel in courtroom 218, at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, at a time and date set by the Court, for a summary judgment in their favor and against Defendants, and for any other further relief as may be deemed just and appropriate.

The motion will be based upon this notice, the Memorandum of Law dated January 5, any

responsive pleadings, the exhibits, declarations, separate statement of undisputed material fact,

and any other material in the Court's files or of which the Court may take judicial notice.

Dated: January 5, 2011                          Respectfully submitted,

Alan Gura*                                      Vincent Gelardi
Gura & Possessky, PLLC                          Gelardi & Randazzo
101 N. Columbus Street, Suite 405               800 Westchester Avenue, Suite S-608
Alexandria, VA 22314                            Rye Brook, NY 10573
703.835.9085/Fax 703.997.7665                   914.251.0603/Fax 914.253.0909
Lead Counsel                                    Local Counsel
*Admitted Pro Hac Vice

By: _____
Alan Gura

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | DECLARATION OF |
| | : | ALAN KACHALSKY |
| v. | : | |
| | : | |
| SUSAN CACACE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

----------------------------------------------------X

## DECLARATION OF ALAN KACHALSKY

I, Alan Kachalsky, am competent to state and declare the following based on my personal knowledge:

1.      I reside in Westchester County. I am over 21 years old, of good moral character, have never been convicted of a felony or serious crime, have never been mentally ill or confined to any institution, have never had a firearms license revoked or been the subject of a family court order, and have completed a firearms safety course.

2.      I applied for a handgun carry license pursuant to New York Penal Code § 400.00. A true and correct copy of Defendant Susan Cacase's decision denying my application is attached hereto as Exhibit A.

3.      I would reapply for a handgun carry license, but I refrain from doing so because in all likelihood I cannot satisfy the "proper cause" standard of Penal Code § 400.00(2)(f).

4.      I would carry a functional handgun in public for self-defense, but refrain from

doing so because I fear arrest, prosecution, fine, and imprisonment for lack of a

license to carry a handgun.

I declare under penalty of perjury that the foregoing is true and correct.

This the $\big/$ day of January, 2011.

Alan Kachalsky

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | DECLARATION OF |
| | : | ANNA MARCUCCI-NANCE |
| v. | : | |
| | : | |
| SUSAN CACACE, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ------------------------------------------------X | | |

## DECLARATION OF ANNA MARCUCCI-NANCE

I, Anna Marcucci-Nance, am competent to state and declare the following based on my personal knowledge:

1. I reside in Westchester County. I am over 21 years old, of good moral character, have never been convicted of a felony or serious crime, have never been mentally ill or confined to any institution, have never had a firearms license revoked or been the subject of a family court order, and have completed a firearms safety course.

2. I am licensed to have a private handgun for the limited purpose of target shooting. I applied to have this license amended to "full carry" pursuant to New York Penal Code § 400.00.

3. A true and correct copy of the Westchester County Police Department recommendation that my application be denied is attached hereto as Exhibit G.

4.    A true and correct copy of Defendant Robert Holdman's decision denying my
      carry permit amendment application is attached hereto as Exhibit H.

5.    I would reapply for a handgun carry license, but I refrain from doing so because in
      all likelihood I cannot satisfy the "proper cause" standard of Penal Code §
      400.00(2)(f).

6.    I would carry a functional handgun in public for self-defense, but refrain from
      doing so because I fear arrest, prosecution, fine, and imprisonment for lack of a
      license to carry a handgun.

I declare under penalty of perjury that the foregoing is true and correct.

This the 3rd day of January, 2011.

Anna Marcucci-Nance

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | DECLARATION OF |
| | : | ERIC DETMER |
| v. | : | |
| | : | |
| SUSAN CACACE, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ----------------------------------------------------X | | |

## DECLARATION OF ERIC DETMER

I, Eric Detmer, am competent to state and declare the following based on my personal knowledge:

1.  I reside in Westchester County. I am over 21 years old, of good moral character, have never been convicted of a felony or serious crime, have never been mentally ill or confined to any institution, have never had a firearms license revoked or been the subject of a family court order, and have been honorably discharged from the Coast Guard, where I received extensive firearms training and qualification.

2.  I serve in the United States Coast Guard Reserve, for one weekend each month and two full weeks each year. Since 2004, I have been a qualified Boarding Team Member. Although lacking authority to arrest, I carry a .40 caliber handgun while on duty with the Coast Guard, which I surrender each time upon leaving duty. I qualify semi-annually with my handgun, regularly taking a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training.

3.    I am licensed to have a private handgun for the limited purposes of target shooting and hunting. I applied to have this license amended to "full carry" pursuant to New York Penal Code § 400.00.

4.    A true and correct copy of the Westchester County Police Department recommendation that my application be denied is attached hereto as Exhibit C.

5.    A true and correct copy of Defendant Albert Lorenzo's decision denying my carry permit amendment application is attached hereto as Exhibit D.

6.    I would reapply for a handgun carry license, but I refrain from doing so because in all likelihood I cannot satisfy the "proper cause" standard of Penal Code § 400.00(2)(f).

7.    I would carry a functional handgun in public for self-defense, but refrain from doing so because I fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun.

I declare under penalty of perjury that the foregoing is true and correct.

This the 3rd day of January, 2011.

_____
Eric Detmer

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | DECLARATION OF |
| | : | CHRISTINA NIKOLOV |
| v. | : | |
| | : | |
| SUSAN CACACE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------X

## DECLARATION OF CHRISTINA NIKOLOV

I, Christina Nikolov, am competent to state and declare the following based on my personal knowledge:

1. I reside in Westchester County. I am over 21 years old, of good moral character, have never been convicted of a felony or serious crime, have never been mentally ill or confined to any institution, have never had a firearms license revoked or been the subject of a family court order, and have completed a firearms safety course.

2. I applied for a handgun carry license pursuant to New York Penal Code § 400.00. A true and correct copy of Defendant Jeffrey A. Cohen's decision denying my application is attached hereto as Exhibit B.

3. I would reapply for a handgun carry license, but I refrain from doing so because in all likelihood I cannot satisfy the "proper cause" standard of Penal Code § 400.00(2)(f).

4.      I would carry a functional handgun in public for self-defense, but refrain from

doing so because I fear arrest, prosecution, fine, and imprisonment for lack of a

license to carry a handgun.

I declare under penalty of perjury that the foregoing is true and correct.

This the 1st day of January, 2011.

*Christina Nikolov*
Christina Nikolov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | DECLARATION OF |
| | : | JOHNNIE NANCE |
| v. | : | |
| | : | |
| SUSAN CACACE, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ---------------------------------------------------------X | | |

## DECLARATION OF JOHNNIE NANCE

I, Johnnie Nance, am competent to state and declare the following based on my personal knowledge:

1. I reside in Westchester County. I am over 21 years old, of good moral character, have never been convicted of a felony or serious crime, have never been mentally ill or confined to any institution, have never had a firearms license revoked or been the subject of a family court order, and have completed a firearms safety course.

2. I am licensed to have a private handgun for the limited purpose of target shooting. I applied to have this license amended to "full carry" pursuant to New York Penal Code § 400.00.

3. A true and correct copy of the Westchester County Police Department recommendation that my application be denied is attached hereto as Exhibit E.

4.  A true and correct copy of Defendant Robert Holdman's decision denying my carry permit amendment application is attached hereto as Exhibit F.

5.  I would reapply for a handgun carry license, but I refrain from doing so because in all likelihood I cannot satisfy the "proper cause" standard of Penal Code § 400.00(2)(f).

6.  I would carry a functional handgun in public for self-defense, but refrain from doing so because I fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun.

I declare under penalty of perjury that the foregoing is true and correct.

This the _3_ day of January, 2011.

Johnnie Nance

APPX. 83

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | DECLARATION OF |
| | : | JULIANNE VERSNEL |
| v. | : | |
| | : | |
| SUSAN CACACE, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| ---------------------------------------------------X | | |

DECLARATION OF JULIANNE VERSNEL

I, Julianne Versnel, am competent to state, and testify to the following based on my personal knowledge:

1.      I am the Director of Operations for the Second Amendment Foundation. Inc. ("SAF").

2.      SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue. Washington. SAF has over 650,000 members and supporters nationwide. including many in Westchester County, New York. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

3.      SAF expends its resources encouraging exercise of the right to bear arms, and advising and educating their members, supporters, and the general public about the policies with respect to the public carrying of handguns in New York. The issues raised by, and consequences

of, Defendants' policies, are of great interest to SAF's constituency. Defendants' policies regularly cause the expenditure of resources by SAF as people turn to it for advice and information.

4.      Defendants' policies bar SAF's members and supporters from obtaining permits to carry handguns.

5.      SAF's members and supporters regularly carry functional handguns in public for self-defense where allowed. SAF's members and supporters in New York would do so, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the ___ day of January, 2011.

Julianne Versnel

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | SEPARATE STATEMENT OF |
| | : | UNDISPUTED MATERIAL FACTS |
| v. | : | IN SUPPORT OF PLAINTIFFS' MOTION |
| | : | FOR SUMMARY JUDGMENT |
| SUSAN CACACE, | : | [L.R. 56.1] |
| | : | |
| Defendants. | : | |
| | : | |

---------------------------------------------------X

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**COME NOW** the Plaintiffs, Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie

Nance, Anna Marcucci-Nance, and Second Amendment Foundation, Inc., by and through

undersigned counsel, and submit their Separate Statement of Undisputed Material Facts in

Support of their Motion for Summary Judgment.

Dated: January 5, 2011

Respectfully submitted,

Alan Gura*
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
Lead Counsel
*Admitted Pro Hac Vice

Vincent Gelardi
Gelardi & Randazzo
800 Westchester Avenue, Suite S-608
Rye Brook, NY 10573
914.251.0603/Fax 914.253.0909
Local Counsel

By: _____
Alan Gura

Attorneys for Plaintiffs

| Fact | | Support | |
|---|---|---|---|
| 1. | Unlicensed possession of any firearm is a class A misdemeanor. | 1. | New York Penal Law § 265.01(1). |
| 2. | Unlicensed possession of a loaded firearm outside one's home or place of business constitutes "Criminal Possession of a Firearm in the Second Degree," a class C felony. | 2. | New York Penal Law § 265.03(3). |
| 3. | For most civilians who are not otherwise barred from possessing and carrying weapons, the only theoretically-available permit to carry handguns in public for self-defense is a permit "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof." | 3. | New York Penal Law §§ 265.20, 400.00(2)(f). |
| 4. | Plaintiffs Kachalsky, Nikolov, Detmer, Nance, and Marcucci-Nance, all reside in Westchester County. Each (a) is over 21 years old, (b) of good moral character, (c) has never been convicted of a felony or serious crime, (d) has never been mentally ill or confined to any institution, (e) has not had a license revoked or been the subject of a family court order, and (f) with exception of Plaintiff Detmer, who is qualified under subdivision 400.00.1(i), has completed a firearms safety course. | 4. | Kachalsky Decl., ¶ 1; Nikolov Decl., ¶ 1; Detmer Decl., ¶¶ 1-2; Nance Decl., ¶ 1; Marcucci-Nance Decl., ¶ 1. |
| 5. | Because Plaintiffs reside in Westchester County, their applications for gun carry licenses are passed on by state judges acting as licensing officers. | 5. | N.Y. Penal Law § 265.00(10) |
| 6. | Kachalsky's application for a handgun carry license pursuant was referred for decision to Defendant Susan Cacase, "in [her] capacity as handgun licensing officer for the County of Westchester." | 6. | Exh. A. |

| **Fact** | **Support** |
|---|---|
| 7.    Defendant Westchester County recommended that Kachalsky's carry permit application be denied. | 7.    Exh. A. |
| 8.    On October 8, 2008, Cacace denied Kachalsky's permit application, offering that Kachalsky "has not stated any facts which would demonstrate a need for self protection distinguishable from that of the general public. Accordingly, Cacace found Kachalsky did not satisfy the requirement of New York Penal Law § 400.00(2)(f) that "proper cause" be shown for issuance of the permit. | 8.    Exh. A. |
| 9.    Kachalsky would apply again for a carry license, but refrains from doing so because any such application would likely be a futile act, as in all likelihood, he cannot satisfy the proper cause standard, which has already been applied to him. | 9.    Kachalsky Decl., ¶ 3 |
| 10.    Plaintiff Christina Nikolov's application for a handgun carry license pursuant to New York Penal Law § 400.00 was referred to Defendant Jeffrey A. Cohen "in [his] capacity as handgun licensing officer for Westchester County." | 10.    Exh. B. |

**Fact**                                                      **Support**

11.   On October 1, 2009, Cohen denied            11.   Exh. B.
      Nikolov's permit application. Reviewing
      the application and Defendant County's
      investigation of Nikolov, Cohen offered
      that "conspicuously absent . . . is the
      report of any type of threat to her own
      safety anywhere. . . it cannot be said that
      the applicant has demonstrated that she has
      a special need for self-protection
      distinguishable from that of the general
      public; therefore, her application for a
      firearm license for a full carry permit
      must be denied.

12.   Plaintiff Eric Detmer serves in the          12.   Detmer Decl., ¶ 2
      United States Coast Guard, for one
      weekend each month and two full weeks
      each year. Since 2004, Detmer has been
      a qualified Boarding Team Member.
      Although lacking authority to arrest,
      Detmer carries a .40 caliber handgun while
      on duty with the Coast Guard, which he
      surrenders each time upon leaving duty.
      Detmer qualifies semi-annually with his
      handgun, regularly taking a non-firing
      judgmental pistol course, a firing tactical
      pistol course, and use-of-force training.

13.   Detmer is licensed to have a private         13.   Detmer Decl., ¶ 3.
      handgun for the limited purpose of target
      shooting and hunting. Pursuant to New
      York Penal Law § 400.00, Detmer
      applied to amend his license for the
      purpose of "full carry."

| Fact | | Support | |
|---|---|---|---|
| 14. | On September 3, 2010, Defendant Westchester County recommended that the application be disapproved, as Detmer's need to enforce laws while off-duty was "speculative," and Detmer "has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry firearm license" and "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." | 14. | Exh. C. |
| 15. | On September 27, 2010, Defendant Lorenzo denied Detmer's application, stating, "At this time, I see no justification for a full carry permit." | 15. | Exh. D. |
| 16. | Plaintiff Johnnie Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Law § 400.00, Nance applied to amend his license for the purpose of "full carry" for self-defense. | 16. | Nance Decl., ¶ 2 |
| 17. | Or about August 11, 2010, Defendant Westchester County recommended that Nance's application be disapproved, as "No safety related concerns have been cited by the applicant," and Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." | 17. | Exh. E |

**Fact**                                                      **Support**

18.    On September 9, 2010, Defendant          18.    Exh. F.
       Holdman denied Nance's application for
       a carry permit. Holdman cited Defendant
       County's recommendation for denial, and
       its finding that Nance had not
       demonstrated any exceptional need for
       the permit. Holdman further stated,
       "The applicant has not provided the court
       with any information that he faces any
       danger of any kind that would necessitate
       the issuance of a full carry firearm license;
       or has not demonstrated a need for self
       protection distinguishable from that of the
       general public or of other persons similarly
       situated."

19.    Citing the denial of Kachalsky's          19.    Exh. F
       application, Holdman found Nance did
       not demonstrate "proper cause" within the
       meaning of the governing provision.
       Holdman continued: "In sum, the applicant
       has not shown sufficient circumstances to
       distinguish his need from those of countless
       others, nor has he demonstrated a specific
       need for self protection distinguishable
       from that of the general community or of
       persons engaged in the same business or
       profession."

20.    Plaintiff Anna Marcucci-Nance is licensed  20.    Marcucci-Nance Decl., ¶ 2.
       to have a private handgun for the limited
       purpose of target shooting. Pursuant to
       New York Penal Law § 400.00, Marcucci-
       Nance applied to amend her license for the
       purpose of "full carry" for self-defense,

| **Fact** | | **Support** | |
|---|---|---|---|
| 21. | On August 11, 2010, Defendant Westchester County recommended that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Marcucci-Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." | 21. | Exh. G |
| 22. | On September 9, 2010, Holdman denied Marcucci-Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Marcucci-Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that she faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." | 22. | Exh. H |
| 23. | Citing the denial of Kachalsky's application, Holdman found Marcucci-Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish her need from those of countless others, nor has she demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession." | 23. | Exh. H |
| 24. | Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. | 24. | Versnel Decl., ¶ 2 |

| Fact | | Support |
|---|---|---|
| 25. | SAF has over 650,000 members and supporters nationwide, including many in Westchester County, New York. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. | 25. | Versnel Decl., ¶ 2 |
| 26. | SAF expends its resources encouraging exercise of the right to bear arms, and advising and educating their members, supporters, and the general public about the policies with respect to the public carrying of handguns in New York. The issues raised by, and consequences of, Defendants' policies, are of great interest to SAF's constituency. Defendants' policies regularly cause the expenditure of resources by SAF as people turn to it for advice and information. | 26. | Versnel Decl., ¶ 3 |
| 27. | Defendants' policies bar SAF's members and supporters from obtaining permits to carry handguns. | 27. | Versnel Decl., ¶ 4 |
| 28. | Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance, and the members and supporters of plaintiff SAF, would carry functional handguns in public for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun. | 28. | Kachalsky Decl., ¶ 4; Nikolov Decl., ¶ 4; Detmer Decl., ¶ 6; Nance Decl., ¶ 6; Marcucci-Nance Decl., ¶ 6; Versnel Decl., ¶ 5. |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
Alan Kachalsky, Christina Nikolov, Eric Detmer,      :
Johnnie Nance, Anna Marcucci-Nance,                  :
and  Second Amendment Foundation, Inc.,              :
                                                     :
                Plaintiffs,             : **Civil Action Number: 10-cv-5413**
                                                     : **(Hon. Cathy Seibel)**
-against-                                            :
                                                     :
Susan Cacace, Jeffrey A. Cohen,                      :
Albert Lorenzo, Robert K. Holdman                    :
and County of Westchester,                           :
                                                     :
                Defendants.             :
-------------------------------------------------------------X

## NOTICE OF CROSS-MOTION FOR SUMMARY JUDGMENT

**PLEASE TAKE NOTICE** that, upon the Memorandum of Law dated January

26, 2011; the State Defendants' Rule 56.1 Statement of Undisputed Material Facts ("State

Defs. 56.1"); the Declaration of Philip Cook ("Cook Decl.") and the exhibits thereto; the

Declaration of Franklin E. Zimring ("Zimring Decl."); the Declaration of Susan Cacace

("Cacace Decl."); the Declaration of Jeffrey A. Cohen ("Cohen Decl.");  the Declaration

of Albert Lorenzo ("Lorenzo Decl."); the Declaration of Robert K. Holdman, ("Holdman

Decl."); the Declaration of the Hon. David R. Roefaro, Mayor of Utica ("Utica Decl.");

the Declaration of the Hon. Stephanie A. Miner, Mayor of Syracuse ("Syracuse

Declaration"); the Declaration of State Police Col. Thomas L. Fazio ("Fazio Decl."); the

Declaration of State Police Sgt. James Sherman and the exhibits thereto ("Sherman

Decl."); the Declaration of New York City Police Department Deputy Inspector Andrew

Lunetta ("Lunetta Decl."); the Declaration of Westchester County Pistol Licensing Unit

Commanding Officer Bruce Bellom ("Bellom Decl"); the Declaration of Marge Cohen,

New York State Division of Criminal Justice Service and the exhibits thereto ("Cohen

Decl."); and the Declaration of Assistant Attorney General Anthony J. Tomari ("Tomari

Decl.") and the exhibits thereto, State Defendants will cross-move for summary

judgment, before the Honorable Cathy Seibel, at a time and place to be determined by the

Court, granting declaratory judgment that the provisions of New York Penal Law §

400.00(2)(f) are constitutional, dismissing plaintiffs' First Amended Complaint, and this

action, in its entirety as against the State Defendants, and granting such other and further

relief as the Court deems just, proper and appropriate.

    **PLEASE BE FURTHER ADVISED** that pursuant to the Federal Rules of Civil

Procedure, and Order of this Court, opposition papers to this motion, if any, must be

served on counsel for the State Defendants by February 9, 2011.  Reply papers are to be

served by February 23, 2011.

Dated:  New York, New York
       January 26, 2011

                          ERIC T. SCHNEIDERMAN
                          Attorney General of the
                           State of New York
                          <u>Attorney for State Defendants</u>

                          By:
                          ANTHONY J. TOMARI
                          MONICA CONNELL
                          Assistant Attorney General
                          120 Broadway, 24th Floor
                          New York, New York 10271
                          (212) 416-8553

To:    Alan Gura, Esq.
        Gura & Possessky, PLLC

        Melissa-Jean Rotini, Esq.
        Westchester County Attorney's Office

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
Alan Kachalsky, Christina Nikolov, Eric Detmer,    :
Johnnie Nance, Anna Marcucci-Nance,    :
and Second Amendment Foundation, Inc.,    :
    :
                    Plaintiffs,    :    **Civil Action Number: 10-cv-5413**
    :    **(Hon. Cathy Seibel)**
-against-    :
    :
Susan Cacace, Jeffrey A. Cohen,    :
Albert Lorenzo, Robert K. Holdman    :
and County of Westchester,    :
    :
                    Defendants.    :
-------------------------------------------------------------X

**STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT**
**OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

**AND**

**STATE DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN**
**SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1 of the Civil Rules of the United States District Courts for the

Eastern and Southern Districts of New York, State Defendants Susan Cacace, Jeffrey A. Cohen,

Albert Lorenzo, and Robert K. Holdman, by their attorney, ERIC T. SCHNEIDERMAN,

Attorney General of the State of New York, submit the following response to the Plaintiffs'

Statement of Undisputed Material Facts in Support Plaintiff's Motion for Summary Judgment.

State Defendants also submit the State Defendants' Statement of Undisputed Material Facts In

Support Of State Defendants' Motion for Summary Judgment. Citations to exhibits in the State

Defendants' Statement are to those annexed to the declarations submitted in support of the State

Defendants' Motion for Summary Judgment.

Plaintiffs have moved for summary judgment before any discovery has taken place in this action, before a ruling on State Defendants' motion to dismiss, and before answers have been submitted. As a result, in response to some of Plaintiffs' asserted statements of undisputed facts, State Defendants must state that they can neither concede nor dispute the statement because of the lack of discovery. State Defendants submit that in those instances where they cannot state whether they dispute a statement, the asserted facts are not material to State Defendants' Motion for Summary Judgment. Plaintiffs' fact statements are set forth below with their citations to the right, in the same format used in Plaintiffs' 56.1 statement. State Defendants' responses are set forth following each of Plaintiffs' numbered statements, and bear the same paragraph numbers as used by Plaintiffs in their Statement of Undisputed Material Facts.

## STATE DEFENDANTS' RESPONSES TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

1. Unlicensed possession of any firearm is a class A misdemeanor.

1. New York Penal Law § 265.01(1).

State Defendants' Response

1.    Disputed. Penal Law 265.01 does not render the carrying of any and all firearms a class-A misdemeanor. Penal Law § 265.00(3) defines "firearm" for the purposes of 265.01 to mean "(a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon." Thus, it is a Class A misdemeanor under 265.01 to carry a handgun.

2

| 2. Unlicensed possession of a loaded firearm outside one's home or place of business constitutes "Criminal Possession of a Firearm in the Second Degree," a class C felony. | 2. New York Penal Law § 265.03(3). |

State Defendants' Response

2.    Disputed in part.  Admitted that Penal Law 265.03(3) provides that a "person is guilty of criminal possession of a weapon in the second degree when…such person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business." Criminal possession of a weapon in the second degree is a class C  felony but the definition of "firearm in this section is as set out in Penal Law § 265.00(3) and does not include all firearms.

| 3. For most civilians who are not otherwise barred from possessing carrying weapons, the only theoretically available permit to carry handguns in public for self-defense is a permit "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof." | 3. New York Penal Law §§ 265.20, and 400.00(2)(f). |

State Defendants' Response

3.    Disputed in part. Penal Law § 265.00(3) defines "firearm" for the purposes of 265.01 to mean "(a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than

3

twenty-six inches; or (e) an assault weapon. " Thus, it is a Class A misdemeanor under 265.01 to carry a handgun or long gun modified to be easily concealable or an assault weapon. There are different types of licenses set out in Penal Law 400.00(2), any of which are available to the public upon satisfaction for the requirements of a license.

| | |
|---|---|
| 4. Plaintiffs Kachalsky, Nikolov, Detmer, Nance, and Marcucci-Nance, all reside in Westchester County. Each (a) is over 21 years old, (b) of good moral character, ¶ 1. (c) has never been convicted of a felony or serious crime, (d) has never been mentally ill or confined to any institution, (e) has not had a license revoked or been the subject of a family court order, and (f) with exception of Plaintiff Detmer, who is qualified under subdivision 400.00.1(i), has completed a firearms safety course. | 4. Kachalsky Decl., ¶ 1; Nikolov Decl., ¶ 1; Detmer Decl., ¶¶ 1-2; Nance Decl., ¶ 1; Marcucci-Nance Decl., |

State Defendants' Response

4.      Disputed in part. State Defendants (a) admit that each of the individual Plaintiffs is over 21 years of age; (b) deny sufficient information to assess whether each Plaintiff is of good moral character as Plaintiffs' motion for summary judgment is made prior to discovery; (c) admit that at the time of their respective applications, the Westchester County Police investigation did not reveal that any of the Plaintiffs had been convicted of a felony or serious crime although Plaintiff Kachalsky had been arrested for an offense, the details of which are set out in his application (see Tomari Decl., Ex. F), but otherwise deny sufficient information to confirm or deny Plaintiffs' criminal history; (d) admit that at the time of their respective applications the Westchester County Police investigation did not reveal any "derogatory information" from the State Office of Mental Hygiene regarding any Plaintiff but otherwise deny sufficient information to confirm or deny Plaintiffs' assertion on this point; (e) deny sufficient information to confirm or

4

deny Plaintiffs' assertion that Plaintiffs have never had a license revoked or been subject to a

family court order; and (f)  admit that Plaintiffs had undergone the requisite training at the time

of their respective license applications but otherwise deny sufficient information to confirm or

deny Plaintiffs' assertions.


| 5. Because Plaintiffs reside in Westchester County, their applications for gun carry licenses are passed on by state judges acting as licensing officers. | 5. N.Y. Penal Law § 265.00(10) |
|---|---|

State Defendants' Response

     5.     Undisputed.


| 6. Kachalsky's application for a handgun carry license pursuant was referred for decision to Defendant Susan Cacase, [sic] "in [her] capacity as handgun licensing officer for the County of Westchester." | 6. Exh. A. |
|---|---|

State Defendants' Response

     6.     Undisputed.


| 7. Defendant Westchester County recommended that Kachalsky's carry permit application be denied. | 7. Exh. A. |
|---|---|

State Defendants' Response

     7.     Undisputed that the Department of Public Safety, Westchester County Police

recommended denial of Kachalsky's application for a "full carry" permit.

8. On October 8, 2008, Cacace denied          8. Exh. A.
Kachalsky's permit application,
offering that Kachalsky "has not stated
any facts which would demonstrate a
need for self protection distinguishable
from that of the general public.
Accordingly, Cacace found Kachalsky
did not satisfy the requirement of New
York Penal Law § 400.00(2)(f) that
"proper cause" be shown for issuance
of the permit.

State Defendants' Response

      8.     Undisputed that by decision and order dated October 8, 2008, Index No. 3/2008,

Judge Cacace denied Kachalsky's applications for the reasons stated therein.

9. Kachalsky would apply again for a          9. Kachalsky Decl., ¶ 3
carry license, but refrains from doing
so because any such application would
likely be a futile act, as in all likelihood,
he cannot satisfy the proper cause
standard, which has already been applied
to him.

State Defendants' Response

      9.     Disputed in part.  State Defendants cannot dispute or concede the result of any

future applications for licenses by Plaintiff as the same calls for speculation.  State Defendants

admit that Plaintiff Kachalsky has stated that he has not re-applied for a license because he

believes that the same is "likely be a futile act, as in all likelihood, he cannot satisfy the proper

cause standard, which has already been applied to him".  State Defendants cannot state what the

result of Plaintiff Kachalsky's future application for firearms would be "in all likelihood" but do

not admit that applications for the same would be "futile".

6

10. Plaintiff Christina Nikolov's application 10. Exh. B.
for a handgun carry license pursuant to
New York Penal Law § 400.00 was
referred to Defendant Jeffrey A. Cohen
"in [his] capacity as handgun licensing
officer for Westchester County."

State Defendants' Response

      10.     Undisputed.


11. On October 1, 2009, Cohen denied 11. Exh. B.
Nikolov's permit application. Reviewing
the application and Defendant County's
investigation of Nikolov, Cohen offered
that "conspicuously absent . . . is the
report of any type of threat to her own
safety anywhere. . . it cannot be said that
the applicant has demonstrated that she has
a special need for self-protection
distinguishable from that of the general
public; therefore, her application for a
firearm license for a full carry permit
must be denied.

State Defendants' Response

      11.     Undisputed that by decision and order dated October 1, 2009, which was filed and

entered on October 2, 2009, Judge Cohen denied Nikolov's application for the reasons set forth

therein.


12. Plaintiff Eric Detmer serves in the 12. Detmer Decl., ¶ 2
United States Coast Guard, for one
weekend each month and two full weeks
each year. Since 2004, Detmer has been
a qualified Boarding Team Member.
Although lacking authority to arrest,
Detmer carries a .40 caliber handgun while
on duty with the Coast Guard, which he
surrenders each time upon leaving duty.

7

Detmer qualifies semi-annually with his
handgun, regularly taking a non-firing
judgmental pistol course, a firing tactical
pistol course, and use-of-force training.

State Defendants' Response

12.     Disputed in part.  State Defendants admit that Plaintiff Detmer supplied the

Westchester County Police with notarized documentation attesting to the facts relating to his

service in the U.S. Coast Guard as set forth in the Westchester County Police investigation report

(Tomari Decl., Exhibit H)  but State Defendants otherwise deny sufficient information to

respond to this statement.

| | |
|---|---|
| 13. Detmer is licensed to have a private handgun for the limited purpose of target shooting and hunting. Pursuant to New York Penal Law § 400.00, Detmer applied to amend his license for the purpose of "full carry." | 13. Detmer Decl., ¶ 3. |

State Defendants' Response

13.     Undisputed that Detmer is licensed to carry a handgun in connection with target

shooting activities as set forth by the Westchester County Police investigation (Tomari Decl.,

Exhibit H) and applied to have a "full carry" unrestricted license pursuant to 400.00(2)(f).  State

Defendants otherwise deny sufficient information to respond to this statement.

| | |
|---|---|
| 14. On September 3, 2010, Defendant Westchester County recommended that the application be disapproved, as Detmer's need to enforce laws while off duty was "speculative," and Detmer "has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry | 14. Exh. C. |

8

firearm license" and "has not demonstrated
an exceptional need for self protection
distinguishable from that of the general
public."

State Defendants' Response

14.    Undisputed that by letter dated September 3, 2010, Westchester County Police

recommended that Detmer's application be denied for the reasons set forth therein.  (Tomari

Decl., Exhibit H).

15. On September 27, 2010, Defendant          15. Exh. D.
Lorenzo denied Detmer's application,
stating, "At this time, I see no justification
for a full carry permit."

