# 11-3642-CV
# 11-3962-CV

## UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance, Anna Marcucci-Nance, and Second Amendment Foundation, Inc.

*Plaintiffs-Appellant-Cross Appellees,*

-against-

Susan Cacace, Jeffrey A. Cohen, Albert Lorenzo, and Robert K. Holdman,

*Defendants-Appellees,*

-and-

County of Westchester,

*Defendant-Appellee-Cross Appellant.*

On Appeal from a Judgment of the United States
District Court for the Southern District of New York

## BRIEF FOR DEFENDANT-APPELLEE-CROSS APPELLANT

*Continued on Next Page*

ROBERT F. MEEHAN
Westchester County Attorney
600 Michaelian Office Building
148 Martine Avenue
White Plains, New York  10601
(914) 995-3652

JAMES CASTRO-BLANCO                    THOMAS G. GARDINER
Chief Deputy County Attorney           Sr. Assistant County Attorney

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................iii

PRELIMINARY STATEMENT.............................................................1

STATEMENT OF SUBJECT MATTER JURISDICTION
AND APPELLATE JURISDICTION......................................................3

STATEMENT OF THE ISSUES
PRESENTED FOR REVIEW.................................................................4

COUNTERSTATEMENT OF THE FACTS............................................5

STANDARD OF REVIEW AND
SUMMARY OF THE ARGUMENT.......................................................7

POINT I................................................................................................8

AS A THRESHOLD MATTER, THE DISTRICT
COURT ERRED IN DENYING THE COUNTY
DEFENDANT'S MOTION TO DISMISS BECAUSE IT
WAS NOT A PROPER PARTY

(In Support of the County
Defendant's Cross Appeal)

POINT II.............................................................................................13

SECTION 400(2)(f) OF THE PENAL LAW DOES NOT
CONCERN THE CORE SECOND AMENDMENT
RIGHT RECOGNIZED IN *HELLER* AND
*McDONALD* - THE POSSESSION OF AN
OPERABLE FIREARM IN THE HOME

(In Response to Plaintiffs-Appellants' Point III)

i

POINT III......................................................................................................16

IF SECTION 400(2)(f) OF THE PENAL LAW IS
WITHIN THE AMBIT OF THE SECOND
AMENDMENT RIGHT RECOGNIZED IN *HELLER*, IT
IS NONETHELESS CONSTITUTIONAL BECAUSE IT
IS SUBSTANTIALLY RELATED TO AN
IMPORTANT GOVERNMENTAL INTEREST IN
PUBLIC SAFETY

(In Response to Plaintiffs-Appellants'
Points IV-VI)

CONCLUSION......................................................................................20

CERTIFICATE OF COMPLIANCE.........................................................21

TABLE OF AUTHORITIES

Page

Cases

*Bando v. Sullivan,* 290 A.D.2d 691,
735 N.Y.S.2d 660 (3d Dep't 2002)...................................................6

*Board of Trustees of State University of New York v. Fox,*
492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).............................17

*Buffa v. Police Department of Suffolk County,* 47 AD2d 841,
366 N.Y.S.2d 162 (2d Dep't 1975)..............................................11 n.2

*City of Richmond v. JA. Croson Company,*
488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989)...........................19

*Commonwealth of Massachusetts v. McCollum,*
79 Mass.App.Ct. 239, 945 N.E.2d 937 (Mass. App. Ct. 2011)..............15 n.4

*District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783,
171 L.Ed.2d 637 (2008)..........................................2, 6, 13, 14, 15 n.4, 16, 18

*Dwares v. City of New York,* 985 F.2d 94 (2d Cir. 1993)...........................12

*Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011)........................14 n.3

*Hightower v. City of Boston,* ___ F.2d ___,
2011 WL 4543084 (D. Mass. 2011).............................................10

*Kachalsky v. Cacace,* ___ F.Supp.2d ___,
2011 WL 3962550 *2 (S.D.N.Y. 2011).................5-6, 11, 13-14, 17, 18, 19

*Kermin v. City of New New York,*
374 F.3d 93 (2d Cir. 2004)....................................................11

