GURA & POSSESSKY, PLLC
101 N. COLUMBUS STREET, SUITE 405
ALEXANDRIA, VIRGINIA 22314
TEL. 703.835.9085/FAX 703.997.7665

June 29, 2012

The Hon. Catherine O'Hagan Wolfe
Clerk, United States Court of Appeals
   for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

> Re:     *Kachalsky* v. *Cacase*
>            No. 11-3642

Dear Ms. Wolfe:

Pursuant to the Court's order of June 6, 2012, Plaintiffs-Appellants/Cross-Appellees ("Plaintiffs") submit this letter brief concerning the relevance of the Court's opinion in *United States* v. *DeCastro*, No. 10-3773, 2012 U.S. App. LEXIS 11213 (2d Cir. June 1, 2012).

*Preliminary Statement*

Although *DeCastro* does not address the provisions challenged here—Mr. DeCastro apparently confined his state law challenge to the constitutionality of licenses lacking the "proper cause" requirement here at issue, and did not have standing to address even those provisions— *DeCastro* strongly supports both of Plaintiffs' primary arguments for relief. *DeCastro* also rejected the lower court's holding here, contested by Plaintiffs but not invoked by Defendants-Appellees/ Cross-Appellant ("Defendants"), that the Second Amendment is exclusively subjected to a "no set of circumstances" overbreadth rule. Plaintiffs appreciate the Court's invitation to discuss this important development.

To best understand how *DeCastro* relates to the instant case, a brief overview of Plaintiffs' claims is in order.

Plaintiffs challenge the constitutionality of New York Penal Law § 400.00(2)(f), which provides that applicants for licenses to carry handguns demonstrate "proper cause" for the issuance of a license. Each individual Plaintiff has been denied a handgun carry license for failing to meet this alleged standard, resulting in his or her complete inability to bear handguns for self-defense outside the home throughout the length and breadth of New York State, at all times.

Plaintiffs advance two arguments for relief. First, as the bearing of arms is a fundamental right, prior restraints on that right which utilize unbridled discretion cannot survive constitutional review. After all, while individual rights can be regulated in the interest of public safety, individuals

cannot be made to prove that they have "proper cause" to exercise what is their constitutional *right*. Rather, in appropriate cases, the government may meet its burden of proving that constitutionally adequate reasons exist for depriving someone of his or her fundamental right.

In the alternative, to the extent the Court would apply some form of means-ends scrutiny to examine the "proper cause" provision, Plaintiffs assert the proper standard of review would be strict scrutiny, as the provision imposes a severe—indeed, an absolute—burden on the bearing of arms.[1]

*DeCastro* substantially advances both of Plaintiffs' claims for relief. First, *DeCastro* confirms that this Court looks to doctrines utilized in the First Amendment context for guidance in resolving Second Amendment claims. The prior restraint doctrine is most often utilized in First Amendment cases, and indeed, Defendants argued that the doctrine is so closely associated with the First Amendment that it should be cabined to that area. State Appellees' Br., at 50-53. Plaintiffs responded by showing that the first two amendments were analogized as early as Volume 1 of the U.S. Reports, and provided various examples of prior restraint considerations being invoked by courts in arms-bearing context. Reply Br., at 30-33. *DeCastro* now confirms, consistent with Plaintiffs' arguments, that a doctrine's rooting in the First Amendment is cause for its utilization in Second Amendment cases.

With respect to Plaintiffs' alternative claim for relief, under means-ends scrutiny, *DeCastro* did not adopt the various considerations urged by Defendants in selecting a Second Amendment standard of review. Rather, *DeCastro* followed Plaintiffs' approach, and that of virtually every federal appellate circuit to consider a standard of review for the Second Amendment, in finding that the standard of review in Second Amendment cases depends upon the nature of the claim. *DeCastro* specifically advises that heightened scrutiny applies in Second Amendment cases where the individual right is substantially burdened. Because the "proper cause" requirement severely burdens the Second Amendment rights of law-abiding, responsible people—it has effected a *complete prohibition* on Plaintiffs' enumerated right to "bear arms" throughout the state—per *DeCastro*, it must be subjected to strict scrutiny should the Court determine that the case is appropriate for means-ends scrutiny review.[2]

---

[1]The precise standard of review matters little in the final analysis. The government indisputably has a compelling interest in public safety, but just as clearly, it lacks an interest in suppressing the exercise of a constitutional right on account of the right itself allegedly contradicting public policy. Defendants here aver that the right to bear arms is unacceptably dangerous and should thus be rationed, with each person forced to prove a need for the right's exercise. But means-ends balancing tests cannot be used to define the content of a right. *District of Columbia* v. *Heller*, 554 U.S. 570, 634-35 (2008).

