

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL

BARBARA D. UNDERWOOD
SOLICITOR GENERAL

July 13, 2012

Hon. Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
 for the Second Circuit
40 Foley Square
New York, NY 10007

Re: *Kachalsky v. Cacace,* No. 11-3642

Dear Ms. Wolfe:

      As expressly authorized by this Court's order dated June 6, 2012, appellees Cacace, Cohen, Lorenzo and Holdman ("State Appellees") respectfully submit this letter-brief in reply to the supplemental letter-brief filed on June 29, 2012 by plaintiffs-appellants discussing the Court's recent decision in *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012). We reply primarily to plaintiffs' erroneous arguments that: (1) *Decastro* supports importing First Amendment prior restraint doctrine into Second Amendment cases; and (2) *Decastro* supports application of strict scrutiny to New York's statutory requirement that an applicant for an unrestricted license to carry a concealed handgun demonstrate "proper cause . . . for the issuance thereof." N.Y. Penal Law § 400.00(2)(f).

<u>*Decastro* Does Not Suggest That First Amendment Prior Restraint Doctrine Should Be Applied in Second Amendment Cases</u>

      Contrary to plaintiffs' contentions, *Decastro* lends no support to plaintiffs' argument in this appeal that First Amendment prior restraint doctrine should be adopted as an analytical framework for analyzing challenges to handgun-licensing requirements under the Second Amendment. This Court's opinion in *Decastro* mentions First Amendment doctrine in two places, and neither reference to First Amendment doctrine suggests that prior restraint principles should be applied under the Second Amendment.

      The first reference to First Amendment rights in *Decastro* follows the Court's holding that in Second Amendment cases "heightened scrutiny is triggered only by those restrictions that . . . operate as a substantial burden on the ability of law-abiding citizens to possess and use a

firearm for self-defense (or for other lawful purposes)." 682 F.3d at 166. In explaining what it meant by "substantial burden," *Decastro* discussed cases addressing the "weight of the burden . . . in assessing the permissible bounds of regulation in other constitutional contexts," including the right to marry, the right to vote, the right to choose abortion, the Takings Clause and free speech. *Id.* at 167. In each of these areas, the Court observed that a "threshold showing [similar to substantial burden] is needed to trigger heightened scrutiny." *Id.* The Court then found it appropriate to "consult principles from other areas of constitutional law, including the First Amendment" in explaining how to decide "whether a law substantially burdens Second Amendment rights." *Id.* The Court's discussion specifically mentions only one First Amendment test: that "content-neutral time, place or manner regulations" limiting speech must leave open alternative channels of communication. *Decastro* then adopted the following elaboration of "substantial burden" by analogy to this test: "law that regulates the availability of firearms is not a substantial burden on the right to keep and bear arms if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense." *Id.* at 168.

This portion of *Decastro* says nothing at all about First Amendment prior restraint doctrine. *Decastro*'s very specific and limited analogy to a single First Amendment test—the "time, place and manner" doctrine—as part of its general survey of constitutional doctrines requiring a showing of burden to trigger heightened scrutiny does not, as plaintiffs contend, "[c]onfirm[] the [p]rimacy" of First Amendment analysis in Second Amendment cases. Pls. Supp. Letter-Br. at 4. The First Amendment "time, place and manner" doctrine to which *Decastro* analogized is actually an example of a broader principle of constitutional law that an individual is not free to exercise his constitutional rights at any time, in any manner, or at any place of his or her choosing. Indeed, it is far from a concept unique to First Amendment analysis that a law imposes no "substantial burden" on constitutional rights when adequate alternatives for exercising the right exist. The Court in *Decastro* could just as well have relied on an analogy to abortion cases or cases analyzing the right to travel to support the very same proposition. *See, e.g., Gonzales v. Carhart*, 550 U.S. 124, 165 (2007) (statute prohibiting certain abortion methods did not have effect of imposing unconstitutional "substantial obstacle" in part because of the availability of alternative safe abortion methods); *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) ("travelers do not have a constitutional right to the most convenient form of travel" (quotation marks omitted)); *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) ("burdens on a single mode of transportation do not implicate the right to interstate travel").

