GURA & POSSESSKY, PLLC
101 N. COLUMBUS STREET, SUITE 405
ALEXANDRIA, VIRGINIA 22314
TEL. 703.835.9085/FAX 703.997.7665

July 13, 2012

The Hon. Catherine O'Hagan Wolfe
Clerk, United States Court of Appeals
  for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

     Re:    *Kachalsky* v. *Cacase*
             No. 11-3642

Dear Ms. Wolfe:

     Neither of the Appellees' June 29 letter briefs offer much explanation as to how their arguments find support in *United States* v. *Decastro*, No. 10-3773, 2012 U.S. App. LEXIS 11213 (2d Cir. June 1, 2012). For the most part, both letter briefs merely use the occasion of *Decastro* to repeat arguments made in their briefs, and already addressed in Appellants' reply.

     The County's brief fails to explain how *Decastro* "reaffirms the position asserted in its Appellees' brief . . . that Section 400.00(2)(f) of the Penal Law does not implicate the core Second Amendment right recognized in *Heller* and *McDonald* – the right of law abiding citizens to possess operable firearms in their homes." County Letter Br., June 29, 2012. As Appellants previously noted, *Decastro* did not address Section 400.00(2)(f) or its "proper cause" requirement, and nothing in *Decastro* addressed the question of whether the Second Amendment applies outside the home. The County separately "reaffirms" its other position, *id.*, but without reference to *Decastro* or to any other intervening authority.

     State Appellees note that *Decastro* endorses the view that the right to arms is to be given its historical meaning. State Letter Br., June 29, 2012, at 1. This much is not disputed among the parties, even if the parties dispute what that history actually reveals, and what that portends for Section 400.00(2)(f). But the State Appellees' emphasis on historical meaning directly contradicts their social-science based arguments. After all, whatever self-described "experts" believe to be most socially optimal as a matter of policy is entirely irrelevant to an historical inquiry into what the right to keep and bear arms meant during the relevant historical period.[1]

---

    [1]State Appellees insist that the Second Amendment must be applied not as it was understood at the time of its 1791 ratification, but rather as it was understood in 1868, when the Fourteenth Amendment was ratified. The distinction is without a difference. *Heller* referred substantially to the Reconstruction understanding of the right to bear arms, to show that the understanding had remained

There is no historical support for the notion that states totally prohibited the right to bear arms outside the home, or restricted the ability to carry arms for self-defense to those deemed to have "proper cause." Appellees can offer only that there existed prohibitions and restrictions "on concealed carrying of firearms." State Letter Br., at 2. But as Plaintiffs noted, those restrictions were only sustained as they were deemed to be regulations on the manner of carrying arms. Appellants' Br., at 33-37. And indeed, the common law tradition, and early American constitutions and treatises—invoked and relied upon heavily by *Heller*—all recognized the right to carry arms in public for self-defense. Appellants Reply Br., at 16-24.

State Appellees' reference to the constitutionality of concealed-carry prohibition does not aid their case. *Heller* recounts that the activity secured by the right to bear arms encompasses, as a general matter, both open and concealed carry—"wear, bear, or carry . . . upon the person *or in the clothing or in a pocket*." *Heller*, 554 U.S. at 584 (citation omitted) (emphasis added). And from this, the state may opt to forbid *one* manner of carrying, which is the logic of virtually every precedent upholding the prohibition of concealed handgun carry. But "[a] statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defense, would be clearly unconstitutional." *Heller*, 554 U.S. at 629 (citation omitted).

Appellants, who have plenary control over what it is that they seek, are claiming the right to carry handguns, period, without reference to any manner of carry. For whatever reason, the state has chosen to forbid the open carrying of handguns, or perhaps, to allow the open carrying of handguns only with a license that also authorizes concealed carrying. Appellants merely applied for the only type of handgun carry license available—and were denied. The fact that this license happens to allow concealed carry is beyond Appellants' control and is, in any event, irrelevant to their claim.[2]

State Appellees also recount that *Decastro* referenced *Heller*'s exclusion of the right to carry "in sensitive places such as schools and government buildings." *Heller*, 554 U.S. at 626. This hardly supports a failure to recognize the right to carry a gun anywhere throughout the entire state.