State Defendants' Response

15.    Undisputed.

16. Plaintiff Johnnie Nance is licensed to     16. Nance Decl., ¶ 2
have a private handgun for the limited
purpose of target shooting. Pursuant to
New York Penal Law § 400.00, Nance
applied to amend his license for the
purpose of "full carry" for self-defense.

State Defendants' Response

16.    Disputed in Part.  Admitted that Plaintiff Johnny Nance does have a restricted

license to carry a handgun pursuant to Penal Law § 400.00(2)(f) and did file an application to

amend his license seeking an unrestricted license under that section, but State Defendants deny

that he sought the same for "self defense".  State Defendants refer to the Westchester County

Police report regarding Plaintiff Nance which documents that Nance had cited "no safety-related

concerns" and instead had indicated that he wanted to amend his license so that he could become

9

involved in competitive shooting and assist his wife in teaching and promoting safe shooting at

National Rifle Association-sponsored events and that his existing license would already permit

such uses.  Plaintiff's actual application form also documents that he did not present self-defense

as a basis for his request.  Tomari Decl., Exhibit I.

| | |
|---|---|
| 17. Or about August 11, 2010, Defendant Westchester County recommended that Nance's application be disapproved, as "No safety related concerns have been cited by the applicant," and Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." | 17. Exh. E |

State Defendants' Response

17.     It is undisputed that the Westchester County Police recommended the denial of

Plaintiff Nance's request to amend his license for the reasons stated in the written report.  Tomari

Decl., Exhibit I.

| | |
|---|---|
| 18. On September 9, 2010, Defendant Holdman denied Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." | 18. Exh. F. |

10

State Defendants' Response

18.     Disputed in part. It is undisputed that by decision dated September 9, 2010 and entered on September 10, 2010, Judge Holdman issued an order regarding Plaintiff Nance's application, but the application was for an amendment of Plaintiff Nance's license, not an original application for a license and the application was denied based upon the reasons set forth therein.  Tomari Decl. Exhibit Q.


19. Citing the denial of Kachalsky's          19. Exh. F
application, Holdman found Nance did
not demonstrate "proper cause" within the
meaning of the governing provision.
Holdman continued: "In sum, the applicant
has not shown sufficient circumstances to
distinguish his need from those of countless
others, nor has he demonstrated a specific
need for self protection distinguishable
from that of the general community or of
persons engaged in the same business or
profession."

State Defendants' Response

19.     Disputed in part. It is undisputed that by decision dated September 9, 2010 and entered on September 10, 2010, Judge Holdman issued an order denying Plaintiff Nance's application to amend his license based upon the reasons set forth therein.  Tomari Decl. Exhibit Q.


20. Plaintiff Anna Marcucci-Nance is licensed    20. Marcucci-Nance Decl., ¶ 2.
to have a private handgun for the limited
purpose of target shooting. Pursuant to
New York Penal Law § 400.00, Marcucci-
Nance applied to amend her license for the
purpose of "full carry" for self-defense.

11

State Defendants' Response

      20.     Undisputed.


21. On August 11, 2010, Defendant      21. Exh. G
Westchester County recommended that
the application be disapproved, as "No
safety related concerns have been cited
by the applicant," and Marcucci-Nance
"has not demonstrated an exceptional need
for self protection distinguishable from
that of the general public."

State Defendants' Response

      21.     It is undisputed that the Westchester County Police recommended the denial of

Plaintiff Marcucci-Nance's request to amend her license for the reasons stated in the written

report.  Tomari Decl., Exhibit J.


22. On September 9, 2010, Holdman denied  22. Exh. H
Marcucci-Nance's application for a carry
permit. Holdman cited Defendant County's
recommendation for denial, and its finding
that Marcucci-Nance had not demonstrated
any exceptional need for the permit.
Holdman further stated, "The applicant has
not provided the court with any information
that she faces any danger of any kind that
would necessitate the issuance of a full carry
firearm license; or has not demonstrated a
need for self protection distinguishable from
that of the general public or of other persons
similarly situated."

State Defendants' Response

      22.     Disputed in part. It is undisputed that by decision dated September 9, 2010 and

entered on September 10, 2010, Judge Holdman issued an order regarding Plaintiff Marcucci-

12

Nance's application, but the application was for an amendment of Plaintiff Nance's license, not

an original application for a license and the decision was based upon the reasons set forth

therein.  Tomari Decl. Exhibit R.

23. Citing the denial of Kachalsky's              23. Exh. H
application, Holdman found Marcucci-
Nance did not demonstrate "proper cause"
within the meaning of the governing
provision. Holdman continued: "In sum,
the applicant has not shown sufficient
circumstances to distinguish her need from
those of countless others, nor has she
demonstrated a specific need for self
protection distinguishable from that of the
general community or of persons engaged in
the same business or profession."

State Defendants' Response

     23.    Disputed in part. It is undisputed that Judge Holdman cited the Kachalsky case in

his decision but it is disputed that that was the only basis for his denial of Plaintiff Marcucci-

Nance's application to amend her license.  The decision speaks for itself and the application to

amend was denied based on the reasoning set forth therein.  Tomari Decl. Exhibit R.

24. Plaintiff Second Amendment Foundation, 24. Versnel Decl., ¶ 2
Inc. ("SAF") is a non-profit membership
organization incorporated under the laws
of Washington with its principal place of
business in Bellevue, Washington.

State Defendants' Response

     24.    Undisputed.

13

25. SAF has over 650,000 members and supporters nationwide, including many in Westchester County, New York. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

25. Versnel Decl., ¶ 2

State Defendants' Response

      25.    Because Plaintiffs have moved for summary judgment prior to discovery, State

Defendants cannot set forth whether these statements are disputed or undisputed.

26. SAF expends its resources encouraging exercise of the right to bear arms, and advising and educating their members, supporters, and the general public about the policies with respect to the public carrying of handguns in New York. The issues raised by, and consequences of, Defendants' policies, are of great interest to SAF's constituency. Defendants' policies regularly cause the expenditure of resources by SAF as people turn to it for advice and information.

26. Versnel Decl., ¶ 3

State Defendants' Response

      26.    Because Plaintiffs have moved for summary judgment prior to discovery, State

Defendants cannot set forth whether these statements are disputed or undisputed.

27. Defendants' policies bar SAF's members and supporters from obtaining permits to carry handguns.

27. Versnel Decl., ¶ 4

State Defendants' Response

      27.    Disputed.  Because Plaintiffs have moved for summary judgment prior to

14

discovery and have not identified a member of SAF who has been denied a gun license under

Penal Law § 400.00(2)(f), and State Defendants do not know of any such person, the State

Defendants cannot set forth whether these statements are disputed or undisputed with regard to

members of SAF.  However, under New York state law, there is no provision "barring" SAF

members from obtaining such gun licenses although such members, like all members of the

public, must meet the eligibility requirements and must establish "proper cause" for the issuance

thereof.  See Penal Law 400.00(2)(f).

| | |
|---|---|
| 28. Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance, and the members and supporters of plaintiff SAF, would carry functional handguns in public for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment for lack of a license to carry a handgun. | 28. Kachalsky Decl., ¶ 4; Nikolov Decl., ¶ 4; Detmer Decl., ¶ 6; Nance Decl., ¶ 6; Marcucci-Nance Decl., ¶ 6; Versnel Decl., ¶ 5. |

State Defendants' Response

28.     Disputed; calls for speculation.  State Defendants cannot attest to, or verify the

individual intentions and rationales of the named plaintiffs, and especially the unidentified

"members and supporters" of SAF.

*     *     *     *     *

15

## STATE DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.   THE PARTIES

### A. Plaintiffs

1.     Plaintiff Alan Kachalsky is a natural person; and a citizen of the United States, State of New York, County of Westchester.  First Amended Complaint ("FAC") ¶1; Tomari Decl. Exhibit "A".

2.     Plaintiff Christina Nikolov is a natural person; and a citizen of the United States, State of New York, County of Westchester.  FAC ¶2; Tomari Decl. Exhibit "A".

3.     Plaintiff Eric Detmer is a natural person; and a citizen of the United States, State of New York, County of Westchester.  FAC ¶3; Tomari Decl. Exhibit "A".

4.     Plaintiff Johnnie Nance is a natural person; and a citizen of the United States, State of New York, County of Westchester.  FAC ¶4; Tomari Decl. Exhibit "A".

5.     Plaintiff Anna Marcucci-Nance is a natural person; and a citizen of the United States, State of New York, County of Westchester.  FAC ¶5; Tomari Decl. Exhibit "A".

6.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of the State of Washington, with its principal place of business in Bellevue, Washington.  FAC ¶6; Tomari Decl. Exhibit "A".

### B. Defendants

7.     The Hon. Susan Cacace is now, and was at all times relevant herein, a County Court judge for Westchester County ("Westchester").  She has been on the bench for five (5) years.  Pursuant to New York State Penal Law §265.00 (10) as a county judge she is also a handgun licensing officer for Westchester.  Declaration of Hon. Susan Cacace. ("Cacace Decl.")¶2.

8.      The Hon. Jeffrey A. Cohen currently sits as a Justice on the bench of the Appellate Division, Second Department.  Prior to his appointment thereto on December 9, 2010, he served as a County Court judge for Westchester for three (3) years.  He has been on the bench for four (4) years.  Pursuant to New York State Penal Law §265.00 (10) as a county judge he was also a handgun licensing officer for Westchester.  Declaration of the Hon. Jeffrey A. Cohen ("Cohen Decl.")¶2.

9.      The Hon. Albert Lorenzo is now, and was at all times relevant herein, an Acting Justice for the Supreme Court, of the State of New York, Westchester County.  He has been on the bench for eight (8) years.  Pursuant to New York State Penal Law §265.00 (10) as an acting justice he serves as a handgun licensing officer for Westchester.  Declaration of Hon. Albert Lorenzo ("Lorenzo Decl.")¶2.

10.     The Hon. Robert K. Holdman currently sits as a Justice of the Supreme Court of the State of New York, Bronx County.  Prior to serving as a Supreme Court Justice for the Bronx, and at all times relevant herein, he served as a Justice for the Supreme Court, of the State of New York, Westchester County.  He has been on the bench since June of 2005.  Pursuant to New York State Penal Law §265.00 (10), as a Supreme Court Justice in Westchester, he was also a handgun licensing officer for Westchester County. Declaration of Hon. Robert K. Holdman ("Holdman Decl.")¶2.

## II.     CONCEALED HANDGUN PERMITS IN NEW YORK STATE

### A.     State Requirements

11.     New York State does not ban handguns, but requires them to be licensed. FAC ¶ 21, Tomari Decl. Exhibit "A";  N.Y. Penal Law § 265.00; § 400.00 *et seq.*; Declaration of Bruce Bellom, sworn to January 25, 2011 ("Bellom Decl."), ¶ 3.

17

12.     PL § 400.00 (2) sets forth the type of handgun permits available in this State. PL § 400.00 (2) (a) expressly provides for handgun possession in the home; PL § 400.00 (2) (b) - (e) provides for various job related licenses; and PL § 400.00 (2)(f) governs the issuance of permits to carry concealed handguns in public. N.Y. Penal Law § 265.00; § 400.00 *et seq.*

13.     PL § 400.00 sets forth that an individual seeking a carried concealed permit must (a) be over 21; (b) be of good moral character; (c) never have been convicted of a felony or other serious crime (d) never have been mentally ill or confined to any institution; (e) never had a license revoked or been the subject of a family court order; (f) have undergone a firearms safety training if the permit is sought in Westchester; and as set forward in § 400.00 (2)(f): must show "proper cause" exists for such a permit. N.Y. Penal Law § 400.00 *et seq.*; FAC ¶¶ 22, 24, Tomari Decl. Exhibit "A".

14.     "Proper cause" as used in the context of issuing handgun permits means a showing a need for "self-protection distinguishable from that of the general public". FAC ¶¶ 25-26, 30, 35; 36; 37, Tomari Decl. Exhibit "A"; Cacace Decl. ¶ 5; Cohn Decl. ¶ 5; Holdman Decl. ¶¶ 6-8; Bach v. Pataki, 408 F.3d 75, 80 (2d Cir. 2003).

**B.     The Procedure to Obtain a Concealed Carry Permit in Westchester County**

15.     The Pistol Licensing Unit of the Westchester County Department of  Public Safety maintains a copy of each application for a carry concealed, or "fully carry" permit; and conducts an investigation of each such application. In so doing, it compiles a file containing the results of the investigation and summarizes the investigation for the licensing officer who determines whether such permit will issue. Declaration of Bruce Bellom, sworn to January 24, 2011 ("Bellom Decl.") ¶¶ 1, 3; PL § 400.00 (4).

18

16.     The application form requires the applicant to provide four (4) character references "who by their signature attest to [the applicant's] good moral character" and to disclose whether he/she has "ever been arrested, summoned, charged or indicted anywhere for any offense, including DWI, (except traffic infractions)" and if so, to disclose the date, police agency, charge and disposition, including the court and date of disposition. Bellom Decl. ¶ 5; Tomari Decl. Exhibit B.

17.     In addition, the applicant must disclose whether he/she has ever: a) been discharged from any employment or the armed forces for cause; b) undergone treatment for alcoholism or drug use; c) suffered from any mental illness; d) had a pistol license; dealer's license; gunsmith license; or any application for such a license disapproved or had such a license revoked or cancelled; e) any physical condition which could interfere with the safe and proper use of a handgun; and f) been charged, petitioned against, a respondent, or otherwise been a subject of a proceeding in family court. If the "YES" box to any of these questions is checked, the applicant must provide a written explanation. Bellom Decl. ¶ 7; Tomari Decl. Exhibit B; PL § 400.00 *et seq.*

18.     Upon receipt of a completed initial application, a police member of the Pistol Permit Unit conducts the investigation required under Penal Law §400.00(4).  For an initial application, this investigation includes a fingerprint based criminal background check with the New York State Department of Criminal Justice Services, the Federal Bureau of Investigation and the National Instant Criminal Background system.  When the applicant is filing for a restriction change, the criminal background check is updated by a search of the National Instant Criminal Background system.  Bellom Decl. ¶ 12; PL § 400.00 *et seq.*

19

19.     As part of the investigation, the applicant's identifying information is forwarded to the New York State Department of Mental Hygiene to determine if the applicant had any hospitalizations for mental illness. Bellom Decl. ¶ 13.

20.     In addition to the background and mental health check, the investigation includes a review of the application form, Character Reference Letters submitted with the application form, and the application attachment completed by the applicant. Bellom Decl. ¶ 14.

21.     Upon review of all the materials, once the investigation is deemed complete, an investigation summary is complied for the licensing officer, whom, in Westchester, pursuant to statute, is a Judge. Prior to submission to the licensing officer however, the investigation summary, and all application materials, are submitted to a County Police lieutenant; the Chief Inspector of Administrative Services; and the Commissioner or a Deputy Commissioner, who all, also review the materials. Bellom Decl. ¶¶ 2, 14; PL § 265.00 (10).

22.     Once all the reviews by the Department of Public Safety are complete, the entire investigation file is submitted to the Judge for review and decision on the application. The role of the Pistol Permit Unit is limited to the investigation described herein. The County has no ability to grant or deny license applications or amendments. Bellom Decl. ¶ 15.

23.     In calendar year 2010, in Westchester County, 130 "carry concealed" pistol permits; an additional 41 pistol permits restricted to carrying for purposes of employment; and 471 pistol permits issued for the purpose of target shooting were issued. Bellom Decl. ¶ 17.

24.     This process, as just described above was used to compile the investigative files for Plaintiffs Alan Kachalsky (Tomari Decl. Exhibit F), Christina Nikolov (Tomari Decl. Exhibit G), Eric Detmer (Tomari Decl. Exhibit H), Johnnie Nance (Tomari Decl. Exhibit I) and Anna Marcucci-Nance (Tomari Decl. Exhibit J).  Bellom Decl. ¶ 16.

20

### III.   PLAINTIFFS' APPLICATIONS FOR FULL CARRY PERMITS

### A.   Kachalsky

25.   In May, 2008, Kachalsky applied for a "full carry" permit to carry concealed handguns with him while in public. FAC ¶ 26; Tomari Decl. Exhibit F.

26.   As part of his application, Kachalsky listed as factors he believed established "proper cause" for a full carry permit:

> The factors which establish proper cause for the issuance to myself of a Full Carry pistol permit are: 1) the Second Amendment of the Constitution grants citizens the right to bear arms. As a citizen, I am therefore entitled to exercise my Constitutional right to bear arms. I believe the Constitutional right entitles me to the permit without further the need to establish "proper cause".
>
> If the issuing agency for some reason requires more than this, then I will cite the fact that we live in a world sporadic random violence might at any moment place one in a position where one needs to defend oneself or possibly others, e.g. random shootings in universities (Virginia Tech), post offices, airline check-in counters, malls, road rage, as well as the run-of-the-mill street muggings and robberies. While the odds of finding oneself in a Virginia Tech type situation are remote, one must reflect that had there been even one armed person, the death toll might have been considerably less than 31 dead. While one never knows what one might do in such situations, it is my belief that it is better to have the option to defend oneself (and others) than not to have the option. As a pilot and skydiver, I have been trained to handle emergencies, and I have actually handled several emergencies, so it is unlikely that I will respond in a dangerous manner.
>
> Additionally, as an attorney (who has practiced criminal law in this State and in this County for over 25 years), I know when the use of deadly force is justified. I also know when the use of deadly force is neither justified (nor required). I am capable of, and have previously defended myself (on rare occasions) and others from non-deadly force. Two of these incidents resulted in police intervention. On one such occasion, I was compelled to intervene when my client was being choked by her estranged husband. On another such occasion, I was assaulted with a 12" butcher's knife by an irate employee. I have been threatened once by the spouse of my (divorce) client, and once by my own (unhappy) client.
>
> However, as we see every day, sometimes, non-deadly force is simply not enough for self-defense. In those situations, I am entitled to, and, by applying

21

for a full carry pistol permit, it is my intention to carry a licensed concealed pistol to defend myself and others in the event circumstances require it.

Finally, I am a law-abiding citizen. I have never been convicted of a crime, nor have I ever assaulted or threatened to assault another person.

Tomari Decl. Exhibit F.

27.    Upon completion of its investigation, the Department of Public Safety recommended denial of Kachalsky's application as he failed to 'demonstrate a need for self protection distinguishable from that of the general public. Tomari Decl. Exhibit F.

28.    The application, investigation file and recommendations of the Department of Public Safety were forwarded to the Hon. Susan Cacace, who acted as the licensing officer for Kachalsky application. Cacace Decl. ¶ 2.

29.    After reviewing the materials related to Mr. Kachalsky's application, Judge Cacace issued a decision and order denying Mr. Kachalsky's application, dated October 8, 2008, noting "the State has a substantial and legitimate interest and grave responsibility for ensuring the safety of the general public" and that licensing officers "are vested with broad discretion in determining applications for an unrestricted pistol license and are required to exercise their judgment on the basis of a total evaluation of relevant factors". Cacace Decl. ¶ 4; Tomari Decl. Exhibit K.

30.    Judge Cacace denied Kachalsky's application for an unrestricted, full carry pistol permit, as he failed to state "any facts which would demonstrate a need for self protection distinguishable from that of the general public", and because "based upon all the facts and circumstances of this application, it is my opinion that proper cause does not exist for the issuance of an unrestricted 'full carry' pistol license" to Mr. Kachalsky. FAC ¶ 26; Cacace Decl. ¶ 5, Tomari Decl. Exhibit K.

22

31.     Kachalsky appealed the denial of his application to the New York State Appellate Division, Second Department through a Special Proceeding commenced pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). In his Verified Petition, Kachalsky asserted a Second Amendment challenge. Tomari Decl. Exhibits L and M. By Order dated September 8, 2009, the Appellate Division held that Kachalsky "failed to demonstrate 'proper cause' for the issuance of a 'full carry permit' [and] accordingly, [Judge Cacace's] determination was not arbitrary and capricious and should not be disturbed". Kachalsky v. Cacace, 65 A.D.3d 1045 (2d Dep't 2009); FAC ¶ 27, Tomari Decl. Exhibit A.

32.     Kachalsky then sought leave to appeal the denial of his Article 78 petition to the New York Court of Appeals, again, arguing that the denial of a "full carry" permit infringed his Second Amendment right. Tomari Decl. Exhibit N. The Court of Appeals, *sua sponte,* dismissed his appeal, upon the grounds that "no substantial constitutional question is directly involved". Kachalsky v. Cacace, 14 N.Y.3d 743 (2010); FAC ¶ 28, Tomari Decl. Exhibit A.

33.     The Court of Appeals dismissal of Kachalsky's petition for leave to appeal was issued prior to the Supreme Court's decision in McDonald v. City of Chicago, which held that the Second Amendment applied to the states. FAC ¶ 28, Tomari Decl. Exhibit A.

34.     Kachalsky has taken no further action on his application and has not re-applied for a license. FAC ¶ 29, Tomari Decl. Exhibit A.

**B.     Nikolov**

35.     In March, 2009, Nikolov applied for a "full carry" permit to carry concealed handguns with her while in public. FAC ¶ 30, Tomari Decl. Exhibits A and G.

36.     As part of her application, Nikolov listed as factors she believed established "proper cause" for a full carry permit:

23

First of all, I have been a law-abiding citizen my entire life, as evidenced by my non-existent criminal record. And I meet all the other minimum requirements stated within the Pistol License Information Handbook.

In addition, I currently possess a concealed weapon permit (with full-carry privileges) in the State of Florida and have never once brandished or discharged my firearms anywhere other than in a safe manner at a law-enforcement utilized shooting range. As someone with considerable experience carrying a firearm legally, I am well aware of the responsibility involved when carrying a concealed firearm and the restraint required.

If ever confronted with a potentially dangerous situation, common sense dictates that the course of action is to extract myself from the situation and contact the authorities immediately. And if I am unable to escape, the only time I would ever take out my firearm would be if my life were in imminent danger and I have exhausted all other non-lethal options. But even then, depending on the circumstances (closed quarters, innocent people nearby, etc.), I would still need to determine whether using a firearm would be prudent.

I have completed three firearms safety courses with NRA certified Instructors over the past three years and continually seek opportunities to further educate myself in the area of safety, even when not required by law.

For the past 20 years I have been a licensed commercial pilot and for more than two years, a certified flight instructor and instrument flight instructor. As a pilot and more importantly, someone who teaches people to fly, it is absolutely critical for me to always remain calm regardless of how stressful a situation becomes. I mention this because a calm demeanor is essential when either involved in or a witness to a potentially dangerous situation.

Also relevant to my application and establishing proper cause for issuing me a New York State full carry firearm license is my status a [sic] transgender female, [sic] the National Coalition of Anti-Violence programs reports that I am far more likely to be a victim of violent crime than a genetic female. And these hate crimes are increasingly locally, as well as nationwide. I have included a list of hundreds of crimes against people in similar circumstances as myself, some of which are high profile, like the Brandon Teena murder.

Tomari Decl. Exhibit G.

37.    Upon completion of its investigation, the Department of Public Safety recommended denial of Nikolov's application as she failed to demonstrate a need for self protection distinguishable from that of the general public. Tomari Decl. Exhibit G.

38.    The application, investigation file and recommendations of the Department of Public Safety were forwarded to the Hon. Jeffrey A. Cohen, who acted as the licensing officer for Nikolov's application.  Cohen Decl. ¶ 2.

39.    After reviewing the materials related to Ms. Nikolov's application, Judge Cohen issued a decision and order denying Mr. Kachalsky's application, dated October 2 2008, because she failed to demonstrate "that she has a special need for self-protection distinguishable from that of the general public".  FAC ¶ 30; Cohen Decl. ¶ 5; Tomari Decl. Exhibit O.  Ms. Nikolov did not appeal her decision of re-apply for a license.

**C.    Detmer**

40.    Detmer is licensed to have a handgun for the purpose of target shooting only.  FAC ¶ 32, Tomari Decl. Exhibits A and H.

41.    In July, 2010 Detmer sought to amend his current pistol permit from target shooting only, to a "full carry" permit to carry concealed handguns while in public.  FAC ¶ 32, Tomari Decl. Exhibits A and H.

42.    As part of his application, Detmer listed as factors he believed established "proper cause" for a full carry permit:

> I am a Federal Law Enforcement Officer with the United States Coast Guard (USGC).  Specifically, I have been a qualified Boarding Team Member (BTM) since September, 2004.  When on-duty with the USCG I carry a .40 caliber pistol as a personal defense weapon.  As a BTM my duties include boarding pleasure and commercial boats, inspecting shore side facilities and interacting with the public, all while performing the public service of enforcing laws.  To maintain my BTM qualification, I complete semi-annual training consisting of a non-firing judgmental pistol course, a firing tactical pistol course, and use - of-force training.  This training ensures I use the pistol safely and properly while on-duty.  With a full carry permit, I would safely provide the same public service of enforcing laws while off-duty, if needed.  My training and experience with the USGC shows I am qualified to have a full carry permit.

25

> Attached is my enlistment contract with the USCG, showing I will be working for the USCG until at least December, 2014.   Also attached is my BTM qualification letter, dated September, 2004.

FAC ¶ 31, Tomari Decl. Exhibit H.

43.     Detmer's application represented that while he carries a .40 caliber handgun when on duty with the Coast Guard, he has no authority to make arrests, and must surrender the handgun each time he leaves duty.  FAC ¶ 31, Tomari Decl. Exhibits A and H.

44.     Upon completion of its investigation, the Department of Public Safety recommended denial of Detmer's application as he failed to 'demonstrate a need for self protection distinguishable from that of the general public.  FAC ¶ 32, Tomari Decl. Exhibit H.

45.     After reviewing the materials related to Mr. Detmer's application, Judge Lorenzo denied Detmer's application to change his permit from "target shooting", to "full carry", and so informed him through correspondence dated September 27, 2010, finding there was "no justification" warranting a "full carry" permit.  FAC ¶ 33; Lorenzo Decl. ¶ 5; Tomari Decl. Exhibit P.

**D.     Nance**

46.     Nance is licensed to have a handgun for the purpose of target shooting only.  FAC ¶ 34, Tomari Decl. Exhibits A and I.

47.     In June, 2010 Nance sought to amend his pistol permit from target shooting only, to a "full carry" permit to carry concealed handguns while in public.  FAC ¶ 34, Tomari Decl. Exhibit I.

48.     As part of his application, Nance listed as factors he believed established "proper cause" for a full carry permit:

I am a citizen in good standing in the community with many family and social ties. I am steadily employed and stable. I am of good moral character.

My intent to change restriction is due to my desire to become involved in competitive shooting at various range locations. Also, the NRA has offered to partner with my wife to provide all female classes to women. It is my intention to co-instruct these classes. I would like to use my NRA Instructor Safety certifications to promote safe gun handling at various locations. Having a full carry permit would facilitate these endeavors.

FAC ¶ 31, Tomari Decl. Exhibit I.

49.    Upon completion of its investigation, the Department of Public Safety recommended denial of Nance's application as he failed to 'demonstrate a need for self protection distinguishable from that of the general public. FAC ¶ 34, Tomari Decl. Exhibit I.

50.    After reviewing the materials related to Mr. Nance's application, Judge Holdman issued a Decision dated September 9, 2010 denying Nance's application to change his permit from "target shooting", to "full carry". FAC ¶ 35, Tomari Decl. Exhibit Q; Holdman Decl. ¶4.

51.    Judge Holdman's September 9, 2010 Decision, observed that "those charged with the duty to oversee handgun licensing . . .must . . . recognize and honor the right while at the same time recognizing the limits to the right to bear arms under the Second Amendment". Holdman Decl. ¶ 5; Tomari Decl. Exhibit Q.

52.    Judge Holdman's September 9, 2010 Decision further found that "[t]he burden of establishing 'proper cause' for the issuance of a full-carry permit is upon the applicant to establish a 'special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession' ". Holdman Decl. ¶ 6; Tomari Decl. Exhibit Q.

53.    Upon reviewing Mr. Nance's application materials, Judge Holdman concluded that Nance had "not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or [had] demonstrated a need

27

for self-protection distinguishable from that of the general public or of other persons similarly situated", and thus denied his application to amend his license from target shooting to "full carry". FAC ¶ 35; Holdman Decl. ¶ 5; Tomari Decl. Exhibit Q.

**D. Marcucci-Nance**

54. Marcucci-Nance is licensed to have a handgun for the purpose of target shooting only. FAC ¶ 36, Tomari Decl. Exhibits A and J.

55. In June, 2010 Marcucci-Nance sought to amend her pistol permit from target shooting only, to a "full carry" permit to carry concealed handguns while in public. FAC ¶ 36, Tomari Decl. Exhibits A and J.

56. As part of her application, Marcucci-Nance listed as factors she believed established "proper cause" for a full carry permit:

> I am a citizen in good standing in the community with many familial and social ties. I am steadily employed and stable. I am of good moral character. My intent to change restriction is due to my desire to become involved in competitive target shooting at various range locations. Also, the NRA has offered to partner with me to provide all female classes to women.
>
> I would like to use my NRA Instructor Safety certifications to promote safe gun handling at various locations. Having a full carry permit would facilitate these endeavors.

FAC ¶ 36, Tomari Decl. Exhibit J.

57. Upon completion of its investigation, the Department of Public Safety recommended denial of Marcucci-Nance's application as she failed to 'demonstrate a need for self protection distinguishable from that of the general public. FAC ¶ 37, Tomari Decl. Exhibit J.

58. Judge Holdman's September 9, 2010 Decision, observed that "those charged with the duty to oversee handgun licensing . . .must . . . recognize and honor the right while at the

28

same time recognizing the limits to the right to bear arms under the Second Amendment". Holdman Decl. ¶ 8; Tomari Decl. Exhibit R.

59.     Judge Holdman September 9, 2010 Decision further found that "[t]he burden of establishing 'proper cause' for the issuance of a full-carry permit is upon the applicant to establish a 'special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession' ".  Holdman Decl. ¶ 8: Tomari Decl. Exhibit R.

60.     Upon reviewing Marcucci- Nance's application materials, Judge Holdman concluded that Marcucci-Nance had "not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or [had] demonstrated a need for self-protection distinguishable from that of the general public or of other persons similarly situated", and thus denied his application to amend his license from target shooting to "full carry".   FAC ¶ 37; Holdman Decl. ¶¶ 8-9; Tomari Decl. Exhibit R.

## IV.   NEW YORK'S INTEREST IN LIMITING CONCEALED WEAPONS IN PUBLIC

### A.   Legislative History and Historical Perspective

61.     The current version of New York's Penal Law §400.00(2)(f) was enacted in 1911 as "the Sullivan Law".  It was enacted to combat handgun violence and provided in its original format:

> Any person over the age of sixteen years, who shall have in his possession in any city, village or town of this state, any pistol, revolver or other firearm of a size which may be concealed upon the person, without a written license therefore, issued to him by a police magistrate of such city or village, or by a justice of the peace of such town, or in such manner as may be prescribed by ordinance in such city, village or town, shall be guilty of a misdemeanor.

> Any person over the age of sixteen year, who shall have or carry concealed upon his person in any city, village, or town of this state, any pistol, revolver, or other firearm without a written license therefore issued to him by a police magistrate of such city or village, or by a justice of the peace of such town, or in such a manner

as may be prescribed by ordinance of such city, village or town, shall be guilty of a felony.