*Mack v. United States,* 6 A.3d 1224 (D.C. 2010)..............................15 n.4

*McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 3020,
177 L.Ed.2d 894 (2010).........................................2, 6, 9, 15 n.4, 16

iii

*Monell v. Department of Social Services*, 436 U.S. 658,
98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)..........................................……….12

*People v. Aguilar*, 408 Ill.App.3d 136, 944 N.E.2d 816,
348 Ill. Dec. 575 (1ˢᵗ Dist. 2011)..........................................…………....14, 15 n.4

*People v. Ross*, 407 Ill.App.3d 931, 349 Ill. Dec. 762,
947 N.E.2d 776 (Ill. App., 1 Dist. 2011)...........................................…..15 n.4

*People v. Williams*, 405 Ill.App.3d 958, 940 N.E.2d 95,
346 Ill. Dec. 95 (1ˢᵗ Dist. 2010)...........................................…..………..14

*Peruta v. County of San Diego*,
758 F.Supp.2d 1106 (S.D. Cal. 2010)...........................................…………..10

*Schwan-Stabilo Cosmetics GMBH & Company v. Pacificlink
International Corporation*, 401 F.3d 28(2d Cir. 2005)..............................8

*Sims v. United States,* 963 A.2d 147 (D.C.2008)...............................15 n.4

*Turkmen v. Ashcroft*, 589 F.3d 542 (2d Cir. 2009)...........................…….7

*Turner Broadcasting System, Inc. v. Federal Communications Commission*,
520 U.S. 180, 195, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997).................…..19

*Velez v. DiBella*, 77 A.D.3d 670,
909 N.Y.S.2d 83 (2d Dep't 2010)...........................................…..11 n.2

*Williams v. State,* 417 Md. 479, 10 A.3d 1167 (Md. 2011)....................15 n.4

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007)....................................12

## Other Authorities

U.S. Const., Amend. II.......................................................……....2, 6

28 U.S.C. §1291..........................................................................3

28 U.S.C. §1331……………………………………………………………..3

42 U.S.C. §1983…………………………………...…………………….2, 3, 6, 12

Cal. Penal Code §12050…………………………………………...…10-11

Maryland Criminal Law Article §4-203…………………………..……15 n.4

Mass. Gen. L. c. 140, §121……………………………………………………10

New York State Penal Law §265.00…………………………………………10

New York State Penal Law §400.00……………...…….1, 2, 4, 5, 9, 16, 17, 18, 19

New York State Judiciary Law §220………………………………….1, 10

Municipal Code of the City of Chicago §8-20-040(a)…………………………9

Municipal Code of the City of Chicago §8-20-050(c)…………………………9

Municipal Code of the City of Oak Park (Ill.) §27-1-1……………………….9

Municipal Code of the City of Oak Park (Ill.) §27-2-1………………………..9

## PRELIMINARY STATEMENT

The Plaintiffs Alan Kachalsky, Christina Nikolov, Eric Detmer, Johnnie Nance and Anna Marcucci-Nance (hereinafter referred to as "Individual Plaintiffs") applied for licenses to "have and carry concealed [a pistol] , without regard to employment or place of possession" pursuant to Section 400.00(2)(f) of the Penal Law of the State of New York. JA 211-212, 250-251, 266-267, 345-346, 381-382.[1] Those applications were reviewed by the Defendants Susan Cacace, Jeffrey A. Cohen, Albert Lorenzo, and Robert K. Holdman (hereinafter referred to as "State Defendants"). JA 100, 102, 514, 518. Each of the foregoing State Defendants were, at the relevant times, either County Court Judges or Justices of the Supreme Court who serve as pistol licensing officers in the County of Westchester. JA 509, 512, 514, 517. The State Defendants, in their capacities as either County Court Judges or Justices of the Supreme Court, were employed and paid by the New York State Unified Court System. Judiciary Law §220. The only role of the Defendant County of Westchester (hereinafter referred to as "County Defendant") in the licensing process was to provide the various licensing officers with the background

---

[1] Numbers preceded by the letters "JA" refer to the respective pages of the Joint Appendix filed by the Appellants/Cross-Appellees.

investigation report, completed by members of its Department of Public Safety, that was required by Section 400.00(4) of the Penal Law. JA 136-137. Each of the foregoing applications were denied for failure to demonstrate "proper cause" by one of the State Defendants. JA 34, 36-37, 39, 43-44, 48-49.