[2]However, as *Heller* demonstrated, means-ends scrutiny is not always appropriate or necessary to resolve Second Amendment cases, just as it is not always necessary to resolve other types of constitutional claims. Thus, while Plaintiffs welcome *DeCastro*'s guidance with respect to

Finally, *DeCastro* noted that facial challenges under the Second Amendment are subject to the same tests that operate in other areas of constitutional law, including First Amendment and abortion. The District Court plainly erred in failing to acknowledge that laws impinging upon individual rights are unconstitutional if they lack a "plainly legitimate sweep." *DeCastro*, 2012 U.S. App. LEXIS 11213, at *23 (quoting *Wash. State Grange* v. *Wash. State Republican Party*, 552 U.S. 442, 449 (2008)); Appellants' Br., at 60.

1.        DeCastro *Did Not Reach the Laws Challenged in this Case*

*DeCastro*'s facts differ markedly from those presented in the instant case. Of critical importance, DeCastro did not challenge the same provision of New York's Penal Law that is at issue here. Section 400.00(2) of the Penal Law provides for various handgun licenses, but only the license contemplated by subdivision (f), allowing the carrying of handguns in public for self-defense, is at issue here—and only that license contains the "proper cause" standard challenged by Plaintiffs.

DeCastro's gun, however, was found in a home closet, and there is some suggestion the gun was desired for protection of a dry cleaning business. *DeCastro*, 2012 U.S. App. LEXIS 11213, at *2-*3. The case's stipulated facts contained no reference to the public carrying of a handgun, and indeed, the only fact related to state handgun licensing recounted that "DeCastro never applied for and was not issued license to *possess* a firearm in New York . . ." *Id.* at *6 (emphasis added). At trial, DeCastro attempted to introduce evidence relating to the prevalence of "residential-premises" and "business-premises" licenses, *id.* at *4, but not, apparently, to carry licenses. The Court noted DeCastro's concession that 18 U.S.C. § 922(a)(3) "has no exception for the transportation of firearms purchased out-of-state by someone who is licensed to *possess a gun at home,*" and that "Decastro did not have a license to *own* a firearm in New York, nor did he apply for one." *DeCastro*, 2012 U.S. App. LEXIS 11213, at *25 (emphasis added).

Thus, even if *DeCastro* could be read as a statement relating to the constitutionality of New York's firearms licensing system, it would relate only to the home and business premises licenses of N.Y. Penal Law § 400.00(2)(a) and (b), which lack the one feature Plaintiffs challenge. And Plaintiffs do not challenge any aspect of the licensing system for home or business possession of firearms. But *DeCastro* cannot be read to reach any aspect of New York's gun laws, because the Court found DeCastro lacked standing to challenge the state's handgun licensing system, having failed to either (1) apply for a permit or (2) demonstrate futility. *DeCastro*, at *9-*10.

In contrast, each individual Plaintiff in this case has suffered a license denial on the basis of the challenged provision. The District Court below rejected Defendants' standing and ripeness claims, and Defendants have not appealed that portion of the decision. Although jurisdictional arguments cannot be waived, *DeCastro* at least confirms that Plaintiffs here have standing.

---

their alternative, means-ends based claim for relief, Plaintiffs maintain that the prior restraint doctrine provides the narrowest, most logical basis for relief.

2.      DeCastro *Confirms the Primacy of First Amendment Analysis in Second Amendment Cases, Thus Supporting Application of the Prior Restraint Doctrine*

The parties dispute the relevance of First Amendment doctrine. Plaintiffs claim that First Amendment analytical frameworks are useful in the Second Amendment context. Defendants, understanding that First Amendment rights may at times enjoy robust protection, apparently disagree. *DeCastro* resolves this dispute in Plaintiffs' favor:

> In deciding whether a law substantially burdens Second Amendment rights, it is therefore appropriate to consult principles from other areas of constitutional law, including the First Amendment (to which Heller adverted repeatedly).

*DeCastro*, 2012 U.S. App. LEXIS 11213, at \*19 (citations omitted).