The second reference to the First Amendment in *Decastro* rejects the importation into Second Amendment analysis of another doctrine that is much more closely associated with First Amendment doctrine alone: the principle that a person may challenge a restriction on speech as substantially overbroad, even when the restriction would be constitutional as applied to the person's own speech. *See Decastro*, 682 F.3d at 169. This Court has recognized that this "overbreadth" doctrine is limited to the First Amendment context. *E.g., Betancourt v. Bloomberg*, 448 F.3d 547, 554 (2d Cir. 2006) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). And *Decastro* squarely rejects the notion that First Amendment overbreadth doctrine should be adopted under the Second Amendment. *Decastro,* 682 F.3d at 169.

Prior restraint doctrine is, if anything, even more tightly limited to First Amendment cases than overbreadth doctrine. Perhaps for this very reason, no court has applied prior restraint doctrine in the Second Amendment context. See State's Br. at 52-53. *Decastro* does not support plaintiffs' claim that prior restraint doctrine should govern here. To the contrary, the decision's rejection of First Amendment overbreadth doctrine supports the State Appellees' argument that prior restraint doctrine should not apply under the Second Amendment because the doctrine is rooted in concerns about government censorship that are specific to the First Amendment.

*Decastro* thus lends no support to plaintiffs' argument that prior restraint doctrine should apply in the Second Amendment context as part of a wholesale adoption of First Amendment doctrine. In addition, as we have demonstrated in our brief, prior restraint doctrine, even if it could be appropriately applied under the Second Amendment, would not help plaintiffs because prior restraint doctrine bars only *standardless* licensing schemes applied to speech, and the "proper cause" requirement is well defined in New York law. See State's Br. at 53.

<u>*Decastro* Does Not Support the Use of Strict Scrutiny</u>

Plaintiffs are also incorrect in arguing that *Decastro* somehow supports the application of strict scrutiny in this case. Assuming *arguendo* that New York's "proper cause" requirement for a concealed-carry license could be viewed as imposing a substantial burden on Second Amendment rights,[1] under *Decastro* this would mean only that the requirement is subject to *some* form of heightened scrutiny. *Decastro* expressly leaves open the question of the precise level of heightened scrutiny that may be appropriate for laws that substantially burden Second Amendment rights. *Decastro,* 682 F.3d at 164-65 ("[w]e therefore need not decide the level of scrutiny applicable to laws that do impose such a [substantial] burden."). Simply put, plaintiffs' plea for strict scrutiny has no basis in *Decastro*. As we have demonstrated, circuit decisions applying heightened scrutiny have consistently settled on intermediate scrutiny for laws—like the "proper cause" requirement—that do not affect the right to possess a handgun in the home for self-defense. See State's Br. at 39-45.[2] *Decastro* does not support a departure from these persuasive decisions.

---

[1] As we showed in our opening supplemental letter-brief, the "proper cause" requirement does not impose a substantial burden on a protected right for two reasons. First, the long history of restricting and prohibiting the concealed carrying of handguns means that concealed carrying is "entirely unprotected by the Second Amendment," *Decastro*, 682 F.3d at 165 n.3. Second, the "proper cause" requirement is a far cry from the "complete prohibition on Plaintiffs 'right to . . . bear arms,'" Pls. Supp. Br. at 7 (quoting U.S. Const. amend. II), that plaintiffs seek to portray it to be, because it does not foreclose plaintiffs from carrying long guns for self-defense outside the home, see State's Supp. Letter-Br. at 3 n.*, and it does not apply at all to applications for licenses to possess handguns in a person's home.

[2] Indeed, if the Court were to consider the "proper cause" requirement through a First Amendment lens, as plaintiffs advocate, it should be considered as a time, place and manner restriction, which is therefore subject to intermediate scrutiny. The "proper cause" requirement is

Respectfully submitted,

/s/

Simon Heller

cc: All counsel (by ECF)

---

only a restriction on the place and manner of carrying handguns: it restricts carrying only outside the home, and it applies only to concealed carrying.