---

consistent over the years. *Heller*, 554 U.S. at 614-16. And while *Heller* instructs that the Second Amendment codified the right as it was understood in 1791, *Heller*, 554 U.S. at 634-35, "the Second Amendment right is *fully applicable* to the States." *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3026 (2010) (emphasis added) and 3058 (Thomas, J., concurring in part and concurring in the judgment).

In any event, at least for purposes of this case, there is no distinction between the way the right to arms was understood in 1791 and 1868. At both times, the right secured to people's ability to carry handguns for self-defense outside the home, subject to regulation, but a right nonetheless.

[2]As the Constitution is written in general terms, the government can win any constitutional case by narrowly re-defining the scope of a plaintiff's claim, and then offering that the specific circumstance it points to is not itself always protected.

State Appellees' argument that completely barring the right to "bear" handguns outside the home is a reasonable "time, place or manner" restriction is frivolous. The right to "keep" arms relates specifically to the home, among other fixed places, and the right to "bear" arms is the right to carry them. If there is any right to "bear" handguns outside the home— and of course, there is— it cannot be a reasonable restriction as to time, place, or manner to totally prohibit the bearing of handguns at all times and places, and in every manner, unless an individual proves she is deserving of something that is hers as of *right*.

State Appellees also repeat their argument that handgun carrying may be banned because long guns may be carried. But *Heller* squarely rejected this argument. "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed." Appellants' Reply Br., at 29 (quoting *Heller*, at 629).

Indeed, the D.C. Circuit termed the argument "frivolous. It could be similarly contended that all firearms may be banned so long as sabers were permitted. Once it is determined—as we have done—that handguns are 'Arms' referred to in the Second Amendment, it is not open to the District to ban them." *Parker* v. *District of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007), *aff'd sub nom Heller*.

The Supreme Court first expressed its antipathy toward the long-arms-as-substitute-for-handguns argument at the petition stage in *Heller*. Undeterred by the D.C. Circuit's finding that the argument was "frivolous," District of Columbia officials presented the Supreme Court with the following question on certiorari: "Whether the Second Amendment forbids the District of Columbia from banning private possession of handguns while allowing possession of rifles and shotguns." Cert. Pet. No. 07-290. Heller successfully challenged this question as not accurately reflecting the issues in the case, and the Supreme Court adopted a very different "Question Presented" along the lines proposed by Heller, namely, whether the city's laws violated the Second Amendment.

If the availability of long arms inside the home—where their defensive use is practical—does not justify banning handguns within the home, surely, the availability of long guns outside the home—where they are not a practical option for every day self-defense[3]—cannot justify banning handguns outside the home. The Supreme Court already recognized as much nearly a century prior to *Heller*. In upholding a ban on the possession of shotguns and rifles by aliens, the Supreme Court acknowledged that "pistols . . . may be supposed to be needed occasionally for self-defence." *Patsone* v. *Pennsylvania*, 232 U.S. 138, 143 (1914).

---

[3]Nobody carries a shotgun or rifle for self-defense in the ordinary course of daily life. But marching with long arms may be a form of First Amendment expression, and Appellants remain surprised that state officials are essentially welcoming this type of conduct onto the streets of Westchester County.

Ms. Wolfe
Page Four

Finally, State Appellees seize on the fact that *Decastro* left open the precise level of heightened scrutiny in cases where Second Amendment rights are substantially burdened. Appellees reason that intermediate scrutiny might then well be the standard, as opposed to strict scrutiny. But at least one federal court has invalidated a nearly-identical law under intermediate scrutiny. *Woollard* v. *Sheridan*, No. L-10-2068, 2012 U.S. Dist. LEXIS 28498 (D. Md. March 2, 2012), *appeal pending*, No. 12-1437 (4th Cir. filed April 2, 2012) (striking down Md. Public Safety Code § 5-306(a)(5)(ii), requiring "good and substantial reason" to carry handgun).

Appellees' arguments lacked merit prior to *Decastro*. They still lack merit today.

Respectfully submitted,

/s/ Alan Gura

Alan Gura

cc: CM/ECF counsel