N.Y. Penal Law § 1897 (1911) (current version at N.Y. Penal Law § 400.00 (2)(f)

(McKinney 2010)); Tomari Decl. Exhibit S (1).

62.    A January 30th, 1911 New York Times article states:

A marked increase in the number of homicides and suicides in this city by shooting has led officials of the Coroner's office to start a movement which they hope will lead to new legislation restricting the sale of firearms…one of the Coroner's clerks has just completed a list of recommendations to the Legislature, which he and his fellow officials believe will result in materially decreasing acts of violence in which revolvers figure.

Tomari Decl. Exhibit S (2).

63.    The Law was intended to eradicate "the concealed weapon evil" (Tomari

Exhibit S (2)), limit gang violence (Tomari Decl., Exhibit S (3)), and to "decrease

appreciably the number of homicides, accidental and impulsive, while some restraint will

be imposed even upon the criminals." (Tomari Decl., Exhibit S (4)).

64.    Testimony before the Senate Codes Committee hearing stated that the

Sullivan law would prevent fifty murders in New York City annually, remove firearms

from the hands of criminals. (Tomari Decl., Exhibit S (5)).

65.    Senator Henry W. Pollock, a member of the Senate Codes Committee that

approved the text of the Sullivan law, stated in a September 1, 1911 letter to New York

Times that the bill was intended "to punish for the unlawful possession of dangerous

weapons" and to "aid the authorities in the identification of the owner of a firearm used in

the commission of a crime." Senator Pollock stated that "the only opposition to any of the

provisions of this bill urged before either of the committees of the Legislature was that of

30

representatives of manufacturers and dealers in firearms." (Tomari Decl., Exhibit S (6).

66. Two years after the Sullivan Law's initial enactment, a 1913 amendment created

the "proper cause" requirement by the addition of a new paragraph stating:

> In addition, it shall be lawful for any magistrate, upon proof before him that the person applying therefore is of good moral character, and that *proper cause* exists for the issuance thereof, to issue such person a license to have and carry concealed a pistol or revolver without regard to employment or place of possessing such weapon...

N.Y. Penal Law § 1897 (1913) (current version at N.Y. Penal Law § 400.00 (2)(f)

(McKinney 2010)); Tomari Decl. Exhibit S (7).

67. A 1921 amendment divided the law into sections and changed the licensing

language to provide:

> In addition, it shall be lawful for *the police commissioner in the city of New York or elsewhere in this state, for a judge or justice of a court of record,* upon proof before him of the person applying therefore is of good moral character, and that proper cause exists for the issuance thereof, to issue such person a license to have and carry concealed a pistol or revolver without regard to employment or place of possessing such weapon...

N.Y. Penal Law § 1897 (9) (1921) (current version at N.Y. Penal Law § 400.00 (2)(f)

(McKinney 2010)) (emphasis added); Tomari Decl. Exhibit S (8).

68. The text of the Sullivan Law remained largely unchanged until the early 1960s.

On January 3rd, 1962, Senator Albert Berkowitz, at the request of the New York State Joint

Legislative Committee on Firearms and Ammunitions, introduced an act to amend and

reorganize provisions of the Penal Law. The 1962 Report of the New York State Joint

Legislative Committee on Firearms and Ammunition states that "more than a quarter of a million

serious crimes are committed with weapons annually in the United States, and the number is on

the increase." Rep. of N.Y.J. Legis. Comm., No. 29 at 11 (1962); Tomari Decl. Exhibit S (9).

69.    Additionally, the report states:

The legislative problem posed for the fifty-one American jurisdictions (fifty states and the District of Columbia), charged with the major responsibility of criminal law enforcement in the United States, suggests itself: to enact statutes adapted to prevent these crimes and occurrences before they happen, and, at the same time, preserve the legitimate interests of individual liberty, training for national defense, hunting, target shooting and trophy collecting.

70.    On July 1, 1963, a modified version of the original bill became effective.  Rep. of

N.Y. J. Legis. Comm., No. 35 at 5 (1963); Tomari Decl. Exhibit S (10).

71.    The purpose of the amendment was stated to be for "clarification and

rearrangement of present laws affecting firearms and ammunition, and contains no substantive

change in the present laws." N.Y. Legis. Ann. at 65 (1963), (emphasis in original), Tomari Decl.

Exhibit S (11).

72.    Thus, the licensing provisions formerly found in §1897 were placed in §1903(2)

of the Penal Laws of New York.   N.Y. Penal Law § 1903 (1963) (current version at N.Y. Penal

Law §400.00(2)(f) (McKinney 2010); Tomari Decl. Exhibit S (12).

73.    The 1963 New York State Legislative Annual states:

It is noteworthy that the New York State Conservation Council, which represents hundreds of thousands of sportsmen and to which belong substantially all the responsible conservationist groups in the state, at the State Convention in Lake Placid last October, unanimously adopted a resolution not to oppose this bill, provided that any newly discovered substantive changes would be deleted.

N.Y. Legis. Ann. 1963 at 66; Tomari Decl. Exhibit S (13).

74.    In its 1965 report, the New York State Joint Legislative Committee on Firearms

and Munitions again recognized the role of the penal law in crime and violence prevention.

Specifically, the Committee stated that "the primary value to law enforcement of adequate

32

statutes dealing with dangerous weapons is prevention of crimes of violence before their

consummation." Rep. of N.Y. J. Legis. Comm., No.6 at 12 (1965); Tomari Decl. Exhibit S (13).

75.     Additionally, the committee states:

...in the absence of adequate weapons legislation, under the traditional law of criminal attempt, lawful action by the police must await the last act necessary to consummate the crime...adequate statutes governing firearms and weapons would make lawful intervention by police and prevention of these fatal consequences, before any could occur."

Rep. of N.Y. J. Legis. Comm., No.6 at 13 (1965); Tomari Decl. Exhibit S (13)

76.     No significant revisions occurred to the text of §1903 until the Revised Penal Law

of 1965 came into effect in 1967 which renumbered many penal provisions thereby creating

today's modern New York Penal Law §400.00.

77.     In the past 30 years, the legislature has repeatedly chosen not to remove the

"proper cause" requirement for concealed carry permits.  Notably, Senator Franz Leichter

enumerated many of the reasons why the "proper cause" requirement of New York Penal Law

§400.00(2)(f) should remain intact during the 1982 Senate debate over Bill Number 3409, an act

to amend the Penal Law, in relation to issuance of licenses to have and carry pistols:

And certainly one of the concerns...that any licensing authority ought to have and which will be lost under your bill is some assessment of the maturity, the responsibility and the ability of the person is licensed to safely possess and use a handgun.

So we are not only talking about crime, which obviously is important, but we're also talking about public safety...Now, in this instance, it's not only protecting a person from himself but it's protecting innocent people who get shot every day because handguns are lying around, and that is something that should be of concern to all of us...I'm afraid in your bill that some of the restrictions and some of the safeguards that we have are going to be eliminated.

...by making handguns more readily and easily accessible and available in our society, it means inevitably that more handguns are going to come into the hands of criminals, and by loosening your standards for licensing, it means that people are going to have

33

handguns who either aren't going to safeguard them properly or just there's going to be more handguns available that are going to be stolen or are going to be used in the commission of a crime.

N.Y. Senate Debate on Senate Bill 3409, Jun. 2, 1987, at 2470-2474 (Statement of Senator Leichter); Tomari Decl. Exhibit S (14).

## B.     NEW YORK HAS A COMPELLING INTEREST IN LIMITING CONCEALED HANDGUNS

78.     New York has a compelling and well recognized interest in limiting the number of guns on its street; especially handguns, which are easily concealed and closely linked to use in crime. These interests are described in part in the declarations submitted in support of the State Defendants' Motion for Summary Judgment, and described in the studies, articles, history and reports referenced in the State Defendants' Memorandum of Law in Support of Motion for Summary Judgment. These include: Declaration of Philip J. Cook, ("Cook Decl."); Declaration of Franklin E. Zimring, ("Zimring Decl."); Declaration of Thomas L. Fazio ("Fazio Decl."); Declaration of Andrew Lunetta, ("Lunetta Decl."); Declaration of Stephanie Miner ("Miner Decl."); and Declaration of the Hon. David R. Roefaro ("Roefaro Decl.").

79.     Many Americans die by gunfire. The gun deaths from homicide, accident and suicide have totaled close to one million during the last three decades. In 2007, the most recent year for which the National Center for Health Statistics provides data on deaths, there were 18,361 criminal homicides, of which 69% were committed with guns. Cook Decl. ¶ 3.

80.     In 2007, homicide victimization rates were 15 times as high for black men aged 15-34, as for white non-Hispanic men in this age group. Homicide is the leading cause of death for black males age 15-34, and the second-leading cause of death for Hispanic males in this age group. Cook Decl. ¶ 4.

34

81.     Handguns are especially a law enforcement and public health concern because they are much more likely to be used in criminal violence than long guns.  While handguns are approximately one third of all guns owned by civilians in the United States, they are used in more than 75% of all gun killings.  Cook Decl. ¶ 9; Zimring Decl. ¶ 5.

82.     Handguns pose a particular public safety challenge because they are smaller, more conveniently carried, and easily concealed from law enforcement, potential victims, and the public at large. Cook Decl. ¶ 17.

83.     It takes little skill to operate a modern semi-automatic pistol and a person with just a few pockets can easily carry dozen of rounds of ammunition without ready detection. Declaration of Thomas L. Fazio, sworn to January 21, 2011 ("Fazio Decl.") ¶ 4.

84.     Of the 536 law enforcement officers who were feloniously killed in the United States between 2000 and 2009, 490 (91%) were assaulted with a firearm and 73 % of those were with a handgun. Cook Decl. ¶ 5; Fazio Decl. ¶ 7.

85.     Ninety-four percent of all law enforcement officers feloniously killed in the line of duty in 2009 were killed by a gun, of which 58% were killed by handguns.  Declaration of Andrew Lunetta, sworn to January 25, 2011 ("Lunetta Decl.") ¶ 11.

86.     Every New York City Police Department ("NYPD") officer killed since 2005 has been killed with a handgun.  Lunetta Decl. ¶ 10.

87.     The likelihood that a gun will be used in crime is closely linked to the general availability of guns, and especially handguns. Cook Decl. ¶¶ 12, 14; Roefaro Decl. ¶ 5; Lunetta Decl. ¶ 12.

35

88.     Allowing more individuals to carry concealed handguns will endanger officers stopping individuals on the street or making car stops, and complicate interactions between uniformed officers and those working in plain clothes or off-duty.  Lunetta Decl. ¶¶ 13- 16.

89.     From 1981 to 2009, 26 police officers around the country were shot and killed by fellow officers who had mistaken them for criminals.  Fazio Decl. ¶ 6.

90.     The ability to stop and frisk individuals who appear to be carrying handguns in public is one of the NYPD's greatest tactics in curbing violence.  Increasing the prevalence of concealed handguns will undermine that tactic.  Lunetta Decl. ¶ 16.

91.     The majority of criminal homicides and other serious crimes are committed by individuals who have not been convicted of a felony and would receive permits to carry concealed weapons without the "proper cause" requirement.  Cook Decl. ¶¶ 27-35; Roefaro Decl. ¶¶ 4, 6.

Dated:  New York, New York
        January 26, 2011

                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the
                                        State of New York
                                        Attorney for State Defendants
                                        By:

                                        Anthony J. Tomari
                                        Monica Connell
                                        Assistant Attorney General
                                        120 Broadway - 24th Floor
                                        New York, New York 10271
                                        (212) 416 - 8553

To:     Alan Gura, Esq.
        Gura & Possessky, PLLC

        Melissa-Jean Rotini, Esq.
        Westchester County Attorney's Office

36

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC
DETMER, JOHNNIE NANCE, ANNA MARCUCCI-
NANCE, and SECOND AMENDMENT
FOUNDATION, INC.,

                                   Plaintiffs,

-against-

SUSAN CACACE, JEFFREY A. COHEN, ALBERT
LORENZO, ROBERT K. HOLDMAN, and COUNTY
OF WESTCHESTER,

                                   Defendants.

----------------------------------------------------------------x

**DECLARATION OF
MELISSA-JEAN ROTINI IN
OPPOSITION TO
PLAINTIFFS' MOTION
FOR SUMMARY
JUDGMENT**

Case No.: 10 CV 05413 (CS)

ECF Case

Melissa-Jean Rotini, pursuant to 28 U.S.C. §1746, declares:

1.    I am an Assistant County Attorney in the Office of Robert F. Meehan, Westchester
County Attorney, attorney for Defendant County of Westchester (hereinafter referred
to as "County") in the above-captioned matter.

2.    I submit this Declaration in Opposition to the Plaintiffs Motion for Summary
Judgment, as more specifically set forth in the accompanying Memorandum of Law.

3.    Annexed hereto are the following Exhibits:

Exhibit A     Declaration of Bruce B. Bellom.

Exhibit B     A Blank Pistol Permit Application Form for an initial Pistol Permit
License; a blank Pistol Permit License Application for an Amendment/
Restriction Change; a blank Background Investigation Worksheet; a
blank Full Carry Attachment; and a blank Character Reference Letter,
together with the approval from the New York State Police.

Exhibit C     Decision of Co-Defendant Judge Cacace with respect to the Pistol
Permit License Application of Plaintiff Kachalsky, filed and entered
October 8, 2008.

Exhibit D     Decision of Co-Defendant Judge Cohen with respect to the Pistol
Permit License Application of Plaintiff Nikolov, filed and entered
October 2, 2008.

Exhibit E     Decision of Co-Defendant Judge Lorenzo with respect to the Pistol
Permit License Application of Plaintiff Detmer, dated September 27,
2010.

Exhibit F  Decision of Co-Defendant Judge Holdman with respect to the Pistol Permit License Application of Plaintiff Nance, filed and entered September 10, 2010.

Exhibit G  Decision of Co-Defendant Judge Holdman with respect to the Pistol Permit License Application of Plaintiff Marcucci-Nance, filed and entered September 10, 2010.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: White Plains, New York
   January 26, 2011

           _____
           Melissa-Jean Rotini (MR-4948)
           Assistant County Attorney, of Counsel

# EXHIBIT A:
# Declaration of Bruce B. Bellom

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x

ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC
DETMER, JOHNNIE NANCE, ANNA MARCUCCI-
NANCE, and SECOND AMENDMENT
FOUNDATION, INC.,

                             Plaintiffs,

-against-

SUSAN CACACE, JEFFREY A. COHEN, ALBERT
LORENZO, ROBERT K. HOLDMAN, and COUNTY
OF WESTCHESTER,

                             Defendants.
---------------------------------------------------------------------x

**DECLARATION OF BRUCE
B. BELLOM IN SUPPORT
OF OPPOSITION TO
PLAINTIFFS MOTION FOR
SUMMARY JUDGMENT**

Case No.: 10 CV 05413 (CS)

ECF Case

## DECLARATION OF BRUCE B. BELLOM

The undersigned declares under penalty of perjury and in accordance with 28 U.S.C.
§1746 as follows:

       1.    I am the Sergeant and Commanding Officer of the Pistol Licensing Unit

within the Westchester County Department of Public Safety ("County"). This declaration is

respectfully submitted in Opposition to the Plaintiffs' Motion for Summary Judgment.

       2.    I have been employed by the County for 29 years, have been a Sergeant with

the County since 1991, and have been the Commanding Officer of the Pistol License Unit of the

County since May 2007. As such, I am familiar with the practices and procedures of the County

regarding the application for pistol permit licenses within the County, and thus make this

declaration based upon personal knowledge of those practices and procedures as well as upon my

review of records kept in the normal course of business by the County.

       3.    To apply for a pistol permit license, or amend a current license, in the

geographical area of Westchester County, an individual must submit an application, fingerprints,

and will be subject to an investigation of the information submitted in accordance with the New

York State Penal Law §400.00 *et seq.*

4.       The application packets are maintained in the County Clerk's Office, which also stores the completed applications, whether approved or denied.

5.       The application form permits the applicant to select the type of pistol permit license for which s/he is applying, and allows the applicant to explain the reasons for seeking such a permit license. The application also asks for information as to prior criminal activity, mental health commitments, revocations of licenses, and orders of protection.

6.       Once the application is submitted, the Pistol Licensing Unit commences the investigation directed by the statutory mandate of Penal Law §400.00(4).

7.       A Detective affiliated with the Pistol Licensing Unit will take fingerprints of the applicant to conduct a criminal background check. This is done with an electronic fingerprinting system at the time of the application. The criminal background check for initial applications is performed through the New York State Department of Criminal Justice Services, the Federal Bureau of Investigation and the National Instant Criminal Background system. The printed results of these background checks are then added to the investigation materials for the applicant's file.

8.       Once an individual has a pistol permit license, the Pistol Permit Unit will be automatically notified of any arrests. Therefore, where the applicant already has a pistol permit license and is seeking a restriction change, the criminal background check is updated by a search of the National Instant Criminal Background system. The printed results of this background check update is then added to the investigation materials for the applicant's file.

9.       A request for a search of mental health records is forwarded to the State. The written results are retuned to the Pistol Licensing Unit and are then added to the investigation

materials for the applicant's file.

10.     A Detective of the Pistol Licensing Unit then investigates the content of each application, and compiles an investigative file for each such application. This investigation includes, but is not limited to, a thorough review of the four (4) character sworn reference statements submitted with the application and verification of the information included in the application. Any additional or different information obtained is then added to the investigation materials for the applicant's file.

11.     I review each application and investigation, and create a summary of the investigation for the New York State Judge acting as licensing officer pursuant to Penal Law §265.00(10).

12.     I then forward the application, investigation materials, and investigative summary to my superiors. These materials are then reviewed and I receive an investigative summary from a lieutenant, the Chief Inspector of Administrative Services, the Commissioner or a Deputy Commissioner.

13.     The entire application, investigation materials, my investigative summary ,and the investigative summaries received from my superiors are then forwarded to the Judge for review and decision on the application. I believe that the Judges use their own independent review of the applications and investigation files to make their determinations.

14.     Once the Judge issues his decision, the file is returned to the County Clerk, who prints the pistol permit license or closes the file, depending upon the case.

15.     This procedure was completed for the applications submitted for each of the individual Plaintiffs at issue in this case. No member of the Pistol Permit Unit has the authority to issue or deny a pistol permit license in the geographical areas of Westchester County.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: White Plains, NY
      January 24, 2011

Bruce B. Bellom

# EXHIBIT B:
# Blank Pistol Permit Forms



**NEW YORK STATE POLICE**
DIVISION HEADQUARTERS
1220 WASHINGTON AVENUE
ALBANY, NEW YORK 12226-2252

JOHN P. MELVILLE
ACTING SUPERINTENDENT

October 20, 2010

Mr. George N. Longworth
Commissioner-Sheriff
Westchester County Department
 of Public Safety
1 Saw Mill Parkway
Hawthorne, NY  10532

Dear Commissioner Longworth:

      Reference is made to your correspondence received at this office wherein you request approval of forms which are used by the Westchester County Department of Public Safety as part of the pistol license application process.  I have reviewed the forms in their entirety and find that they are in compliance with the requirements of New York State Penal Law section 400.  That being the case, approval is granted for the use of all forms reviewed.

      Sincerely,

John P. Melville
Acting Superintendent

INSTRUCTIONS: Print or type in black ink only

| NYSID NUMBER | | | PPB-3 (REV. 02/07) | | COUNTY OF ISSUE | | | | CODE |

**STATE OF NEW YORK**

**PISTOL/REVOLVER LICENSE APPLICATION**

| LICENSE NUMBER | | | | | | |
| DATE OF ISSUE | MONTH | DAY | YEAR | EXPIRATION DATE | MONTH | DAY | YEAR |

| LAST NAME | | FIRST NAME | | MI | MONTH | DAY | YEAR | SEX |
| | | | | | DATE OF BIRTH | | | |

| RESIDENCE ADDRESS | | CITY, VILLAGE, TOWN AND STATE IF OTHER THAN NEW YORK | ZIP CODE |

| HGT(INS) | WGT(LBS) | EYES | HAIR | RACE | SOCIAL SECURITY NUMBER | PRESENT OCCUPATION | CITIZEN OF U.S.A. ☐ YES ☐ NO |

| EMPLOYED BY | NATURE OF BUSINESS | BUSINESS ADDRESS |

I HEREBY APPLY FOR A PISTOL/REVOLVER LICENSE TO:    (Check one only)    ☐ CARRY CONCEALED    ☐ * POSSESS ON PREMISES

☐ * POSSESS/CARRY DURING EMPLOYMENT (* Premise address or place of employment must be provided)

A LICENSE IS REQUIRED FOR THE FOLLOWING REASON:

| STREET ADDRESS OR OTHER LOCATION | CITY, VILLAGE, TOWN | ZIP CODE |

**GIVE FOUR CHARACTER REFERENCES WHO BY THEIR SIGNATURE ATTEST TO YOUR GOOD MORAL CHARACTER**

| LAST, FIRST, MI | STREET ADDRESS | CITY, VILLAGE, TOWN | SIGNATURE |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |
| | | | |

HAVE YOU EVER BEEN ARRESTED, SUMMONED, CHARGED OR INDICTED ANYWHERE FOR ANY OFFENSE, INCLUDING DWI (EXCEPT TRAFFIC INFRACTIONS)?    ☐ YES    ☐ NO    IF YES, FURNISH THE FOLLOWING INFORMATION:

| DATE | POLICE AGENCY | CHARGE | DISPOSITION - COURT AND DATE |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |

| HAVE YOU EVER BEEN TERMINATED/DISCHARGED FROM ANY EMPLOYMENT OR THE ARMED FORCES FOR CAUSE? | ☐ YES | ☐ NO |
| HAVE YOU EVER UNDERGONE TREATMENT FOR ALCOHOLISM OR DRUG USE? | ☐ YES | ☐ NO |
| HAVE YOU EVER SUFFERED ANY MENTAL ILLNESS, OR BEEN CONFINED TO ANY HOSPITAL, PUBLIC OR PRIVATE INSTITUTION, FOR MENTAL ILLNESS? | ☐ YES | ☐ NO |
| HAVE YOU EVER HAD A PISTOL LICENSE, DEALER'S LICENSE, GUNSMITH LICENSE, OR ANY APPLICATION FOR SUCH A LICENSE DISAPPROVED, OR HAD SUCH A LICENSE REVOKED OR CANCELLED? | ☐ YES | ☐ NO |
| DO YOU HAVE ANY PHYSICAL CONDITION WHICH COULD INTERFERE WITH THE SAFE AND PROPER USE OF A HANDGUN? | ☐ YES | ☐ NO |
| HAVE YOU EVER BEEN CHARGED, PETITIONED AGAINST, A RESPONDENT, OR OTHERWISE BEEN A SUBJECT OF A PROCEEDING IN FAMILY COURT? | ☐ YES | ☐ NO |

IF ANSWER TO ANY QUESTION IS YES, EXPLAIN HERE:

**PHOTOGRAPH OF APPLICANT TAKEN WITHIN 30 DAYS**

**FULL FACE ONLY**

ANY OMISSION OF FACT OR ANY FALSE STATEMENT WILL BE SUFFICIENT CAUSE TO DENY THIS APPLICATION AND CONSTITUTES A CRIME PUNISHABLE BY FINE, IMPRISONMENT, OR BOTH.

I AM AWARE THAT THE FOLLOWING CONDITIONS AFFECT ANY LICENSE WHICH MAY BE ISSUED TO ME:

1. NO LICENSE ISSUED AS A RESULT OF THIS APPLICATION IS VALID IN THE CITY OF NEW YORK.
2. ANY LICENSE ISSUED AS A RESULT OF THIS APPLICATION WILL BE VALID ONLY FOR A PISTOL OR REVOLVER SPECIFICALLY DESCRIBED IN THE LICENSE PROPERLY ISSUED BY THE LICENSING OFFICER.
3. IF I PERMANENTLY CHANGE MY ADDRESS, NOTICE OF SUCH CHANGE AND MY NEW ADDRESS MUST BE FORWARDED TO THE SUPERINTENDENT OF THE STATE POLICE AND IN NASSAU COUNTY AND SUFFOLK COUNTY, TO THE LICENSING OFFICER OF THAT COUNTY, WITHIN 10 DAYS OF SUCH CHANGE.
4. ANY LICENSE ISSUED AS A RESULT OF THIS APPLICATION IS SUBJECT TO REVOCATION AT ANY TIME BY THE LICENSING OFFICER OR ANY JUDGE OR JUSTICE OF A COURT OF RECORD.

JURAT:
SIGNED AND SWORN TO BEFORE ME

THIS _____ DAY OF _____ , 20 _____

AT _____ , NEW YORK

SIGNATURE OF APPLICANT

APPX. 141

SIGNATURE OF OFFICER ADMINISTERING OATH

THIS FORM APPROVED BY SUPERINTENDENT OF STATE POLICE AS REQUIRED BY PENAL LAW SECTION 400.00, SUB D.3.

TITLE OF OFFICER

**APPLICATION NOT VALID UNLESS SWORN**

| RIGHT THUMB | 2.   RIGHT FOREFINGER | 3.   RIGHT MIDDLE FINGER | 4.   RIGHT RING FINGER | 5.   RIGHT LITTLE FINGER |
|---|---|---|---|---|
| | | | | |

| LEFT THUMB | 7.   LEFT FOREFINGER | 8.   LEFT MIDDLE FINGER | 9.   LEFT RING FINGER | 10.   LEFT LITTLE FINGER |
|---|---|---|---|---|
| | | | | |

## PLAIN IMPRESSIONS TAKEN SIMULTANEOUSLY

LEFT FOUR FINGERS

RIGHT FOUR FINGERS

THUMBS TAKEN TOGETHER

IMPRESSIONS TAKEN BY:      NAME _____      RANK _____      SHIELD _____      DATE _____

APPLICANT'S SIGNATURE AND ADDRESS:

## INVESTIGATION REPORT - ALL INFORMATION PROVIDED BY THIS APPLICANT HAS BEEN VERIFIED:

NAME _____      RANK _____      ORGANIZATION _____

SIGNATURE OF INVESTIGATING OFFICER

THIS APPLICATION IS    APPROVED - DISAPPROVED  (STRIKE OUT ONE)

THE FOLLOWING RESTRICTION(S) IS (ARE) APPLICABLE TO THIS LICENSE:

TITLE AND SIGNATURE OF LICENSING OFFICER

## IF LICENSING OFFICER AUTHORIZES THE POSSESSION OF A PISTOL OR REVOLVER AT THE TIME OF ISSUE OF ORIGINAL LICENSE, FURNISH THE FOLLOWING INFORMATION:

| MANUFACTURER | PISTOL OR REVOLVER | CALIBER | SERIAL NUMBER | MODEL | PROPERTY OF: |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | APPX. 142 | | |

DUPLICATE OF THIS APPLICATION MUST BE FILED WITH THE SUPERINTENDENT OF STATE POLICE WITHIN 10 DAYS OF ISSUANCE AS REQUIRED BY PENAL LAW SECTION 400.00 SUBD.5.

| D/O/B | **WESTCHESTER COUNTY** | Westchester County Clerk |
|---|---|---|
| NYSID# | **TIMOTHY C. IDONI**<br>**County Clerk** | Pistol Division<br>110 Dr. Martin Luther King Jr. Blvd.<br>White Plains, New York 10601 |

## APPLICATION FOR AMENDED OR DUPLICATE PISTOL LICENSE

ORIGINAL LICENSE #

INSTRUCTIONS: Complete form and submit in DUPLICATE to the Westchester County Clerk's Office and include $3.00 for Amendment or $5.00 for duplicate.

| NAME: | STREET: | CITY/VILLAGE/TOWN: |
|---|---|---|

| AGE: | HEIGHT: | WEIGHT: | NOTE: Check box if purchase order is needed ☐ |
|---|---|---|---|

### CIRCLE APPROPRIATE TRANSACTION (S)

RESIDENCE CHANGE     DISPOSED     ACQUIRED     NAME CHANGE     RESTRICTION CHANGE     TRANSFER

DUPLICATE     SURRENDERED     SUSPENDED     REVOKED     DECEASED     OTHER_____

### I. TO AMEND LICENSE COMPLETE 1 THROUGH 7 WHERE APPROPRIATE

1. NAME _____ PHONE #'s: HOME _____ WORK _____

2. NEW ADDRESS _____

3. THE FOLLOWING WEAPON (S) HAVE BEEN ACQUIRED FROM: NAME _____

ADDRESS _____

LICENSE #/DEALER LICENSE #/SHIELD # _____ . IF MORE THAN ONE SELLER, CHECK THIS

BOX ☐ AND FILL OUT BOX 7 ON THE BACK OF THIS FORM.

| MAKE | REV/AUTO | MODEL | CALIBER | SERIAL # |
|---|---|---|---|---|
|  |  |  |  |  |

4. THE FOLLOWING WEAPON (S) HAVE BEEN DISPOSED TO: NAME _____

ADDRESS _____

LICENSE #/DEALER LICENSE #/SHIELD # _____ . IF MORE THAN ONE BUYER, CHECK THIS

BOX ☐ AND FILL OUT BOX 7 ON THE BACK OF THIS FORM.

| MAKE | REV/AUTO | MODEL | CALIBER | SERIAL # |
|---|---|---|---|---|
|  |  |  |  |  |

5. THE FOLLOWING WEAPON (S) HAVE BEEN: (CIRCLE ONE)     LOST     STOLEN     DESTROYED

LAW ENFORCEMENT AGENCY REPORTED TO: _____

| MAKE | REV/AUTO | MODEL | CALIBER | SERIAL # |
|---|---|---|---|---|
|  |  |  |  |  |

6. AMEND LICENSE TO: (CIRCLE ONE)     ADD     DELETE     A RESTRICTION

IF AMENDMENT IS EMPLOYMENT RELATED, STATE THE FOLLOWING: (FOR A BUSINESS, EMPLOYMENT, OR FULL CARRY)
I AM REQUESTING THAT THE RESTRICTION ON MY LICENSE BE CHANGED TO: _____

| NAME: | STREET: | APPX. 143 | CITY/VILLAGE/TOWN: |
|---|---|---|---|

7. NAMES AND ADDRESS' OF BUYERS AND/OR SELLERS (IDENTIFY IF BUYER OR SELLER)

| NAME | ADDRESS | WEAPON SERIAL # |
|---|---|---|
|  |  |  |
|  |  |  |

(A separate list of buyers/sellers must be submitted in triplicate on plain white paper, if there are more than 4 buyers/sellers.)

## II. TO REQUEST A DUPLICATE LICENSE, COMPLETE AFFIDAVIT

STATE OF NEW YORK }
COUNTY OF WESTCHESTER } S.S.
CITY/VILLAGE OF }

Full Name _____

Present Occupation _____

Name and Address of Employer _____

Serial number of lost license _____ Date of Issuance _____

Brief statement of circumstances under which permit was lost:

_____
_____
_____

Statement of weapon (s) now in applicant's possession, which are to be registered on license:

| MAKE | REV/AUTO | MODEL | CALIBER | SERIAL # |
|---|---|---|---|---|
|  |  |  |  |  |

(A separate list of guns must be submitted in triplicate on plain white paper, if applicant possesses more than 3 guns.)