The individual Plaintiffs, joined by an advocacy group, the Second Amendment Foundation, Inc., brought suit pursuant to Section 1983 of Title 42 of the United States Code against the State Defendants and County Defendant claiming that Section 400.00(2)(f) of the Penal Law violates their rights under the Second Amendment to the United States Constitution as recognized in the Supreme Court case *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and made applicable to the states in *McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). JA 16-26. The Plaintiffs sought injunctive and declaratory relief and the issuance of the requested licenses to the individual Plaintiffs. JA 26.

The County Defendant and the State Defendants moved separately to dismiss the Complaint. JA 27-28, 29. The Plaintiffs moved for summary judgment and the State Defendants cross moved for summary judgment. JA 72-73, 94-95. By Judgment dated September 7, 2011, the District Court:

2

denied the motions to dismiss of the County Defendant and State Defendants; denied the Plaintiffs' motion for summary judgment; granted the State Defendants' cross motion for summary judgment; and *sua sponte* granted summary judgment to the County Defendant. JA 722. The Plaintiffs appealed from that Judgment by Notice dated September 13, 2011 and the County Defendant cross-appealed by Notice dated September 22, 2011. JA 721, 724.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331 to entertain the Plaintiffs' claims under 42 U.S.C. §1983. This Honorable Court has jurisdiction, pursuant to 28 U.S.C. §1291, over the instant appeal from the Judgment of the Hon. Cathy Seibel (U.S.D.J.) of the U.S. District Court for the Southern District of New York, dated September 7, 2011, and entered on that date. JA 722-723. The Plaintiffs, by timely Notice of Appeal dated September 13, 2011, appealed from those portions of the foregoing Judgment that denied their motion for summary judgment and granted summary judgment to the State Defendants and County Defendant. JA 721. By timely Notice, filed on September 22, 2011, the County

Defendant cross-appealed from the portion of the foregoing Judgment that denied its motion to dismiss. JA 724.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court for the Southern District of New York erred in denying the County Defendant's motion to dismiss which was based upon its position that it was not a proper party?

The District Court for the Southern District of New York erred in denying the County Defendant's motion to dismiss because Section 400.00(2)(f) of the Penal Law, the statute alleged to be unconstitutional, is a state enactment administered within the boundaries of Westchester County by state officers – *i.e.*, Judges and Justices of the New York State Unified Court System who are the pistol licensing officers. Plaintiffs' contention that the County is liable for the natural consequences of its employees' actions in summarizing the results of their investigations in recommendations to the licensing officers is meritless inasmuch as there is no established Second Amendment right to possess a concealed firearm in a public setting.

2. Whether the District Court for the Southern District of New York erred in *sua sponte* granting summary judgment to the County Defendant?

4

The District Court for the Southern District of New York did not err in *sua sponte* granting summary judgment to the County Defendant. The District Court properly concluded that Section 400.00(2)(f) of the Penal Law did not burden a recognized protected right under the Second Amendment and that, if it did, it was nonetheless constitutional because its "limitations promote[d] the [state's] strong interest in public safety and crime prevention, and are substantially related to it."

## COUNTERSTATEMENT OF FACTS

As set forth in the First Amended Complaint, the Individual Plaintiffs allege that they were each denied a license pursuant to Section 400.00(2)(f) of the Penal Law because the licensing officers, the State Defendants herein, held by separate administrative determinations that they had not demonstrated "proper cause." JA 20, 21, 22, 23, 24. Section 400.00(2)(f) of the Penal Law provides in relevant part that: "A license for a pistol or revolver … shall be issued to … have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof … ." "[P]roper cause" is not defined in the statute but has been judicially interpreted to mean "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Kachalsky v. Cacace*, ___ F.Supp.2d ___,

5

2011 WL 3962550 *2 (S.D.N.Y. 2011) quoting *Bando v. Sullivan,* 290 A.D.2d 691, 735 N.Y.S.2d 660, 662 (3d Dep't 2002) (internal quotation marks omitted). A background investigation of each of the Individual Plaintiffs was conducted by officers of the Westchester County Department of Public Safety as was mandated by Section 400.00(4) of the Penal Law. JA 136-137. A report of those investigations was provided to the State Defendants who in their separate administrative determinations concluded, in substance, that each of the Individual Plaintiffs had failed to demonstrate proper cause for the issuance of a license. JA 34, 36-37, 39, 43-44, 48-49.