When courts determine that a law provides licensing officials with unbridled discretion, they do not then separately subject the law to heightened-scrutiny analysis—they simply strike down the law. Yet *DeCastro* posited that *Heller* dispensed with Washington's unconstitutional laws because they burdened Second Amendment rights so severely that means-ends scrutiny was unnecessary. *DeCastro*, at \*12-\*13 (citing *Heller*, at 554 U.S. at 628-29). That analysis, too, fits with the operation of the prior restraint doctrine.

3.      DeCastro *Endorses Plaintiffs' Approach to Determining A Standard of Review, and Indicates the Correct Standard of Review in this Case Is Strict Scrutiny*.

Plaintiffs urged this Court to follow the trend developing throughout the federal appellate courts, and apply standards of review in Second Amendment cases that reflect the seriousness of each claim. Appellants' Br., at 56-60. Regulations imposing more severe burdens, including laws impacting responsible, law-abiding people in the exercise of rights lying closer to the Second Amendment's core, warrant greater scrutiny. In this case, Plaintiffs averred the appropriate standard of review would be strict scrutiny. *Id.*

Defendants, in contrast, did not offer a methodology for determining a standard of review. They argued that strict scrutiny should not apply because allegedly, "no circuit court has applied strict scrutiny to a regulation on firearms," State Appellees' Br., at 40, because "laws regulating the carrying of handguns in public *outside* the home are longstanding and common," State Appellees' Br., at 41, and because allegedly, the "core" right of self-defense protected by the Second Amendment is limited to the home. *Id.* Yet even so, Defendants argued for the application of intermediate scrutiny, which is a form of heightened scrutiny that places the burden of proof squarely upon the government.[3]

---

[3]Plaintiffs would assert that *DeCastro* erred in suggesting there is any room for rational basis in the Second Amendment. *DeCastro*, at \*11 and \*18 n.5. But Defendants do not claim

Defendants' first claim is overstated. While no "circuit" court has yet applied strict scrutiny to firearm regulations, that may be because no circuit court has yet had the opportunity to do so. For example, the defendants failed to appeal from the application of strict scrutiny in *Bateman* v. *Perdue*, No. 5:10-CV-265-H, 2012 U.S. Dist. LEXIS 47336 (E.D.N.C. Mar. 29, 2012), and it appears the defendants will not be appealing from the application of strict scrutiny in *Gowder* v. *City of Chicago*, No. 11-C-1304, 2012 U.S. Dist. LEXIS 84359 (N.D. Ill. June 19, 2012). Of course, circuit courts have suggested that they would apply strict scrutiny in at least some Second Amendment cases. *See, e.g. United States* v. *Masciandaro*, 638 U.S. 458, 470 (4th Cir. 2011). Defendants' second argument proves nothing. Laws regulating firearms inside the home are also longstanding and common, as are laws regulating the content of speech. That does not mean such laws cannot be subjected to strict scrutiny. Defendants' third argument is simply incorrect:

> [I]n [*Heller*], we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, *and* we struck down a District of Columbia law that banned the possession of handguns in the home.

*McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010) (emphasis added). *Self-defense*, not home possession, is the "*central component* of the right itself." *Heller*, 554 U.S. at 599.

In any event, *DeCastro* did not invoke any of Defendants' rationales in setting a standard of review. Rather, it followed largely the same arguments and framework offered by Plaintiffs here, citing many of the same precedential passages from other courts offered by Plaintiffs. And critically, *DeCastro* left open the possibility of utilizing strict scrutiny in appropriate cases. Not only did the *DeCastro* court repeatedly analogize to the First Amendment—which, of course, calls for strict scrutiny in some cases—it explicitly disclaimed offering any opinion as to which levels of heightened scrutiny would be appropriate in which case. "(We . . . need not decide the level of scrutiny applicable to laws that do impose such a [substantial] burden.)" *DeCastro*, at *11 (footnote omitted).

"We hold that heightened scrutiny is appropriate only as to those regulations that substantially burden the Second Amendment." *DeCastro*, at *11. "[H]eightened scrutiny is triggered only by those restrictions that (like the complete prohibition on handguns struck down in *Heller*) operate as a substantial burden on the ability of law-abiding citizens to possess and use a firearm for self-defense (or for other lawful purposes)." *Id.* at *15 (citations omitted). Notably, *DeCastro* here tracks *Heller*'s holding that the Second Amendment secures an interest in self-defense—which is frequently exercised outside the home—without any home limitation.