Sworn to before me this _____ day of _____, 19 _____

_____
Applicant's Signature

_____
Notary Public

## III. TO BE COMPLETED BY ALL APPLICANTS

Have you been arrested for any crime, been a patient at any mental institution, or had an order of protection issued against you since the last license was issued? (CIRCLE ONE) YES NO
If yes, give details below:

_____
_____
_____

Date and Place of Birth _____

Foreign Born Citizens Only - Naturalization Certificate Number _____

Date of Issuance _____ Court _____

I SWEAR THAT ALL THE ABOVE FACTS ARE TRUE TO THE BEST OF MY KNOWLEDGE _____
APPLICANT'S SIGNATURE

| FOR OFFICE USE ONLY | | |
|---|---|---|
| AMENDED LICENSE APPROVED ☐ NOT APPROVED ☐ | DATE | COUNTY JUDGE |
| DUPLICATE LICENSE APPROVED ☐ NOT APPROVED ☐ |  |  |
| EXPIRATION DATE_____ | APPX. 144 |  |

Revised: 1/12/2005



# WESTCHESTER COUNTY POLICE
## PISTOL LICENSE UNIT

**BACKGROUND INVESTIGATION
WORKSHEET**

| OFFICE USE ONLY |
| --- |
| CASE#:_____ |
| DET:_____ |

**Answer all questions fully and in accordance with the guidelines set forth in the Westchester County Pistol Safety & Information Handbook. This form and attachments must be notarized.**

## APPLICANT INFORMATION:

Last Name:_____ First Name:_____ M.I._____

Address:_____
STREET     CITY    STATE   ZIP

  Note: You <u>must</u> notify the County Clerk <u>within ten (10) days</u> if your residence address changes, with information necessary to change pistol license records (Penal Law 400.00-9).

Birth Date:_____ Sex:_____ Social Security#:_____

Height:_____ Weight:_____ Eye Color:_____ Hair Color:_____

Place of Birth:_____ E-Mail Address:_____

Telephone (Home):_____ (Cell):_____

Driver License #:_____ State:_____

**Marital Status:**

☐ Single    ☐ Married    ☐ Separated    ☐ Divorced    ☐ Widowed

**Citizenship:**

☐ Citizen by Birth
☐ Naturalized Citizen    Naturalization Number:_____
☐ Resident Alien    Alien Registration Number:_____

**Previous Address(s):**

Address #1:_____
STREET     CITY   STATE  FROM  TO

Address #2:_____
STREET     CITY   STATE  FROM  TO

**Other Names You Have Been Known By:**

Last Name:_____ First Name:_____ M.I._____

Last Name:_____ First Name:_____ M.I._____

**EMPLOYER INFORMATION:**

Employer Name:_____ Occupation:_____

Dates of Employment (From):_____ To:_____

Your Supervisor's Name:_____ Title:_____

Address:_____
　　　　　　　STREET　　　　　　　　　　　CITY　　　　　　　　　　　STATE　　　　　　　ZIP

Telephone (Work):_____ Email (Work):_____

---

**List The Name & Address of Your Nearest Relative(s) Not Residing with You:**

**Relative #1:**

Last Name:_____ First Name:_____ M.I._____

Address:_____
　　　　　　　STREET　　　　　　　　　　　CITY　　　　　　　　　　　STATE　　　　　　　ZIP

Telephone (Home):_____ Telephone (Alt):_____

**Relative #2:**

Last Name:_____ First Name:_____ M.I._____

Address:_____
　　　　　　　STREET　　　　　　　　　　　CITY　　　　　　　　　　　STATE　　　　　　　ZIP

Telephone (Home):_____ Telephone (Alt):_____

---

**List The Name & Address of a Responsible Person Who Will Safeguard Firearm(s) In The Event of Your Death or Disability:**

Last Name:_____ First Name:_____ M.I._____

DOB:_____ Relation to you:_____

Address:_____
　　　　　　　STREET　　　　　　　　　　　CITY　　　　　　　　　　　STATE　　　　　　　ZIP

Telephone (Home):_____ (Work):_____

Telephone (Cell):_____ E-Mail Address:_____

## ANSWER THE FOLLOWING QUESTIONS: YES OR NO

|  |  | YES | NO |
|---|---|---|---|
| 1. | Are you engaged in any alternate business enterprise, employment, profession or occupation, other than that which is listed elsewhere on this form? | ☐ | ☐ |
| 2. | Have you ever served in the armed forces of the United States or of any country? | ☐ | ☐ |
| 3. | Have you ever been <u>discharged from</u> or <u>fired from</u> any employment, or have you ever been the subject of any employment or military related disciplinary action? | ☐ | ☐ |
| 4. | Have you ever <u>sought or undergone</u> treatment for <u>alcohol or drug use</u>? | ☐ | ☐ |
| 5. | Do you regularly use medications that may cause drowsiness, impairment or which are classified as a narcotic or as a tranquilizer? | ☐ | ☐ |
| 6. | Have you ever suffered from, sought treatment for, or been treated for any form of <u>mental illness or depression</u>, or <u>any related disease or condition</u>? | ☐ | ☐ |
| 7. | Do you suffer from any physical defect that might interfere with the safe handling of a firearm? | ☐ | ☐ |
| 8. | Have you ever <u>applied for or held</u> a firearm license in New York State or in any other state of the United States or a foreign country? | ☐ | ☐ |
| 9. | Have you ever been <u>arrested for or charged with any crime</u> in any state of the United States or in any foreign country, including cases that were dismissed, sealed, or reduced to a petty offense or to youthful offender status? (if yes, attach a copy of the court disposition and on a separate sheet of paper provide a full explanation of the matter). | ☐ | ☐ |
| 10. | Has an <u>Order of Protection</u> ever been issued by a court against you or on your behalf? (if yes, attach a copy of the order, and on a separate sheet of paper list the court name, date of issuance, complainant's name/ address/ telephone number/ relationship to you & reason for the order). | ☐ | ☐ |
| 11. | Have you taken the required firearm safety course, or do you have prior experience with firearm(s)? | ☐ | ☐ |

**IF ANY ANSWER IS "YES", FULLY EXPLAIN ON A SEPARATE SHEET OF PAPER. THE PAPER MUST BE DATED, SIGNED AND NOTARIZED:**

_____                    _____
APPLICANT NAME (PRINT)                              APPLICANT NAME (SIGNATURE)


STATE OF NEW YORK                  )
COUNTY OF WESTCHESTER              )

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____ YEAR_____


                              _____
                              SIGNATURE OF NOTARY PUBLIC

WCPD-126A (07-12-2010)              Page 3 of 3 Pages



# WESTCHESTER COUNTY POLICE
## PISTOL LICENSE UNIT

### ATTACHMENT: FULL CARRY

| OFFICE USE ONLY |
| --- |
| CASE#:_____ |
| DET:_____ |

**Answer all questions fully and in accordance with the guidelines set forth in the Pistol Safety & Information Handbook. This form and attachments must be notarized.**

**APPLICANT INFORMATION:**

Last Name:_____ First Name:_____ M.I._____

Address:_____
STREET                          CITY                    STATE              ZIP

**Please describe your need for an Unrestricted/ Full Carry firearm license:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____                    _____
APPLICANT NAME (PRINT)                              APPLICANT NAME (SIGNATURE)

STATE OF NEW YORK              )
COUNTY OF WESTCHESTER          )

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____ YEAR_____

_____
SIGNATURE OF NOTARY PUBLIC

WCPD-126H (07-12-2010)                    Page 1 of 1 Pages
APPX. 148



# WESTCHESTER COUNTY POLICE
# PISTOL LICENSE UNIT

## CHARACTER REFERENCE LETTER

| OFFICE USE ONLY |
|---|
| CASE# _____ |
| DET:_____ |

**Answer all questions fully and have this form notarized. If necessary, attach a separate sheet of paper and have it notarized.**

### PISTOL LICENSE APPLICANT INFORMATION:

Last Name:_____ First Name:_____ M.I._____

Address:_____
STREET                                    CITY                    STATE                    ZIP

---

**THIS SECTION TO BE COMPLETED BY THE PERSON PROVIDING THE CHARACTER REFERENCE:**

**PLEASE NOTE:** All persons completing a character reference on behalf of an applicant may not be related to the applicant by consanguinity (blood or ancestry) or by marriage (in-law) and must have known the applicant for a sufficient period of time to be able to establish the applicant's character and reputation in the community.

### REFEREE INFORMATION:

Last Name:_____ First Name:_____ M.I._____

Address:_____
STREET                                    CITY                    STATE                    ZIP

Date of Birth:_____ Social Security Number (last four digits):_____

Telephone (home):_____ Telephone (Work):_____

Occupation:_____ Employer Name:_____

Employer Address:_____
STREET                                    CITY                    STATE                    ZIP

**In what manner do you know the applicant, and for how long have you known him/ her?**

_____

_____

_____

_____

**What is the applicant's general temperament. Have you ever known the applicant to engage in aggressive, threatening, violent or bizarre behavior? If yes, please explain:**

_____

_____

**Have you ever known the applicant to use alcohol excessively or to the point of impairment? If yes, please explain:**

_____

_____

**Have you ever known the applicant to use drugs illegally or to the point of impairment, or to socialize with persons who do so? If yes, please explain:**

_____

_____

**Do you know of any contacts that the applicant may have had with the criminal justice system, or of any unfavorable incident(s) in the life of the applicant? If yes, please explain:**

_____

_____

_____

**What is your overall opinion of the applicant? (Please explain):**

_____

_____

_____          _____
REFEREE NAME (PRINT)                        REFEREE NAME (SIGNATURE)

STATE OF NEW YORK                    )
COUNTY OF WESTCHESTER                 )

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____ YEAR_____

                                    _____
                                    SIGNATURE OF NOTARY PUBLIC

WCPD-126L (07-12-2010)              Page 2 of 2 Pages
                                    APPX. 150

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | | |
|---|---|---|
| ALAN KACHALSKY, et al., | : | Case No. 10-CV-05413-CS |
| | : | |
| Plaintiffs, | : | SEPARATE STATEMENT OF |
| | : | DISPUTED MATERIAL FACTS |
| v. | : | IN OPPOSITION TO INDIVIDUAL |
| | : | DEFENDANTS' MOTION FOR |
| SUSAN CACACE, | : | SUMMARY JUDGMENT [L.R. 56.1] |
| | : | |
| Defendants. | : | |
| | : | |

-----------------------------------------------------X

SEPARATE STATEMENT OF DISPUTED MATERIAL FACTS IN OPPOSITION TO
INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COME NOW** the Plaintiffs, Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie

Nance, Anna Marcucci-Nance, and Second Amendment Foundation, Inc., by and through

undersigned counsel, and submit their Separate Statement of Disputed Material Facts in

Opposition to Individual Defendants' Motion for Summary Judgment.

Dated: February 9, 2011                    Respectfully submitted,

Alan Gura*                                 Vincent Gelardi
Gura & Possessky, PLLC                     Gelardi & Randazzo
101 N. Columbus Street, Suite 405          800 Westchester Avenue, Suite S-608
Alexandria, VA 22314                       Rye Brook, NY 10573
703.835.9085/Fax 703.997.7665             914.251.0603/Fax 914.253.0909
Lead Counsel                               Local Counsel
*Admitted Pro Hac Vice


                            By:    /s/ Alan Gura
                                   Alan Gura

                                   Attorneys for Plaintiffs

| **Alleged Fact** | **Response** |
|---|---|
| 1. Plaintiff Alan Kachalsky is a natural person; and a citizen of the United States, State of New York, County of Westchester.  First Amended Complaint ("FAC") ¶ 1; Tomari Decl. Exhibit "A". | 1. Undisputed. |
| 2. Plaintiff Christina Nikolov is a natural person; and a citizen of the United States, State of New York, County of Westchester.  FAC ¶ 2; Tomari Decl. Exhibit "A". | 2. Undisputed. |
| 3. Plaintiff Eric Detmer is a natural person; and a citizen of the United States, State of New York, County of Westchester.  FAC ¶ 3; Tomari Decl. Exhibit "A". | 3. Undisputed. |
| 4. Plaintiff Johnnie Nance is a natural person; and a citizen of the United States, State of New York, County of Westchester.  FAC ¶ 4; Tomari Decl. Exhibit "A". | 4. Undisputed. |
| 5. Plaintiff Anna Marcucci-Nance is a natural person; and a citizen of the United States, State of New York, County of Westchester.  FAC ¶ 5; Tomari Decl. Exhibit "A". | 5. Undisputed. |
| 6. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of the State of Washington, with its principal place of business in Bellevue, Washington.  FAC ¶ 6; Tomari Decl. Exhibit "A". | 6. Undisputed. |

**Alleged Fact**                                    **Response**

7.    The Hon. Susan Cacace is now, and        7.    Undisputed.
      was at all times relevant herein, a
      County Court judge for Westchester
      County ("Westchester").  She has
      been on the bench for five (5) years.
      Pursuant to New York State Penal
      Law §265.00 (10) as a county judge
      she is also a handgun licensing
      officer for Westchester.  Declaration
      of Hon. Susan Cacace. ("Cacace
      Decl.") ¶ 2.

8.    The Hon. Jeffrey A. Cohen currently      8.    Undisputed.
      sits as a Justice on the bench of the
      Appellate Division, Second
      Department.  Prior to his
      appointment thereto on December 9,
      2010, he served as a County Court
      judge for Westchester for three (3)
      years.  He has been on the bench for
      four (4) years.  Pursuant to New
      York State Penal Law §265.00 (10)
      as a county judge he was also a
      handgun licensing officer for
      Westchester.  Declaration of the
      Hon. Jeffrey A. Cohen ("Cohen
      Decl.") ¶ 2.

9.    The Hon. Albert Lorenzo is now, and      9.    Undisputed.
      was at all times relevant herein, an
      Acting Justice for the Supreme
      Court, of the State of New York,
      Westchester County.  He has been on
      the bench for eight (8) years.
      Pursuant to New York State Penal
      Law §265.00 (10) as an acting justice
      he serves as a handgun licensing
      officer for Westchester.  Declaration
      of Hon. Albert Lorenzo ("Lorenzo
      Decl.") ¶ 2.

| Alleged Fact | Response |
|---|---|
| 10. | The Hon. Robert K. Holdman currently sits as a Justice of the Supreme Court of the State of New York, Bronx County. Prior to serving as a Supreme Court Justice for the Bronx, and at all times relevant herein, he served as a Justice for the Supreme Court, of the State of New York, Westchester County. He has been on the bench since June of 2005. Pursuant to New York State Penal Law §265.00 (10), as a Supreme Court Justice in Westchester, he was also a handgun licensing officer for Westchester County. Declaration of Hon. Robert K. Holdman ("Holdman Decl.") ¶ 2. | 10. | Undisputed. |
| 11. | New York State does not ban handguns, but requires them to be licensed. FAC ¶ 21, Tomari Decl. Exhibit "A"; N.Y. Penal Law § 265.00; § 400.00 *et seq.*; Declaration of Bruce Bellom, sworn to January 25, 2011 ("Bellom Decl."), ¶ 3. | 11. | Disputed.  As described more fully in the Amended Complaint and Plaintiffs' Motion for Summary Judgment, New York law permits Defendants to generally ban the carrying of handguns. |
| 12. | PL § 400.00 (2) sets forth the type of handgun permits available in this State.  PL § 400.00 (2) (a) expressly provides for handgun possession in the home; PL § 400.00 (2) (b) - (e) provides for various job related licenses; and PL § 400.00 (2)(f) governs the issuance of permits to carry concealed handguns in public. N.Y. Penal Law § 265.00; § 400.00 *et seq.* | 12. | Undisputed. |

4

| Alleged Fact | Response |
|---|---|
| 13.    PL § 400.00 sets forth that an individual seeking a carried concealed permit must (a) be over 21; (b) be of good moral character; (c) never have been convicted of a felony or other serious crime (d) never have been mentally ill or confined to any institution; (e) never had a license revoked or been the subject of a family court order; (f) have undergone a firearms safety training if the permit is sought in Westchester; and as set forward in § 400.00 (2)(f): must show "proper cause" exists for such a permit.  N.Y. Penal Law § 400.00 *et seq.*;  FAC ¶¶ 22, 24, Tomari Decl. Exhibit "A". | 13.    Undisputed. |
| 14.    "Proper cause" as used in the context of issuing handgun permits means a showing a need for "self-protection distinguishable from that of the general public".  FAC ¶¶ 25-26, 30, 35; 36; 37, Tomari Decl. Exhibit "A"; Cacace Decl. ¶ 5; Cohn Decl. ¶ 5; Holdman Decl. ¶¶ 6-8; *Bach* v. *Pataki*, 408 F.3d 75, 80 (2d Cir. 2003). | 14.    Undisputed. |

5

| **Alleged Fact** | **Response** |
|---|---|
| 15.   The Pistol Licensing Unit of the Westchester County Department of Public Safety maintains a copy of each application for a carry concealed, or "fully carry" permit; and conducts an investigation of each such application.  In so doing, it complies a file containing the results of the investigation and summarizes the investigation for the licensing officer who determines whether such permit will issue.  Declaration of Bruce Bellom, sworn to January 24, 2011 ("Bellom Decl.") ¶¶ 1, 3; PL § 400.00 (4). | 15.   Undisputed. |
| 16.   The application form requires the applicant to provide four (4) character references "who by their signature attest to [the applicant's] good moral character" and to disclose whether he/she has "ever been arrested, summoned, charged or indicted anywhere for any offense, including DWI, (except traffic infractions)" and if so, to disclose the date, police agency, charge and disposition, including the court and date of disposition. Bellom Decl. ¶ 5; Tomari Decl. Exhibit B. | 16.   Undisputed. |

6

| Alleged Fact | Response |
|---|---|
| 17.  In addition, the applicant must disclose whether he/she has ever: a) been discharged from any employment or the armed forces for cause; b) undergone treatment for alcoholism or drug use; c) suffered from any mental illness; d) had a pistol license; dealer's license; gunsmith license; or any application for such a license disapproved or had such a license revoked or cancelled; e) any physical condition which could interfere with the safe and proper use of a handgun; and f) been charged, petitioned against, a respondent, or otherwise been a subject of a proceeding in family court. If the "YES" box to any of these questions is checked, the applicant must provide a written explanation. Bellom Decl. ¶ 7; Tomari Decl. Exhibit B; PL § 400.00 *et seq.* | 17.  Undisputed. |
| 18.  Upon receipt of a completed initial application, a police member of the Pistol Permit Unit conducts the investigation required under Penal Law §400.00(4). For an initial application, this investigation includes a fingerprint based criminal background check with the New York State Department of Criminal Justice Services, the Federal Bureau of Investigation and the National Instant Criminal Background system. When the applicant is filing for a restriction change, the criminal background check is updated by a search of the National Instant Criminal Background system. Bellom Decl. ¶ 12; PL§400.00 *et seq.* | 18.  Undisputed. |

7

**Alleged Fact**                                    **Response**

19.   As part of the investigation, the          19.   Undisputed.
      applicant's identifying information is
      forwarded to the New York State
      Department of Mental Hygiene to
      determine if the applicant had any
      hospitalizations for mental illness.
      Bellom Decl. ¶ 13.

20.   In addition to the background and          20.   Undisputed.
      mental health check, the
      investigation includes a review of the
      application form, Character
      Reference Letters submitted with the
      application form, and the application
      attachment completed by the
      applicant.  Bellom Decl. ¶ 14.

21.   Upon review of all the materials,         21.   Undisputed, except to note that the
      once the investigation is deemed                 "investigation summary" referenced
      complete, an investigation summary              by Defendants include
      is complied for the licensing officer,          recommendations. *See, e.g.*,
      whom, in Westchester,  pursuant to              Plaintiffs' Exhibits C, E, G.
      statute, is a Judge. Prior to
      submission to the licensing officer
      however, the investigation summary,
      and all application materials, are
      submitted to a County Police
      lieutenant; the Chief Inspector of
      Administrative Services; and the
      Commissioner or a Deputy
      Commissioner, who all, also review
      the materials.  Bellom Decl. ¶¶ 2, 14;
      PL § 265.00(10).

8

**Alleged Fact**                                  **Response**

22.   Once all the reviews by the                22.   Disputed. The County, by and
      Department of Public Safety are                   through its officers, make
      complete, the entire investigation file           recommendations as to whether the
      is submitted to the Judge for review               applications should be granted or
      and decision on the application.  The              denied. *See, e.g.*, Plaintiffs' Exhibits
      role of the Pistol Permit Unit is                   C, E, G.
      limited to the investigation described
      herein. The County has no ability to
      grant or deny license applications or
      amendments.  Bellom Decl. ¶ 15.

23.   In calendar year 2010, in                  23.   Plaintiffs are not in a position to
      Westchester County, 130 "carry                     admit or deny the truth of this
      concealed" pistol permits; an                      statement, which is, in any event,
      additional 41 pistol permits restricted            wholly irrelevant.  It is beyond
      to carrying for purposes of                        dispute that Plaintiffs' applications
      employment; and 471 pistol permits                 for carry permits were denied.
      issued for the purpose of target
      shooting were issued.  Bellom Decl.
      ¶ 17.

24.   This process, as just described above      24.   On information and belief,
      was used to compile the investigative            undisputed, except to the extent that
      files for Plaintiffs Alan Kachalsky               the County made recommendations
      (Tomari Decl. Exhibit F), Christina               regarding Plaintiffs' applications.
      Nikolov (Tomari Decl. Exhibit G),
      Eric Detmer (Tomari Decl. Exhibit
      H), Johnnie Nance (Tomari Decl.
      Exhibit I) and Anna Marcucci-Nance
      (Tomari Decl. Exhibit J).  Bellom
      Decl. ¶ 16.

25.   In May, 2008, Kachalsky applied for      25.   Undisputed.
      a "full carry" permit to carry
      concealed handguns with him while
      in public.  FAC ¶ 26; Tomari Decl.
      Exhibit F.

9

| Alleged Fact | Response |
|---|---|
| 26. As part of his application, Kachalsky listed as factors he believed established "proper cause" for a full carry permit: | 26. Undisputed. |

The factors which establish proper cause for the issuance to myself of a Full Carry pistol permit are: 1) the Second Amendment of the Constitution grants citizens the right to bear arms.  As a citizen, I am therefore entitled to exercise my Constitutional right to bear arms.  I believe the Constitutional right entitles me to the permit without further the need to establish "proper cause".

If the issuing agency for some reason requires more than this, then I will cite the fact that we live in a world sporadic random violence might at any moment place one in a position where one needs to defend oneself or possibly others, e.g. random shootings in universities (Virginia Tech), post offices, airline check-in counters, malls, road rage, as well as the run-of-the-mill street muggings and robberies.  While the odds of finding oneself in a Virginia Tech type situation are remote, one must reflect that had there been even one armed person, the death toll might have been considerably less than 31 dead.  While one never knows what one might do in such situations, it is my belief that it is better to have the option to defend oneself (and others) than not to have the option.  As a pilot and skydiver, I have been trained to handle emergencies, and I

10

**Alleged Fact**                                    **Response**

have actually handled several
emergencies, so it is unlikely that I
will respond in a dangerous manner.

Additionally, as an attorney (who has
practiced criminal law in this State
and in this County for over 25 years),
I know when the use of deadly force
is justified. I also know when the use
of deadly force is neither justified
(nor required). I am capable of, and
have previously defended myself (on
rare occasions) and others from
non-deadly force. Two of these
incidents resulted in police
intervention. On one such occasion,
I was compelled to intervene when
my client was being choked by her
estranged husband. On another such
occasion, I was assaulted with a 12"
butcher's knife by an irate employee.
I have been threatened once by the
spouse of my (divorce) client, and
once by my own (unhappy) client.

However, as we see every day,
sometimes, non-deadly force is
simply not enough for self-defense.
In those situations, I am entitled to,
and, by applying for a full carry
pistol permit, it is my intention to
carry a licensed concealed pistol to
defend myself and others in the event
circumstances require it.

Finally, I am a law-abiding citizen. I
have never been convicted of a
crime, nor have I ever assaulted or
threatened to assault another person.

Tomari Decl. Exhibit F.

11

**Alleged Fact**                                    **Response**

27.  Upon completion of its investigation,          27.    Undisputed.
     the Department of Public Safety
     recommended denial of Kachalsky's
     application as he failed to
     'demonstrate a need for self
     protection distinguishable from that
     of the general public.  Tomari Decl.
     Exhibit F.

28.  The application, investigation file            28.    Undisputed.
     and recommendations of the
     Department of Public Safety were
     forwarded to the Hon. Susan Cacace,
     who acted as the licensing officer for
     Kachalsky application.  Cacace Decl.
     ¶ 2.

29.  After reviewing the materials related          29.    Undisputed.
     to Mr. Kachalsky's application,
     Judge Cacace issued a decision and
     order denying Mr. Kachalsky's
     application, dated October 8, 2008,
     noting "the State has a substantial
     and legitimate interest and grave
     responsibility for ensuring the safety
     of the general public" and that
     licensing officers "are vested with
     broad discretion in determining
     applications for an unrestricted pistol
     license and are required to exercise
     their judgment on the basis of a total
     evaluation of relevant factors".
     Cacace Decl. ¶ 4; Tomari Decl.
     Exhibit K.

12

**Alleged Fact**

**Response**

30.    Judge Cacace denied Kachalsky's application for an unrestricted, full carry pistol permit, as he failed to state "any facts which would demonstrate a need for self protection distinguishable from that of the general public", and because "based upon all the facts and circumstances of this application, it is my opinion that proper cause does not exist for the issuance of an unrestricted 'full carry' pistol license" to Mr. Kachalsky.  FAC ¶ 26; Cacace Decl. ¶ 5,  Tomari Decl. Exhibit K.

30.    Undisputed.

13

| Alleged Fact | Response |
|---|---|
| 31.   Kachalsky appealed the denial of his application to the New York State Appellate Division, Second Department through a Special Proceeding commenced pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). In his Verified Petition, Kachalsky asserted a Second Amendment challenge. Tomari Decl. Exhibits L and M. By Order dated September 8, 2009, the Appellate Division held that Kachalsky "failed to demonstrate 'proper cause' for the issuance of a 'full carry permit' [and] accordingly, [Judge Cacace's] determination was not arbitrary and capricious and should not be disturbed". *Kachalsky* v. *Cacace*, 65 A.D.3d 1045 (2d Dep't 2009); FAC ¶ 27, Tomari Decl. Exhibit A. | 31.   Undisputed, except for the allegation that Kachalsky "asserted a Second Amendment challenge." Kachalsky asserted that the Second Amendment secured his right to carry a gun in public, however, under New York law, Article 78 proceedings are not considered vehicles by which to lodge constitutional challenges to state law. It is well-established that "article 78 does not lie to challenge a legislative act . . . a petitioner who is challenging the validity of legislation may not use an article 78 proceeding for that purpose; a lawsuit to challenge the validity of legislation should take the form of an action for a declaratory judgment." *Matter of Council of City of N.Y.* v. *Bloomberg*, 6 N.Y.3d 380, 388 (2006) (citation omitted). "New York law permits a party in an Article 78 proceeding to 'raise a claim that the administrative application of a rule to her is unconstitutional,' but does not allow the party to raise a general constitutional challenge to a law or regulation." *Karamoko* v. *N.Y. City Hous. Auth.*, 170 F. Supp. 2d 372, 378 (S.D.N.Y. 2001) (quoting *Hachamovitch* v. *Debuono*, 159 F.3d 687, 695 (2d Cir. 1998)). In any event, this factual allegation is irrelevant to any issue in the case. |

14

| Alleged Fact | Response |
|---|---|
| 32. Kachalsky then sought leave to appeal the denial of his Article 78 petition to the New York Court of Appeals, again, arguing that the denial of a "full carry" permit infringed his Second Amendment right.  Tomari Decl. Exhibit N.  The Court of Appeals, *sua sponte*, dismissed his appeal, upon the grounds that "no substantial constitutional question is directly involved".  *Kachalsky* v. *Cacace*, 14 N.Y.3d 743 (2010); FAC ¶ 28, Tomari Decl. Exhibit A. | 32. Undisputed, subject to the response to item number 31. In any event, this factual allegation is irrelevant to any issue in the case. |
| 33. The Court of Appeals dismissal of Kachalsky's petition for leave to appeal was issued prior to the Supreme Court's decision in *McDonald* v. *City of Chicago*, which held that the Second Amendment applied to the states.  FAC ¶ 28, Tomari Decl. Exhibit A. | 33. Undisputed, but in any event, these factual allegations are irrelevant to any issue in the case. |
| 34. Kachalsky has taken no further action on his application and has not re-applied for a license.  FAC ¶ 29, Tomari Decl. Exhibit A. | 34. Undisputed, but in any event, these factual allegations are irrelevant to any issue in the case. |
| 35. In March, 2009, Nikolov applied for a "full carry" permit to carry concealed handguns with her while in public.  FAC ¶ 30, Tomari Decl. Exhibits A and G. | 35. Undisputed. |

**Alleged Fact**

**Response**

36.    As part of her application, Nikolov listed as factors she believed established "proper cause" for a full carry permit:

First of all, I have been a law-abiding citizen my entire life, as evidenced by my non-existent criminal record. And I meet all the other minimum requirements stated within the Pistol License Information Handbook.

In addition, I currently possess a concealed weapon permit (with full-carry privileges) in the State of Florida and have never once brandished or discharged my firearms anywhere other than in a safe manner at a law-enforcement utilized shooting range. As someone with considerable experience carrying a firearm legally, I am well aware of the responsibility involved when carrying a concealed firearm and the restraint required.

If ever confronted with a potentially dangerous situation, common sense dictates that the course of action is to extract myself from the situation and contact the authorities immediately. And if I am unable to escape, the only time I would ever take out my firearm would be if my life were in imminent danger an I have exhausted all other non-lethal options. But even then, depending on the circumstances (closed quarters, innocent people nearby, etc.), I would still need to determine whether using a firearm would be prudent.

36.    Undisputed.

16

**Alleged Fact**                                    **Response**

I have completed three firearms
safety courses with NRA certified
Instructors over the past three years
and continually seek opportunities to
further educate myself in the area of
safety, even when not required by
law.

For the past 20 years I have been a
licensed commercial pilot and for
more than two years, a certified
flight instructor and instrument flight
instructor.  As a pilot and more
importantly, someone who teaches
people to fly, it is absolutely critical
for me to always remain calm
regardless of how stressful a
situation becomes.  I mention this
because a calm demeanor is essential
when either involved in or a witness
to a potentially dangerous situation.

Also relevant to my application and
establishing proper cause for issuing
me a New York State full carry
firearm license is my status a [sic]
transgender female, [sic] the
National Coalition of Anti-Violence
programs reports that I am far more
likely to be a victim of violent crime
than a genetic female.  And these
hate crimes are increasingly locally,
as well as nationwide. I have
included a list of hundreds of crimes
against people in similar
circumstances as myself, some of
which are high profile, like the
Brandon Teena murder.

Tomari Decl. Exhibit G.

17

**Alleged Fact**                                    **Response**

37.   Upon completion of its investigation,         37.   Undisputed.
      the Department of Public Safety
      recommended denial of Nikolov's
      application as she failed to
      demonstrate a need for self
      protection distinguishable from that
      of the general public.  Tomari Decl.
      Exhibit G.