The Individual Plaintiffs, joined by an advocacy group, the Second Amendment Foundation, Inc., then commenced a 1983 action in the United States District Court for the Southern District of New York alleging violations of their rights under the Second Amendment to the United States Constitution as recognized in the Supreme Court case *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and made applicable to the states in *McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). JA 16-26. The State Defendants and the County Defendants moved separately to dismiss the Plaintiffs' complaint. In the State Defendants' motion it was alleged that dismissal was warranted upon grounds related to standing, abstention, *res judicata* and the

*Rooker-Feldman* Doctrine. The County Defendant, in its motion, adopted

the arguments raised by the State Defendants and additionally asserted its

entitlement to dismissal because it was not a proper party noting that none of

the State Defendants, who rendered the challenged determinations, were

County officers or employees, that the statute challenged was a state (and

not a County) enactment, and that in the event the relief were granted, the

County Defendant lacked the ability to effectuate the relief requested

because such authority rests solely in the hands of the State Defendants. In

addition to the foregoing motions the Plaintiffs moved for summary

judgment and the State Defendants cross-moved for summary judgment. By

Opinion and Order, dated September 2, 2011, the District Court: denied the

motions to dismiss of the County Defendant and State Defendants; denied

the Plaintiffs' motion for summary judgment; granted the State Defendants'

cross motion for summary judgment; and *sua sponte* granted summary

judgment to the County Defendant. The decretal portion of that Opinion and

Order was incorporated into a Judgment dated September 7, 2011. JA 722.

## STANDARD OF REVIEW AND SUMMARY OF THE ARGUMENT

The denial of a motion to dismiss is reviewed *de novo*. *Turkmen v.*

*Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009). The District Court erred in

denying the County Defendant's motion to dismiss the Plaintiffs' Complaint because the County Defendant was not a proper party to this action involving state officers implementing a state statute.

A *sua sponte* grant of summary judgment without notice is reviewed for an abuse of discretion. See, generally *Schwan-Stabilo Cosmetics GMBH & Company v. Pacificlink International Corporation*, 401 F.3d 28, 33(2d Cir. 2005). The District Court did not abuse its discretion in awarding summary judgment to the non-moving County Defendant because the Plaintiffs had a full and fair opportunity to address all the relevant issues in their opposition to the summary judgment motion of the State Defendants.

## POINT I

### (In Support of the County Defendant's Cross Appeal)

### AS A THRESHOLD MATTER, THE DISTRICT COURT ERRED IN DENYING THE COUNTY DEFENDANT'S MOTION TO DISMISS BECAUSE IT WAS NOT A PROPER PARTY

The District Court erred in denying the County Defendant's motion to dismiss because it was not a proper party to this 1983 action. The County Defendant is not a proper party to this action because the statute alleged to be unconstitutional - Section 400.00 (2)(f) of the Penal Law - is a State and

not a County enactment and because the officers charged with making the administrative determination concerning licensing pursuant to Section 400.00(2)(f) of the Penal Law are State not County officers. Moreover, to the extent that the Plaintiffs assert that the County should be liable for the natural consequences of its employees' recommendations that the requested licenses be denied, 1983 liability cannot be predicated upon the same inasmuch as there is no clearly established constitutional right to the possession of a pistol in a setting other than in the home.