Defendants may (erroneously) dispute that the Second Amendment applies outside the home, a question that *DeCastro* does not specifically address. But there can be no question that if, as Plaintiffs' aver, the right to "bear" arms is the right to carry them, New York's "proper cause"

---

rational basis is the proper test, and the point appears moot. *See infra*.

standard does not merely impose a severe burden on that right. For the aggrieved Plaintiffs and, indeed, for most New Yorkers, it extinguishes the right completely. Plaintiffs are not merely limited in the types of handguns they can carry, nor are they restricted as to the time, place, or manner of carrying handguns. Plaintiffs may not carry any handguns for self-defense, anywhere in the state, at any time, because the authorities do not believe Plaintiffs have a good enough reason to do so.

In contrast, the provision challenged in *DeCastro*, 18 U.S.C. § 922(a)(3), was deemed not to impose a significant burden upon the keeping of arms—at least not as a general matter. On *DeCastro*'s facts, or perhaps more accurately, lack thereof, it was enough to observe that New Yorkers can, indeed, obtain handguns for home and business possession, and Mr. DeCastro failed to show how the requirement that he comply with his state's laws impermissibly burdened his Second Amendment exercise. Yet still, this Court carefully acknowledged the "possibility that, on a different set of facts, a defendant might be able to establish that the application of Section 922(a)(3) to him would burden his right to keep and bear arms so substantially as to render the statute unconstitutional as applied." *DeCastro*, 2012 U.S. App. LEXIS 11213, at *23 n.7.[4]

In the First Amendment context, time, place, and manner restrictions are thought to trigger a form of intermediate scrutiny. But content based restrictions are subject to strict scrutiny, and prior restraints involving unbridled discretion are simply not allowed. Subdivision 2(f)'s proper cause requirement is more in the nature of an excessive prior restraint or content-based restriction. It goes to the self-defense interest that *Heller* found central to the Second Amendment right.

Moreover, none of the cases followed by *DeCastro* foreclosed the application of strict scrutiny in Second Amendment claims, but rather, usually acknowledged that strict scrutiny could be applicable to Second Amendment claims under some circumstances. *See Masciandaro,* 638 F.3d at 470; *Heller* v. *District of Columbia*, 670 F.3d 1244, 1257-58 (D.C. Cir. 2011) (intermediate rather than strict scrutiny applied where burden not substantial); *United States* v. *Marzzarella*, 614 F.3d 85, 97-98 (3d Cir. 2010); *cf. Ezell* v. *City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) ("more rigorous" than intermediate "if not quite strict scrutiny"). And the Supreme Court has emphatically rejected the argument that the Second Amendment is to be given less favorable treatment than other enumerated rights. "The right to keep and bear arms . . . is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald*, 130 S. Ct. at 3045. "[W]e know of no principled basis on which to create a hierarchy of constitutional values." *Valley Forge Christian Coll.* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982).

---

[4]The Court further acknowledged that "§ 922(a)(3) has no exception for the transportation of firearms purchased out-of-state by someone who is licensed to possess a gun at home." If New York licensed state residents to purchase handguns across state lines, the government would lack any interest in enforcing Section 922(a)(3) under those circumstances. "The evident purpose of the statute is to stop circumvention of state laws regulating gun possession." *DeCastro*, at *21.

Ms. Wolfe
Page Seven

Plaintiffs submit that if any burden warrants strict scrutiny, the "proper cause" standard here at issue, which works a complete prohibition on Plaintiffs "right to . . . bear arms," U.S. Const. amend. II, qualifies.

4.      DeCastro *Confirms that the Second Amendment Permits Facial Challenges Under the Same Rules Followed in Cases Involving Other Individual Rights.*

Plaintiffs challenge the "proper cause" standard both on its face, and as applied to them. As discussed at greater length in Plaintiffs' brief, at 62-66, the Second Amendment must allow for facial challenges in cases where regulations or prohibitions lack a "plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449. Although the District Court quoted the other, more restrictive "no set of circumstances" test referenced in *Grange*, SA 58, it failed to acknowledge the "plainly legitimate sweep" test. *DeCastro* confirms that this test is available in Second Amendment cases. *DeCastro*, 2012 U.S. App. LEXIS 11213, at *23. Indeed, were this not the case, *Heller* and *McDonald* could not have been decided as they were, as there plainly exist individuals in Washington, D.C. and Chicago who may properly be disarmed—but that does not mean those municipalities' former gun prohibitions were immune from facial invalidity.

*Conclusion*

*DeCastro* counsels that the decision below must be reversed.

Respectfully submitted,

/s/ Alan Gura

Alan Gura

cc:  CM/ECF counsel