38.   The application, investigation file           38.   Undisputed.
      and recommendations of the
      Department of Public Safety were
      forwarded to the Hon. Jeffrey A.
      Cohen, who acted as the licensing
      officer for Nikolov's application.
      Cohen Decl. ¶ 2.

39.   After reviewing the materials related         39.   Undisputed.
      to Ms. Nikolov's application, Judge
      Cohen issued a decision and order
      denying Mr. Kachalsky's application,
      dated October 2 2008, because she
      failed to demonstrate "that she has a
      special need for self-protection
      distinguishable from that of the
      general public".  FAC ¶ 30; Cohen
      Decl. ¶ 5; Tomari Decl. Exhibit O.
      Ms. Nikolov did not appeal her
      decision of re-apply for a license.

40.   Detmer is licensed to have a handgun          40.   Undisputed.
      for the purpose of target shooting
      only.  FAC ¶ 32, Tomari Decl.
      Exhibits A and H.

41.   In July, 2010 Detmer sought to                41.   Undisputed.
      amend his current pistol permit from
      target shooting only, to a "full carry"
      permit to carry concealed handguns
      while in public.  FAC ¶ 32, Tomari
      Decl. Exhibits A and H.

18

**Alleged Fact**                                         **Response**

42.    As part of his application, Detmer         42.    Undisputed.
       listed as factors he believed
       established "proper cause" for a full
       carry permit:

       I am a Federal Law Enforcement
       Officer with the United States Coast
       Guard (USGC).  Specifically, I have
       been a qualified Boarding Team
       Member (BTM) since September,
       2004.  When on-duty with the USCG
       I carry a .40 caliber pistol as a
       personal defense weapon.  As a BTM
       my dutied include boarding pleasure
       and commercial boats, inspecting
       shore side facilities and interacting
       with the public, all while performing
       the public service of enforcing laws.
       To maintain my BTM qualification, I
       complete semi-annual training
       consisting of a non-firing judgmental
       pistol course, a firing tactical pistol
       course, and use -of-force training.
       This training ensures I use the pistol
       safely and properly while on-duty.
       With a full carry permit, I would
       safely provide the same public
       service of enforcing laws while
       off-duty, if needed.  My training and
       experience with the USGC shows I
       am qualified to have a full carry
       permit.

       Attached is my enlistment contract
       with the USCG, showing I will be
       working for the USCG until at least
       December, 2014.  Also attached is
       my BTM qualification letter, dated
       September, 2004.

       FAC ¶ 31, Tomari Decl. Exhibit H.

19

**Alleged Fact**                                    **Response**

43.   Detmer's application represented that        43.   Undisputed.
      while he carries a .40 caliber
      handgun when on duty with the
      Coast Guard, he has no authority to
      make arrests, and must surrender the
      handgun each time he leaves duty.
      FAC ¶ 31, Tomari Decl. Exhibits A
      and H.

44.   Upon completion of its investigation,        44.   Undisputed.
      the Department of Public Safety
      recommended denial of Detmer's
      application as he failed to
      'demonstrate a need for self
      protection distinguishable from that
      of the general public. FAC ¶ 32,
      Tomari Decl. Exhibit H.

45.   After reviewing the materials related        45.   Undisputed.
      to Mr. Detmer's application, Judge
      Lorenzo denied Detmer's application
      to change his permit from "target
      shooting", to "full carry", and so
      informed him through
      correspondence dated September 27,
      2010, finding there was "no
      justification" warranting a "full
      carry" permit. FAC ¶ 33; Lorenzo
      Decl. ¶ 5; Tomari Decl. Exhibit P.

46.   Nance is licensed to have a handgun          46.   Undisputed.
      for the purpose of target shooting
      only. FAC ¶ 34, Tomari Decl.
      Exhibits A and I.

47.   In June, 2010 Nance sought to                47.   Undisputed.
      amend his pistol permit from target
      shooting only, to a "full carry" permit
      to carry concealed handguns while in
      public. FAC ¶ 34, Tomari Decl.
      Exhibit I.

20

| **Alleged Fact** | **Response** |
|---|---|
| 48.  As part of his application, Nance listed as factors he believed established "proper cause" for a full carry permit: | 48.    Undisputed. |

I am a citizen in good standing in the community with many family and social ties.  I am steadily employed and stable.  I am of good moral character.

My intent to change restriction is due to my desire to become involved in competitive shooting at various range locations.  Also, the NRA has offered to partner with my wife to provide all female classes to women.  It is my intention to co-instruct these classes.  I would like to use my NRA Instructor Safety certifications to promote safe gun handling at various locations.  Having a full carry permit would facilitate these endeavors.

FAC ¶ 31, Tomari Decl. Exhibit I.

| 49.  Upon completion of its investigation, the Department of Public Safety recommended denial of Nance's application as he failed to 'demonstrate a need for self protection distinguishable from that of the general public.  FAC ¶ 34, Tomari Decl. Exhibit I. | 49.    Undisputed. |

**Alleged Fact**                                    **Response**

50.   After reviewing the materials related         50.   Undisputed.
      to Mr. Nance's application, Judge
      Holdman issued a Decision dated
      September 9, 2010 denying Nance's
      application to change his permit from
      "target shooting", to "full carry".
      FAC ¶ 35, Tomari Decl. Exhibit Q;
      Holdman Decl. ¶ 4.

51.   Judge Holdman's September 9, 2010            51.   Undisputed.
      Decision, observed that "those
      charged with the duty to oversee
      handgun licensing ... must ...
      recognize and honor the right while
      at the same time recognizing the
      limits to the right to bear arms under
      the Second Amendment".  Holdman
      Decl. ¶ 5; Tomari Decl. Exhibit Q.

52.   Judge Holdman's September 9, 2010            52.   Undisputed.
      Decision further found that "[t]he
      burden of establishing 'proper cause'
      for the issuance of a full-carry permit
      is upon the applicant to establish a
      'special need for self-protection
      distinguishable from that of the
      general community or of persons
      engaged in the same profession' ".
      Holdman Decl. ¶ 6; Tomari Decl.
      Exhibit Q.

| **Alleged Fact** | **Response** |
|---|---|
| 53.    Upon reviewing Mr. Nance's application materials, Judge Holdman concluded that Nance had "not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or [had] demonstrated a need for self-protection distinguishable from that of the general public or of other persons similarly situated", and thus denied his application to amend his license from target shooting to "full carry".   FAC ¶ 35; Holdman Decl. ¶ 5; Tomari Decl. Exhibit Q. | 53.    Undisputed. |
| 54.    Marcucci-Nance is licensed to have a handgun for the purpose of target shooting only.  FAC ¶ 36, Tomari Decl. Exhibits A and J. | 54.    Undisputed. |
| 55.    In June, 2010 Marcucci-Nance sought to amend her pistol permit from target shooting only, to a "full carry" permit to carry concealed handguns while in public.  FAC ¶ 36, Tomari Decl. Exhibits A and J. | 55.    Undisputed. |

| Alleged Fact | Response |
|---|---|
| 56. As part of her application, Marcucci-Nance listed as factors she believed established "proper cause" for a full carry permit:<br><br>I am a citizen in good standing in the community with many familial and social ties.  I am steadily employed and stable.  I am of good moral character.  My intent to change restriction is due to my desire to become involved in competitive target shooting at various range locations.  Also, the NRA has offered to partner with me to provide all female classes to women.<br><br>I would like to use my NRA Instructor Safety certifications to promote safe gun handling at various locations.  Having a full carry permit would facilitate these endeavors.<br><br>FAC ¶ 36, Tomari Decl. Exhibit J. | 56.   Undisputed. |
| 57. Upon completion of its investigation, the Department of Public Safety recommended denial of Marcucci-Nance's application as she failed to 'demonstrate a need for self protection distinguishable from that of the general public.  FAC ¶ 37, Tomari Decl. Exhibit J. | 57.   Undisputed. |
| 58. Judge Holdman's September 9, 2010 Decision, observed that "those charged with the duty to oversee handgun licensing ... must ... recognize and honor the right while the right to bear arms under the Second Amendment".  Holdman Decl. ¶ 8; Tomari Decl. Exhibit R. | 58.   Undisputed. |

24

| **Alleged Fact** | **Response** |
|---|---|
| 59. Judge Holdman September 9, 2010 Decision further found that "[t]he burden of establishing 'proper cause' for the issuance of a full-carry permit is upon the applicant to establish a 'special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession' ". Holdman Decl. ¶ 8: Tomari Decl. Exhibit R. | 59. Undisputed. |
| 60. Upon reviewing Marcucci-Nance's application materials, Judge Holdman concluded that Marcucci-Nance had "not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or [had] demonstrated a need for self-protection distinguishable from that of the general public or of other persons similarly situated", and thus denied his application to amend his license from target shooting to "full carry".   FAC ¶ 37; Holdman Decl. ¶¶ 8-9; Tomari Decl. Exhibit R. | 60. Undisputed. |

25

**Alleged Fact**

**Response**

61.   The current version of New York's
Penal Law § 400.00(2)(f) was
enacted in 1911 as "the Sullivan
Law".  It was enacted to combat
handgun violence and provided in its
original format:

Any person over the age of sixteen
years, who shall have in his
possession in any city, village or
town of this state, any pistol,
revolver or other firearm of a size
which may be concealed upon the
person, without a written license
therefore, issued to him by a police
magistrate of such city or village, or
by a justice of the peace of such
town, or in such manner as may be
prescribed by ordinance in such city,
village or town, shall be guilty of a
misdemeanor.

Any person over the age of sixteen
year, who shall have or carry
concealed upon his person in any
city, village, or town of this state,
any pistol, revolver, or other firearm
without a written license therefore
issued to him by a police magistrate
of such city or village, or by a justice
of the peace of such town, or in such
a manner as may be prescribed by
ordinance of such city, village or
town, shall be guilty of a felony.

N.Y. Penal Law § 1897 (1911)
(current version at N.Y. Penal Law §
400.00 (2)(f) (McKinney 2010));
Tomari Decl. Exhibit S (1).

61.   The former version of the law is
irrelevant.

26

**Alleged Fact**                                                   **Response**

62.  A January 30th, 1911 New York          62.  Plaintiffs are not in a position to
     Times article states:                       admit or deny the truth of this
                                                  statement, which is, in any event,
     A marked increase in the number of          wholly irrelevant.
     homicides and suicides in this city by
     shooting has led officials of the
     Coroner's office to start a movement
     which they hope will lead to new
     legislation restricting the sale of
     firearms…one of the Coroner's
     clerks has just completed a list of
     recommendations to the Legislature,
     which he and his fellow officials
     believe will result in materially
     decreasing acts of violence in which
     revolvers figure.

     Tomari Decl. Exhibit S (2).

63.  The Law was intended to eradicate       63.  The text of the various referenced
     "the concealed weapon evil" (Tomari          documents is not disputed, but the
     Exhibit S (2)), limit gang violence          legislative history of the Act as
     (Tomari Decl., Exhibit S (3)), and to        referenced by Defendants is entirely
     "decrease appreciably the number of          irrelevant to any issue in the case.
     homicides, accidental and impulsive,
     while some restraint will be imposed
     even upon the criminals." (Tomari
     Decl., Exhibit S (4)).

64.  Testimony before the Senate Codes       64.  The text of the various referenced
     Committee hearing stated  that the           documents is not disputed, but the
     Sullivan law would prevent fifty             legislative history of the Act as
     murders in New York City annually,           referenced by Defendants is entirely
     remove firearms from the hands of            irrelevant to any issue in the case.
     criminals. (Tomari Decl., Exhibit S
     (5)).

**Alleged Fact**

**Response**

65.   Senator Henry W. Pollock, a member of the Senate Codes Committee that approved the text of the Sullivan law, stated in a September 1, 1911 letter to New York Times that the bill was intended "to punish for the unlawful possession of dangerous weapons" and to "aid the authorities in the identification of the owner of a firearm used in the commission of a crime." Senator Pollock stated that "the only opposition to any of the provisions of this bill urged before either of the committees of the Legislature was that of representatives of manufacturers and dealers in firearms." (Tomari Decl., Exhibit S (6).

65.   The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

66.   Two years after the Sullivan Law's initial enactment, a 1913 amendment created the "proper cause" requirement by the addition of a new paragraph stating:

In addition, it shall be lawful for any magistrate, upon proof before him that the person applying therefore is of good moral character, and that *proper cause* exists for the issuance thereof, to issue such person a license to have and carry concealed a pistol or revolver without regard to employment or place of possessing such weapon…

N.Y. Penal Law § 1897 (1913) (current version at N.Y. Penal Law § 400.00 (2)(f) (McKinney 2010)); Tomari Decl. Exhibit S (7).

66.   The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

28

**Alleged Fact**

**Response**

67.    A 1921 amendment divided the law into sections and changed the licensing language to provide:

    In addition, it shall be lawful for *the police commissioner in the city of New York or elsewhere in this state, for a judge or justice of a court of record,* upon proof before him of the person applying therefore is of good moral character, and that proper cause exists for the issuance thereof, to issue such person a license to have and carry concealed a pistol or revolver without regard to employment or place of possessing such weapon…

    N.Y. Penal Law § 1897(9)(1921) (current version at N.Y. Penal Law § 400.00 (2)(f) (McKinney 2010)) (emphasis added); Tomari Decl. Exhibit S (8).

67.    The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

68.    The text of the Sullivan Law remained largely unchanged until the early 1960s. On January 3rd, 1962, Senator Albert Berkowitz, at the request of the New York State Joint Legislative Committee on Firearms and Ammunitions, introduced an act to amend and reorganize provisions of the Penal Law.  The 1962 Report of the New York State Joint Legislative Committee on Firearms and Ammunition states that "more than a quarter of a million serious crimes are committed with weapons annually in the United States, and the number is on the increase." Rep. of N.Y.J. Legis. Comm., No. 29 at 11 (1962); Tomari Decl. Exhibit S (9).

68.    The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

29

**Alleged Fact**

**Response**

69.  Additionally, the report states:

The legislative problem posed for the fifty-one American jurisdictions (fifty states and the District of Columbia), charged with the major responsibility of criminal law enforcement in the United States, suggests itself: to enact statutes adapted to prevent these crimes and occurrences before they happen, and, at the same time, preserve the legitimate interests of individual liberty, training for national defense, hunting, target shooting and trophy collecting.

69.  The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

70.  On July 1, 1963, a modified version of the original bill became effective. Rep. of N.Y. J. Legis. Comm., No. 35 at 5 (1963); Tomari Decl. Exhibit S (10).

70.  The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

71.  The purpose of the amendment was stated to be for "clarification and rearrangement of present laws affecting firearms and ammunition, and contains no substantive change in the present laws." N.Y. Legis. Ann. at 65 (1963), (emphasis in original), Tomari Decl. Exhibit S (11).

71.  The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

72.  Thus, the licensing provisions formerly found in § 1897 were placed in § 1903(2) of the Penal Laws of New York.  N.Y. Penal Law § 1903 (1963) (current version at N.Y. Penal Law § 400.00(2)(f) (McKinney 2010)); Tomari Decl. Exhibit S (12).

72.  The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

30

**Alleged Fact**

**Response**

73.   The 1963 New York State
Legislative Annual states:

It is noteworthy that the New York
State Conservation Council, which
represents hundreds of thousands of
sportsmen and to which belong
substantially all the responsible
conservationist groups in the state, at
the State Convention in Lake Placid
last October, unanimously adopted a
resolution not to oppose this bill,
provided that any newly discovered
substantive changes would be
deleted.

N.Y. Legis. Ann. 1963 at 66; Tomari
Decl. Exhibit S (13).

73.   The text of the various referenced
documents is not disputed, but the
legislative history of the Act as
referenced by Defendants is entirely
irrelevant to any issue in the case.

74.   In its 1965 report, the New York
State Joint Legislative Committee on
Firearms and Munitions again
recognized the role of the penal law
in crime and violence prevention.
Specifically, the Committee stated
that "the primary value to law
enforcement of adequate statutes
dealing with dangerous weapons is
prevention of crimes of violence
before their consummation."  Rep. of
N.Y. J. Legis. Comm., No.6 at 12
(1965); Tomari Decl. Exhibit S (13).

74.   The text of the various referenced
documents is not disputed, but the
legislative history of the Act as
referenced by Defendants is entirely
irrelevant to any issue in the case.

31

**Alleged Fact**                                    **Response**

75.    Additionally, the committee states:        75.    The text of the various referenced
                                                          documents is not disputed, but the
   …in the absence of adequate                legislative history of the Act as
weapons legislation, under the                            referenced by Defendants is entirely
traditional law of criminal attempt,                     irrelevant to any issue in the case.
lawful action by the police must
await the last act necessary to
consummate the crime…adequate
statutes governing firearms and
weapons would make lawful
intervention by police and prevention
of these fatal consequences, before
any could occur."

Rep. of N.Y. J. Legis. Comm., No. 6
at 13 (1965); Tomari Decl. Exhibit S
(13).

76.    No significant revisions occurred to     76.    The text of the various referenced
the text of §1903 until the Revised                       documents is not disputed, but the
Penal Law of 1965 came into effect                        legislative history of the Act as
in 1967 which renumbered many                            referenced by Defendants is entirely
penal provisions thereby creating                         irrelevant to any issue in the case.
today's modern New York Penal Law
§ 400.00.

**Alleged Fact**

**Response**

77.   In the past 30 years, the legislature has repeatedly chosen not to remove the "proper cause" requirement for concealed carry permits.  Notably, Senator Franz Leichter enumerated many of the reasons why the "proper cause" requirement of New York Penal Law § 400.00(2)(f) should remain intact during the 1982 Senate debate over Bill Number 3409, an act to amend the Penal Law, in relation to issuance of licenses to have and carry pistols:

77.   The text of the various referenced documents is not disputed, but the legislative history of the Act as referenced by Defendants is entirely irrelevant to any issue in the case.

And certainly one of the concerns…that any licensing authority ought to have and which will be lost under your bill is some assessment of the maturity, the responsibility and the ability of the person is licensed to safely possess and use a handgun.

So we are not only talking about crime, which obviously is important, but we're also talking about public safety…Now, in this instance, it's not only protecting a person from himself but it's protecting innocent people who get shot every day because handguns are lying around, and that is something that should be of concern to all of us…I'm afraid in your bill that some of the restrictions and some of the safeguards that we have are going to be eliminated.

…by making handguns more readily and easily accessible and available in our society, it means inevitably that more handguns are going to come into the hands of criminals, and by

33

**Alleged Fact**                                    **Response**

loosening your standards for
licensing, it means that people are
going to have handguns who either
aren't going to safeguard them
properly or just there's going to be
more handguns available that are
going to be stolen or are going to be
used in the commission of a crime.

N.Y. Senate Debate on Senate Bill
3409, Jun. 2, 1987, at 2470-2474
(Statement of Senator Leichter);
Tomari Decl. Exhibit S (14).

**Alleged Fact**

**Response**

78.   New York has a compelling and well recognized interest in limiting the number of guns on its street; especially handguns, which are easily concealed and closely linked to use in crime. These interests are described in part in the declarations submitted in support of the State Defendants' Motion for  Summary Judgment, and described in the studies, articles, history and reports referenced in the State Defendants' Memorandum of Law in Support of Motion for Summary Judgment. These include: Declaration of Philip J. Cook, ("Cook Decl."); Declaration of Franklin E. Zimring, ("Zimring Decl."); Declaration of Thomas L. Fazio ("Fazio Decl."); Declaration of Andrew Lunetta, ("Lunetta Decl."); Declaration of Stephanie Miner ("Miner Decl."); and Declaration of the Hon. David R. Roefaro ("Roefaro Decl.").

78.   Disputed. This is not a statement of fact, but a statement of opinion. New York has an interest in limiting gun violence, but it has no interest in limiting the exercise of Second Amendment rights by law-abiding people. In any event, the reduction in gun carrying is an effect of the law, not an interest used to justify it. *See Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991).

35

**Alleged Fact**                                    **Response**

79.  Many Americans die by gunfire.  The      79.  Irrelevant.
     gun deaths from homicide, accident
     and suicide have totaled close to one
     million during the last three decades.
     In 2007, the most recent year for
     which the National Center for Health
     Statistics provides data on deaths,
     there were 18,361 criminal
     homicides, of which 69% were
     committed with guns.  Cook Decl. ¶
     3.

80.  In 2007, homicide victimization rates    80.  Irrelevant.
     were 15 times as high for black men
     aged 15-34, as for white
     non-Hispanic men in this  age group.
     Homicide is the leading cause of
     death for black males age 15-34, and
     the second-leading cause of death for
     Hispanic males in this age group.
     Cook Decl. ¶ 4.

81.  Handguns are especially a law            81.  Irrelevant. "It is enough to note, as
     enforcement and public health                 we have observed, that the American
     concern because they are much more             people have considered the handgun
     likely to be used in criminal violence         to be the quintessential self-defense
     than long guns.  While handguns are            weapon." *District of Columbia* v.
     approximately one third of all guns            *Heller*, 128 S. Ct. 2783, 2818 (2008).
     owned by civilians in the United
     States, they are used in more than
     75% of all gun killings.  Cook Decl.
     ¶ 9; Zimring Decl. ¶ 5.

82.  Handguns pose a particular public        82.  Irrelevant. Plaintiffs do not dispute
     safety challenge because they are              that the government has a legitimate
     smaller, more conveniently carried,            interest in regulating handguns and
     and easily concealed from law                  other firearms in the interest of
     enforcement, potential victims, and            public safety.
     the public at large. Cook Decl. ¶ 17.

36

| Alleged Fact | Response |
|---|---|
| 83. It takes little skill to operate a modern semi-automatic pistol and a person with just a few pockets can easily carry dozen of rounds of ammunition without ready detection. Declaration of Thomas L. Fazio, sworn to January 21, 2011 ("Fazio Decl.") ¶ 4. | 83. Irrelevant. |
| 84. Of the 536 law enforcement officers who were feloniously killed in the United States between 2000 and 2009, 490 (91%) were assaulted with a firearm and 73 % of those were with a handgun. Cook Decl. ¶ 5; Fazio Decl. ¶ 7. | 84. Plaintiffs are not positioned to admit or deny these factual assertions which are, in any event, irrelevant. Plaintiffs do not dispute that the government has a legitimate interest in regulating handguns and other firearms in the interest of public safety. |
| 85. Ninety-four percent of all law enforcement officers feloniously killed in the line of duty in 2009 were killed by a gun, of which 58% were killed by handguns. Declaration of Andrew Lunetta, sworn to January 25, 2011 ("Lunetta Decl.") ¶ 11. | 85. Plaintiffs are not positioned to admit or deny these factual assertions which are, in any event, irrelevant. Plaintiffs do not dispute that the government has a legitimate interest in regulating handguns and other firearms in the interest of public safety. |
| 86. Every New York City Police Department ("NYPD") officer killed since 2005, has been killed with a handgun.  Lunetta Decl. ¶ 10. | 86. Plaintiffs are not positioned to admit or deny these factual assertions which are, in any event, irrelevant. Plaintiffs do not dispute that the government has a legitimate interest in regulating handguns and other firearms in the interest of public safety. |

**Alleged Fact**

**Response**

87.    The likelihood that a gun will be used in crime is closely linked to the general availability of guns, and especially handguns. Cook Decl. ¶¶ 12, 14; Roefaro Decl. ¶ 5; Lunetta Decl. ¶ 12.

87.    Disputed. This is not a "fact," but a matter of opinion, and the subject of much legitimate debate as a matter of criminology. *See, e.g.* Florenz Plassman & John Whitley, *Comment: Confirming "More Guns, Less Crime,"* 55 STANFORD L. REV. 1313 (2003); Don B. Kates & Gary Mauser, *Would Banning Firearms Reduce Murder and Suicide: A Review of International Evidence*, 30 HARVARD JOURNAL OF LAW & PUB. POL'Y 651 (2007); "[N]o statistically significant relationship between guns and murder rates." Jeffrey Miron, *Violence, Guns, and Drugs: A Cross-Country Analysis*, 44 JOURNAL OF LAW & ECONOMICS, 615. "[N]o significant correlations (of gunstock levels) with total suicide or homicide rates were found." Abstract to Martin Killias, et al., *Guns, Violent Crime, and Suicide in 21 Countries*, 43 CANADIAN J. OF CRIMINOLOGY 429 (2001); Lawrence Southwick, *Do Guns Cause Crime? Does Crime Cause Guns? A Granger Test*, 25 ATLANTIC ECON. J. 256 (1997); Gary Kleck & Britt Patterson, *The Impact of Gun Control and Gun Ownership Levels on City Violence Rates*, 9 J. QUANT. CRIMINOLOGY 249-87 (1993); "The estimated net effect of guns on crime... is generally very small and insignificantly different from zero." Carlisle Moody & Thomas Marvell, *Guns and Crime*, 71 SO. ECON. J. 720, 735 (2005); *see also* John Lott, MORE GUNS, LESS CRIME: UNDERSTANDING CRIME AND GUN CONTROL LAWS (3d edition, Univ. of

38

**Alleged Fact**

**Response**

Chicago Press 2010). From 1946 to 2004, gun ownership in the United States increased from 34,400 to 85,000 civilian firearms per 100,000 people, while the murder rate dropped from 6.9 to 5.5 per 100,000 individuals. Between 1973 and 2003, the civilian gun stock rose from 627 to 858 per 1000 people, while the murder rate declined 41%. *See* Murder rate from FBI, Uniform Crime Reports; Guns per capita from Gary Kleck, Targeting Guns: Firearms and Their Control 96-97 (1997), and BATF Annual Firearms Manufacture and Export Reports, available at http://www.atf.gov/statistics/afmer/

| **Alleged Fact** | **Response** |
|---|---|
| 88.  Allowing more individuals to carry concealed handguns will endanger officers stopping individuals on the street or making car stops, and complicate interactions between uniformed officers and those working in plain clothes or off-duty. Lunetta Decl. ¶¶ 13- 16. | 88.  Disputed. This is plainly a matter of opinion, not a "fact." Considering that 43 states issue licenses to carry concealed handguns on a shall-issue basis, or require no such licenses at all, this opinion is obviously widely disputed. |
| 89.  From 1981 to 2009, 26 police officers around the country were shot and killed by fellow officers who had mistaken them for criminals. Fazio Decl. ¶ 6. | 89.  Plaintiffs are not in a position to dispute this figure, which is, in any event, irrelevant. |
| 90.  The ability to stop and frisk individuals who appear to be carrying handguns in public is one of the NYPD's greatest tactics in curbing violence. Increasing the prevalence of concealed handguns will undermine that tactic. Lunetta Decl. ¶ 16. | 90.  Disputed. What qualifies as a "greatest tactic" is a matter of debate. Plaintiffs submit that stopping law-abiding people for exercising a constitutional right is not a great tactic. Numerous police tactics that would undoubtedly be effective in reducing crime would also be unconstitutional, *e.g.*, dispensing with the Fourth, Fifth, Sixth, and Eighth Amendments. |

| Alleged Fact | Response |
|---|---|
| 91. The majority of criminal homicides and other serious crimes are committed by individuals who have not been convicted of a felony and would receive permits to carry concealed weapons without the "proper cause" requirement.  Cook Decl. ¶¶ 27-35; Roefaro Decl. ¶¶ 4, 6. | 91. Irrelevant, but in any event, disputed. "The vast majority of persons involved in life threatening violence have a long criminal record with many prior contacts with the justice system." Delbert Elliott, *Life Threatening Violence is Primarily a Crime Problem*, 69 COLO. L. REV. 1081, 1093 (1998)(summarizing studies); *see also* Jo McGinty, *New York Killers, and those Killed, by the Numbers*, NEW YORK TIMES, Apr. 28, 2006 (for murders committed in 2003-05, "More than 90 percent of the killers had criminal records . . ."; Richard Berke, *Capital Offers a Ripe Market to Drug Dealers*, NEW YORK TIMES, Mar. 28, 1989, at 1, 6 (almost all murderers and victims in Washington, D.C. "involved in the drug trade"); Anthony Braga et al., *Understanding and Preventing Gang Violence: Problem Analysis and Response Development in Lowell, Massachusetts*, 9 POLICE Q. 20, 29-31 (2006) (in Lowell, Mass., "Some 95% of homicide offenders" had been "arraigned at least once in Massachusetts courts" before they killed. "On average ... homicide offenders had been arraigned for 9 prior offenses...."); Gus Sentementes, *Patterns persist in city killings: Victims, suspects usually black men with long criminal histories*, BALTIMORE SUN, Jan. 1, 2007 (92% of Baltimore murder suspects in 2006 had criminal records); "Homicide offenders are likely to commit their murders in the course of long criminal careers consisting primarily of nonviolent crimes but |

41

**Alleged Fact**                                    **Response**

including larger than normal
proportions of violent crimes."
David Kennedy & Anthony Braga,
*Homicide in Minneapolis: Research
for Problem Solving*, 2 HOMICIDE
STUD. 263, 276 (1998) (analyzing
national date for 1988, 74% of
criminals for whom data was
available had prior criminal record).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x

ALAN KACHALSKY, CHRISTINA NIKOLOV, ERIC
DETMER, JOHNNIE NANCE, ANNA MARCUCCI-
NANCE, and SECOND AMENDMENT
FOUNDATION, INC.,

                                Plaintiffs,

-against-

SUSAN CACACE, JEFFREY A. COHEN, ALBERT
LORENZO, ROBERT K. HOLDMAN, and COUNTY
OF WESTCHESTER,

                                 Defendants.
---------------------------------------------------------------------x

**RESPONSE TO
PLAINTIFFS' RULE 56.1
STATEMENT OF FACTS IN
CONNECTION WITH
PLAINTIFFS' MOTION
FOR SUMMARY
JUDGMENT**

Case No.: 10 CV 05413 (CS)

ECF Case

        Pursuant to United States District Court, Local Rule 56.1, Civil, Defendant County of

Westchester ("County") by its attorney Robert F. Meehan, Westchester County Attorney, hereby

submit the following responses to Plaintiffs' Statement of Facts in Support of their Summary

Judgment Motion (Plaintiffs' Factual Allegations are italicized):

        1.     *Unlicensed possession of any firearm is a class A misdemeanor. See New York*

*Penal Law § 265.01(1).*

        The County disputes the stated fact, as it is a legal interpretation. The New York Penal

Law §265.01(1) cited by Plaintiffs is the best evidence of its meaning, intent, and content. It

provides:

> § 265.01 Criminal possession of a weapon in the fourth degree. A person
> is guilty of criminal possession of a weapon in the fourth degree when:
> (1) He or she possesses any firearm, electronic dart gun, electronic stun
> gun, gravity knife, switchblade knife, pilum ballistic knife, metal knuckle
> knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal
> knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot
> or slungshot, shirken or "Kung Fu star"…Criminal possession of a
> weapon in the fourth degree is a class A misdemeanor.