## Section 400.00(2)(f) of the Penal Law Is A State Statute

Section 400.00(2)(f) of the Penal Law, as adopted by Chapter 1030 of the 1965 Laws of the State of New York and subsequent amendments thereto, is a state statute not a local enactment such as those at issue in *McDonald v. City of Chicago,* 130 U.S. 3020, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (Sections 8-20-040(a) and 8-20-050(c) of the Municipal Code of the City of Chicago; Sections 27-1-1 and 27-2-1 of the Municipal Code of the City of Oak Park). Accordingly, the County Defendant was not a proper party to this action because it did adopt Section 400.00(2)(f) of the Penal Law and was without authority to modify it.

### The Judges and Justices Charged with
### Rendering Firearm Licensing Determinations
### in the County of Westchester Are State Officers

Pursuant to Section 265.00(10) of the Penal Law, within the boundaries of Westchester County, as in most counties of the State of New York, the term "licensing officer" as used in Article 400 of the Penal Law means "a judge or justice of a court of record having his office in the county ... ." Any such judge or justice would necessarily be an employee of the New York State Unified Court System as is readily apparent from the representation provided herein to the State Defendants by the Office of the Attorney General. See also Judiciary Law §220.

Furthermore, the instant case is readily distinguishable from recent 1983 actions alleging Second Amendment violations by municipal employees who rendered final licensing determinations pursuant to the statutory scheme in place in their respective States. See, e.g. *Hightower v. City of Boston*, ___ F.2d ___, 2011 WL 4543084 (D. Mass. 2011) (City of Boston and its Police Commissioner named as Defendants; Mass. Gen. L. c. 140, §121 defines "licensing authority" to mean "the chief of police or the board or officer having control of the police in a city or town, or persons authorized by them"); *Peruta v. County of San Diego*, 758 F.Supp.2d 1106 (S.D. Cal. 2010) (County and its Sheriff named as Defendants; Cal. Penal

Code §12050 vests the authority to license the possession of a firearm in the "sheriff of a county").

## Section 1983 Liability Cannot Be Imposed
## Absent a Violation of a Recognized Right

To the extent that the Plaintiffs assert that the County should be liable for the natural consequences of its employees' recommendations that the requested licenses be denied,[2] that assertion is meritless. See *Kachalsky v. Cacace*, ___ F.Supp.2d ___, 2011 WL 3962550, *17 (S.D.N.Y. 2011) citing *Kermin v. City of New New York*, 374 F.3d 93, 126 (2d Cir. 2004).

Pivotally, none of the officers of the Westchester County Department of Public Safety who prepared the reports related to the licensing applications were named as Defendants herein and had they been so named, they would have been entitled to qualified immunity inasmuch as there is no clearly established constitutional right to the possession of a pistol in a

---

[2] It does not appear that any of the Individual Plaintiffs were denied a license based solely upon a recommendation set forth in the background investigation. See, generally *Matter of Velez v. DiBella*, 77 A.D.3d 670, 671, 909 N.Y.S.2d 83, 84 (2d Dep't 2010) ("We reject the petitioner's claim that the respondent unlawfully abdicated his decision-making authority to the Westchester Department of Public Safety (hereinafter the Department) by following its recommendation to deny the application. The respondent's written decision denying the application demonstrates that the Department's recommendation was not the sole basis for his determination (*cf. Matter of Buffa v Police Dept. of Suffolk County*, 47 AD2d 841 [1975]).").

setting other than in the home. See, generally *Zellner v. Summerlin*, 494
F.3d 344, 367 (2d Cir. 2007) ("Qualified immunity shields government
officials performing discretionary functions from liability for civil damages
insofar as their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known."
(Citations and internal quotation marks omitted)).

Furthermore, it is well established that a municipality, such as the
County Defendant, is not subject to Section 1983 liability based upon a
*respondeat superior* theory absent the existence of an official policy or
custom that causes a Plaintiff to be subjected to a denial of a constitutional
right. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct.
2018, 2036, 56 L.Ed.2d 611, ___ (1978). Assuming, but not conceding, that
the Plaintiffs herein have asserted the existence of a policy or custom by
their Complaint, their pleadings are nonetheless insufficient because they
lack allegations of fact tending to support the same. *Dwares v. City of New
York*, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion, however, that a
municipality has such a custom or policy is insufficient in the absence of
allegations of fact tending to support, at least circumstantially, such an
inference." (Citations omitted)) *overruled on other grounds.*

12

For all of the foregoing reasons, the District Court erred in denying the County's motion to dismiss and that portion of its Judgment should be reversed.