2.      *Unlicensed possession of a loaded firearm outside one's home or place of business constitutes "Criminal Possession of a Firearm in the Second Degree," a class C felony. See New York Penal Law § 265.03(3).*

The County disputes the stated fact, as it is a legal interpretation.  The New York Penal Law §265.03(3) cited by Plaintiffs is the best evidence of its meaning, intent, and content. It provides:

> § 265.01 Criminal possession of a weapon in the fourth degree. A  person is  guilty of criminal possession of a weapon in the fourth degree when: …(3) He or she knowingly has in his or her possession a rifle,  shotgun or firearm  in  or  upon  a  building  or  grounds,  used  for  educational purposes, of any school, college or university,  except  the  forestry lands, wherever located, owned and maintained by the State University of New York college of environmental science and forestry, or upon a school bus as  defined  in  section  one  hundred  forty-two  of  the vehicle and traffic law, without  the  written  authorization  of  such  educational institution…Criminal possession  of  a  weapon  in  the fourth degree is a class A misdemeanor.

3.      *For most civilians who are not otherwise barred from possessing and carrying weapons, the only theoretically available permit to carry handguns in public for self-defense is a permit "to have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof." See New York Penal Law §§ 265.20, 400.00(2)(f).*

The County disputes the stated fact, as it is a legal interpretation.  The New York Penal Law §265.20 and §400.00(2)(f) cited by Plaintiffs are the best evidence of their meaning, intent, and content. In fact, there are several pistol permit licensing restrictions that permit individuals to carry firearms set forth in §400.00(2)(f):

> 2. Types of licenses. A license for gunsmith or  dealer in  firearms shall be  issued to engage in such business. A license for a pistol or revolver, other than an assault weapon or a  disguised gun, shall be issued to (a) have  and possess in his dwelling by a householder; (b) have and possess

in his place of business by a merchant or storekeeper; (c) have and carry concealed while so employed by a messenger employed by a banking institution or express company; (d) have and carry concealed by a justice of the supreme court in the first or second judicial departments, or by a judge of the New York city civil court or the New York city criminal court; (e) have and carry concealed while so employed by a regular employee of an constitution of the state, or of any county, city, town or village, under control of a commissioner of correction of the city or any warden, superintendent or head keeper of any state prison, penitentiary, workhouse, county jail or other institution for the detention of persons convicted or accused of crime or held as witnesses in criminal cases, provided that application is made therefore by such commissioner, warden, superintendent or head keeper; (f) have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof; and (g) have, possess, collect and carry antique pistols...

4.   *Plaintiffs Kachalsky, Nikolov, Detmer, all reside in Westchester County. Each (a) is over 21 years old, (b) of good moral character, (c) has never been convicted of a felony or serious crime, (d) has never been mentally ill or confined to any institution, (e) has not had a license revoked or been the subject of a family court order, and (f) with exception of Plaintiff Detmer, who is qualified under subdivision 400.00.1(i), has completed a firearms safety course. See Kachalsky Decl., ¶ 1; Nikolov Decl., Nance, and Marcucci-Nance, ¶ 1; Detmer Decl., ¶¶ 1-2; Nance Decl., ¶ 1; Marcucci-Nance Decl., ¶ 1.*

The County disputes the stated fact, excepting that upon information and belief at the time of the pistol permit license applications at issue in this case, all individual Plaintiffs were at least 21 years of age and residents and/or employees within the geographical boundaries of Westchester County, had no mental health information returned from the search conducted in connection with the applications, had not had licenses revoked at the time of the applications, had completed a firearm safety course, except as to Plaintiff Detmer, and had not had any criminal convictions, except as to Plaintiff Kachalsky. Plaintiff Kachalsky's had been arrested in 2005 for Attempted Assault, 2nd Degree, on a police officer, Resisting Arrest, Obstructing

government Administration, 2nd Degree, and Following Too Closely. Plaintiff Kachalsky was

convicted of Inadequate Tire, a traffic infraction. *See* Superseding Misdemeanor Information and

Certificate of Disposition, included in the Pistol Permit Application and Investigation Materials

of Plaintiff Kachalsky, attached to the Declaration of Anthony Tomari, Esq. on behalf of State

Defendants.

5.    *Because Plaintiffs reside in Westchester County, their applications for gun carry*

*licenses are passed on by state judges acting as licensing officers. .See N.Y. Penal Law §*

*265.00(10).*

The County disputes the stated fact, as it is a legal interpretation.  The New York Penal

Law §265.00(10) cited by Plaintiffs is the best evidence of its meaning, intent, and content. It

provides:

> 10. "Licensing officer" means in the city of New York the police
> commissioner of that city; in the county of Nassau the commissioner of
> police of that county; in the county of Suffolk the sheriff of that county
> except in the towns of Babylon, Brookhaven, Huntington, Islip and
> Smithtown, the commissioner of police of that county; for the purposes
> of section 400.01 of this chapter the superintendent of state police; and
> elsewhere in the state a judge or justice of a court of record having his
> office in the county of issuance.

6.    *Kachalsky's application for a handgun carry license pursuant was referred for*

*decision to Defendant Susan Cacase, "in [her] capacity as handgun licensing officer for the*

*County of Westchester." See Exh. A.*

The County does not dispute this fact.

7.    *Defendant Westchester County recommended that Kachalsky's carry permit*

*application be denied. See Exh. A.*

The County disputes the stated fact, as the County conducted the statutorily required investigation and provided a summary report, which was submitted to the Court as Plaintiff's Exhibit A. That summary is the best evidence of its content.

8.      *On October 8, 2008, Cacace denied Kachalsky's permit application, offering that Kachalsky "has not stated any facts which would demonstrate a need for self protection distinguishable from that of the general public. Accordingly, Cacace found Kachalsky did not satisfy the requirement of New York Penal Law § 400.00(2)(f) that "proper cause" be shown for issuance of the permit. See Exh. A.*

The County does not dispute that Co-Defendant Judge Cacase issued a decision denying Kachalsky's application for a full carry permit, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit C, and is the best evidence of its content.

9.      *Kachalsky would apply again for a carry license, but refrains from doing so because any such application would likely be a futile act, as in all likelihood, he cannot satisfy the proper cause standard, which has already been applied to him. See 9. Kachalsky Decl, ¶ 3.*

The County disputes and has no information to respond to Kachalsky's state of mind or the possible outcome of a future pistol permit application made by Kachalsky.

10.      *Plaintiff Christina Nikolov's application for a handgun carry license pursuant to New York Penal Law § 400.00 was referred to Defendant Jeffrey A. Cohen "in [his] capacity as handgun licensing officer for Westchester County." Exh. B.*

The County does not dispute this fact.

11.      *On October 1, 2009, Cohen denied Nikolov's permit application. Reviewing the application and Defendant County's investigation of Nikolov, Cohen offered that "conspicuously*

*absent . . . is the report of any type of threat to her own safety anywhere. . . it cannot be said that the applicant has demonstrated that she has a special need for self-protection distinguishable from that of the general public; therefore, her application for a firearm license for a full carry permit must be denied. See Exh. B.*

The County does not dispute that Co-Defendant Judge Cohen issued a decision denying Nikolov's application for a full carry permit, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit D, and is the best evidence of its content.

12.    *Plaintiff Eric Detmer serves in the United States Coast Guard, for one weekend each month and two full weeks each year. Since 2004, Detmer has been a qualified Boarding Team Member. Although lacking authority to arrest, Detmer carries a .40 caliber handgun while on duty with the Coast Guard, which he surrenders each time upon leaving duty. Detmer qualifies semi-annually with his handgun, regularly taking a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training. See Detmer Decl., ¶ 2.*

The County disputes and has no information to respond to the current employment, military status, or pistol use in connection therewith. The County does not dispute the facts as stated for the timeframe of the application submitted.

13.    *Detmer is licensed to have a private handgun for the limited purpose of target shooting and hunting. Pursuant to New York Penal Law § 400.00, Detmer applied to amend his license for the purpose of "full carry." See Detmer Decl., ¶ 3.*

The County does not dispute this fact.

14.    *On September 3, 2010, Defendant Westchester County recommended that the application be disapproved, as Detmer's need to enforce laws while off duty was "speculative,"*

*and Detmer "has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry firearm license" and "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." See Exh. C.*

The County disputes the stated fact, as the County conducted the statutorily required investigation and provided a summary report, which was submitted to the Court as Plaintiffs' Exhibit C. That summary is the best evidence of its content.

15.     *On September 27, 2010, Defendant denied Detmer's application, stating, "At this time, I see no justification for a full carry permit." See Exh. D. Lorenzo.*

The County does not dispute this fact.

16.     *Plaintiff Johnnie Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Law § 400.00, Nance applied to amend his license for the purpose of "full carry" for self-defense. See Nance Decl., ¶ 2.*

The County does not dispute that Plaintiff Nance has a pistol permit license restricted to target shooting, or that Plaintiff Nance applied for a restriction change to allow for the unrestricted carry of a pistol in New York, but the County disputes and lacks information as to Nance's motives in making the application.

17.     *Or about August 11, 2010, Defendant Westchester County recommended that Nance's application be disapproved, as "No safety related concerns have been cited by the applicant," and Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." See Exh. E.*

The County disputes the stated fact, as the County conducted the statutorily required investigation and provided a summary report, which was submitted to the Court as Plaintiffs' Exhibit E. That summary is the best evidence of its content.

18.    *On September 9, 2010, Defendant Holdman denied Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that he faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." See Exh. F.*

The County does not dispute that Co-Defendant Judge Holdman issued a decision denying Nance's request to amend his pistol license permit to an unrestricted license, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit F, and is the best evidence of its content.

19.    *Citing the denial of Kachalsky's application, Holdman found Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish his need from those of countless others, nor has he demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession." See Exh. F.*

The County does not dispute that Co-Defendant Judge Holdman issued a decision denying Nance's request to amend his pistol license permit to an unrestricted license, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit F, and is the best evidence of its content.

20.     *Plaintiff Anna Marcucci-Nance is licensed to have a private handgun for the limited purpose of target shooting. Pursuant to New York Penal Law § 400.00, Marcucci-Nance applied to amend her license for the purpose of "full carry" for self-defense. See Marcucci-Nance Decl., ¶ 2.*

The County does not dispute that Plaintiff Marcucci-Nance has a pistol permit license restricted to target shooting, or that Plaintiff Marcucci-Nance applied for a restriction change to allow for the unrestricted carry of a pistol in New York, but the County disputes and lacks information as to Marcucci-Nance's motives in making the application.

21.     *On August 11, 2010, Defendant Westchester County recommended that the application be disapproved, as "No safety related concerns have been cited by the applicant," and Marcucci-Nance "has not demonstrated an exceptional need for self protection distinguishable from that of the general public." See Exh. G.*

The County disputes the stated fact, as the County conducted the statutorily required investigation and provided a summary report, which was submitted to the Court as Plaintiffs' Exhibit G. That summary is the best evidence of its content.

22.     *On September 9, 2010, Holdman denied Marcucci-Nance's application for a carry permit. Holdman cited Defendant County's recommendation for denial, and its finding that Marcucci-Nance had not demonstrated any exceptional need for the permit. Holdman further stated, "The applicant has not provided the court with any information that she faces any danger of any kind that would necessitate the issuance of a full carry firearm license; or has not demonstrated a need for self protection distinguishable from that of the general public or of other persons similarly situated." See Exh. H.*

The County does not dispute that Co-Defendant Judge Holdman issued a decision denying Marcucci-Nance's request to amend her pistol license permit to an unrestricted license, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit G, and is the best evidence of its content.

23.    *Citing the denial of Kachalsky's application, Holdman found Marcucci-Nance did not demonstrate "proper cause" within the meaning of the governing provision. Holdman continued: "In sum, the applicant has not shown sufficient circumstances to distinguish her need from those of countless others, nor has she demonstrated a specific need for self protection distinguishable from that of the general community or of persons engaged in the same business or profession." See Exh. H.*

The County does not dispute that Co-Defendant Judge Holdman issued a decision denying Marcucci-Nance's request to amend his pistol license permit to an unrestricted license, but disputes the stated fact insofar as it is an interpretation of the content of the decision. The Decision has been submitted to the Court and is attached to the Rotini Declaration as Exhibit G, and is the best evidence of its content.

24.    *Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. See Versnel Decl., ¶ 2.*

The County disputes and has no information to respond to the location, not-for-profit status, or legal incorporation of Plaintiff Second Amendment Foundation.

25.    *SAF has over 650,000 members and supporters nationwide, including many in Westchester County, New York. The purposes of SAF include education, research, publishing*

*and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. See Versnel Decl., ¶ 2.*

The County disputes and has no information to respond to membership or goals of Plaintiff Second Amendment Foundation.

26.    *SAF expends its resources encouraging exercise of the right to bear arms, and advising and educating their members, supporters, and the general public about the policies with respect to the public carrying of handguns in New York. The issues raised by, and consequences of, Defendants' policies, are of great interest to SAF's constituency. Defendants' policies regularly cause the expenditure of resources by SAF as people turn to it for advice and information. See Versnel Decl., ¶ 3.*

The County disputes and has no information to respond to the expenditures or activities of Plaintiff Second Amendment Foundation.

27.    *Defendants' policies bar SAF's members and supporters from obtaining permits to carry handguns. See Versnel Decl., ¶ 4.*

The County disputes the stated facts, as the County does not have any such policies and no such policies have been identified by the Plaintiffs, rather the Plaintiffs have only identified a State Law (Penal Law §400.00(2)(f)) that they argue is unconstitutional. Further, the County disputes and has no information as to any law or policy that "bars" all of these unknown SAF members and supporters from obtaining permits to carry pistols in New York State.

28.    *Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance and the members and supporters of SAF, would carry functional handguns in public for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and*

*imprisonment for lack of a license to carry a handgun. See Kachalsky Decl., ¶ 4; Nikolov Decl.,*

*¶4; Detmer Decl., ¶ 6; Nance Decl., ¶ 6; Marcucci-Nance Decl., ¶ 6; Versnel Decl., ¶ 5.*

The County disputes and has no information to respond to Plaintiffs' states of mind.


I declare under penalty of perjury that the foregoing is true and correct.


Dated: White Plains, New York
         January 26, 2011

_____
Melissa-Jean Rotini (MR-4948)
Assistant County Attorney, of Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Alan Kachalsky, Christina Nikolov, Eric Detmer,  :
Johnnie Nance, Anna Marcucci-Nance,  :
and  Second Amendment Foundation, Inc.,  :
  :
                Plaintiffs,  :    **Civil Action Number:**
  :    **10-cv-5413**
-against-  :
  :    **(Hon. Cathy Seibel)**
Susan Cacace, Jeffrey A. Cohen,  :
Albert Lorenzo, Robert K. Holdman  :
and County of Westchester,  :
  :
              Defendants.  :
-----------------------------------------------------------------X

## DECLARATION OF ANTHONY J. TOMARI

The undersigned declares under penalty of perjury and in accordance with 28 U.S.C.

§1746 as follows:

1.      I am an Assistant Attorney General in the office of New York State Attorney

General Eric T. Schneiderman, and counsel of record for Defendants Susan Cacace, Jeffrey A.

Cohen, Albert Lorenzo and Robert K. Holdman (State Defendants).  I make this declaration in

support of the State Defendants' Cross-Motion for Summary Judgment and in opposition to the

Plaintiffs' Motion for Summary Judgment for the purpose of providing certain documents

referenced in the State Defendants' summary judgment papers and accompanying declarations.

2.      A true and accurate copy of Plaintiffs' First Amended Complaint is annexed

hereto as Exhibit A.

3.      A true and accurate copy of an application form for a pistol permit for

Westchester County is annexed hereto as Exhibit B as is more fully described in the Declaration

of  Bruce Bellom, and referenced in that declaration.

1

4.      A true and accurate copy of the "Character Reference Letter" form used in Westchester County for a license application for a "full carry" license is annexed hereto as Exhibit C as is more fully described in the Declaration of Bruce Bellom, and referenced in that declaration.

5.      A true and accurate copy of the "Attachment: Full Carry" form used in Westchester County for a license application for a "full carry" license is annexed hereto as Exhibit D as is more fully described in the Declaration of Bruce Bellom, and referenced in that declaration.

6.      A true and accurate copy of the "Application for Amended or Duplicate Pistol License" form used in Westchester County is annexed hereto as Exhibit E as is more fully described in the Declaration of Bruce Bellom, and referenced in that declaration.

7.      A true and accurate copy of the license application investigative file for Plaintiff Alan Kachalsky is annexed hereto as Exhibit F as is more fully described in the Declaration of Bruce Bellom, and referenced in that declaration.

8.      A true and accurate copy of the license application investigative file for Plaintiff Christina Nikolov is annexed hereto as Exhibit G as is more fully described in the Declaration of Bruce Bellom, and referenced in that declaration.

9.      A true and accurate copy of the license application investigative file for Plaintiff Eric Detmer is annexed hereto as Exhibit H as is more fully described in the Declaration of Bruce Bellom, and referenced in that declaration.

10.      A true and accurate copy of the license application investigative file for Plaintiff Johnnie Nance is annexed hereto as Exhibit I as is more fully described in the Declaration of Bruce Bellom, and referenced in that declaration.

2

11.    A true and accurate copy of the license application investigative file for Plaintiff Anna Marcucci-Nance is annexed hereto as Exhibit J as is more fully described in the Declaration of Bruce Bellom, and referenced in that declaration

12.    The October 8, 2008 Order and Decision by State Defendant Cacace on the license application for Plaintiff Kachalsky is annexed hereto as Exhibit K as is more fully described in the Declaration of the Honorable Susan Cacace, and referenced in that declaration.

13.    Plaintiff Kachalsky's Article 78 Petition to the Appellate Division, Second Department is annexed hereto as Exhibit L.

14.    The Answer and Affirmation in Opposition to the Article 78 Petition is annexed hereto as Exhibit M.

15.    Plaintiff Kachalsky's letter dated November 27, 2009 to the Court of Appeals setting forth his comments as to why the Court of Appeals should "retain subject matter jurisdiction" of his case, is annexed hereto as Exhibit N.

16.    The October 2, 2008 Decision by State Defendant Cohen on the license application for Plaintiff Nikolov is annexed hereto as Exhibit O as is more fully described in the Declaration of the Honorable Jeffrey A. Cohen, and referenced in that declaration.

17.    The September 27, 2010 letter by State Defendant Lorenzo on the license application for Plaintiff Detmer is annexed hereto as Exhibit "P" as is more fully described in the Declaration of the Honorable Albert Lorenzo, and referenced in that declaration.

18.    The September 9, 2010 Decision by State Defendant Holdman on the license application for Plaintiff Nance is annexed hereto as Exhibit "Q" as is more fully described in the Declaration of the Honorable Robert K. Holdman, and referenced in that declaration.

3

19.    The September 9, 2010 Decision by State Defendant Holdman on the license application for Plaintiff Marcucci-Nance is annexed hereto as Exhibit "R" as is more fully described in the Declaration of the Honorable Robert K. Holdman, and referenced in that declaration.

20.    The Sullivan Law, first enacted as an amendment to the New York Penal Law on May 25th, 1911, is the first New York state statute that regulates the carrying of handguns by requiring a license in order to carry concealed handguns in public. A true and accurate copy of Laws of New York, Chapter 195, §1897 (1911) is attached hereto as Exhibit S(1).

21.    A true and accurate copy of the 1911 New York Times article "Revolver Killings Fast Increasing: Legislative Measure to be Urged For Curbing the Sale of Firearms" is attached hereto as Exhibit S(2).

22.    A true and accurate copy of the 1911 New York Tribune article "Increase in Homicides: Argument in Favor of Anti-Dangerous Weapon Bill" is attached hereto as Exhibit S(3).

23.    A true and accurate copy of the 1911 New York Times "Topics of the Times" is attached hereto as Exhibit S(4).

24.    A true and accurate copy of the 1911 New York Tribune article "Calls Bill Life Saver: Weston says Sullivan's Will Prevent 50 Homicides Here a Year" is attached hereto as Exhibit S(5).

25.    A true and accurate copy of the 1911 New York Times article "The New Pistol Law: Senator Pollock from First-Hand knowledge Explains its Purpose" is attached hereto as Exhibit S(6).

4

26.     A true and accurate copy of the Laws of New York, Chapter 608, §1897 (1913) is attached hereto as Exhibit S(7).

27.     A true and accurate copy of the Laws of New York, Chapter 297, §1897 (1921) is attached hereto as Exhibit S(8).

28.     A true and accurate copy of the 1962 Report of the New York State Joint Legislative Committee on Firearms and Ammunition is attached hereto as Exhibit S(9).

29.     A true and accurate copy of the 1963 Report of the New York State Joint Legislative Committee on Firearms and Ammunition is attached hereto as Exhibit S(10).

30.     A true and accurate copy of the 1963 Report of the New York State Legislative Annual is attached hereto as Exhibit S(11).

31.     A true and accurate copy of the Laws of New York, Chapter 136, §1903 (1963) is attached hereto as Exhibit S(12).

32.     A true and accurate copy of the 1965 Report of the New York State Joint Legislative Committee on Firearms and Ammunition is attached hereto as Exhibit S(13).

33.     A true and accurate copy of the 1987 New York Senate Debate on Senate Bill 3409 is attached hereto as Exhibit S(14).

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 26, 2011

Anthony I. Tomari

5



**INSTRUCTIONS:** Print or type in black ink only

REDACTED
REDACTED

DATE OF ISSUE

(REV. 02/07)
STATE OF NEW YORK
...OL/REVOLVER LICENSE APPLICATION

COUNTY OF ISSUE *Westchester*
EXPIRATION DATE

REDACTED

PRESENT OCCUPATION *Attorney*
CITIZEN OF U.S.A. ☒ YES ☐ NO

EMPLOYED BY *Self*
NATURE OF BUSINESS *Law*
BUSINESS ADDRESS

I HEREBY APPLY FOR A PISTOL/REVOLVER LICENSE TO:   (Check one only)   ☒ CARRY CONCEALED   * POSSESS ON PREMISES
☐ * POSSESS/CARRY DURING EMPLOYMENT (* Premise address or place of employment must be provided)

STREET ADDRESS OR OTHER LOCATION
A LICENSE IS REQUIRED FOR THE FOLLOWING REASON:   CITY, VILLAGE, TOWN   *Full Carry*   ZIP CODE

GIVE FOUR CHARACTER REFERENCES WHO BY THEIR SIGNATURE ATTEST TO YOUR GOOD MORAL CHARACTER

| LAST, FIRST, MI | STREET ADDRESS | CITY, VILLAGE, TOWN | SIGNATURE |
|---|---|---|---|
| DeIorio, Patrick V | REDACTED | New Rochelle | |
| Fichtel, John J | | New Rochelle | John Fichtel |
| Ruffa, Vincent R | | New Rochelle | |
| Thompson-Carvalli, Amy E | | Rye | Amy Carvalli |

HAVE YOU EVER BEEN ARRESTED, SUMMONED, CHARGED OR INDICTED ANYWHERE FOR ANY OFFENSE, INCLUDING DWI (EXCEPT TRAFFIC INFRACTIONS)?   ☐ YES   ☐ NO   IF YES, FURNISH THE FOLLOWING INFORMATION:

| DATE | POLICE AGENCY | CHARGE | DISPOSITION - COURT AND DATE |
|---|---|---|---|
| 2005 | Madison | Att Assault 2nd; obstruct Governm Admin | pled guilty to cold Tire |

HAVE YOU EVER BEEN TERMINATED/DISCHARGED FROM ANY EMPLOYMENT OR THE ARMED FORCES FOR CAUSE?   ☐ YES   ☒ NO

HAVE YOU EVER UNDERGONE TREATMENT FOR ALCOHOLISM OR DRUG USE?   ☐ YES   ☒ NO

HAVE YOU EVER SUFFERED ANY MENTAL ILLNESS, OR BEEN CONFINED TO ANY HOSPITAL, PUBLIC OR PRIVATE INSTITUTION, FOR MENTAL ILLNESS?   ☐ YES   ☒ NO

HAVE YOU EVER HAD A PISTOL LICENSE, DEALER'S LICENSE, GUNSMITH LICENSE, OR ANY APPLICATION FOR SUCH A LICENSE DISAPPROVED, OR HAD SUCH A LICENSE REVOKED OR CANCELLED?   ☐ YES   ☒ NO

DO YOU HAVE ANY PHYSICAL CONDITION WHICH COULD INTERFERE WITH THE SAFE AND PROPER USE OF A HANDGUN?   ☐ YES   ☒ NO

HAVE YOU EVER BEEN CHARGED, PETITIONED AGAINST, A RESPONDENT, OR OTHERWISE BEEN A SUBJECT OF A PROCEEDING IN FAMILY COURT?   ☐ YES   ☒ NO

IF ANSWER TO ANY QUESTION IS YES, EXPLAIN HERE: *Harrison police officer pulled me over two times in 24 hours. The*
*asserted my car was a rental vehicle. Accepted plea to cold Tire*

ANY OMISSION OF FACT OR ANY FALSE STATEMENT WILL BE SUFFICIENT CAUSE TO DENY THIS APPLICATION AND CONSTITUTES A CRIME PUNISHABLE BY FINE, IMPRISONMENT, OR BOTH.
I AM AWARE THAT THE FOLLOWING CONDITIONS AFFECT ANY LICENSE WHICH MAY BE ISSUED TO ME:

1. NO LICENSE ISSUED AS A RESULT OF THIS APPLICATION IS VALID IN THE CITY OF NEW YORK.
2. ANY LICENSE ISSUED AS A RESULT OF THIS APPLICATION WILL BE VALID ONLY FOR A PISTOL OR REVOLVER SPECIFICALLY DESCRIBED IN A CERTIFICATE PROPERLY ISSUED BY THE LICENSING OFFICER.
3. IF PERMANENTLY CHANGE MY ADDRESS, NOTICE OF SUCH CHANGE AND MY NEW ADDRESS MUST BE FORWARDED TO THE SUPERINTENDENT OF THE STATE POLICE AND, IN NASSAU COUNTY AND SUFFOLK COUNTY, TO THE LICENSING OFFICER OF THAT COUNTY WITHIN 10 DAYS OF SUCH CHANGE.
4. ANY LICENSE ISSUED AS A RESULT OF THIS APPLICATION IS SUBJECT TO REVOCATION AT ANY TIME BY THE LICENSING OFFICER OR ANY JUDGE OR JUSTICE OF A COURT OF RECORD.

JURAT:
SIGNED AND SWORN TO BEFORE ME
THIS  13th  DAY OF  May  , 20 08
AT  Westchester  , NEW YORK

*John Pelose*
SIGNATURE OF OFFICER ADMINISTERING OATH
Notary Public
TITLE OF OFFICER

APPLICATION NOT VALID UNLESS SWORN

SIGNATURE OF APPLICANT

THIS FORM APPROVED BY SUPERINTENDENT OF STATE POLICE AS REQUIRED BY PENAL LAW SECTION 400.00, SUBD.3.

PPB3/PPB3A

JOHN PELOSE
Notary Public, State of New York
No. 04PE6147380
Qualified in Westchester County
Commission Expires June 5, 2010

| 1. RIGHT THUMB | 2. RIGHT FOREFINGER | 3. RIGHT MIDDLE FINGER | 4. RIGHT RING FINGER | 5. RIGHT LITTLE FINGER |
|---|---|---|---|---|
| REDACTED | | | REDACTED | |

| 6. LEFT THUMB | 7. LEFT FOREFINGER | 8. LEFT MIDDLE FINGER | 9. LEFT RING FINGER | 10. LEFT LITTLE FINGER |
|---|---|---|---|---|
| REDACTED | | REDACTED | | REDACTED |

**PLAIN IMPRESSIONS TAKEN SIMULTANEOUSLY**

REDACTED

REDACTED

| IMPRESSIONS TAKEN BY: | NAME | W.H TING | RANK | Po | SHIELD | 142 | DATE | 5/13/08 |

APPLICANT'S SIGNATURE AND ADDRESS: _REDACTED_

**INVESTIGATION REPORT - ALL INFORMATION PROVIDED BY THIS APPLICANT HAS BEEN VERIFIED:**

| NAME | Po T Whiting | 142 RANK | Po | ORGANIZATION | WCPD |

SIGNATURE OF INVESTIGATING OFFICER

THIS APPLICATION IS ~~APPROVED~~ - DISAPPROVED (STRIKE OUT ONE)

HON. SUSAN CACACE
COUNTY COURT JUDGE

TITLE AND SIGNATURE OF LICENSING OFFICER

THE FOLLOWING RESTRICTION(S) IS (ARE) APPLICABLE TO THIS LICENSE:

**IF LICENSING OFFICER AUTHORIZES THE POSSESSION OF A PISTOL OR REVOLVER AT THE TIME OF ISSUE OF ORIGINAL LICENSE, FURNISH THE FOLLOWING INFORMATION:**

| MANUFACTURER | PISTOL OR REVOLVER | CALIBER | SERIAL NUMBER | MODEL | PROPERTY OF: |
|---|---|---|---|---|---|
| Gluck | Pistol | 40 | LWN 572 | 30 | Self |
| | | | | | |
| | | | | | |

DUPLICATE OF THIS APPLICATION MUST BE FILED WITH THE SUPERINTENDENT OF STATE POLICE WITHIN 10 DAYS OF ISSUANCE AS REQUIRED BY PENAL LAW SECTION 400.00 SUBD 5.

PP21APP(8)



**Westchester**
**gov.com**

**Andrew J. Spano**
**County Executive**

Department of Public Safety

Thomas Belfiore
Commissioner/Sheriff

August 28, 2008

Honorable Justice
Westchester County Court
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601

RE:   Pistol License application of Alan N. Kachalsky

**REDACTED**

Dear Honorable Justice:

The above captioned individual has submitted an application to Westchester County for a New York State (NYS) pistol license for the purpose of **FULL CARRY**.

A fingerprint based criminal background check was conducted, and a response by both the NYS Department of Criminal Justice Services and the Federal Bureau of Investigation revealed no derogatory information. However, the applicant revealed the following criminal history related information:

1)    On March 17, 2005, the applicant was charged with Attempted Assault 2nd degree, Penal Law (PL) 120.05/ 110, class E felony, Resisting Arrest, PL 205.30; class A misdemeanor, Obstructing Government Administration 2nd degree, PL 195.05, class A misdemeanor, and Following Too Closely, Vehicle & Traffic Law (VTL) 1129-A, traffic infraction . On April 1, 2005, the applicant was convicted of Inadequate Tire, VTL 375-35, traffic infraction, in satisfaction of all charges.

2)    On or about August 7, 1984, the applicant was the subject of a complaint of professional misconduct in the State of New York with respect to services provided as an attorney. No breach of professional responsibility on the part of the applicant was found.

A query of the files of the NYS Department of Mental Hygiene revealed no derogatory information. Letters from each of four character references attesting to the good moral character and reputation of the applicant are on file. The applicant has provided proof that he is a United States (US) citizen.

A New York State Accredited
Law Enforcement Agency



Saw Mill River Parkway
Hawthorne, N.Y  10532          Telephone: (914)864-7700          Website: westchestergov.com

Alan N. Kachalsky
August 28, 2008
Page 2 of 2

The applicant has supplied notarized documentation attesting that 1) he believes that the Second
Amendment of the US Constitution grants citizens the right to bear arms, and 2) as a citizen, he
therefore is entitled to exercise his Constitutional right to bear arms, and 3) he believes that under the
Constitution he is not required to establish "proper cause" for a firearm license, and 4) he wants to
retain the option to defend himself if necessary, and 5) as a trained pilot and a skydiver he is trained to
handle emergencies.