**POINT II**

**(In Response to Plaintiffs-Appellants' Point III)**

**SECTION 400(2)(f) OF THE PENAL LAW
DOES NOT CONCERN THE CORE SECOND
AMENDMENT RIGHT RECOGNIZED IN
*HELLER* AND *McDONALD* - THE
POSSESSION OF AN OPERABLE FIREARM
IN THE HOME**

The narrow holding of the Supreme Court in *Heller* was: "[T]hat the [District of Columbia's] ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Heller* at 635, 128 S.Ct. at 2821-22, 171 L.Ed.2d at _____. It was this Second Amendment right that was found to be applicable to the states in *McDonald*. Contrary to the Plaintiffs' contention (Plaintiffs-Appellants' Brief at 27-32) , nothing about the *Heller* Court's interpretation of the term "bear" as used in the Second Amendment (*Heller* at 582-92, 128 S.Ct. at 2792-97, 171 L.Ed.2d at _____) should be construed as expanding its narrow holding to include the "bear[ing]" of arms in a public setting. *Kachalsky v.*

13

*Cacace*, ___ F.Supp.2d ___, 2011 WL 3962550 *21 (S.D.N.Y. 2011);

*People v. Aguilar*, 408 Ill.App.3d 136,143, 944 N.E.2d 816, 822-23, 348 Ill.

Dec. 575, 581-82 (1st Dist. 2011); *People v. Williams*, 405 Ill.App.3d 958,

962, 940 N.E.2d 95, 98, 346 Ill. Dec. 95, 98 (1st Dist. 2010) ("It is this

narrow focus which defeats a final argument made by defendant, that *Heller*

defined the right to "bear arms" as the right to carry a weapon on one's

person or clothing in order to be armed and ready for offensive or defensive

action. *Heller,* 554 U.S. at 584–85, 128 S.Ct. at 2793, 171 L.Ed.2d at 652–

53. But again, this was in the context of the right to bear arms for protection

in one's home, and the holdings do not extend beyond such usage.").

Furthermore, although the Supreme Court in *Heller* disavowed any

"exhaustive historical analysis … of the full scope of the Second

Amendment" (*Heller* at 626, 128 S.Ct. at 2816, 171 L.Ed.2d at ____), the

Plaintiffs cite no post *Heller* authority holding that there is a Second

Amendment right to the possession of a pistol in public[3] and, in fact, there

---

[3] *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) cited in Plaintiffs-
Appellants' Brief at 25 is a post *Heller* authority but it involved a Second
Amendment challenge to a city ordinance that mandated firing-range training
as prerequisite to lawful gun ownership, yet prohibited all firing ranges in the
city.