It appears that the necessary proper cause for the issuance of a firearm license for the purpose of Full
Carry has not been met by the applicant. The applicant has not demonstrated a need for self protection
distinguishable from that of the general public.

This application is respectfully forwarded with a recommendation of **DISAPPROVAL**.

Sincerely,

DEPARTMENT OF PUBLIC SAFETY
Westchester County Police

Thomas Belfiore
Commissioner-Sheriff

TB/fd

Chief Inspector's Endorsement                                    August 27, 2008

RE:    Pistol License Application    **FULL CARRY**
       Mr. Alan N. Kachalsky

I have reviewed the attached investigative report and the foregoing comments of Sergeant Bruce
Bellom and Lieutenant Frank Donovan. I concur with both of their recommendations.

Forwarded to First Deputy Commissioner Demosthenes M. Long and recommend **disapproval**
of this application to allow the category of **FULL CARRY** for the applicant.

Chief Inspector Roger R. Rokicki
Chief of Administrative Services

RRR/jw

08/25/2008: Endorsement by Lieutenant Frank J. Donovan of memorandum by Sergeant Bellom dated 08/20/2008 entitled: Pistol License application of Alan N. Kachalsky (FC).

The applicant revealed the following criminal history related information:

1)   On March 17, 2005, the applicant was charged with Attempted Assault 2nd degree, Penal Law (PL) 120.05/ 110, class E felony, Resisting Arrest, PL 205.30; class A misdemeanor, Obstructing Government Administration 2nd degree, PL 195.05, class A misdemeanor, and Following Too Closely, Vehicle & Traffic Law (VTL) 1129-A, traffic infraction . On April 1, 2005, the applicant was convicted of Inadequate Tire, VTL 375-35, traffic infraction, in satisfaction of all charges.

2)   On or about August 7, 1984, the applicant was the subject of a complaint of professional misconduct in the State of New York with respect to services provided as an attorney. No breach of professional responsibility on the part of the applicant was found.

The applicant has supplied notarized documentation attesting that 1) he believes that the Second Amendment of the US Constitution grants citizens the right to bear arms, and 2) as a citizen, he therefore is entitled to exercise his Constitutional right to bear arms, and 3) he believes that under the Constitution he is not required to establish "proper cause" for a firearm license, and 4) he wants to retain the option to defend himself if necessary, and 5) as a trained pilot and a skydiver he is trained to handle emergencies.

It appears that the necessary proper cause for the issuance of a firearm license for the purpose of Full Carry has not been met by the applicant. The applicant has not demonstrated a need for self protection distinguishable from that of the general public.

I concur with Sergeant Bellom and recommend Disapproval of this application for a firearm license for the purpose of **FULL CARRY**. Forward to Chief Inspector Roger R. Rokicki.

_LT Donovan_

Lieutenant Frank J. Donovan

Westchester
s███████v.com

Andrew J. Spano
County Executive

Department of Public Safety
Thomas Belfiore
Commissioner/ Sheriff

OFFICE USE ONLY:

CASE #: 08-127

DETECTIVE: TW

Date: 5-15-08

State of New York
Department of Mental Hygiene
44 Holland Avenue
Albany, New York 12229

Re:    Application for Firearm License

Dear Sir or Madam:

It is hereby requested that you conduct a check of your records against the name of the below listed person, in accordance with New York State Penal Law, section 400 (4), and that you respond to this agency in writing, as soon as possible:

APPLICANT: PLEASE COMPLETE THE BELOW LISTED INFORMATION:

Name (Last): KACHALSKY          First: ALAN          M.I. N

Alias/ Maiden Name:
                    REDACTED

Address:
          STREET          CITY          STATE          ZIP
                         REDACTED          REDACTED

Sex MALE    Birth                      is

Place of Birth: Manhasset, NY          Country: USA

Sincerely,

DEPARTMENT OF PUBLIC SAFETY
Westchester County Police

Thomas Belfiore

Thomas Belfiore
Commissioner-Sheriff

NO OFFICIAL RECORD OF HOSPITALIZATION FOR MENTAl ILLNESS SINCE 1965.   IF SEARCH PRIOR TO 1965 IS REQUIRED, PLEASE SUBMIT WRITTEN REQUEST

WCPD- 126N (01-01-2007)



DATE:        August 20, 2008

TO:          Lt. Frank Donovan

FROM:        Sgt. Bruce Bellom #15    *Sgt. Bello*

RE:          Pistol License application of Alan N. Kachalsky

The above captioned individual has submitted an application to Westchester County for a New York State (NYS) pistol license for the purpose of **FULL CARRY**.

A fingerprint based criminal background check was conducted, and a response by both the NYS Department of Criminal Justice Services and the Federal Bureau of Investigation revealed no derogatory information. However, the applicant admitted to the following criminal history related information:

    1)    On March 17, 2005, the applicant was charged with Attempt to Commit a Crime, PL 110.00; Assault, second degree, PL 120.05; Resisting Arrest, PL 205.30; Obstructing Government Administration, second degree, PL 195.05. On April 1, 2005 these charges were dismissed. On March 17, 2005, he was also charged with NYS VTL 1129A Following Too Closely and on April 1, 2005 he pled guilty to NYS VTL 375.35, Tire Standards (a violation).

A query of the files of the NYS Department of Mental Hygiene revealed no derogatory information. Letters from each of four character references attesting to the good moral character and reputation of the applicant are on file. The applicant has provided proof that he is a United States citizen.

The applicant has supplied notarized documentation that 1) he feels the Second Amendment of the Constitution grants citizens the right to bear arms, and 2) as a citizen, he is therefore entitled to exercise his Constitutional right to bear arms, and 3) believes that right entitles him to the permit without further need to establish "proper cause", and 4) feels it is his belief that it is better to have the option to defend oneself (and others) than not to have the option, and 5) as a pilot and a skydiver, has been trained to handle emergencies.

Alan N. Kachalsky
August 20, 2008
Page 2 of 2

It appears that the necessary proper cause for the issuance of a firearm license for the purpose of Full Carry <u>has not</u> been met by the applicant. The applicant <u>has not</u> demonstrated an extraordinary need for self protection distinguishable from that of the general public.

This application is respectfully forwarded with a recommendation of **DISAPPROVAL**.



# WESTCHESTER COUNTY POLICE
## PISTOL LICENSE UNIT

### BACKGROUND INVESTIGATION WORKSHEET

| OFFICE USE ONLY |
|---|
| CASE#: D8-1277 |
| DET: TW |

**Answer all questions fully and in accordance with the guidelines set forth in the Pistol Safety & Information Handbook. This form and attachments must be notarized.**

**APPLICANT INFORMATION:**

Last Name: __KACHALSKY__          First Name: ALAN          M.I. N

Address: REDACTED

|  | STREET | CITY | STATE | ZIP |
|---|---|---|---|---|

Bir REDACTED          :MALE   Social Security# REDACTED

Height _____ eight: 200 Lb. ___ Eye Color: Hazel _____   Hair Color: Brown & Grey

Place of Birth: Manhasset, NY          Occupation: Attorney

Telephone (Home): ( REDACTED ) REDACTED

**Marital Status:**

[X] Single   [ ] Married   [ ] Separated   [ ] Divorced   [ ] Widowed

**Citizenship:**

[X] Citizen by Birth
[ ] Naturalized Citizen          Naturalization Number: _____
[ ] Resident Alien               Alien Registration Number: _____

**Other Names You Have Been Known By/ Maiden Name:**

Last Name: _____   First Name: _____   M.I. _____

Last Name: _____   First Name: _____   M.I. _____

**Previous Address(es):**   REDACTED   REDACTED

Address #1: _____ REDACTED   REDACTED

Address #2: _____

|  | STREET | CITY | STATE | ZIP |
|---|---|---|---|---|

WCPD-126A (08-23-2007)          Page 1 of 5 Pages

**List The Name & Address of Your Nearest Relative(s) Not Residing with You:**

**Relative #1:**

Last Name: _KACHALSKY_   First Name: ESTHELLE   M I   M

Address: REDACTED   REDACTED

STREET REDACTED   CITY   STATE REDACTED ZIP

Telephone (Home): _____   Telephone (Alt) _____

**Relative #2:**

Last Name: _SILBERMAN_   First Name: ELLEN   M I   S.

Address: REDACTED   REDACTED

REDACTED   ST REDACTED

Telephone (Home): _____   Telephone (Alt): _____

_____

**EMPLOYER INFORMATION:**

_CURRENT EMPLOYER:_

Employer Name: _ALAN KACHALSKY (I'm self-employed)_ Type of Business: ATTORNEY AT LAW

Dates of Employment (From): _1994_   To: _the present_

Your Supervisor's Name: _myself_   Title: ATTORNEY AT LAW

Address REDACTED

STREET REDACTED   CITY   REDACTED ZIP

Telephone (Work): _____   Telephone (Fax): _____

_PREVIOUS EMPLOYER:_

Employer Name: _PANORAMA FLIGHT SCHOOL (Still employed)_   Type of Business: Flight School

Dates of Employment (From): _June 2005_   To: _Present (still employed)_

Your Supervisor's Name: _RICHARD ORENTZEL_   Chief Flight Instructor

Address: REDACTED

STREET REDACTED   CITY   STATE REDACTED ZIP

Telephone (Work): ( _____   Telephone (Fax): _____

TYPE OF FIREARM LICENSE APPLIED FOR:

☐ Premise Dwelling
☐ Premise Business
☐ Bank Courier/ Express Messenger
☐ Employee of Corrections
☐ Justice of Supreme Court
☒ Full Carry
☐ Full Carry: Retired PO /
    Retired Federal Law Enforcement Officer
☐ Full Carry: Retired Peace Officer

☐ Restricted Carry: Employment
☐ Restricted Carry: Sport Target Shooting
☐ Restricted Carry: Sport Hunting
☐ Gunsmith
☐ Firearm Dealer
☐ Other (Explain)_____

List All Firearm(s) That You Intend to Possess or Carry, By Make/ Model & Serial Number:

Glock / Model 30 / S.N. LWN572

List The Ad_____

Address: _____ **REDACTED** _____ **REDACTED**
              STREET            CITY              STATE    ZIP

List the Method of Storage for Firearm(s):

In a locked box

List The Name & Address of a Responsible Person Who Will Safeguard Firearm(s) In The Event of Your Death or Disability:

Last Name: **PATRICK**              First Name: **DelORIO**         M.I. **M**

Address: _____ **REDACTED** _____ **REDACTED**
             STREET            CITY            STATE   ZIP

Telephone (Home): **REDACTED**   Telephone (Work): **REDACTED**

WCPD-126A (08-23-2007)              Page 3 of 5 Pages

**ANSWER THE FOLLOWING QUESTIONS: YES OR NO. IF ANY ANSWER IS "YES", FULLY EXPLAIN ON A SEPARATE SHEET OF PAPER AND HAVE THE PAPER NOTARIZED:**

| | | YES | NO |
|---|---|---|---|
| 1. | Are you engaged in any alternate business enterprise, employment, profession or occupation, other than that which is listed on page #2 of this form? | ☐ | ☒ |
| 2. | Have you ever served in the armed forces of the United States or of any country? | ☐ | ☒ |
| 3. | Have you ever been dis charged from or fired from any employment? | ☒ | ☐ |
| 4. | Have you ever been the subject of any employment related or military related disciplinary action? | ☐ | ☒ |
| 5. | Have you ever sought or undergone treatment for alcohol or drug use? | ☐ | ☒ |
| 6. | Do you regularly use medications that may cause drowsiness, impairment or which are classified as a narcotic or as a tranquilizer? | ☐ | ☒ |
| 7. | Have you ever suffered from, sought treatment for, or been treated for any form of mental illness or depression, or any related disease or condition? | ☐ | ☒ |
| 8. | Do you suffer from any physical defect that might interfere with the safe handling of a firearm? | ☐ | ☒ |
| 9. | Have you ever applied for or held a firearm license in New York State or in any other state of the United States or a foreign country? | ☐ | ☒ |
| 10. - | Have you ever been arrested for or charged with any crime in any state of the United States or in any foreign country, including cases that were dismissed, sealed or adjudicated to petty offense or youthful offender status? (If yes, submit an original certified disposition of the case from the court). | ☒ | ☐ |
| 11. | Do you currently have, or have you ever had, an Order of Protection issued against you by any person? (If yes, list the court of issuance, date of issuance, complainant's name/ address/ telephone number/ relationship to you & reason for the order). | ☐ | ☒ |
| 12. | Do you currently have, or have you ever had, an Order of Protection issued by you against any other person? (If yes, list the court of issuance, date of issuance, respondent's name/ address/ telephone number/ relationship to you & reason for the order). | ☐ | ☒ |
| 13. | Do you have prior experience with firearm(s), or have you previously received instruction in the use of firearms? | ☒ | ☐ |

ALAN KACHALSKY
APPLICANT NAME (PRINT)

APPLICANT NAME (SIGNATURE)

STATE OF NEW YORK        )
COUNTY OF WESTCHESTER    )

SUBSCRIBED AND SWORN TO BEFORE ME THIS _20_ DAY OF _February, 2008_

SIGNATURE OF NOTARY PUBLIC

Natalie M. Spodaliere
Notary Public, State of New York
No. 01SP6127824
Qualified in Westchester County
Term Expires January 20__2012

WCPD-126A (08-23-2007)                    Page 5 of 5 Pages

APPX. 224



**WESTCHESTER COUNTY POLICE**
**PISTOL LICENSE UNIT**

**ATTACHMENT: FULL CARRY**

| OFFICE USE ONLY |
| --- |
| CASE#: O8-1277 |
| DET: TW |

Answer all questions fully and in accordance with the guidelines set forth in the Pistol License Information Handbook. This form and attachments must be notarized.

**APPLICANT INFORMATION:**

Last Name: KACHALSKY ~~REDACTED~~ First Name: ALAN ~~REDACTED~~ M.I. N

Address: ~~REDACTED~~

        STREET                          CITY                     STATE             ZIP

List all factors which you believe to be relevant to your application and which establish <u>proper cause</u> for the issuance of a firearm license for the purpose of Full Carry:

The factors which establish proper cause for the issuance to myself of a Full Carry pistol Permit are: 1) The Second Amendment of the Constitution grants citizens the right to bear arms. As a citizen, I am therefore entitled to exercise my Constitutional right to bear arms. I believe that Constitutional right entitles me to the permit without further the need to establish "proper cause."

If the issuing agency for some reason requires more than this, then I will cite the fact that we live in a world sporadic random violence might at any moment place one in a position where one needs to defend oneself or possibly others, e.g. random shootings in universities (Virginia Tech), post offices, airline check-in counters, malls, road rage, as well as the run-of-the-mill street muggings and robberies. While the odds of finding oneself in a Virginia Tech type situation are remote, one must reflect that had there been even one armed person, the death toll might have been considerably less than 31 dead. While one never knows what one might do in such situations, it is my belief that it is better to have the option to defend oneself (and others) than not to have the option. As a pilot and a skydiver, I have been trained to handle emergencies, and I have actually handled several emergencies, so it is unlikely that I will respond in a dangerous manner.

WCPD-126H (02-02-2007)                     Page 1 of 2 Pages

Additionally, as an attorney (who has practiced criminal law in this State and in this County for over 25 years), I know when the use of deadly force is justified. I also know when the use of deadly force is neither justified (nor required). I am capable of, and have previously defended myself (on rare occasions) and others from non-deadly force. Two of these incidents resulted in police intervention. On one such occasion, I was compelled to intervene when my client was being choked by her estranged husband. On another such occasion, I was assaulted with a 12" butcher's knife by an irate employee. I have been threatened once by the spouse of my (divorce) client, and once by my own (unhappy) client.

However, as we see every day, sometimes, non-deadly force is simply not enough for self-defense. In those situations, I am entitled to, and, by applying for a full carry pistol permit, it is my intention to carry a licensed concealed pistol to defend myself and others in the event circumstances require it.

Finally, I am a law-abiding citizen. I have never been convicted of a crime, nor have I ever assaulted or threatened to assault another person.

_____

_____

_____

_____


**ALAN KACHALSKY**
APPLICANT NAME (PRINT)

APPLICANT NAME (SIGNATURE)

STATE OF NEW YORK            )
COUNTY OF WESTCHESTER        )

SUBSCRIBED AND SWORN TO BEFORE ME, THIS _8th_ DAY OF _February, 2008_

SIGNATURE OF NOTARY PUBLIC

Natalie M. Spedaliere
Notary Public, State of New York
No. 01SP6104334
Qualified in Westchester County
Term Expires January 20, 2012

WCPD-126H (02-02-2007)                    Page 2 of 2 Pages



# CERTIFICATE OF ACHIEVEMENT

*This certifies that*

Alan Kachalsky

*has successfully completed a*
*basic course*
*in pistol safety*

1-24-07
Date

David J. Fusco
Certified Instructor

*This certificate is issued in compliance with current New York State Firearms Statues and represents a theory course only. No handling or actual firing of a firearm by the person named on this certificate occurred during the course.*

EXPLANATIONS FOR YES ANSWERS ON Page 4 of 5.

3.     I was fired from law firm of Gladstein & Isaac, 110 Wall Street, NY, NY in July, 1994, which is when I decided I would never put my fate in someone else's (a boss) hands. I had just won a civil trial and was terminated after 2 months with this firm. Reason given was that I "didn't get along with the women" (meaning secretaries and receptionists). It had something to do with chastising a receptionist who left me on hold when I had a 5 minute break in the trial with which to consult with the 'Partner-in-charge' concerning the multi-million dollar lawsuit I was defending. Apparently good secretaries are harder to find than good lawyers. Last year one of the Partners, (Allen Isaac) at Gladstein & Isaac was charged with soliciting sex from a client (the incident made page 2 of the NY Post). See http://wcbstv.com/topstories/Allen.Isaac.Gladstein.2.232894.html, so perhaps there is some justice after all.

10.    I was arrested approximately 3 years ago in Harrison. I was stopped by a Harrison Police Officer who accused me of 'tailgating' him. He issued me a ticket for this. After listening to his speech about what to do with the ticket, I said thank you and pulled away. He followed me to the next traffic light. When the light turned green, he turned on his lights and approached my vehicle and asked me "What the hell kind of way is that to pull away. I asked him what he was talking about. He said "That was an unsafe start." I told him you've gotta be kidding me. My car has 65 horsepower, Why are you busting my balls." Shortly after that I attempted to exit my vehicle and was arrested. I was originally charged with attempted Assault 2nd. As attempted assault 2nd is not a viable charge, at the first court appearance, the felony charge was reduced to Obstructing Governmental Administration. Rather than proceed to trial on criminal charges, as well as filing a suit for Civil Rights Violations, at the next court appearance I agreed to plead to a bald tire on the condition that there be no fine (a $30 or $35 surcharge was deducted from my bail). I neither tailgated the police officer (who was driving a marked Harrison Police Dept. vehicle, nor did I commit an 'unsafe start,' nor did I attempt to assault the police officer, or attempt to assault the police officer. As an attorney, I am trained to argue, not to use physical force. I have never assaulted anyone, and other than this incident, have never been accused of assaulting anyone.

13,    Prior experience with firearms. When I was a child, I went to sleepaway camp and one of the activities was 'Riflery.' I believe I earned some NRA ratings, but do not recall what they were; possibly 'Marksman' or something like that.

ALAN KACHALSKY

sworn to before me this
8th day of February, 2008

Notary Public

Natalie M. Spedaliere
Notary Public, State of New York
No. 01SP6104334
Qualified in Westchester County
Term Expires January 20 ___

## Whiting, Thomas

| | |
|---|---|
| **From:** | ALAN KACHALSKY [catchsky@earthlink.net] |
| **Sent:** | Wednesday, August 06, 2008 10:07 AM |
| **To:** | Whiting, Thomas |
| **Subject:** | ALAN KACHALSKY - CARRY PERMIT APPLICATION - ADDITIONAL RECORDS |
| **Attachments:** | DIGAETANO COMPLAINT to GRIEVANCE COMMITTEE & ANSWER 1984.pdf |

Officer Whiting,

I finally located the records I had regarding the 1984 Mamaroneck incident which you requested.

I am attaching hereto a copy of these records which include:

The complaint filed against me by my client's (Patricia DiGaetano) husband's mother (Mary DiGaetano);
My response to the Grievance Committee;
A letter from the Grievance Committee dismissing the complaint against me.

I called Town of Mamaroneck Police Dept again today after sending several e-mails. Lt Bob Kocziak, 381 6100 ext. 7884) who is in charge is on vacation till Monday, but I did update them (Kathy in records) with the exact date of the incident, which I see from Mary DiGaetano's complaint was Sunday, March 25, 1984. Kathy said if she had time she would try to look for the police report (which was not computerized until 1989).

I will call you to confirm that you were able to open the attached PDF document.

Thanks,
Alan

8/6/2008

**TOWN COURT**
**TOWN OF HARRISON**
**COUNTY OF WESTCHESTER**

*Superceding*

**MISDEMEANOR INFORMATION**

THE PEOPLE OF THE STATE OF NEW YORK
-against-

ALAN KACHALSKY

# REDACTED



Defendant(s) .

Be it known that the complainant herein P.O. C. DIGIACOMO, of the Town of Harrison Police Department, Westchester County, New York, accuses the defendant(s) named above of the following offense(s) committed at Calvert Street and Ellsworth Avenue intersection, within the Town of Harrison, New York on or about March 17, 2005 at approximately 1925 hours

COUNT ONE : The Offense of OBSTRUCTING GOVERNMENTAL ADMINISTRATION IN THE SECOND DEGREE, a violation of Penal Law PL 195.05     AM0

The Defendant(s) he/she intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

To wit: The defendant(s) at the above date, time and place, did intentionally attempt to prevent a public servant from performing an official function, by means of interference in that the defendant, after being issued a summons for violating Section 1129(a) of the Vehicle and Traffic law did upon approach of your deponent become irate and began shouting at your deponent "Are you breaking my fucking balls now". The defendant after having been advised to calm down did insist on exiting his vehicle and began to force the driver's side door open. Your deponent did repeatedly advise the defendant to remain inside his vehicle, despite your deponent's orders the defendant did repeatedly attempt to force the driver's door open striking your deponent three times in the right arm. Defendant did thereby physically interfere with your deponent who was performing a lawful duty.

The above allegation(s) of fact are made by the complainant herein on direct knowledge.

**NOTICE: PURSUANT TO THE PENAL LAW, SECTION 210.45, IT IS A CRIME PUNISHABLE AS A CLASS A MISDEMEANOR TO KNOWINGLY MAKE A FALSE STATEMENT HEREIN.**

March 29, 2005

P.O. C D A— 106/118 DIGIACOMO

# CERTIFICATE OF DISPOSITION

**STATE OF NEW YORK**
**WESTCHESTER COUNTY**

**HARRISON TOWN COURT**
**CRIMINAL PART**

PEOPLE OF THE STATE OF NEW YORK

VS.

ALAN KACHALSKY;  Defendant

CASE NO: 05030824

Date of Birth:  REDACTED
Date of Arrest:  03/17/2005
Disposition Date:  04/01/2005

| Section Charged | Section Disposed | Ticket No & Description | Disposition | Fine | Civil-Fee | Surchg |
|---|---|---|---|---|---|---|
| PL 110.00/120.05 | PL 110.00/120.05 | ATT ASSAULT 2ND | Dismissed | 0.00 | 0.00 | 0.00 |
| PL 205.30 | PL 205.30 | RESIST ARREST | Dismissed | 0.00 | 0.00 | 0.00 |
| VTL 1129 0A | VTL 0375 35 | LU1062143 TIRE STNDS-VIOL | Surcharge/No Fine | 0.00 | 0.00 | 35.00 |
| PL 195.05 | PL 195.05 | OBS GOVT ADMN 2 | ACOD-Adj. Compl/Dis | 0.00 | 0.00 | 0.00 |

Upon a proper request for an official statement of disposition,
I certify that the above named defendant having appeared before
this court was charged as shown above.  Each of the charges was
disposed of as indicated.

Dated: The 14th day of May 2008

*Rosemary King*
Rosemary King, Court Clerk

NOTE: A copy of the request will be filed with this certificate
in the case records.

CAUTION: This information must not be divulged if the case is
sealed or where the defendant has been adjudicated a youthful
offender.

Copies: ____ Court, ____ Defendant, ____ Agency, ____ DA

| SERIAL NO. | DATE OF REPORT | TIME OF REPORT | NAME | RANK | SHIELD | POST # |
|---|---|---|---|---|---|---|
| 08 | 10-06-03 | 1012 A.M./P.M. | TODARO | PO | 4/7829 | C-72 |

| DISPATCH NUMBER | EXACT PLACE OF INCIDENT | | | DATE & TIME OF INCIDENT |
|---|---|---|---|---|
| 03-46562 | 339 MAMARONECK AV (GIFT CART FISH) | | | A.M. P.M. |

| COMPLAINANT'S NAME | D.O.B. | COMPLAINANT'S ADDRESS |
|---|---|---|
| ALAN N. KACHALSKY | 1-31-56 | REDACTED |

NATURE AND REMARKS: ...TO CIPOLLARO (C72A) AND I RESPONDED TO 339 MAMK. AV ON A REPORT OF A DISPUTE UPON ARRIVAL, WE MET WITH MICHAEL BAMBACE OF 3 TERRACE AV WPNY DOB-07-23-67 WHO STATED THAT KACHALSKY OWES HIM BACK PAY. MR. KACHALSKY TOLD US THAT HE FIRED BAMBACE TODAY AND, WHILE BAMBACE WAS GATHERING BELONGINGS, AN ARGUMENT BEGAN. BOTH PARTIES CAME TO AN AGREEMENT TO WHERE BAMBACE WAS GIVEN $750.00 TODAY AND WILL RECEIVE $100.00 PER WEEK UNTIL DEBT IS PAID OFF (UNKNOWN AMOUNT AT THIS TIME). A WRITTEN AGREEMENT WAS DRAWN UP AND SIGNED BY BOTH, WITNESSED

COPY 1    POLICE DEPARTMENT - WHITE PLAINS, N.Y.    REFER TO: RECORDS   UF-6   -1 OF 2-

---

| SERIAL NO. | DATE OF REPORT | TIME OF REPORT | NAME | RANK | SHIELD | POST # |
|---|---|---|---|---|---|---|
| 08 | 10-06-03 | 1012 A.M./P.M. | TODARO | PO | 4/7829 | C-72 |

| DISPATCH NUMBER | EXACT PLACE OF INCIDENT | | | DATE & TIME OF INCIDENT |
|---|---|---|---|---|
| 88-46562 | 339 MAMK. AV | | | SAME A.M. P.M. |

| COMPLAINANT'S NAME | D.O.B. | COMPLAINANT'S ADDRESS | SAME AS INCIDENT |
|---|---|---|---|

NATURE AND REMARKS: BY MYSELF AND PO CIPOLLARO. BAMBACE WAS ADVISED NOT TO RETURN TO THE STORE AND AGREED TO PART WITH NO FURTHER INCIDENT. LOCALS/NCIC NEGATIVE ON BAMBACE.

COPY 1    POLICE DEPARTMENT - WHITE PLAINS, N.Y.    REFER TO: RECORDS   UF-6   -2 OF 2-

**State of New York**
**Grievance Committee for the**
**Ninth Judicial District**

200 BLOOMINGDALE ROAD

WHITE PLAINS, N. Y. 10605

914-949-4540

KINGDON P. LOCKER
ACTING CHAIRMAN

GARY L. CASELLA
CHIEF COUNSEL

ASSISTANT COUNSEL
SYLVIA L. FABIANI
EUGENE ALLAN SCHLANGER
GARY D. EGERMAN

August 7, 1984

CONFIDENTIAL

*extension 3) granted by Gary. Egerman*

Alan Kachalsky, Esq.
**REDACTED**

Re:  Our File 3343/84

Dear Mr. Kachalsky:

We enclose a copy of the complaint of Mary DiGaetano, dated June 29, 1984.

Kindly submit two copies of a written answer to the complainant's allegations within ten days of your receipt of this letter. According to the usual policy of the Committee, the second copy of the answer will be forwarded to the complainant with a request that a reply be submitted.

You are advised that an unexcused failure to reply to this complaint constitutes "professional misconduct" independent of the merits of the complaint and will be treated accordingly by the Committee.

Please direct future communications concerning this matter to Gary D. Egerman, assistant counsel, and refer to our file number above.

Very truly yours,

*Sylvia Fab i.*

Gary L. Casella
Chief Counsel

GLC/meh
enclosure

*younger is*
*~~Alan Kachalsky~~*
**REDACTED**

JUL 2 1984

WCBA

**REDACTED**

June 29, 1984.

To It hom It May Concern:

I have some imformation and hope you can be of some help to me in this frustating matter.

My son and his wife are going through a divorce and custody battle. My son has his own lawyer she was given a court appointed.

On Sunday March 25th my son picked up his daughters visitation 9-6. the younger child was throwing up and very ill. when he arrived home we decided to call the doctor as she couldn't stop throwing up. He called his wife to ask what was wrong with the child she said nothing and hung up.

We went to Dr. Doris a little after 12, we were there only a few minutes when his wife and her attorney Alan Zachalsky came barging in and started harrassing us. that is on the police report.

She tried to get the baby out of

of my arms I refused because she
was sleeping, she proceeded to pull my
hair, scratch my face and call me vile
names in an office full with parents
and children.

My son tried to pull her off of me,
her lawyer grabs my son pushes him as
I was getting up with the baby and
we were thrown to the floor. His wife
and lawyer sat on my son and wouldn't
let him up. Dr. Bove picks up the
baby and takes her to an examining
room. In the meantime as I fell
my knee snapped and I bruised my
arm, Arlene at Domestic Violence took
pictures of it. the police came in and
found the lawyer sitting on my son.
It had a horrible way for a number of
the bar to act.

Police statements were taken, the
doctor verified we were sitting there
with the baby, when they came in
and harassed us

The matter is also in the hands of the D.A.'s in Rye. My sons lawyer is waiting until the custody and divorce case comes up.

The fall has aggravated my arthritis that I had to go to a bone doctor who has me on cortisone and represign. He says I will need surgery to relieve the pain.

The police, other lawyers, teachers whom I work with family and friends are all shocked to think that a lawyer could take it upon himself to assault people.

I am a highly respected mother and grandmother, substitute teacher and aide and feel that this attorney has degraded me.

This is my second letter when I called yesterday Mrs Rabinowitz couldnt find the one I sent out in April. I hope you can help me.

Yours truly
Mary Di Gaetano

ALAN KACHALSKY
Attorneys at Law
**REDACTED**

gust 31, 1984

State of New York
Grievance Committee for the
Ninth Judicial District
200 Bloomingdale Road
White Plains, New York 10605

    ATT: GARY D. EGERMAN, Assistant Counsel
    YOUR FILE #: 3343/84

Dear Mr. Egerman,

This letter constitutes my written answer to the
allegations brought against me by Mary DiGaetano, dated
June 29, 1984.

Annexed hereto and made a part hereof is a copy of my
affirmation, dated March 26, 1984, which was in support of
my Order to Show Cause to modify visitation and for child
support.  This affirmation sets forth the circumstances
which led up to the physical confrontation between myself
and Mr. John Digaetano, my (assigned) client's husband.

I would, however, like to add a few thoughts as they come
to mind.  First, I was assigned to this case by the
Westchester County Family Court approximately, I believe,
1-2 weeks before the incident occurred.