does not appear to be any such authority.[4]  It is precisely such public

possession that is at issue in Section 400.00(2) (f) of the Penal Law which

---

[4] *People v. Ross*, 407 Ill.App.3d 931, 939-40, 349 Ill. Dec. 762, 770 947 N.E.2d 776, 785 (Ill. App., 1 Dist. 2011) ("*Heller* applies only to the question presented - that the second amendment right to bear arms protected the right to possess a handgun in the home for self-defense purposes. ... *McDonald* also addressed the limited question of whether a ban on the possession of a handgun in the home violated the second amendment right to bear arms. The holding in *McDonald* was similarly constrained, with a plurality of the Court concluding that the right to possess a handgun in the home for self-defense was fundamental and incorporated under the due process clause of the fourteenth amendment." (Citations omitted)); *Commonwealth of Massachusetts v. McCollum*, 79 Mass.App.Ct. 239, 258, 945 N.E.2d 937, 954 (Mass. App. Ct. 2011) ("[T]he Second Amendment does not protect the defendant in this case because the Commonwealth established at trial that apartment 12 was not the defendant's home. Moreover, *Heller* and *McDonald* both expressly affirm the Commonwealth's right to regulate in this area with, inter alia, appropriate licensing requirements." (Citation omitted)); *People v. Aguilar*, 408 Ill.App.3d 136, 149, 944 N.E.2d 816, 828, 348 Ill.Dec. 575, 587 (Ill.App. ,1 Dist. 2011) ("No reported cases have held that *Heller* or *McDonald* preclude states from prohibiting the possession of handguns outside of the home."); *Williams v. State*, 417 Md. 479, 481-482, 10 A.3d 1167, 1169 (Md. 2011) ("We shall hold that Section 4–203(a)(1)(i) of the Criminal Law Article, which prohibits wearing, carrying, or transporting a handgun, without a permit and outside of one's home, is outside of the scope of the Second Amendment."); *Williams v. State*, 417 Md. 479, 494 n.10, 10 A.3d 1167, 1176 n.10 (Md.,2011) (collected cases); *Mack v. United States*, 6 A.3d 1224, 1236 (D.C. 2010) ("[W]e simply cannot find any error that is "plain" in failing to extend *Heller* to a case such as this one, where a weapon is carried outside the home. *See Sims v. United States,* 963 A.2d 147, 150 (D.C.2008) ("[W]hat assuredly is not 'clear' or 'obvious' from [ *Heller* ] is that it dictates an understanding of the Second Amendment which would compel the District to license a resident to carry and possess a handgun outside the confines of his home, however broadly defined[.]"")).

provides that: "A license for a pistol or revolver ... shall be issued to ... have and carry concealed, without regard to employment or place of possession, by any person when proper cause exists for the issuance thereof ... ." Accordingly, Section 400.00(2)(f) of the Penal Law is distinguishable from the statutory provisions at issue in *Heller* and *McDonald* which had the effect of banning the possession of operable firearms in the home and is outside the scope of the Second Amendment right recognized therein.

## POINT III

### (In Response to Plaintiffs-Appellants' Points IV-VI)

**IF SECTION 400(2)(f) OF THE PENAL LAW IS WITHIN THE AMBIT OF THE SECOND AMENDMENT RIGHT RECOGNIZED IN *HELLER*, IT IS NONETHELESS CONSTITUTIONAL BECAUSE IT IS SUBSTANTIALLY RELATED TO AN IMPORTANT GOVERNMENTAL INTEREST IN PUBLIC SAFETY**

The District Court did not err in concluding that, if Section 400(2)(f) of the Penal Law did infringe upon a Second Amendment right recognized in *Heller*, it was sufficiently remote from the core right recognized therein to be subjected to intermediate as opposed to strict scrutiny. Similarly, the Court's resultant finding that Section 400(2)(f) of the Penal Law was

16

substantially related to an important governmental interest in public safety

was well founded.

### The Core Right Recognized in Heller Was To Self-Defense in the Home

As the District Court observed in selecting the level of scrutiny to

apply:

> Section 400.00(2)(f) clearly does not burden [the
> right to self defense in the home], as it speaks only
> to possession *outside* the home, and, in any event,
> the [New York Penal Law] separately provides
> that gun permits "shall be issued to ... have and
> possess in his dwelling by a householder." N.Y.
> Penal Law § 400.00(2)(a).

*Kachalsky v. Cacace*, ___ F.Supp.2d ___, 2011 WL 3962550 *25 (S.D.N.Y.
2011).

Accordingly, because the core right recognized in *Heller* was not implicated

by Section 400(2)(f) of the Penal Law, the District Court subjected it to

intermediate scrutiny inquiring as to whether or not it was substantially

related to an important governmental interest noting that:

> To satisfy this standard, Defendants need to show
> a "reasonable" "fit between the legislature's ends
> and the means chosen to accomplish those ends."

*Kachalsky v. Cacace*, ___ F.Supp.2d ___, 2011 WL 3962550 *26 (S.D.N.Y.
2011) quoting *Board of Trustees of State University of New York v. Fox,*
492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (internal
quotation marks omitted).