My first meeting with my client was on March 15, 1984 at
approximately 12:00 midnight, when I received a telephone
call from my client, Patricia DiGaetano.  Mrs. Digaetano
informed me that she had given the children to her husband
for visitation, as the Family Court Order provided, but her
husband had not returned the children.  The Order provided
for visitation from 7:00 P.M. to 9:00 P.M., and the
children should have been returned three hours ago.

Since my client was hysterical, I picked her up where she was staying and drove to the Mamaroneck Police Department, to try to get the police to return the children. I was informed by the Police that the children had been taken by Child Protective Services. I contacted a woman from C.P.S. and was advised that the children had been taken to the hospital and had told the doctors that the mother (my client) had burned the younger child, Marci, age 3, with cigarettes.

The next day, I went to Family Court (in New Rochelle), and learned that the children had been placed in foster care due to the new abuse charges.

Then, on March 22, 1984, a 1028 (F.C.A.) Hearing was held, which resulted in the children being returned to the mother's custody.

It should, of course, be noted that my client denied that she had burned her daughter with a cigarette. Having met her and seen the concern and love she had for her children, I could not conceive of her burning her 3 year old daughter with a cigarette. It was therefore my belief that the children were coerced or tricked into lying to the police in order to influence the on-going custody battle.

Then, on March 25, 1984, a Sunday, I received another call from my client. She stated that her husband had told her that he was calling Child Protective Services, on the basis that the children were sick, and that he was taking them to Dr. Boris' office.

At this point, I felt that we should go to the doctor's office to be present when the doctor examined Marci, so that she would not be unduly influenced by her father to lie to the doctor. I felt that if the mother were present, the child would not be able to lie, whereas, if only the father was present, the child would be able to lie. Also, I felt that I should also be present at the examination, so that if it became necessary to cross-examine the doctor at a future hearing, I would be better able to do so.

The facts about the incident itself are set forth in paragraphs 19-21 of my annexed affirmation.

Regarding the complainant's statement that "we were there only a few minutes when his wife and her attorney Alan Kachalsky came barging in and started harassing us that is on the police report.". Of course, the complainant did not produce a copy of the police report, so of course this statement as to what is on the police report is hearsay. I did, however, look at the police report. The police report, as the complainant is fully aware, states only that (the complainant) told the police that we barged in and started harassing them. Perhaps if this "well respected substitute teacher could read English, she would have told you that the police report only indicates that this is what she told the police (who did not arrive until the fight was over). I suspect, however, that the reason the complainant did not attach the police report is because she is well aware that the police report indicates merely that this is what the complainant told the police.

Furthermore, in the letter, Mary DiGaetano admits that she refused to give the child to the child's mother. This, I believe, is indicative of Mary DiGaetano's attitude, which, from the beginning of my involvement in this case, has been detrimental to any peaceful settlement between the parties, and therefore detrimental to the best interests of the children. The fact that she believes that she has a greater right to hold the child than the child's mother demonstrates the extent and manner in which she has involved herself in the marital problems between her son and daughter in law.

Furthermore, Mr. DiGaetano was not trying to pull my client off his mother. I had been trying to separate the two of them, during the heated exchange of words between the mother in law and my client and her husband, when Mr. DiGaetano grabbed my client by the throat. Had Mr. Digaetano been trying to "pull her (my client) off of (the complainant)", as claimed by the complainant, I don't think that grabbing her by the neck and squeezing was the best means of accomplishing this. I am sure that Mr. DiGaetano (who I am told is a former Vietnam combat veteran), could have found a less violent means of separating his wife from his mother in law.

In any case, after Mr. DiGaetano began chocking my client, I forcibly removed his hands from my client's neck. After I did this, he shoved me in the chest.

At that point, I threw him to the floor and held him for several minutes, waiting for him to calm down. He did not calm down. I wanted to make sure that he would not hit me when I let him up. He continued to struggle. In fact, not only did he scratch my face, but he managed to claw one of my contact lenses out of my eye. Since the defendant was also trying to kick me with his feet, I believe my client tried to hold his feet to prevent him from kicking me. I believe this is what the complainant observed when she states that "His wife and lawyer sat on my son and wouldn't let him up."

I was told the police were on their way. I wanted to wait for them to be present so that he would not hit me when I let him up, since he was still very violent, and was, in fact, threatening to shoot me when this was over. When the police had not arrived after several minutes I decided to let him up despite the fact that he did not appear any calmer. Therefore, when the complainant states that "the police came in and found the lawyer sitting on my son. What a horrible way for a member of the bar to act," she is lying through her teeth. It is curious that she doesn't claim that the police report (which she apparently is familiar with) confirms this. Certainly if the police had observed this, it would be on the police report.

The police arrived shortly thereafter, and placed me and my client in one room. I do not know what they did with Mr. DiGaetano and his mother. I do know that while I was in the examination room with My client, Mr. DiGaetano opened the closed door three times and said he was going to "get me when this is all over." I believe he was going to kill me, but since there was a police officer present with me, he was tempering his language.

With regard to the complainant's injuries, I have no knowledge of them, and I did not cause her injuries. if she, in fact, was injured.

Furthermore, it is interesting to note that there is no statement by her son, who was involved in the incident.

Although the complainant states that the matter is in the hands of the D.A. (which is, of course, irrelevant to this matter), it should be noted that the D.A. has, apparently

exercised prosecutorial discretion, and refused to take action.

Lest an adverse inference be drawn by my failure to take the matter to the D.A. or take any action regarding this incident, I shall explain my inaction in this regard. I have not pursued this matter because I was willing to let bygones be bygones. Although I did receive minor injuries in the fight, I felt that everyone involved would be better off if the incident was forgotten, and that any lawsuit by me would be detrimental to the settlement of the matrimonial and family court matters; especially since Mr. DiGaetano is barely able to pay his child support of $50/week for the two children. However, I did advise the D.A., Michael Santangelo, that I would not be displeased if he pursued the criminal matter since I felt that I acted in defense of my client, and thereafter, in my own defense, and I was therefore "justified" in using the extremely limited force which I used. I am not aware of any injury to Mr. DiGaetano.

Since this complaint is essentially Mrs. DiGaetano's word against my word, and since I know that I am telling the truth, I challenge the complainant to take a lie detector test regarding both the incident which she is complaining of, and also regarding her knowledge as to how Marci got cigarette burns on her arms. Of course, I am also willing to take a lie detector regarding this incident. I am also willing to stipulate that the results of any lie detector test be introduced evidence at any criminal trial which may result (provided she is also willing to so stipulate). I have reason to believe that this "highly respected mother and grandmother, substitute teacher and aide" was involved in, or at the very least, has knowledge of who was actually involved in burning her grandaughter, Marci, age 3, with a cigarette, if, in fact the marks on Marci were cigarette burns. Furthermore, if her son will also agree to take a lie-detector test regarding both this incident and the cigarette burns, I believe that my client will also be willing to take a lie-detector test on the same subjects. Furthermore, since this issue involves a serious crime (child abuse), I believe the District Attorney should be willing to provide the lie detector test.

As a highly respected mother and grandmother, the complainant should jump at the opportunity to find out who is telling the truth about the cigarette burns, and at the same time find out who is telling the truth about the incident at the doctors office.

Very truly yours,

ALAN KACHALSKY

State of New York
Grievance Committee for the
Ninth Judicial District

200 BLOOMINGDALE ROAD

WHITE PLAINS, N. Y. 10605

914-948-4540

KINGDON P. LOCKER
CHAIRMAN

GARY L. CASELLA
CHIEF COUNSEL

SYLVIA L. FABRIANI
EUGENE ALLAN SCHLANGER
SENIOR COUNSEL

GARY D. EGERMAN
ASSISTANT COUNSEL

CONFIDENTIAL

November 29, 1984

Alan Kachalsky, Esq.
**REDACTED**

Re:  Our File #3343/84
     Complaint of Mary DiGaetano

Dear Mr. Kachalsky:

Following an investigation, the above matter was submitted to the
Committee at its meeting on November 15, 1984.

After deliberation, the Committee determined that there was no breach
of the Code of Professional Responsibility on your part.  Accordingly,
the matter was dismissed.

Very truly yours,

Kingdon P. Locker
Chairman

KPL/ltr

# NCIC SEARCH

# REDACTED

# NCIC SEARCH

# REDACTED

# NCIC SEARCH

# REDACTED

# NCIC SEARCH

# REDACTED

# EXHIBIT H

DATE: 07/14/2010     TIME: 15:18:57

Office of the Westchester County Clerk
110 Dr. Martin Luther King Jr. Blvd.
White Plains, NY 10601 / (914)995-3080

## Receipt # 124134

Trans # 125701            Batch: TW2
PISTOL AMENDMENT                   5.00
  DETMER
  ERIC
SUB TOTAL _____                  5.00
TAX _____                         .00
CASH _____                       5.00
AMT TENDERED _____               5.00
TOTAL _____                      5.00
CHANGE _____                      .00

        Thank You!
  Visit www.westchesterclerk.com
       for more information

10-300 (10-628)

**REDACTED** :R COUNTY

Westchester County Clerk
Pistol Division
110 Dr. Martin Luther King Jr. Blvd.
White Plains, New York 10601

## APPLICATION FOR AMENDED OR DUPLICATE PISTOL LICENSE

107894

**ORIGINAL LICENSE #**

INSTRUCTIONS: Complete form and submit in DUPLICATE to the Westchester County Clerk's Office and include $3.00 for Amendment or $5.00 for duplicate.

NAME: Eric Detmer

**REDACTED REDACTED**

| AGE: 33 | HEIGHT: 5'8" | WEIGHT: 180 | NOTE: Check box if purchase order is needed ☐ |

### CIRCLE APPROPRIATE TRANSACTION (S)

RESIDENCE CHANGE     DISPOSED     ACQUIRED     NAME CHANGE     (RESTRICTION CHANGE)     TRANSFER

DUPLICATE     SURRENDERED     SUSPENDED     REVOKED     DECEASED     OTHER_____

### I. TO AMEND LICENSE COMPLETE 1 THROUGH 7 WHERE APPROPRIATE

1. NAME _____ PHONE #'s: HOME _____ WORK _____

2. NEW ADDRESS _____

3. THE FOLLOWING WEAPON (S) HAVE BEEN ACQUIRED FROM: NAME _____

ADDRESS _____

LICENSE #/DEALER LICENSE #/SHIELD # _____. IF MORE THAN ONE SELLER, CHECK THIS

BOX ☐ AND FILL OUT BOX 7 ON THE BACK OF THIS FORM.

| MAKE | REV/AUTO | MODEL | CALIBER | SERIAL # |
|------|----------|-------|---------|----------|
|      |          |       |         |          |

4. THE FOLLOWING WEAPON (S) HAVE BEEN DISPOSED TO: NAME _____

ADDRESS _____

LICENSE #/DEALER LICENSE #/SHIELD # _____. IF MORE THAN ONE BUYER, CHECK THIS

BOX ☐ AND FILL OUT BOX 7 ON THE BACK OF THIS FORM.

| MAKE | REV/AUTO | MODEL | CALIBER | SERIAL # |
|------|----------|-------|---------|----------|
|      |          |       |         |          |

5. THE FOLLOWING WEAPON (S) HAVE BEEN: (CIRCLE ONE)     LOST     STOLEN     DESTROYED

LAW ENFORCEMENT AGENCY REPORTED TO: _____

| MAKE | REV/AUTO | MODEL | CALIBER | SERIAL # |
|------|----------|-------|---------|----------|
|      |          |       |         |          |

6. AMEND LICENSE TO: (CIRCLE ONE)     (ADD)     DELETE     A RESTRICTION

IF AMENDMENT IS EMPLOYMENT RELATED, STATE THE FOLLOWING: (FOR A BUSINESS, EMPLOYMENT, OR FULL CARRY)
I AM REQUESTING THAT THE RESTRICTION ON MY LICENSE BE CHANGED TO: Full Carry _____

| NAME: | STREET: | CITY/VILLAGE/TOWN: |
|-------|---------|--------------------|
|       |         |                    |

7. NAMES AND ADDRESS' OF BUYERS AND/OR SELLERS (IDENTIFY IF BUYER OR SELLER)

| NAME | ADDRESS | WEAPON SERIAL # |
|------|---------|-----------------|
|  |  |  |
|  |  |  |

(A separate list of buyers/sellers must be submitted in triplicate on plain white paper, if there are more than 4 buyers/sellers.)

## II. TO REQUEST A DUPLICATE LICENSE, COMPLETE AFFIDAVIT

STATE OF NEW YORK )
COUNTY OF WESTCHESTER ) S.S.
CITY/VILLAGE OF )

Full Name _____

Present Occupation _____

Name and Address of Employer _____

_____

Serial number of lost license _____ Date of Issuance _____

Brief statement of circumstances under which permit was lost:

_____

_____

_____

Statement of weapon (s) now in applicant's possession, which are to be registered on license:

| MAKE | REV/AUTO | MODEL | CALIBER | SERIAL # |
|------|----------|-------|---------|----------|
|  |  |  |  |  |

(A separate list of guns must be submitted in triplicate on plain white paper, if applicant possesses more than 3 guns.)

Sworn to before me this _____ day of _____ , 19 _____     _____
                                                                              Applicant's Signature

_____
Notary Public

## III. TO BE COMPLETED BY ALL APPLICANTS

Have you been arrested for any crime, been a patient at any mental institution, or had an order of protection issued against you since the last license was issued?    (CIRCLE ONE)    YES    NO
If yes, give details below:

_____

_____

_____

Date and Place of Birth _____

Foreign Born Citizens Only - Naturalization Certificate Number _____

Date of Issuance _____ Court _____

I SWEAR THAT ALL THE ABOVE FACTS ARE TRUE TO THE BEST OF MY KNOWLEDGE _____
                                                                          APPLICANT'S SIGNATURE

### FOR OFFICE USE ONLY

| | DATE | COUNTY JUDGE |
|---|------|--------------|
| AMENDED LICENSE APPROVED ☐ NOT APPROVED ☑ | | |
| DUPLICATE LICENSE APPROVED ☐ NOT APPROVED ☐ | 9/27/10 | _signature_ |
| EXPIRATION DATE _____ | | |

Revised: 1/12/2005

Hon. Albert Lorenzo
Acting Supreme Court Justice

APPX. 251

# Westchester
## gov.com

Robert P. Astorino
County Executive

Department of Public Safety

George N. Longworth
Commissioner-Sheriff

September 3, 2010

Honorable Justice
Westchester County Court
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601

Re:    Pistol License Amendment of Eric R. Detmer

# **REDACTED**

Dear Honorable Justice:

The above captioned individual has submitted an application to Westchester County to amend his New York State (NYS) Pistol License to allow the category of **FULL CARRY.**

The applicant is currently licensed by Westchester County for the purpose of Target Shooting (#107894). This amendment application is for the following:

1)     Delete Target Shooting.
2)     Add Full Carry.

A name based criminal background and related database check through the National Instant Criminal Background check system was conducted. No derogatory information was uncovered. In addition, a query of the files of the NYS Department of Mental Hygiene also revealed no derogatory information.

The applicant submitted notarized documentation attesting that 1) he is a Part-Time Federal Law Enforcement Officer with the United States Coast Guard (USCG), and 2) he has been a qualified Boarding Team Member since September 2004, and 3) and while on-duty with the USCG, he carries a .40 caliber pistol as a personal defense weapon, and 4) he works the first weekend of every month and two weeks per year at the beginning of May, as per his agreement, and 5) he turns in his duty firearm at the end of his assignment, and 6) his duties include boarding pleasure and commercial boats, inspecting shore side facilities and interacting with the public, and 7) to maintain his qualification, he completes semi-annual training consisting of a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training which ensures he use the pistol safely and properly while on duty, and 8) a full carry firearm permit would allow him to safely provide the same public service of enforcing laws while off duty, if needed.

  

A New York State Accredited
Law Enforcement Agency

1 Saw Mill River Parkway
Hawthorne, NY 10532          Telephone: (914) 864-7700          Website: westchestergov.com

Eric R. Detmer
September 3, 2010
Page 2 of 2

It appears that the necessary proper cause for the issuance of a firearm license for the purpose of Full Carry has not been met by the applicant. The applicant is employed part time by the United States Department of Homeland Security, United States Coast Guard, as a federal law enforcement officer. It is an armed position; however the applicant's employer requires that he turn in his duty firearm at the end of each work assignment. The applicant's stated need for a firearm during non working hours is to enforce laws while off duty, if needed. This need is speculative as there is no showing by the applicant that he would regularly enforce the federal laws he references while off duty. The applicant has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry firearm license. In addition, we are not aware that other persons who are employed in a similar capacity generally carry a firearm while off duty. The applicant has not demonstrated an exceptional need for self protection distinguishable from that of the general public.

This application is respectfully forwarded with the recommendation of **DISAPPROVAL.**

Sincerely,

DEPARTMENT OF PUBLIC SAFETY
Westchester County Police

Joseph J. Yasinski
First Deputy Commissioner

JJY/fd

Chief Inspector's Endorsement                    September 1, 2010


RE:   Pistol License Amendment   **TARGET SHOOTING ADD FULL CARRY**
      Mr. Eric R. Detmer, Pistol License #107894

I have reviewed the attached investigative report and the foregoing comments of Sergeant Bruce
Bellom and Lieutenant Frank Donovan.  I concur with both of their recommendations.

Forwarded to First Deputy Commissioner Joseph J. Yasinski and recommend **disapproval** of this
application amendment to pistol license #107894 to allow the category of **FULL CARRY** for the
applicant.


*C.I. Roger R. Rokicki*

Chief Inspector Roger R. Rokicki
Chief of Administrative Services


RRR/jw

08/30/2010: Endorsement by Lieutenant Frank J. Donovan of memorandum by Sergeant Bellom dated 08/25/2010 entitled: Pistol License amendment of Eric R. Detmer (FC).

The applicant is currently licensed by Westchester County for the purpose of Target Shooting (#107894). This amendment application is for the following:

    1)    Delete Target Shooting.
    2)    Add Full Carry.

The applicant submitted notarized documentation attesting that 1) he is a Part-Time Federal Law Enforcement Officer with the United States Coast Guard (USCG), and 2) he has been a qualified Boarding Team Member since September 2004, and 3) and while on-duty with the USCG, he carries a .40 caliber pistol as a personal defense weapon, and 4) he works the first weekend of every month and two weeks per year at the beginning of May, as per his agreement, and 5) he turns in his duty firearm at the end of his assignment, and 6) his duties include boarding pleasure and commercial boats, inspecting shore side facilities and interacting with the public, and 7) to maintain his qualification, he completes semi-annual training consisting of a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training which ensures he use the pistol safely and properly while on duty, and 8) a full carry firearm permit would allow him to safely provide the same public service of enforcing laws while off duty, if needed.

It appears that the necessary proper cause for the issuance of a firearm license for the purpose of Full Carry has not been met by the applicant. The applicant is employed part time by the United States Department of Homeland Security, United States Coast Guard, as a federal law enforcement officer. It is an armed position; however the applicant's employer requires that he turn in his duty firearm at the end of each work assignment. The applicant's stated need for a firearm during non working hours is to enforce laws while off duty, if needed. This need is speculative as there is no showing by the applicant that he would regularly enforce the federal laws he references while off duty. The applicant has not substantiated that he faces danger during non employment hours that would necessitate the issuance of a full carry firearm license. In addition, we are not aware that other persons who are employed in a similar capacity generally carry a firearm while off duty. The applicant has not demonstrated an exceptional need for self protection distinguishable from that of the general public.

I concur with Sergeant Bellom and recommend disapproval of this amendment of a firearm license to allow the purpose of **FULL CARRY**. Forward to Chief Inspector Roger R. Rokicki.

Lieutenant Frank J. Donovan



Memorandum
**Department of Public Safety**

DATE:     August 25, 2010

TO:       Lt. Frank Donovan

FROM:     Sgt. Bruce Bellom #15

RE:       Pistol License Amendment of Eric R. Detmer

The above captioned individual has submitted an application to Westchester County to amend his New York State (NYS) Pistol License to allow the category of **FULL CARRY.**

The applicant is currently licensed by Westchester County for the purpose of Target Shooting (#107894). This amendment application is for the following:

1)    Delete Target Shooting.
2)    Add Full Carry.

A name based criminal background and related database check through the National Instant Criminal Background check system was conducted. No derogatory information was uncovered. In addition, a query of the files of the NYS Department of Mental Hygiene also revealed no derogatory information.

The applicant submitted notarized documentation attesting that 1) he is a Federal Law Enforcement Officer with the United States Coast Guard (USCG), and 2) he has been a qualified Boarding Team Member since September 2004, and 3) while on-duty with the USCG, he carries a .40 caliber pistol as a personal defense weapon, and 4) his duties include boarding pleasure and commercial boats, inspecting shore side facilities and interacting with the public, all while performing the public service of enforcing laws, and 5) to maintain his qualification, he completes semi-annual training consisting of a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training which ensures he use the pistol safely and properly while on duty, and 6) with a full carry permit, he would safely provide the same public service of enforcing laws while off duty, if needed.

It appears that the necessary proper cause for the issuance of a firearm license for the purpose of Full Carry has not been met by the applicant. The applicant is employed part time by the United States Department of Homeland Security, United States Coast Guard, as a Boarding Team Member assigned to the Kings Point, New York office. He works the first weekend of every month and two weeks per year at the beginning of May as per his agreement. While on duty, he is provided with a firearm which he turns in at the end of his assignment. The applicant's stated need for a full carry firearm license centers around being able to provide the same public service of enforcing laws while

Eric R. Detmer
August 25, 2010
Page 2 of 2

off duty, if needed. The applicant <u>has not</u> substantiated that he faces danger of any kind as a result of this employment that would necessitate the issuance of a full carry firearm license. In addition, we are not aware that other persons who are employed in this type of service generally carry a firearm while off duty. The applicant <u>has not</u> demonstrated a need for self protection distinguishable from that of the general public, or of other persons similarly situated.

This application is respectfully forwarded with the recommendation of **DISAPPROVAL.**



Westchester
gov.com

Robert P. Astorino
County Executive

Department of Public Safety

George N. Longworth
Commissioner/Sheriff

OFFICE USE ONLY

CASE #: _10 - 00628_

DETECTIVE: _W Johnson_

Date: _07/19/10_

State of New York
Department of Mental Hygiene
44 Holland Avenue
Albany, New York 12229

## Re:   Application for Firearm License

Dear Sir or Madam:

It is hereby requested that you conduct a check of your records against the name of the below listed person, in accordance with New York State Penal Law, section 400 (4), and that you respond to this agency in writing, as soon as possible:

## APPLICANT: PLEASE COMPLETE THE BELOW LISTED INFORMATION:

Name (Last): _Detmer_         First: _Eric_             M.I. _K_

Alias/ Maiden Name:_____ Da       **REDACTED**

Address:_____ **REDACTED** _____ **REDACTED**
         STREET              CITY        STATE        ZIP
                          **REDACTED**

Sex: _M_     Social S                                _nebeck NY._

Sincerely,

DEPARTMENT OF PUBLIC SAFETY
Westchester County Police

George N. Longworth
Commissioner/ Sheriff

NO OFFICIAL RECORD OF HOSPITALIZATION FOR MENTAL
... PRIOR TO 1965, IF SEARCH PRIOR TO 1965, IF
... IN CASE SUBMIT WRITTEN REQUEST



**WESTCHESTER COUNTY POLICE**
**PISTOL LICENSE UNIT**

**ATTACHMENT: FULL CARRY**

| OFFICE USE ONLY |
|---|
| CASE#: _____ |
| DET: _____ |

**Answer all questions fully and in accordance with the guidelines set forth in the Pistol Safety & Information Handbook. This form and attachments must be notarized.**

**APPLICANT INFORMATION:**

Last Name: Detmer ~~REDACTED~~     First Name: Eric ~~REDACTED~~     M.I. R

Address: _____
          STREET          CITY          STATE          ZIP

**List all factors which you believe to be relevant to your application and which establish <u>proper cause</u> for issuance of a firearm license for the purpose of Full Carry:**

I am a Federal Law Enforcement Officer with the United States Coast Guard (USCG) Specifically, I have been a qualified Boarding Team Member (BTM) since September, 2004. When on-duty with the USCG I carry a .40 Caliber pistol as a personal defense weapon. As a BTM my duties include boarding pleasure and commercial boats, inspecting shore side Facilities and interacting with the public, all while performing the public service of enforcing laws. To maintain my BTM qualification, I complete semi-annual training consisting of a non-firing judgmental pistol course, a firing tactical pistol course, and use-of-force training. This training ensures I use the pistol safely and properly while on-duty. With a Full Carry permit, I would safely provide the same public service of enforcing laws while off-duty, if needed. My training and experience

with the USCG shows I am qualified to have a Full Carry permit

Attached is my enlistment Contract with the USCG, showing I will be working for the USCG until at least December, 2014. Also attached is my BTM qualification letter, dated September, 2004.

Please call or write if any additional information is needed.

Respectfully Submitted,

_Eric Detmer_
**APPLICANT NAME (PRINT)**

_[signature]_
**APPLICANT NAME (SIGNATURE)**

STATE OF NEW YORK                )
COUNTY OF WESTCHESTER        )

SUBSCRIBED AND SWORN TO BEFORE ME THIS __13th__ DAY OF __July__ YEAR __2010__

**ERIN COLA**
Notary Public, State of New York
No. 02CO6121636
Qualified in Westchester County
Commission Expires 1/24/20 13

_[signature]_
SIGNATURE OF NOTARY PUBLIC

# ENLISTMENT / REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### Privacy Act Statement

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 AND 3101; 10 USC 133, 265, 275, 504, 508, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087, 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN)

**PRINCIPAL PURPOSES:** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USES:** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

---

### A. ENLISTEE / REENLISTEE IDENTIFICATION DATA

**1. NAME** (Last, First, Middle)
Detmer, Eric. R.

REDACTED

**2. HOME OF RECORD** (Street, City, State, ZIP Code)
REDACTED

**4. PLACE OF ENLISTMENT / REENLISTMENT** (Mil. Installation, City, State)
Station Kings Point
Kings Point NY 11024

**5. DATE OF ENLISTMENT/ REENLISTMENT** (YYYYMMDD)
2008 DEC 20

**6. DATE OF BIRTH** (YYYYMMDD)
REDACTED

**7. PREV MIL SVC UPON ENL/REENLIST**

| | YEARS | MONTHS | DAYS |
|---|---|---|---|
| Military Service | N/A | N/A | N/A |
| b. Total Inactive Military Service | N/A | N/A | N/A |

---

### B. AGREEMENTS

8. I am enlisting / reenlisting in the United States (list branch of service) _____ U.S. COAST GUARD _____
_____ this date for _____ 6 _____ years and
_____ 00 _____ weeks beginning in pay grade _____ MK1 _____. The additional details of my enlistment / reenlistment are in Section C and Annex(es) _____.

a. **FOR ENLISTMENT IN A DELAYED ENTRY / ENLISTMENT PROGRAM (DEP):**

I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by (list date (YYYYMMDD)) _____ for enlistment in the Regular component of the United States (list branch of service) _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is NOT creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

b. Remarks: (If none, so state)

Reserve Contract

c. The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**

(Initials of Enlistee/Reenlistee) _____   (Continued on reverse side)

| NAME OF ENLISTEE / REENLISTEE (Last, First, Middle) | SOCIAL SECURITY NO OF ENLISTEE / REENLISTEE |
|---|---|
| Detmer, Eric R. | **REDACTED** |

## D. CERTIFICATION AND ACCEPTANCE

3. My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(EX) WILL BE HONORED. ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: (If none, X "NONE" and initial) ☒ NONE *ERD* (Initials of enlistee / reenlistee)

| b. SIGNATURE OF ENLISTEE / REENLISTEE | c. DATE SIGNED (YYYYMMDD) |
|---|---|
| *[signature]* | 2008 12 20 |

### 14. SERVICE REPRESENTATIVE CERTIFICATION

a. On behalf of the United States (list branch of service) _____ U.S. COAST GUARD _____.
I accept this applicant for enlistment. I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| Lewis, Mark, Charles | E-7 | Station Kings Point |
| e. SIGNATURE | f. DATE SIGNED (YYYYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, Zip Code) |
| *[signature]* | 2008 12 20 | 300 Steamboat Rd Kings Point, NY 11024 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

### 15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):

_____ ERIC DETMER _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniformed Code of Military Justice. So help me God.

### 16. IN THE NATIONAL GUARD (ARMY OR AIR):

_____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations. So help me God.

### 17. IN THE NATIONAL GUARD (ARMY OR AIR):

I do hereby acknowledge to have voluntarily enlisted/reenlisted this _____ day of _____ 20 _____ in the _____ National Guard and as a Reserve of the United States (list branch of service) _____ with membership in the _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18a. SIGNATURE OF ENLISTEE / REENLISTEE | b. DATE SIGNED |
|---|---|
| *[signature]* | 2008 12 20 |

### 19. ENLISTMENT / REENLISTMENT OFFICER CERTIFICATION

a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT / COMMAND NAME |
|---|---|---|
| Lewis, Mark, Charles | E-7 | Station Kings Point |
| e. SIGNATURE | f. DATE SIGNED (YYYYMMDD) | g. UNIT / COMMAND ADDRESS (City, State, Zip Code) |
| *[signature]* | 2008 12 20 | 300 Steamboat Rd Kings Point, NY 11024 |

DD Form 4/2, OCT 2002          COMPGEN - Previous editions may be used.

**U.S. Department of
Homeland Security**

**United States
Coast Guard**



Officer in Charge
United States Coast Guard
Station Kings Point

300 Steamboat Rd
c/o USMMA
Kings Point, NY 11024
Staff Symbol:
Phone: (516)466-7136
FAX: (516)466-7369

3000
02 SEPT 2004

## MEMORANDUM

From:  C. A. ROBINSON, BMC
      CG STA (SM) KINGS POINT (OIC)

To:  ERIC DETMER, MK2
     CG STA (SM) KINGS POINT

Subj:  BOARDING TEAM MEMBER CERTIFICATION, (OPSBTM)

Ref:  (a) USCG Boarding Team Member Qualification Standard (PQS), COMDTINST
        M16247.3
    (b) USCG Regulations, COMDTINST M500.3B (series)
    (c) Maritime Law Enforcement Manual, COMDTINST M16247.3 (series)

1.    Having observed MK2 DETMER performing practical exercises, and having examined him during a board of review in accordance with reference (b), and found his performance to be satisfactory.  It is recommended that he be certified as having fulfilled the Personal Qualification Standard as a USCG Maritime Law Enforcement Boarding Team Member.

RECOMMENDED _____ DATE _____7/3/0~_____
         (Senior Boarding Officer)

RECOMMENDED _____ DATE 2 Sep 04
         (Weapons Petty Officer)

RECOMMENDED _____ DATE 3 Sep 04
         (Executive Petty Officer)

I have examined your qualifications as required by references (a) and (b) and certify that you are qualified as a Boarding Team Member.  I am personally satisfied that you possess the judgment and temperament required to carry weapons in the performance of those duties.

\#

# NCIC SEARCH

# REDACTED

# NCIC SEARCH

# REDACTED

JOINT APPENDIX CONTINUED
IN FOLLOWING VOLUME