## Important Governmental Interest in
## Public Safety

The District Court then addressed the legislative history surrounding the "proper cause" requirement of Section 400(2)(f) and the statutes it was derived from and concluded that requirement was intended to promote public safety. *Kachalsky v. Cacace*, ___ F.Supp.2d ___, 2011 WL 3962550 *26-27(S.D.N.Y. 2011). The District Court further found that promoting public safety was an important governmental interest and that Section 400(2)(f) of the Penal Law was substantially related to that interest noting that:

> The statute does not function as an outright ban on concealed carry, but rather calls for individualized, case-by-case determinations regarding whether full-carry permit applicants have an actual and articulable—rather than merely speculative, potential, or even specious—need for self-defense. As crafted, the statute seeks to limit the use of handguns to self-defensive purposes—a use which, although in this context existing outside the home, is nonetheless a hallmark of *Heller*—rather than for some other use that has not been recognized as falling within the protections of the Second Amendment. This purpose is furthered by the statute's directive that full-carry permits "shall be" issued where there exists proper cause—rather than directing merely that permits "may" be issued in such instances.

*Kachalsky v. Cacace*, ___ F.Supp.2d ___, 2011 WL 3962550 *28 (S.D.N.Y. 2011).

Noting that there were "contrasting studies and statistics concerning the relationship between handgun ownership and violent crime", the District Court concluded that:

> [I]t is the job of the legislature, not the Court, to weigh the conflicting evidence and make policy choices (within constitutional parameters). *See, e.g., Turner Broad. Sys., Inc. v. FCC,* 520 U.S. 180, 195, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997) (legislature is "far better equipped than the judiciary to 'amass and evaluate the vast amounts of data' bearing upon legislative questions") (internal quotation marks omitted); *City of Richmond v. JA. Croson Co.,* 488 U.S. 469, 544, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) ("Local officials, by virtue of their proximity to, and their expertise with, local affairs, are exceptionally well qualified to make determinations of public good within their respective spheres of authority.") (internal quotation marks omitted). ... Section 400.00(2)(f) may not be perfect, but it need not be to pass constitutional muster. Section 400.00(2)(f)'s limitations promote the government's strong interest in public safety and crime prevention, and are substantially related to it.

*Kachalsky v. Cacace,* ___ F.Supp.2d ___, 2011 WL 3962550 *29 (S.D.N.Y. 2011.

The County Defendant respectfully asserts that the well-reasoned opinion of the District Court upholding the constitutionality of Section 400.00(2)(f) of the Penal Law is supported by the weight of the emerging Second Amendment jurisprudence and should not be disturbed on appeal.

## CONCLUSION

For all of the foregoing reasons, the Judgment of the United States

District Court for the Southern District of New York (Cathy Seibel,

U.S.D.J.), filed and entered on September 7, 2011, should be modified by

granting the County of Westchester's motion to dismiss and should be

otherwise affirmed.

Dated:  White Plains, New York
       February 3, 2012

                 Respectfully submitted,
                   ROBERT F. MEEHAN
                   County Attorney for the
                   County of Westchester
                   Attorney for Defendant-
                   Appellee-Cross Appellant
                   County of Westchester
                   BY:

                   /s/ Thomas G. Gardiner

                   _____

                   THOMAS G. GARDINER
                   (TGG 7305)
                   Sr. Assistant County Attorney
                   600 Michaelian Office Building
                   148 Martine Avenue
                   White Plains, New York 10601
                   (914) 995-3652

JAMES CASTRO-BLANCO
Chief Deputy County Attorney
  *of Counsel*

# CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(a)(7) OF THE FEDERAL RULES OF APPELLATE PROCEDURE

I, THOMAS G. GARDINER, Sr. Assistant County Attorney in the Office of Robert F. Meehan, Westchester County Attorney, attorney for Defendant-Appellee-Cross Appellant , hereby certify: (1) pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure that the foregoing Brief contains 4,363 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and (2) pursuant to Rule 32(a)(5) and (6) of the Federal Rules of Appellate Procedure, that the foregoing Brief has been prepared in proportionally spaced typeface using Microsoft Word 2003 in Times New Rome 14-point type for text and footnotes.

Dated: White Plains, New York
February 3, 2012

/s/ Thomas G. Gardiner

_____

THOMAS G. GARDINER
(TGG 7305)
Sr. Assistant County Attorney